

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2019 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. CR 19-00343-GW |
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 371: Conspiracy; 18 U.S.C. § 922(a)(1)(A): Engaging in the Business of Manufacturing and Dealing in Firearms Without a License; 18 U.S.C. § 922(d): Sale of a Firearm to a Felon; 18 U.S.C. § 2(a): Aiding and Abetting; 18 U.S.C. § 924(d) and 28 U.S.C. § 2461(c): Criminal Forfeiture] |
| TRAVIS SCHLOTTERBECK, JAMES BRADLEY VLHA, and JACOB DEKONING, | |
| Defendants. | |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 371]

[ALL DEFENDANTS]

A.  INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

1. Defendants TRAVIS SCHLOTTERBECK, JAMES BRADLEY VLHA, and JACOB DEKONING, and co-conspirator Ping-Yi Kwan, did not have a federal firearms license issued by the United States Bureau of

1

Alcohol, Tobacco, Firearms and Explosives ("ATF"), and thus were not licensed to import, manufacture, or deal in firearms.

2. Defendant SCHLOTTERBECK operated Live Fire Coatings and Sign Imaging, two adjacent businesses located in Bellflower, California in the Central District of California.

3. A "firearm" was defined in 18 U.S.C. § 921(a)(3), in part, as "any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive," and "the frame or receiver of any such weapon."

4. An "AR" was a type of firearm. An AR-type rifle consisted of many parts, including the: (1) lower receiver; (2) upper receiver; (3) stock; (4) barrel; and (5) magazine.

5. In order to convert an unfinished lower receiver into a finished lower receiver that could be assembled into a rifle or pistol, a person could use specialized machinery on an unfinished lower receiver to create, or "mill out," cavities to create a finished lower receiver. A finished lower receiver had the shape and space necessary for an upper receiver and barrel to attach to the lower receiver. A firearm created in this way could be untraceable because it generally did not have a serial number or manufacturer-created identification markings.

B. OBJECT OF THE CONSPIRACY

Beginning on a date unknown to the Grand Jury, but no later than on or about May 21, 2015, and continuing to an unknown date, but no earlier than on or about June 21, 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendants SCHLOTTERBECK, VLHA, and DEKONING, and co-conspirator Kwan, and others known and unknown to the Grand Jury, conspired with each other

to commit an offense against the United States, namely, engaging in the business of manufacturing and dealing firearms without a license, in violation of Title 18, United States Code, Section 922(a)(1)(A).

C.  MANNER AND MEANS OF THE CONSPIRACY

The object of the conspiracy was to be accomplished, in substance, as follows:

1. Defendants SCHLOTTERBECK and VLHA, and co-conspirator Kwan would agree to sell firearms to firearms customers.

2. Defendant SCHLOTTERBECK and co-conspirator Kwan would obtain firearm parts, including unfinished lower receivers.

3. Defendant SCHLOTTERBECK would arrange to drill the cavities in unfinished lower receivers necessary to make the lower receivers attach to an upper receiver and barrel.

4. Defendant DEKONING would set up a machine to mill, and direct firearm customers to press the button on a machine to mill, cavities on the lower receivers to finish the lower receivers.

5. Defendants SCHLOTTERBECK and VLHA, and co-conspirator Kwan, would assemble, finish, and sell the completed firearms to customers at Live Fire Coatings and Sign Imaging.

D.  OVERT ACTS

In furtherance of the conspiracy and to accomplish its object, on or about the following dates, defendants SCHLOTTERBECK, VLHA, and DEKONING, co-conspirator Kwan, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including, but not limited to, the following:

**September 23, 2015 Sale of AR-15-Type Rifle**

Overt Act No. 1: On or about July 7, 2015, at Sign Imaging, defendant SCHLOTTERBECK agreed to sell an AR-15-type rifle to an individual who defendant SCHLOTTERBECK believed to be a firearms customer but who was, in fact, a confidential informant working at the direction of the ATF (the "CI").

Overt Act No. 2: On or about August 27, 2015, defendant SCHLOTTERBECK met with the CI at Live Fire Coatings and accepted $1,000 as a down payment from the CI for the AR-type rifle that the CI ordered.

Overt Act No. 3: On or about September 11, 2015, defendant SCHLOTTERBECK directed the CI to meet defendant SCHLOTTERBECK at a business in Paramount, California called "Cherokee Tactical," to mill out cavities in an unfinished lower receiver.

Overt Act No. 4: Or our about September 22, 2015, outside of Cherokee Tactical, defendant SCHLOTTERBECK gave the CI the unfinished lower receiver and $60 cash to pay defendant DEKONING, a Cherokee Tactical employee.

Overt Act No. 5: On or about September 22, 2015, at Cherokee Tactical, defendant DEKONING set up a machine to mill cavities into the CI's unfinished lower receiver, and directed the CI to push the green start button on the machine to activate each milling phase.

Overt Act No. 6: On or about September 23, 2015, at defendant SCHLOTTERBECK's direction, the CI met defendant VLHA and co-conspirator Kwan at Live Fire Coatings, where co-conspirator Kwan assisted the CI in fully assembling the rifle with the lower receiver finished at Cherokee Tactical, and sold the completed rifle to the CI for an additional $1,000.

Overt Act No. 7: On or about September 23, 2015, defendant VLHA told the CI that the CI could contact him, defendant SCHLOTTERBECK, or co-conspirator Kwan about ordering more firearms because they all communicate with each other.

**October 27, 2015 Sale of AR-15-Type Rifle**

Overt Act No. 8: Between on or about October 5, 2015, and on or about October 7, 2015, using coded language in telephone calls and text messages, defendant SCHLOTTERBECK arranged to meet with and sell a firearm to a person he believed to be a firearms customer, but who was, in fact, an undercover ATF agent ("UC-1").

Overt Act No. 9: On or about October 8, 2015, at Sign Imaging, defendants SCHLOTTERBECK and VLHA agreed to sell a custom-designed AR-15-type rifle for $1,500 to UC-1. At that meeting, defendant SCHLOTTERBECK accepted a down payment of $740 from UC-1.

Overt Act No. 10: Between or about October 16, 2015, and on or about October 19, 2015, using coded language in text messages and telephone calls, defendant VLHA told UC-1 that the firearm parts had arrived and that co-conspirator Kwan could begin assembling the firearm.

Overt Act No. 11: On or about October 22, 2015, co-conspirator Kwan provided UC-1 with an unfinished lower receiver and drove UC-1 to meet defendant DEKONING at Cherokee Tactical.

Overt Act No. 12: On or about October 22, 2015, at Cherokee Tactical, defendant DEKONING set up a machine to mill cavities into UC-1's unfinished lower receiver, and directed UC-1 to push the green start button on the machine to activate each milling phase.

Overt Act No. 13: On or about October 27, 2015, at Live Fire Coatings, defendant VLHA and co-conspirator Kwan met UC-1, where

5

co-conspirator Kwan sold UC-1 the completed AR-15-type rifle with the lower receiver finished at Cherokee Tactical for an additional $760.

**February 11, 2016 Sale of AR-15-Type Rifle**

<u>Overt Act No. 14</u>: On or about January 25, 2016, using coded language in text messages, defendant VLHA discussed selling a firearm to UC-1 and sent a text message to UC-1 containing a photograph of what appeared to be a short-barreled AR-15 rifle.

<u>Overt Act No. 15</u>: On or about January 26, 2016, at Live Fire Coatings, defendants SCHLOTTERBECK and VLHA agreed to sell UC-1 an AR-15 pistol using already-milled firearm parts. Defendant SCHLOTTERBECK accepted a down payment of $750 for the firearm from UC-1 and agreed to sell magazines to UC-1.

<u>Overt Act No. 16</u>: On or about February 11, 2016, at Live Fire Coatings, co-conspirator Kwan sold to UC-1 an AR-15-type pistol, bearing no serial number, two 30-round magazines, and three 10-round magazines, for an additional $850.

**May 6, 2016 Sale of AR-15-Type Pistol**

<u>Overt Act No. 17</u>: On or about March 16, 2016, at Live Fire Coatings, co-conspirator Kwan agreed to sell to UC-1 a 9mm AR-15-type pistol, as well a 50-round drum magazine and a 10-round magazine, and accepted a down payment of $820.

<u>Overt Act No. 18</u>: Between on or about April 30, 2016, and on or about May 3, 2016, co-conspirator Kwan texted UC-1 a photograph of the 9mm AR-15-type pistol and directed UC-1 to pick up the firearm from either defendant SCHLOTTERBECK or defendant VLHA at Live Fire Coatings on May 6, 2016.

<u>Overt Act No. 19</u>: On or about May 6, 2016, defendants SCHLOTTERBECK and VLHA met UC-1 at Live Fire Coatings, where

defendant SCHLOTTERBECK sold to UC-1 a 9mm AR-15 type pistol and a 31-round large-capacity magazine, for an additional $950.

**June 15, 2016 Sale of AR-15-Type Rifle**

Overt Act No. 20: On or about June 13, 2016, using coded language in text messages, defendant SCHLOTTERBECK agreed to sell a rifle to a person he believed to be a firearms customer, but who was, in fact, another undercover ATF agent ("UC-2").

Overt Act No. 21: On or about June 15, 2016, at Live Fire Coatings, defendant SCHLOTTERBECK sold to UC-2 a completed AR-15-type rifle and a 30-round large-capacity magazine, for $1,600.

**Possession of Firearms and Parts**

Overt Act No. 22: On or about June 21, 2017, at Sign Imaging and Live Fire Coatings, defendant SCHLOTTERBECK possessed four unfinished AR-type lower receivers; nine finished AR-type lower receivers; one lower receiver, bearing serial number 3C4119; and the following completed firearms: a Glock model 21C .45 Auto caliber pistol, bearing serial number GXS756; a Springfield 1911 pistol, bearing serial number NM497013; a Ruger model P91DC pistol, bearing serial number 340-08352; a Rock Island Armory 1911-type pistol, bearing serial number RIA889947; a Polymer 80 pistol, bearing no serial number; and four 1911-type pistols, each bearing no serial number.

## COUNT TWO

[18 U.S.C. §§ 922(a)(1)(A), 2(a)]

[ALL DEFENDANTS]

Beginning on a date unknown to the Grand Jury, but no later than on or about September 23, 2015, and continuing until on or about June 21, 2017, in Los Angeles County, within the Central District of California, and elsewhere, defendants TRAVIS SCHLOTTERBECK, JAMES BRADLEY VLHA, and JACOB DEKONING, and others known and unknown to the Grand Jury, each aiding and abetting the other, not being licensed importers, manufacturers, or dealers of firearms, willfully engaged in the business of manufacturing and dealing in firearms, specifically, the assembly and sales of the following firearms, on or about the following dates:

| DATE | FIREARM |
|---|---|
| September 23, 2015 | An AR-15-type rifle, bearing no serial number |
| October 27, 2015 | An AR-15-type rifle, bearing no serial number |
| February 11, 2016 | An AR-15-type pistol, bearing no serial number |
| May 6, 2016 | An AR-15-type 9mm pistol, bearing no serial number |
| June 15, 2016 | An AR-15-type rifle, bearing no serial number |

COUNT THREE

[18 U.S.C. § 922(d)(1)]

[DEFENDANT SCHLOTTERBECK]

On or about September 23, 2015, in Los Angeles County, within the Central District of California, defendant TRAVIS SCHLOTTERBECK knowingly sold a firearm, namely, an AR-15 type rifle, bearing no serial number, to a person defendant SCHLOTTERBECK believed to be a firearm customer but who was, in fact, a confidential informant working for the Bureau of Alcohol, Tobacco, Firearms and Explosives, knowing and having reasonable cause to believe that the confidential informant had been convicted of a felony crime punishable by a term of imprisonment exceeding one year.

FORFEITURE ALLEGATION

[18 U.S.C. § 924(d)(1) and 28 U.S.C. § 2461(c)]

[ALL DEFENDANTS]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 924(d)(1) and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts One and Two of this Indictment.

2. Any defendant so convicted shall forfeit to the United States of America the following:

(a) All right, title, and interest in any firearm or ammunition involved in or used in or used in any such offense; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

//
//

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

A TRUE BILL

/s/
Foreperson

NICOLA T. HANNA
United States Attorney

BRANDON D. FOX
Assistant United States Attorney
Chief, Criminal Division

SCOTT M. GARRINGER
Assistant United States Attorney
Deputy Chief, Criminal Division

CHRISTINA T. SHAY
Assistant United States Attorney
Deputy Chief, General Crimes Section

SARA B. MILSTEIN
Assistant United States Attorney
Violent & Organized Crime Section

11