TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
BRIAN R. FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorney
Environmental and Community Safety Crimes Section
    1300 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3819
    Facsimile: (213) 894-0141
    E-mail:    Brian.Faerstein@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 19-343-GW |
|---|---|
| Plaintiff, | GOVERNMENT'S MOTION *IN LIMINE* #1 TO ADMIT EVIDENCE AND PERMIT ARGUMENT; DECLARATION OF BRIAN FAERSTEIN; EXHIBIT |
| v. | |
| TRAVIS SCHLOTTERBECK and JAMES BRADLEY VLHA, | Hearing Date: May 12, 2022 Hearing Time: 8:00 a.m. Location:    Courtroom of the |
| Defendant. | Hon. George H. Wu |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Brian Faerstein, hereby files its motion in limine to admit evidence and permit argument regarding defendants Travis Schlotterbeck's and James Bradley Vlha's willfulness.

    This motion is based upon the attached memorandum of points and authorities, the attached declaration of Brian Faerstein and

//

//

accompanying exhibit, the files and records in this case, and such

further evidence and argument as the Court may permit.

Dated: April 29, 2022              Respectfully submitted,

                                   TRACY L. WILKISON
                                   United States Attorney

                                   SCOTT M. GARRINGER
                                   Assistant United States Attorney
                                   Chief, Criminal Division


                                         /s/
                                   _____
                                   BRIAN R. FAERSTEIN
                                   Assistant United States Attorney

                                   Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA

# TABLE OF CONTENTS

DESCRIPTION                                                              PAGE

MEMORANDUM OF POINTS AND AUTHORITIES.................................1

I.    INTRODUCTION...................................................1

II.   FACTUAL BACKGROUND.............................................3

III.  ARGUMENT......................................................7

      A.    Applicable Law..........................................7

            1.    The Government's Burden to Prove Willfulness........7

            2.    Rule 404(b) Does Not Apply to Charged Conduct.......8

            3.    The Inextricably Intertwined Doctrine..............10

            4.    Rule 404(b) Evidence...............................10

      B.    Admissibility of Defendants' Purchases of Other
            Firearms Under Federal Rule of Evidence 404(b)..........11

      C.    Admissibility of Evidence of Large-Capacity Magazines
            and Silencers as Charged Conduct and/or Inextricably
            Intertwined Evidence....................................14

            1.    Defendants' Sales of Large-Capacity Magazines......14

            2.    Defendants' Discussions of Obtaining Silencers.....16

IV.   CONCLUSION....................................................19

DECLARATION OF BRIAN FAERSTEIN....................................20

**TABLE OF AUTHORITIES**

DESCRIPTION                                                        PAGE

**Federal Cases**

Bryan v. United States,
  524 U.S. 184 (1998) ..................................... 7, 8, 12

Dubria v. Smith,
  224 F.3d 995 (9th Cir. 2000) ............................. 18-19

United States v. Beckman,
  298 F.3d 788 (9th Cir. 2002) ......................... 11, 12-13

United States v. Bradshaw,
  690 F.2d 704 (9th Cir. 1982) ................................ 13

United States v. Collins,
  90 F.3d 1420 (9th Cir. 1996) ......................... 10, 15, 18

United States v. Dorsey,
  677 F.3d 944 (9th Cir. 2012) ................................ 10

United States v. Hernandez,
  859 F.3d 817 (9th Cir. 2017) ................................. 8

United States v. Loftis,
  843 F.3d 1173 (9th Cir. 2016) ......................... 8, 9, 10

United States v. Ripinsky,
  109 F.3d 1436 (9th Cir. 1997) ............................... 9

United States v. Rizk,
  660 F.3d 1125 (9th Cir. 2011) ........................... 15-16

United States v. Sablan,
  114 F.3d 913 (9th Cir. 1997) ................................ 9

United States v. Soliman,
  813 F.2d 277 (9th Cir. 1987) ............................... 10

United States v. Vizcarra-Martinez,
  66 F.3d 1006 (9th Cir. 1995) ............................... 10

United States v. Williams,
  989 F.2d 1061 (9th Cir. 1993) .............................. 10

Weeks v. Angelone,
  528 U.S. 225 (2000) ........................................ 18

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                    PAGE

**Federal Statutes**

18 U.S.C. § 371 ................................................... 3

18 U.S.C. § 921 .................................................. 15

18 U.S.C. § 922 ............................................... 3, 7, 8

26 U.S.C. §§ 5845, 5861 ........................................ 6

**Other**

Cal. Penal Code § 16740 ........................................ 4

Cal. Penal Code § 32310 ........................................ 4

Fed. R. Evid. 401 ......................................... *passim*

Fed. R. Evid. 402 ........................................ 2, 3, 9

Fed. R. Evid. 403 ..................................... 11, 13, 18

Fed. R. Evid. 404 ......................................... *passim*

Fed. R. Evid. 902 .............................................. 11

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.   INTRODUCTION**

3

Defendants Travis Schlotterbeck ("Schlotterbeck") and James

4 Bradley Vlha ("Vlha") are charged with crimes relating to their

5 illegal business of manufacturing and selling AR-15-type firearms

6 without a license.  Defendant Schlotterbeck also is charged with

7 selling a firearm to a felon.  Trial is scheduled for May 24, 2022.

8

Defendants, along with co-conspirator Ping-Yi "Jesse" Kwan

9 ("Kwan"),[1] conspired together at two storefronts controlled by

10 defendant Schlotterbeck in Bellflower, California to manufacture and

11 sell AR-15-type semi-automatic firearms to paying customers.

12 Defendants' customers included, among others, a confidential

13 informant (the "CI") and two undercover agents ("UC-1" and "UC-2,"

14 and, together, the "UCs") working with the Bureau of Alcohol,

15 Tobacco, Firearms, and Explosives ("ATF").  Over the course of

16 roughly one year, the CI and UCs custom-ordered and purchased from

17 the co-conspirators six separate AR-15-type firearms, all of which

18 lacked serial numbers (so-called "ghost guns").  During the course of

19 the negotiations underlying those sales, the parties frequently

20 discussed various aspects of the customization of the firearms,

21 accessories the UCs purchased with the firearms (including large-

22 capacity magazines of ammunition that were illegal under California

23 law), and silencers defendants were interested in obtaining from the

24 UCs as part of their illegal course of dealing.

25

26

27

28

[1] Kwan pleaded guilty in a separate proceeding to an information alleging that, among other things, Kwan engaged in the business of manufacturing and dealing in firearms without a license.  <u>See</u> Case No. CR 19-292-GW, Dkt. Nos. 1, 19.  Kwan has not yet been sentenced in that case.

At trial, the government has the burden of proving willfulness beyond a reasonable doubt, that is, that defendants knew their conduct of engaging in the business of manufacturing firearms for sale was unlawful.  On April 20, 2022, the government provided notice to defendants of its intent to admit evidence and make arguments pursuant to Federal Rule of Evidence 404(b) regarding defendants' prior apparently lawful purchases of firearms on their own behalf through proper channels to show, among other things, defendants' knowledge and absence of mistake regarding the unlawful nature of their conduct of manufacturing and selling firearms outside these legally required channels.  (See Declaration of Brian Faerstein ("Faerstein Decl."), Exhibit A, at 8.)

In addition, in an abundance of caution, the government described in its notice several other categories of evidence it intends to admit at trial as part of the charged conduct under Rules 401 and 402 and/or as inextricably intertwined evidence.  Such evidence includes, among other things, the UCs' purchases from defendants of illegal large-capacity magazines along with the AR-15-type firearms, and defendants' discussion of obtaining silencers from the CI and UCs.  (See generally id.)[2]

The government respectfully seeks a ruling that the proffered evidence regarding defendants' prior personal firearms purchases is admissible for a limited purpose under Rule 404(b).  The government also respectfully asks the Court to find in advance of trial that the

---

[2] For purposes of robust disclosure and in an abundance of caution, the government described other categories of evidence in its April 20, 2022 letter that pertain to the elements of the alleged offenses and the charged conduct in this case.  (See generally Faerstein Decl., Exh. A.)  The government does not discuss all of that evidence in this motion in limine.

following categories of evidence are admissible for all purposes under Rules 401 and 402 or, at a minimum, as inextricably intertwined evidence: (1) evidence relating to defendants' sales of large-capacity magazines that are illegal under California law; and (2) evidence relating to defendants' discussion of purchasing silencers from the CI and UCs.

## II.   FACTUAL BACKGROUND

Defendants Schlotterbeck and Vlha are charged in the indictment with conspiracy to manufacture and deal in firearms without a license in violation of 18 U.S.C. § 371, and a separate substantive count of manufacturing and dealing in firearms without a license and aiding and abetting the same, in violation of 18 U.S.C. §§ 922(a)(1)(A) and 2(a).  With respect to both counts, the government intends to proceed at trial on the theory that defendants conspired to and did illegally manufacture firearms without a license, without submitting to the jury the alternate theory of dealing in firearms without a license.[3]

The government will prove that, between approximately May 21, 2015, and June 21, 2017, defendants Schlotterbeck and Vlha, along with co-conspirator Kwan and others, worked together to manufacture for sale multiple custom-ordered AR-15-type "ghost gun" firearms. These activities predominantly took place at the businesses defendant Schlotterbeck controlled in Bellflower, called Sign Imaging and Live Fire Coatings (together, the "Bellflower shops").

Defendants and co-conspirator Kwan took custom orders for AR-15-type firearms (both rifles and pistols), obtained the firearm parts,

---

[3] Defendant Schlotterbeck also is charged with a third count of selling a firearm to a person (here, the CI) knowing or having reasonable cause to believe that person had been convicted of a felony, in violation of 18 U.S.C. § 922(d)(1).

arranged for certain parts (specifically, unfinished lower receivers) to be drilled for use, and assembled and finished (including through the use of a protective ceramic coating known as Cerakote) the AR-15-type firearms for sale.  None of the co-conspirators nor the storefronts Schlotterbeck controlled had a license to import, manufacture, or deal in firearms.

The government will present evidence, including through recorded meetings, calls, and text messages produced in discovery, that defendants and co-conspirator Kwan worked together to manufacture and sell six of these "ghost gun" AR-15-type firearms to the CI and the UCs.  In connection with four of those sales transactions and as part of the parties' negotiations, defendants and co-conspirator Kwan also sold the UCs magazines of ammunition for additional money, including in some cases large-capacity magazines (i.e., magazines that hold more than 10 rounds) that were illegal under California law.[4]

Specifically, the government will present evidence regarding defendants' and co-conspirator Kwan's concerted activities to negotiate and complete the manufacture and sale of the following six firearms and accompanying ammunition (with dates reflecting the delivery of the firearms and ammunition upon final sale):

- September 23, 2015: .223 caliber AR-15-type rifle bearing no serial number and cerakoted in a burnt bronze finish, purchased by the CI for $2,000;

[4] California Penal Code Section 32310 provides, in relevant part, "any person in this state who manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, buys, or receives any large-capacity magazine is punishable by imprisonment in a county jail not exceeding one year or imprisonment pursuant to subdivision (h) of Section 1170."  A "large-capacity magazine" means "any ammunition feeding device with the capacity to accept more than 10 rounds."  Cal. Penal Code § 16740.

4

- October 27, 2015: .223 caliber AR-15-type rifle bearing no serial number and cerakoted in a midnight bronze finish, purchased by UC-1 for $1,500;

- February 11, 2016: .223 caliber AR-15-type pistol bearing no serial number and cerakoted in a tungsten finish, along with two 30-round large-capacity magazines and two 10-round magazines, purchased by UC-1 for $1,600;

- March 16, 2016: .223 caliber AR-15-type pistol bearing no serial number and cerakoted in an "Ironman" theme finish, along with two 10-round magazines, purchased by UC-2 for $1,530;

- May 6, 2016: 9 millimeter AR-15-type pistol bearing no serial number and cerakoted in a "Stormtrooper" theme finish, along with one 31-round magazine, purchased by UC-1 for $1,770; and

- June 15, 2016: .223 caliber AR-15-type rifle bearing no serial number and cerakoted in a "Captain America" theme finish, along with one 30-round magazine, purchased by UC-2 for $1,600.

The evidence will show that the co-conspirators had other customers as well, before and after these transactions, and engaged in additional so-called "builds" and sales of AR-15-type firearms on a custom-order basis. The evidence will further show that defendants and co-conspirator Kwan engaged in this conduct for the principal objective of livelihood and profit.

At various points during the negotiations surrounding the six firearm transactions described above, defendants inquired with the CI and UCs about obtaining silencers or suppressors, which the parties sometimes referred to as "cans." Among other things, during an initial meeting between the CI and defendant Schlotterbeck in May 2015, the CI showed Schlotterbeck a purported prototype for a silencer constructed out of a Maglite flashlight. As described further in section III.C.2 below, defendants Schlotterbeck and Vlha

5

both inquired about obtaining homemade silencers from the CI and UCs on multiple occasions thereafter.[5]  Defendants' inquiries were interspersed with their conversations with the CI and UCs about the AR-15-type firearms sales transactions described above.

Prior to and during the course of the alleged conspiracy, defendants Schlotterbeck and Vlha both purchased numerous firearms through apparently lawful means, demonstrating their knowledge and awareness of the legal requirements attendant to the lawful sale of firearms.  Specifically, based on a Certification of Firearm History for defendants Schlotterbeck and Vlha, certified by the California Department of Justice and produced in discovery, Schlotterbeck purchased at least eight firearms between March 1, 2013, and March 15, 2017, all directly from licensed dealers under federal and state law or through private party transfers sanctioned by such licensed dealers.  Similarly, defendant Vlha purchased at least six firearms between July 21, 2014, and December 5, 2016, also through dealer sales or private party transfers sanctioned by licensed dealers.[6] All of these purchases were recorded by the licensed dealers in a form required by California law known as a Dealer's Record of Sale ("DROS"), which information is maintained by the California Department of Justice, Bureau of Firearms.

---

[5] Among other potential violations, receiving or possessing silencers that are not registered to the recipient or possessor under the National Firearms Registration and Transfer Record may constitute a federal crime under certain circumstances.  See 26 U.S.C. §§ 5861(d), 5845(a)(7).

[6] Defendants Schlotterbeck and Vlha purchased or sold additional firearms through licensed dealers after the end date of the alleged conspiracy (i.e., June 21, 2017).  Those transactions are not included here and the government does not intend to seek to offer such evidence at trial.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**III. ARGUMENT**

    **A.    Applicable Law**

        1.   <u>The Government's Burden to Prove Willfulness</u>

For defendants to be found guilty of a violation of 18 U.S.C. § 922(a)(1)(A), the government must prove beyond a reasonable doubt that: (1) defendants were willfully engaged in the business of manufacturing firearms within the dates specified in the indictment; and (2) defendants did not then have a license as a firearms manufacturer.  Ninth Circuit Model Jury Instructions, No. 14.3. "Willfully, as used in this statute, requires proof that the defendant knew that his or her conduct was unlawful, but does not require proof that the defendant knew of the federal licensing requirement."  <u>Id.</u> (citing <u>Bryan v. United States</u>, 524 U.S. 184, 198-99 (1998)).

In <u>Bryan</u>, the Supreme Court held that the term "willfully" for purposes of 18 U.S.C. § 922(a)(1)(A) requires proof only that defendant knew his conduct was unlawful, not that he also knew the specific licensing requirement he was violating.  <u>Id.</u> at 194-96.  The defendant in <u>Bryan</u>, similar to defendants in this case, was charged with conspiracy and substantive firearms trafficking, in violation of 18 U.S.C. §§ 371 and 922(a)(1)(A), respectively.  To prove willfulness, the government was permitted to present evidence of other crimes, including that defendant "used so-called 'straw purchasers' in Ohio to acquire pistols that he could not have purchased himself; that the straw purchasers made false statements when purchasing the guns; that [defendant] assured the straw purchasers that he would file the serial numbers off the guns; and that he resold the guns on Brooklyn street corners known for drug

7

1    dealing." Id. at 189.  In Bryan, as in this case, the evidence

2    introduced at trial and defendant's conduct implicated multiple

3    potential violations, not just 18 U.S.C. § 922(a)(1)(A).  The Supreme

4    Court held this evidence was admissible and "unquestionably adequate

5    to prove that petitioner was dealing in firearms, and that he knew

6    that his conduct was unlawful." Id.

7         The Ninth Circuit has recognized that in 18 U.S.C. § 922(a)

8    cases, the government is "permitted to prove willfulness by

9    circumstantial evidence, including evidence of other bad acts or

10   crimes under Rule 404(b) of the Federal Rules of Evidence." United

11   States v. Hernandez, 859 F.3d 817, 824 (9th Cir. 2017).  "Indeed, the

12   government may, and doubtless will, do so in many cases because so

13   rarely is there evidence of what a defendant thought at the moment he

14   committed a criminal act; his intent must often be inferred from his

15   surrounding conduct." Id.

16            2.   Rule 404(b) Does Not Apply to Charged Conduct

17        Under Rule 404(b), "[e]vidence of a crime, wrong, or other act

18   is not admissible to prove a person's character in order to show that

19   on a particular occasion the person acted in accordance with the

20   character." Fed. R. Evid. 404(b)(1).  But the evidence "may be

21   admissible for another purpose, such as proving motive, opportunity,

22   intent, preparation, plan, knowledge, identity, absence of mistake,

23   or lack of accident." Fed. R. Evid. 404(b)(2).

24        As the Ninth Circuit has explained, "Rule 404(b) applies solely

25   to evidence of 'other' acts, not to evidence of the very acts charged

26   as crimes in the indictment." United States v. Loftis, 843 F.3d

27   1173, 1176 (9th Cir. 2016) (emphasis added).  "One of the key words

28   in determining the scope of Rule 404(b) is 'other'; only crimes,

                                    8

1   wrongs, or acts 'other' than those at issue under the pleadings are

2   made inadmissible under the general rule." Id. (citation omitted).

3   The Ninth Circuit has therefore held that conduct "was not evidence

4   of 'other crimes' under Rule 404(b)" where it was "direct evidence of

5   the ongoing conspiracy charged in the indictment." United States v.

6   Ripinsky, 109 F.3d 1436, 1442 (9th Cir. 1997), overruled on other

7   grounds by United States v. Sablan, 114 F.3d 913 (9th Cir. 1997).

8       This rationale applies with particular force where a conspiracy

9   is charged:  "In cases where the incident offered is a part of the

10  conspiracy alleged in the indictment, the evidence is admissible

11  under Rule 404(b) because it is not an 'other' crime.  The evidence

12  is offered as direct evidence of the fact in issue, not as

13  circumstantial evidence requiring an inference as to the character of

14  the accused.  Such proof can be quite time-consuming and it may be

15  extremely prejudicial to the defendant but the court would have no

16  discretion to exclude it [under Rule 404(b)] because it is proof of

17  the ultimate issue in the case.  To the extent that these

18  consequences may seem unfair, this is attributable to the nature of

19  the conspiracy charge, not to any defect in the other crimes rule."

20  Loftis, 843 F.3d at 1176 (citation and internal quotation marks

21  omitted).

22      Where proffered evidence is not "other" act evidence but relates

23  to the charged conduct and elements of the charged offenses, the

24  evidence is presumptively admissible (though subject to objections on

25  other grounds, such as hearsay) so long as "it has any tendency to

26  make a fact more or less probable than it would be without the

27  evidence" and "the fact is of consequence in determining the action."

28  Fed. R. Evid. 401; Fed. R. Evid. 402.

### 3. The Inextricably Intertwined Doctrine

Even where evidence is not considered to be part of the charged conduct, "evidence should not be considered 'other crimes' or 'other act' evidence within the meaning of Rule 404(b) if the evidence concerning the 'other' act and the evidence concerning the crime charged are inextricably intertwined." United States v. Dorsey, 677 F.3d 944, 951 (9th Cir. 2012). "This doctrine applies when the acts in question are so interwoven with the charged offense that they should not be treated as other crimes or acts for purposes of Rule 404(b)." Loftis, 843 F.3d at 1177.

Thus, evidence is considered "inextricably intertwined" when it "'constitutes a part of the transaction that serves as a basis for the criminal charge' or is 'necessary to . . . permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.'" United States v. Collins, 90 F.3d 1420, 1428 (9th Cir. 1996) (quoting United States v. Vizcarra-Martinez, 66 F.3d 1006, 1012-13 (9th Cir. 1995)). These acts do not become Rule 404(b) evidence just because a defendant was "indicted for less than all of his actions." United States v. Soliman, 813 F.2d 277, 279 (9th Cir. 1987). Rather, such evidence is admissible at trial "for the purpose of providing the context in which the charged crime occurred." Collins, 90 F.3d at 1428; accord United States v. Williams, 989 F.2d 1061, 1070 (9th Cir. 1993) (admitting uncharged drug transactions into evidence because they were "closely linked" to the events charged in the drug conspiracy and therefore provided "necessary context").

### 4. Rule 404(b) Evidence

Other acts evidence is admissible to prove "motive, opportunity,

10

1    intent, preparation, plan, knowledge, identity, absence of mistake,

2    or lack of accident," Fed. R. Evid. 404(b)(2), "if it (1) tends to

3    prove a material point in issue; (2) is not too remote in time;

4    (3) is proven with evidence sufficient to show that the act was

5    committed; and (4) if admitted to prove intent, is similar to the

6    offense charged."  <u>United States v. Beckman</u>, 298 F.3d 788, 794 (9th

7    Cir. 2002).  The court also must assess the evidence under Rule 403.

8    <u>Id</u>.

9        **B.   Admissibility of Defendants' Purchases of Other Firearms
             Under Federal Rule of Evidence 404(b)**

10

11       The government intends to offer, pursuant to Rule 404(b)(2) and

12   with an appropriate limiting instruction, evidence that defendants

13   Schlotterbeck and Vlha purchased multiple firearms (eight and six,

14   respectively) in the lead-up to and during the time period of the

15   alleged conspiracy.

16       Specifically, such evidence will come through certified copies

17   of records maintained by the California Department of Justice ("Cal.

18   DOJ") reflecting defendants' respective history of firearms purchases

19   based on DROS forms submitted to Cal. DOJ by the licensed dealers

20   that processed the purchases.  In connection with offering these

21   records,[7] the government anticipates that an expert witness from ATF

22   (Senior Industry Operations Investigator / Industry Operations

23

24   _____

25       [7] The government initially produced non-certified records from
     the California Automated Firearm System maintained by Cal. DOJ
     reflecting defendant's prior purchases of firearms. (USA_00004962-
26   4963 and USA_00009154-9167.)  Upon obtaining certified copies of the
     records, the government promptly produced those records as well.
27   (USA_00009930 – USA_00009946.)  The government provided the defense
     notice on April 29, 2022, of its intent to offer at trial these and
28   other certified copies of public records under Federal Rule of
     Evidence 902(4) and/or Federal Rules of Evidence 902(11) and (13).

1  Intelligence Specialist Thomas M. Chimileski, Jr.) will testify,
2  among other things, about the tracking of purchases of firearms in
3  California, as documented through DROS forms and the Automated
4  Firearms System ("AFS").  Investigator Chimileski also will likely
5  testify about certain requirements licensed dealers must follow in
6  selling firearms to or facilitating private party transfers of
7  firearms for customers, including background checks and transaction
8  documentation.

9      The government anticipates that, taken together, such evidence
10  will demonstrate defendants had knowledge, at least generally, of
11  required protocols for selling firearms through their own repeat
12  experiences in purchasing them.  In contrast, defendants engaged in
13  the business of manufacturing firearms for sale without a license to
14  do so, including through cash transactions and with no documentation
15  or background checks.  In proving willfulness, the government would
16  offer the other act evidence of defendants' own purchases of
17  firearms, through apparently legal channels, as proof of defendants'
18  knowledge and absence of any mistake that their conduct in this case
19  was unlawful.  Fed. R. Evid. 404(b); Bryan, 524 U.S. at 191-92.

20      Offering this evidence for a limited purpose satisfies the Ninth
21  Circuit's test for Rule 404(b) admissibility.  Beckman, 298 F.3d at
22  794.  First, the evidence tends to prove a material point in issue,
23  i.e., willfulness.  Second, the evidence is not too remote in time,
24  as Schlotterbeck's proffered firearm purchases (between March 1, 2013
25  and March 15, 2017) and Vlha's (between July 21, 2014 and December 5,
26  2016) largely coincide with the time period of the alleged conspiracy
27  (approximately May 21, 2015 through June 21, 2017).  Third, the
28  government will offer evidence sufficient to show that the firearms

purchases were made, based on the certified copies of public records from the California AFS and expert testimony on the meaning and significance of those records.  And fourth, the government is not offering the evidence to prove intent (as opposed to knowledge and absence of mistake), so it is not necessary the other acts are similar to the offense charged (though the charged conduct and other acts all pertain to firearm transactions in any event).  Id.

Finally, with respect to Rule 403, the evidence is not unfairly prejudicial, as it tends to show defendants followed the law on other occasions, as compared to what they are charged with here.  Nor would it tend to confuse the issues or mislead the jury with an appropriate limiting instruction.  See, e.g., United States v. Bradshaw, 690 F.2d 704, 709 (9th Cir. 1982) (when evidence of other crimes has been admitted under Rule 404(b), "limiting instructions may reduce or eliminate prejudice which would otherwise occur").  The evidence also is very limited in scope and will not cause undue delay or waste time.  Fed. R. Evid. 403.

On the other side of the balance, the evidence is highly probative of defendants' state of mind as to the requirements for lawful sales of firearms and the unlawfulness of their conduct here. Defendants' willfulness figures to be a hotly contested issue at trial given the defense's disclosure of a proposed expert to opine defendants did not engage in unlawful conduct.[8]  The high probative value of the evidence, especially in the context of this case, is not substantially outweighed by any potential danger under Rule 403.

---

[8] The government is challenging the admissibility of this purported expert witness's proffered testimony on multiple grounds in a separate motion in limine filed concurrently herewith.

1        Accordingly, the government requests a ruling that it may

2  present the other act evidence of defendants' purchases of firearms

3  at trial and make arguments based on the limited purpose of this

4  evidence as it bears on defendants' willfulness.

5     **C.   Admissibility of Evidence of Large-Capacity Magazines and**

6          **Silencers as Charged Conduct and/or Inextricably**
              **Intertwined Evidence**

7        1.   <u>Defendants' Sales of Large-Capacity Magazines</u>

8        The government intends to offer evidence not only of the six AR-

9  15-type firearms defendants and co-conspirator Kwan sold to the CI

10  and UCs, but also of the numerous magazines of ammunition they sold

11  as part of four of the six transactions, including illegal large-

12  capacity magazines.

13        The sales of the magazines are part of the charged conduct in

14  this case, as the indictment alleges certain of these sales of

15  ammunition as part of the overt acts in the alleged conspiracy.  (<u>See</u>

16  Dkt. No. 1 (Indictment), Count 1 at Overt Act 16 ("two 30-round

17  magazines, and three 10-round magazines"); <u>id</u>. at Overt Act 19 ("31-

18  round large-capacity magazine"); <u>id</u>. at Overt Act 21 ("30-round

19  large-capacity magazine").  The companion sales of ammunition were

20  part and parcel of defendants' firearms-related negotiations and

21  overall illegal course of dealing in this case.

22        Specifically, the government intends to offer evidence regarding

23  the magazines through video clips of the covertly recorded meetings

24  between defendants, co-conspirator Kwan and one or both UCs, as well

25  as testimony by the UCs who purchased the magazines as part of the

26  firearms transactions.  The government also intends to offer the

27  physical magazines and photographs of the same, some of which are

28  within the same photographs of the AR-15-type firearms the UCs

1   purchased on the same date.  In addition, the government intends to

2   offer testimony generally regarding the unlawfulness of large-

3   capacity magazines under California law.  This evidence is relevant

4   to defendants' state of mind as to the lawfulness of their

5   simultaneous unlicensed manufacture and sales of AR-15-type firearms.

6   That is, it has a tendency to make the fact of their knowledge and

7   awareness that their overall course of dealing was unlawful more

8   probable than it would be without the evidence.  Fed. R. Evid. 401.

9          The companion sales of magazines also are relevant to the nature

10   of defendants' business and profit-driven motivations in

11   manufacturing firearms without a license.  The government must prove

12   that, in "engaging in the business" of manufacturing firearms for

13   sale, defendants had "the principal objective of livelihood and

14   profit."  18 U.S.C. § 921(a)(21)(A).  Defendants and co-conspirator

15   Kwan sold the magazines for additional money as part of the overall

16   purchase prices for the firearms, negotiating the sales of the

17   firearms and ammunition together.  Evidence of the sale of the

18   magazines sheds additional light on the financial motivation of

19   defendants' illegal business activities.

20          Alternatively, evidence of the magazine sales is inextricably

21   intertwined with the charged firearm sales.  Among other things, as

22   the clips of the video-recorded meetings will show at trial,

23   defendants and co-conspirator Kwan negotiated the sales of the AR-15-

24   type firearms and ammunition together, and the UCs picked up the

25   firearms and ammunition upon final sale at the same time.  The overt

26   acts of the conspiracy count in the indictment allege the delivery of

27   the AR-15-type firearms and magazines together given they were part

28   of the same transactions.  The evidence thus "'constitutes a part of

the transaction that serves as a basis for the criminal charge,'" and its admission is 'necessary to . . . permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.'" <u>Collins</u>, 90 F.3d at 1428; <u>see also</u> <u>United States v. Rizk</u>, 660 F.3d 1125, 1132 (9th Cir. 2011) (evidence was "inextricably intertwined" with the conspiracy because each occurred within the "temporal scope of the conspiracy and comprised the conspiracy." (quotation omitted)).

The sales of the magazines, including the illegal large-capacity magazines, should be admissible at trial.

> 2.   <u>Defendants' Discussions of Obtaining Silencers</u>

The government also intends to offer evidence, through clips of the recorded phone calls and meetings and witness testimony, of defendants' continued interest in illegally obtaining silencers from the very customers (<u>i.e.</u>, the CI and UCs) for whom they were unlawfully manufacturing firearms.  Defendants raised this issue multiple times and discussed it hand-in-hand with their negotiations about AR-15-type firearms with the CI and UCs.  This evidence similarly bears on defendants' willfulness in manufacturing and selling firearms to customers whom they suspected also to be involved in illegal conduct.

For example, during a recorded phone call between defendant Schlotterbeck and the CI on August 21, 2015, immediately after Schlotterbeck and the CI discussed the pricing and specifications of an AR-15-type firearm the CI would be ordering, Schlotterbeck said, "if you wanna get it together come by . . . I still want one of those, uh, deals that we talked about."  (USA_00002584.) Schlotterbeck clarified he was referring to the "suppressors you

16

make," following up on conversations about silencers they had in May and July 2015.

One month later, on September 23, 2015, when the CI introduced UC-1 to defendant Vlha and co-conspirator Kwan as another potential buyer, defendant Vlha brought up his desire to obtain a silencer several times during the course of the parties discussing additional AR-15-type firearm builds.  Defendant Vlha told UC-1, "I'm trying to get a can [silencer], that's what I want to get next," and discussed his desire further after the CI identified UC-1 (in a ruse) as the source of the homemade silencers.  (USA_00002877.)  Later in the same conversation, after Vlha informed UC-1 that he could get an AR-15-type firearm that was not as "decked out" as the one the CI had just purchased from defendants, Vlha said he and Schlotterbeck "both were, like, just like, trying so hard for them," in reference to obtaining silencers.  (<u>Id.</u>)

Several weeks later, immediately after UC-1 put in an order with defendants Schlotterbeck and Vlha for an AR-15-type rifle and paid for half upfront, UC-1 mentioned the discussion about homemade "cans" that he had with defendant Vlha and the CI on September 23.  Defendant Schlotterbeck confirmed, "We would like to get a hold of one."  (USA_00002181.)

Many of the references to silencers during these and other communications are purposefully vague and oblique and would not likely have independent significance (nor present any danger of unfair prejudice) to a jury.  However, the CI and the UCs should be able to testify about the meaning of these silencer-related discussions in the context of their communications regarding the AR-15-type firearms transactions.  Indeed, defendants' desire to obtain

illegal silencers through the customers to whom they were selling AR-15-type firearms demonstrates defendants' overall illicit relationship with these customers, providing directly relevant evidence to defendants' willfulness in connection with their firearm manufacturing business.

Moreover, the discussions regarding silencers were part and parcel of the AR-15-type firearm negotiations and sale discussions. This evidence is thus inextricably intertwined with the charged conduct and should be admissible "for the purpose of providing the context in which the charged crime occurred."  Collins, 90 F.3d at 1428.  Given the conversations regarding silencers are interwoven with the negotiations for the AR-15-type firearms, admission of the evidence also "is 'necessary to . . . permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.'"  Id. (internal citation omitted).

Similar to the evidence regarding defendants' sale of illegal large-capacity magazines, defendants' discussion of obtaining illegal silencers is highly probative of the overall illicit character of their relationship with their newfound (ATF) customers.  It is thus highly probative of defendants' willfulness in engaging in the business of manufacturing firearms for those same customers.  The high probative value of the evidence is not substantially outweighed by any of the dangers under Rule 403.  The discussions of silencers are part of recordings that already will be played to the jury regarding the firearm transactions, thus wasting no additional time. And any potential juror confusion or unfair prejudice can be mitigated with a straightforward instruction that defendants are not charged with any crimes relating to silencers.  Weeks v. Angelone,

18

1   528 U.S. 225, 234 (2000) ("[A] jury is presumed to follow [a court's]

2   instructions."); <u>Dubria v. Smith</u>, 224 F.3d 995, 1002 (9th Cir. 2000)

3   ("Ordinarily, a cautionary instruction is presumed to have cured

4   prejudicial impact.").[9]

5   **IV.   CONCLUSION**

6       For the foregoing reasons, the government respectfully requests

7   that this Court grant the government's motion <u>in limine</u> to admit

8   evidence and permit arguments regarding defendants' willfulness.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

---

25       [9] Even under Rule 404(b), this evidence is admissible to prove,
    at a minimum, intent, knowledge, and absence of mistake, as the
26   evidence underscores defendants' willfulness in engaging in firearms
    sales with customers they had reason to believe were themselves
27   involved in criminal activity.  The probative value of this evidence
    as described above is not substantially outweighed by unfair
28   prejudice nor would it inject any confusion or undue delay to the
    government's presentation of evidence at trial.

19

1

<b><u>DECLARATION OF BRIAN FAERSTEIN</u></b>

2        I, Brian Faerstein, declare as follows:

3        1.    I am an Assistant United States Attorney in the United

4   States Attorney's Office for the Central District of California.  I

5   represent the government in United States v. Travis Schlotterbeck and

6   James Bradley Vlha, 2:19-CR-343-GW.

7        2.    Attached hereto as **Exhibit A** is a letter dated April 20,

8   2022, that I sent to defense counsel by e-mail.

9        I declare and affirm under penalty of perjury that the foregoing

10  is true and correct to the best of my knowledge.

11       Executed on April 29, 2022, at Los Angeles, California.

12

13                                 _____

14                                 BRIAN FAERSTEIN

15

16

17

18

19

20

21

22

23

24

25

26

27

28