# EXHIBIT A



# United States Department of Justice

### United States Attorney's Office
### Central District of California

---

*Brian R. Faerstein*  
*Phone: (213) 894-3819*  
*E-mail: brian.faerstein@usdoj.gov*

*1300 United States Courthouse*  
*312 North Spring Street*  
*Los Angeles, California 90012*

April 20, 2022

<u>**VIA E-MAIL**</u>

Robison D. Harley, Jr.  
C/o Julie Strickland and Maya Jauregui  
Law Office of Robison Harley  
(714) 972-8141  
rob.harley@sbcglobal.net  
juliestrickland5@icloud.com  

Jerome J. Haig  
Law Office of Jerome J. Haig  
21143 Hawthorne Boulevard, Suite 454  
Torrance, CA 90503  
Tel: 424-488-0686  
Email: jerome@jeromehaiglaw.com

      Re:    <u>United States v. Travis Schlotterbeck et al.</u>,  
             CR No. 19-00343-GW

Dear Counsel:

As set forth in our prior discovery letters provided to you during the course of this proceeding, the government previously gave notice that it may seek to introduce at trial other crimes, wrongs, or acts committed by defendants Travis Schlotterbeck and/or James Bradley Vlha ("defendants") pursuant to Rules 404(b), 608, and/or 609 of the Federal Rules of Evidence, or on the theory that they are inextricably intertwined with the charged conduct in this case.

By this letter, and pursuant to Federal Rule of Evidence 404(b)(3), the government hereby provides reasonable notice of any such evidence it may seek to admit under Rule 404(b). Please note, however, that, with one limited exception noted below, the government submits that the evidence described herein is admissible at trial as relevant evidence under Federal Rules of Evidence 401 and 402 and/or as inextricably intertwined evidence with the charged conduct and thus is <u>not</u> subject to Rule 404(b) analysis. With respect to such evidence, the government provides this notice out of an abundance of caution.

Defense Counsel
RE:  U.S. v. Schlotterbeck et al.
April 20, 2022
Page 2

In its case-in-chief, the government intends to present evidence of, *inter alia*, any and all conduct related to defendants' conspiracy to engage in the business of manufacturing firearms without a license and substantive commission of the same, as well as defendant Schlotterbeck's sale of a firearm to a felon, including the following:[1]

## I.     February 11 – March 16, 2016 Firearm Sale

The government intends to present evidence, including testimony, audio/video evidence, text messages, photographs, and physical evidence, relating to the build and sale of an AR-15-type pistol, bearing no serial number and finished in "Ironman" movie theme colors, from February 11 through March 16, 2016.  (*See generally* ROIs 11, 13.)  The firearm was purchased by an ATF undercover agent ("UC-2") who communicated with and purchased this and another AR-15-type firearm from defendants Schlotterbeck and Vlha and co-conspirator Jesse Kwan during the course of the charged conspiracy.

This firearm is not specifically described in the non-exclusive list of overt acts in Count One and is not listed in the chart of firearms in Count Two.  Nonetheless, the build and sale of this customized and cerakoted AR-15-type unserialized firearm between February and March 2016 is directly relevant to and represents another example of the core conduct within the time period of the charged conspiracy.  Defendants Schlotterbeck and Vlha, co-conspirator Kwan, and others coordinated and worked together in taking orders from customers, purchasing parts and arranging to make certain parts suitable for use, building and finishing the customized and unserialized AR-15-type firearms, and delivering the firearms to customers upon final sale.  The sale of the "Ironman" AR-15-type pistol to UC-2, much like the sales of the five other AR-15-type firearms expressly listed in the indictment, is direct evidence of the charged conspiracy and defendants' engaging in the business of manufacturing firearms without a license.  *See* Fed. R. Evid. 401, 402.

Alternatively, and at a minimum, the evidence is inextricably intertwined with the charged conduct.  It is well established that evidence of a defendant's prior or other acts is admissible at trial "for the purpose of providing the context in which the charged crime occurred."  *United States v. Collins*, 90 F.3d 1420, 1428 (9th Cir. 1996).  Evidence is considered "inextricably intertwined" when it "'constitutes a part of the transaction that serves as a basis for the criminal charge' or is 'necessary to . . . permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.'"  *Id*. (quoting *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012-13 (9th Cir. 1995)).  These acts do not become Rule 404(b) evidence just because a defendant was "indicted for less than all of his actions." *United States v. Soliman*, 813 F.2d 277, 279 (9th Cir. 1987); *accord United States v. Williams*, 989 F.2d 1061, 1070 (9th Cir.

---

[1]  For the avoidance of confusion, unless otherwise specified, the use of the term "firearm" herein refers to "any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive."  18 U.S.C. § 921(a)(3)(A).

Defense Counsel
RE:  U.S. v. Schlotterbeck et al.
April 20, 2022
Page 3

1993) (admitting uncharged drug transactions into evidence because they were "closely linked" to the events charged in the drug conspiracy and therefore provided "necessary context").[2]

Even if the Rule 404(b) analysis applied to this evidence (and it does not), the evidence would be admissible to prove, among other things, motive, intent, plan, knowledge, and absence of mistake.  UC-2 was the third new customer within the context of ATF's investigation alone for whom defendants and co-conspirator Kwan built and sold an AR-15-type firearm with no qualms about the business in which they were engaging.  This evidence is strongly probative of their approach to the overall business and their willfulness in pursuing it.  It is well-established that Rule 404(b) "is a rule of inclusion—not exclusion." *United States v. Curtin*, 489 F.3d 935, 944 (9th Cir. 2007) (en banc).  "Once it has been established that the evidence offered serves one of [the purposes authorized by Rule 404(b)(2)], . . . the only conditions justifying the exclusion of the evidence are those described in Rule 403 . . . ." *Id*. (internal quotation marks omitted).  Thus, "[u]nless the evidence of other acts only tends to prove propensity, it is admissible." *United States v. Castillo*, 181 F.3d 1129, 1134 (9th Cir. 1999) (emphasis added).

The significant probative value of this evidence is not substantially outweighed by any danger of unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence under Rule 403.  The evidence is not inflammatory nor would the introduction of it cause any undue delay, as the meetings during which UC-2 ordered and picked up of this firearm relate directly to other firearms sales alleged in the indictment.

## II.     Companion Sales of Ammunition, including Large-Capacity Magazines

The evidence demonstrates that in connection with at least four of the six firearm sales to UC-2, another ATF undercover agent ("UC-1," and together with UC-2, the "UCs"), and a confidential informant (the "CI"), defendants and co-conspirator Kwan, working together, sold their customers ammunition in addition to the custom-ordered AR-15-type firearms.  Several of these companion sales of magazines are alleged in the indictment.  (*See, e.g.*, Ind., Count 1 at OA 16

---

[2] The lack of serial numbers on the subject AR-15-type firearms (commonly referred to as "ghost guns"), as alleged in both the conspiracy and substantive trafficking counts of the indictment, also is directly relevant to and, at a minimum, inextricably intertwined with, the charged conduct.  The manner in which defendants manufactured firearms for sale to evade serialization and marking requirements demonstrates defendants' methods in engaging in the business of manufacturing firearms as well as their state of mind (*i.e.*, willfulness) in doing so.  Moreover, the firearms, which the government will offer into evidence, did not in fact contain serial numbers, and it would be impossible for the government to "offer a coherent and comprehensible story regarding the commission of the crime" without reference to the characteristics of the illegally manufactured and sold firearms themselves and the manner in which they were constructed.  *Collins*, 90 F.3d at 1428.

Defense Counsel
RE: U.S. v. Schlotterbeck et al.
April 20, 2022
Page 4

("two 30-round magazines, and three 10-round magazines"); *id.* at OA 19 ("31-round large-capacity magazine"); *id.* at OA 21 ("30-round large-capacity magazine").)

The government intends to offer testimony and evidence regarding the ammunition, including large-capacity magazines, that defendants and co-conspirator Kwan sold the CI and UCs during the course of the conspiracy, including potential testimony generally regarding the unlawfulness of selling large-capacity magazines under California law.[3] This evidence is relevant to defendants' state of mind in connection with their simultaneous unlicensed sales of AR-15-type firearms, as it has a tendency to make the fact of their knowledge and awareness that their overall course of dealing was unlawful more probable than it would be without the evidence. Fed. R. Evid. 401, 402. It also is admissible to demonstrate further the nature of their business and profit-driven motivations in manufacturing firearms without a license, as they sold the magazines for additional money as part of the overall purchase prices for the firearms.

Even if this evidence is not admissible under Federal Rules of Evidence 401 and 402, it is admissible as inextricably intertwined with the charged firearms transactions. Among other things, and similar to the evidence of lack of serial numbers, given that defendants and co-conspirator Kwan negotiated the sales of ammunition as part of the overall AR-15-type firearm transaction, the admission of this evidence is "'necessary to . . . permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime." *Collins*, 90 F.3d at 1428.

Even should Rule 404(b) apply to this evidence (which it does not), it would be admissible, at a minimum, for demonstrating defendant's intent, knowledge, and absence of mistake in engaging in unlawful conduct (*i.e.* willfulness) as well as their motive, preparation, and plan in engaging in the companion sales of AR-15-type firearms and ammunition to customers as a business venture.

### III. Other Evidence Related to Defendants' Business of Manufacturing Firearms

#### A. Evidence Seized from Digital Devices and at Search Premises

The government intends to offer at trial evidence, seized pursuant to search warrants executed June 21, 2017, from defendant Schlotterbeck's cell phone, three hard drives recovered from Sign Imaging, and co-conspirator Jesse Kwan's cell phone. This evidence is summarized in detail in ROIs 61, 80, and 60, respectively. The government also intends to offer evidence of items

---

[3] California Penal Code Section 32310 provides, in relevant part, "any person in this state who manufactures or causes to be manufactured, imports into the state, keeps for sale, or offers or exposes for sale, or who gives, lends, buys, or receives any large-capacity magazine is punishable by imprisonment in a county jail not exceeding one year or imprisonment pursuant to subdivision (h) of Section 1170." A "large-capacity magazine" means "any ammunition feeding device with the capacity to accept more than 10 rounds." Cal. Penal Code § 16740.

Defense Counsel
RE:  U.S. v. Schlotterbeck et al.
April 20, 2022
Page 5

photographed and seized at Live Fire Coatings and Sign Imaging during execution of the search warrants, as described in detail in ROI 39 and alleged in the indictment.

Specifically, this evidence includes, among other things, communications between one or both defendants, co-conspirator Kwan, and/or third-parties regarding the negotiation, price, and specifications of additional firearm builds and sales; ordering of parts for additional firearm builds and sales; arrangements for machining unfinished lower receivers; cerakoting of firearms; division of labor; and other information regarding the co-conspirators' business of selling AR-15-type firearms.  The evidence also includes numerous images and photographs of AR-15-type firearms, related firearm parts, and firearms-related tools (both as stand-alone images and exchanged as part of communications); firearms parts price lists; Live Fire Coating cerakoting price list; Live Fire Coatings promotional materials and business cards; Live Fire Coating and Sign Imaging invoices for, among other things, the purported sales of firearm parts; indicia of defendants' roles and contact information; apparent templates for AR-15-type firearms; and photographs of U.S. currency.  (*See generally* ROIs 61, 80, 60, 39, and attachments.)

      B.      Facebook Page for "Live Fire Industries"

The government also intends to offer testimony and evidence regarding a Facebook page maintained in the name of "Live Fire Industries," as of July 5, 2016 during the course of the alleged conspiracy.  (*See* USA_00008998-9054.)  The archived web page includes indicia and references relating to defendants' purported business "Live Fire Coatings" in Bellflower, California, including an avatar and background reflecting a virtually identical insignia to that of Live Fire Coatings (*compare* USA_00008999 *with* USA_00007884), location information for Bellflower, a post by defendant Schlotterbeck, and a reference to Sign Imaging.  The web page also includes numerous images of AR-15-type firearms, with various cerakoted finishes, posted by Live Fire Industries, and refers to at least one apparent customer's satisfaction with a "build."

With respect to the categories of evidence described above (*i.e.*, from the digital devices, premises searches, and Facebook), the evidence directly relates to the operations, scope, inner-workings, and objects of defendants' business of manufacturing AR-15-type firearms without a license and is thus relevant to the charged conduct under Rules 401 and 402.

Alternatively, the evidence is inextricably intertwined to proof of defendants' charged conduct, as it provides, at a minimum, necessary context for the AR-15-type firearm builds and sales activities defendants conducted at Live Fire Coatings and defendant Schlotterbeck's business Sign Imaging during the alleged conspiracy.  And even were Rule 404(b) to apply (which it does not), this evidence provides additional proof of motive, intent, preparation, plan, knowledge, identity, and absence of mistake in providing additional examples of builds, sales, and promotion of AR-15-type firearms by defendants and co-conspirator Kwan in connection with their unlawful business.  The significant probative value of this evidence is not substantially outweighed by any of the potential dangers under Rule 403.

Defense Counsel
RE:  U.S. v. Schlotterbeck et al.
April 20, 2022
Page 6


## IV. Discussion of Barrel Length and Other Firearm Specifications

As part of defendants' and co-conspirator Kwan's course of dealing with the CI and UCs, the parties discussed the specifications of the firearms being custom ordered including, at certain times, the length of barrels that could be used in building the AR-15-type firearms.

In some cases, defendants and/or co-conspirator Kwan advised that the barrel length could not be less than a minimum amount, ostensibly referring to, among other things, rifle barrel length requirements under the National Firearms Act.  *See* 26 U.S.C. § 5845(a)(3), (4).  (*See, e.g.*, ROI 2, ROI 15).  In other cases, defendants and/or co-conspirator Kwan discussed the possibility of ordering an AR-15-type rifle with a barrel shorter than 16 inches, and/or building an AR-15-type pistol that purportedly would not present the same minimum barrel length requirements.  For instance, during a text message exchange between defendant Vlha and UC-1 on January 26, 2016 alleged in Overt Act No. 14 in Count One, UC-1 asked whether defendant Vlha had "anything [he] could check out for ideas," indicating he (UC-1) was looking for something "more compact."  In response, defendant Vlha sent a text message image of an AR-15-type rifle that appeared to have a short barrel.  (*See* USA_00002224, USA_00002228.)  On an earlier occasion, defendant Vlha and UC-1 discussed the possibility of UC-1 ordering an AR-15-type firearm with a barrel of less than 16 inches and defendant Vlha said they could but said "everything flips" and alluded that UC-1 would not be able to take it out with him anywhere, acknowledging "we all got them."  (*See* ROI 6; USA_00002179.)

Similarly, during a meeting between the UCs, defendant Schlotterbeck, and defendant Vlha on May 6, 2016, when Schlotterbeck delivered an AR-15-type pistol and took final payment for the weapon, Schlotterbeck informed UC-1 that, "This isn't legal, cause it doesn't have a bullet button . . . Just so you know."  Defendant Schlotterbeck thus exhibited knowledge of the need for a bullet button to make the semiautomatic pistol legal in California but sold the firearm anyway.

Defendants' and co-conspirator Kwan's discussion of the specifications of the custom-ordered AR-15-type firearms, including barrel length and other features bearing on the legality of the weapon, is relevant to the course of dealing and nature of the unlawful business in which defendants engaged.  Evidence relating to the promotion, discussion, and/or consideration of manufacturing and selling firearms with shorter barrels than legally permitted, or without a bullet button, also tends to make the fact of their knowledge of the unlawfulness of their conduct more probable than it would be without the evidence.  Fed. R. Evid. 401, 402.  This evidence also is, at a minimum, inextricably intertwined with the charged conduct.  Defendants, co-conspirator Kwan, the CI, and the UCs frequently discussed barrel length in connection with discussions about and negotiation of the builds and sales of the AR-15-type firearms at issue in this case.  Defendant Vlha's sending of an image of an apparent short-barrel AR-15-type rifle to UC-1 as a suggestion for a firearm UC-1 could purchase typifies how such evidence is part and parcel of defendants' alleged commission of the charged crimes.  Similarly, defendants exhibited knowledge of other illegal aspects of the firearms, such as a lack of a bullet button, during the

Defense Counsel
RE:  U.S. v. Schlotterbeck et al.
April 20, 2022
Page 7

actual sale of a firearm.  This evidence is both directly relevant to and inextricably intertwined with core evidence in this case.

Should such evidence be subject to Rule 404(b) analysis, it would be admissible for proving, among other things, defendants' intent, knowledge, and absence of mistake in engaging in unlawful conduct (*i.e.* willfulness) that entailed, in part, discussion of selling firearms with prohibited barrel lengths and/or lacking bullet buttons.  The evidence is highly probative of defendants' state of mind and is neither inflammatory nor voluminous and would not raise any concerns under Rule 403.

V.      **Discussion of Silencers or "Cans"**

At numerous points throughout defendants' and co-conspirator Kwan's course of dealing with the CI and the UCs, defendants expressed an interest in obtaining silencers, suppressors, or "cans" that the CI and UC-1 claimed to be able to procure for defendants.  (*See, e.g.*, ROIs 1, 2, 4, 6, 9.)  Among other things, the CI showed defendant Schlotterbeck a purported prototype for a silencer constructed out of a Maglite flashlight during their meeting in May 2015, and defendant Schlotterbeck and defendant Vlha both inquired on several occasions thereafter about obtaining silencers.  (*See, e.g.*, ROI 2 (8/27/15 meeting); ROI 4 (9/23/15 meeting); ROI 6 (10/8/15 meeting).)  Defendants' inquiries were interspersed with their conversations with the CI and UC-1 about the AR-15-type firearms sales transactions alleged in the indictment.

Many of the references to silencers during these communications are purposefully vague and oblique and would not likely have independent significance (nor present any danger of unfair prejudice) to a jury.  However, the CI and UC-1 should be able to testify about the meaning of these silencer-related discussions in the context of their communications regarding the AR-15-type firearms transactions.  Indeed, defendants' desire to obtain illegal silencers through the customers to whom they were selling AR-15-type firearms demonstrates defendants' overall illicit relationship with these customers, providing directly relevant evidence to defendants' willfulness in connection with their firearm manufacturing business.

Moreover, the discussions regarding silencers were part and parcel of the AR-15-type firearm negotiations and sale discussions.  This evidence is thus inextricably intertwined with the charged conduct, as it "constitutes a part of the transaction that serves as a basis for the criminal charge'" and "is 'necessary to . . . permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.'"  *Collins*, 90 F.3d at 1428 (internal citation omitted).

Finally, even under Rule 404(b), this evidence is admissible to prove, at a minimum, intent, knowledge, and absence of mistake, as the evidence underscores defendants' willfulness in engaging in firearms sales with customers they had reason to believe were themselves involved in criminal activity.  The probative value of this evidence as described above is not substantially

Defense Counsel
RE: U.S. v. Schlotterbeck et al.
April 20, 2022
Page 8

outweighed by unfair prejudice nor would it inject any confusion or undue delay to the government's presentation of evidence at trial.

## VI.     Defendant's Prior Firearm Purchases

The government also intends to offer evidence of defendants' prior (apparently) lawful purchases of firearms in California, as reflected by dealer records of sale ("DROS") forms filed with the California Department of Justice. We have produced to you queries in the Automated Firearms System ("AFS") for both defendants, which reflect their prior firearm purchases as documented by DROS forms. (*See* USA_00009154-9157 (Schlotterbeck); USA_00009158-9167.) We are in the process of obtaining certified copies of the DROS forms underlying the sales reflected in the queries and will produce them to you promptly upon receiving them.

The government intends to offer this Rule 404(b) evidence of defendants' prior acts in purchasing firearms through seemingly lawful channels as further proof of their willfulness in engaging in the business of manufacturing firearms for sale without a license. Such evidence demonstrates their intent, knowledge, and lack of mistake in unlawfully selling AR-15-type firearms to customers without going through the proper channels through which they purchased their own firearms.

## VII.    Potential Additional Evidence

The government reserves the right to offer at trial other evidence, including in rebuttal, bearing on defendants' other crimes, wrongs, or acts that the government intends to use for a Rule 404(b) purpose depending on issues raised by the defense pretrial or during the course of trial. The government will provide reasonable notice, if warranted and as appropriate, of any such additional evidence pursuant to Federal Rule of Evidence 404(b)(3).

Please let us know if you have any questions or would like to further discuss any of the matters raised above.

Very truly yours,

*/s/ Brian Faerstein*

Brian R. Faerstein
Michael Morse
Assistant United States Attorneys