TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
BRIAN R. FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorney
Environmental and Community Safety Crimes Section
        1300 United States Courthouse
        312 North Spring Street
        Los Angeles, California 90012
        Telephone: (213) 894-3819
        Facsimile: (213) 894-0141
        E-mail:    Brian.Faerstein@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 19-343-GW |
|---|---|
| Plaintiff, | GOVERNMENT'S MOTION *IN LIMINE* #3 TO EXCLUDE TESTIMONY OF PROPOSED DEFENSE EXPERT STEVEN D. LIEBERMAN, ESQ.; DECLARATION OF BRIAN FAERSTEIN; EXHIBITS |
| v. | |
| TRAVIS SCHLOTTERBECK and JAMES BRADLEY VLHA, | |
| Defendants. | Hearing Date: May 12, 2022 Hearing Time: 8:00 a.m. Location:    Courtroom of the                    Hon. George H. Wu |

        Plaintiff United States of America, by and through its counsel

of record, the United States Attorney for the Central District of

California and Assistant United States Attorney Brian Faerstein,

hereby files its motion in limine to exclude the testimony of

proposed defense expert Steven D. Lieberman, Esq. pursuant to Federal

Rules of Evidence 702, 704(b), and 403.

        This motion is based upon the attached memorandum of points and

authorities, the attached declaration of Brian Faerstein and

accompanying exhibits, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: April 29, 2022                    Respectfully submitted,

                                         TRACY L. WILKISON
                                         United States Attorney

                                         SCOTT M. GARRINGER
                                         Assistant United States Attorney
                                         Chief, Criminal Division


                                              /s/
                                         _____
                                         BRIAN R. FAERSTEIN
                                         Assistant United States Attorney

                                         Attorneys for Plaintiff
                                         UNITED STATES OF AMERICA

# TABLE OF CONTENTS

DESCRIPTION                                                          PAGE

MEMORANDUM OF POINTS AND AUTHORITIES..................................1

I.    INTRODUCTION...................................................1

II.   FACTUAL BACKGROUND.............................................2

      A.    Brief Summary of Relevant Evidence.......................2

      B.    Background of Mr. Lieberman's Proffered Testimony........3

III.  ARGUMENT.......................................................5

      A.    The Proffered Testimony Lacks Foundation and
            Reliability and Will Not Be Helpful to the Jury Under
            Rule 702...............................................5

            1.    Mr. Lieberman's Proffered Testimony Lacks
                  Foundation and Reliability.........................7

            2.    Mr. Lieberman's Proffered Testimony Will Not Be
                  Helpful to the Jury...............................11

      B.    The Proffered Testimony Impermissibly Seeks to Offer
            Ultimate Issue Testimony About Defendants' Mental
            State..................................................13

      C.    The Proffered Testimony Should Be Excluded Under Rule
            403....................................................16

IV.   CONCLUSION....................................................18

DECLARATION OF BRIAN FAERSTEIN......................................199

1

**TABLE OF AUTHORITIES**

2

<u>DESCRIPTION</u>                                                                                      <u>PAGE</u>

3

**Federal Cases**

4

<u>Bryant v. United States</u>,
5
   524 U.S. 184 (1998) ........................................... 15

6

<u>Cooper v. Brown</u>,
7
   510 F.3d 870 (9th Cir. 2007) ................................. 6

<u>Daubert v. Merrell Dow Pharmaceuticals, Inc.</u>,
8
   509 U.S. 591 (1993) ................................... *passim*

9

<u>Kumho Tire Co. v. Carmichael</u>,
   526 U.S. 137 (1999) .......................................... 6
10

<u>Lust v. Merrell Dow Pharmaceuticals, Inc.</u>,
11
   89 F.3d 594 (9th Cir. 1996) .................................. 6

12

<u>Newell Rubbermaid, Inc. v. Raymond Corp.</u>,
   676 F.3d 521 (6th Cir. 2012) ................................ 13
13

<u>United States v. Aguila-Montes de Oca</u>,
14
   655 F.3d 849 (9th Cir. 2011) ................................ 12

15

<u>United States v. Booth</u>,
   309 F.3d 566 (9th Cir. 2002) ................................ 14
16

<u>United States v. Brown</u>,
17
   871 F.3d 532 (7th Cir. 2017) ................................ 14

18

<u>United States v. Downing</u>,
   753 F.2d 1224 (3d Cir. 1985) ................................ 12
19

<u>United States v. Jimenez</u>,
20
   191 F. Supp. 3d 1038 (N.D. Cal. 2016) ...................... 10

21

<u>United States v. Morales</u>,
   108 F.3d 1031 (9th Cir. 1997) ............................... 14
22

<u>United States v. Rodriguez-Rodriguez</u>,
23
   393 F.3d 849 (9th Cir. 2005) ................................ 12

24

<u>United States v. Roh</u>,
   No. 8:14-CR-167-JVS (C.D. Cal.) ............................. 10
25

<u>United States v. Rowold</u>,
26
   No. 3:18CR387, 2019 WL 6888154 (N.D. Ohio Dec. 18, 2019) ...... 10

27

28

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                           PAGE

United States v. Shaffer,
   472 F.3d 1219 (10th Cir. 2007) ............................ 14-15

**Federal Statutes**

18 U.S.C. § 921 ............................................. 9, 10

18 U.S.C. § 922 ............................................... 15

**Other**

27 C.F.R. § 478.11 ............................................. 9

Fed. R. Crim. P. 12.2 ......................................... 5

Federal Rule of Evidence 104 ............................... 6, 16

Federal Rule of Evidence 403 ............................... *passim*

Federal Rule of Evidence 702 ............................... *passim*

Federal Rule of Evidence 704 ............................... *passim*

Federal Rules Decisions, Jack B. Weinstein
   138 F.R.D. 631, 632 (1991) ................................ 16

Ninth Circuit Model Jury Instructions, No. 14.3................. 15

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.   INTRODUCTION**

3      Defendants Travis Schlotterbeck ("Schlotterbeck") and James

4  Bradley Vlha ("Vlha") have proffered a gun rights defense attorney

5  and use-of-force trainer, Steven D. Lieberman Esq., to testify as a

6  purported expert witness under Federal Rule of Evidence 702 at trial.

7  Defendants, who are charged with crimes relating to their illegal

8  business of manufacturing and selling AR-15-type firearms without a

9  license, intend to offer Mr. Lieberman to testify that they did not

10 commit any crimes and they were authorized to engage in the illegal

11 conduct at issue in this case.

12     Defendants' attempt to shoehorn legal advocacy and argument

13 through a purported expert witness should be rejected on multiple

14 grounds.  First, Mr. Lieberman's proposed testimony falls well short

15 of meeting the admissibility requirements under Federal Rule of

16 Evidence 702.  Among other things, Mr. Lieberman's proffered

17 testimony lacks critical foundation in the facts and the law, is not

18 the product of reliable principles and methods much less any other

19 specialized knowledge, and will not be helpful to the jury in

20 understanding the evidence or determining a fact in issue.  Second,

21 Mr. Lieberman's proposed testimony would impermissibly state an

22 opinion (or opinions) about defendants' mental state in this criminal

23 case, invading the province of the jury in contravention of Rule

24 704(b).  Finally, the minimal (if any) probative value of Mr.

25 Lieberman's proposed testimony is substantially outweighed by

26 multiple dangers under Rule 403.  Mr. Lieberman should be excluded

27 from testifying at trial.

28

## II.   FACTUAL BACKGROUND

The factual background of the offenses alleged in this case is set forth in more detail in the government's motion in limine to admit evidence and permit argument, filed concurrently herewith, which the government incorporates by reference herein.  (Dkt. No. 80.)  The government summarizes here certain evidence relevant to the defense's proposed expert, and provides a brief overview of the proffered testimony of Mr. Lieberman.

### A.   Brief Summary of Relevant Evidence

Between approximately May 21, 2015, and June 21, 2017, defendants Schlotterbeck and Vlha, along with co-conspirator Ping-Yi "Jesse" Kwan and others, worked together to manufacture for sale multiple custom-ordered, unserialized AR-15-type firearms without a license to do so.  Defendants and co-conspirator Kwan took custom orders for AR-15-type firearms (both rifles and pistols), obtained the firearm parts, arranged for certain parts (specifically, unfinished lower receivers) to be drilled for use, and assembled and finished the AR-15-type firearms for sale.  The evidence will prove that, among other things, defendants and co-conspirator Kwan manufactured and sold six of these firearms to a confidential informant (the "CI") and ATF undercover agents ("UC-1" and "UC-2," and collectively, the "UCs") between on or about July 7, 2015, and June 15, 2016, for purchase prices negotiated between the parties.

With respect to the first two transactions only, the co-conspirators engaged in a charade of taking the customers (the CI and UC-1, respectively) to a third-party machine shop for the initial step in the manufacturing process.  There, the co-conspirators arranged for an unfinished lower receiver component (commonly

2

1   referred to as an "80% lower") to be drilled with certain cavities

2   (also referred to as being "milled out," "machined" or "cut") so it

3   could be used for defendants' building of the completed AR-15-type

4   firearm.  The co-conspirators ordered the unfinished lower receiver,

5   brought the CI and UC-1 to the machine shop (where the customers

6   pushed a button on a pre-programmable drilling machine after a third-

7   party placed it in the right position), and paid for this part of the

8   manufacturing process on behalf of the customer.  Specifically,

9   defendant Schlotterbeck brought the CI to the machine shop on the

10  first occasion and gave the CI $60 to pay for this service, and co-

11  conspirator Kwan brought UC-1 there on the second occasion and paid

12  for the service directly.

13       During the latter four transactions, once trust had been

14  established with the new customers, the co-conspirators disposed of

15  the façade of bringing the UCs to the machine shop.  Rather, the co-

16  conspirators took orders from the UCs for custom AR-15-type firearms,

17  controlled and arranged all aspects of the manufacture of the

18  firearms, and, within days or weeks, delivered the completed firearms

19  to the UCs upon final sale.  The evidence will show that the co-

20  conspirators had other customers as well and engaged in additional

21  so-called "builds" and sales of AR-15-type firearms on a custom-order

22  basis.

23       **B.   Background of Mr. Lieberman's Proffered Testimony**

24       The defense has proffered Mr. Lieberman, an attorney who

25  operates a use-of-force training facility (the "Artemis Defense

26  Institute") and has his own law practice "specializing in Second

27  Amendment issues," to testify as a purported expert in the

28  manufacture and sale of AR-15-type firearms and licensing

                                    3

1  requirements relating thereto.  (See Declaration of Brian Faerstein

2  ("Faerstein Decl."), Exhibits A-C (defense notice letter, expert

3  report, and CV).)  According to his law firm website, Mr. Lieberman's

4  "knowledge of use of force protocols, as well as the institutional

5  workings of law enforcement, provides clients with the necessary

6  tools to avoid criminal prosecution, and mitigate civil liability."

7  (See http://ltccwlaw.com/profile.html (last visited April 29, 2022).)

8       Mr. Lieberman's purported expert report states that he reviewed

9  the indictment, the "[t]otality of the discovery provided by USA"

10  (which is belied by the substance of his findings as described

11  further below), two subparts of a definitional statute and regulation

12  (but not the remainder of the relevant statutory and regulatory

13  framework), and three rulings or publications circulated by the ATF

14  in reaching his conclusions.  With this as foundation, Mr. Lieberman

15  intends to testify, in his capacity as a defense lawyer but with the

16  imprimatur of a purported expert, that "[d]efendants did not engage

17  in illegal conduct" and they "were completely authorized under

18  federal law to engage in the conduct they are now being prosecuted

19  for."  (Faerstein Decl., Exhibit B at 1.)

20       Mr. Lieberman's report reads like a legal brief, setting forth a

21  (inaccurate) statement of the "[m]aterial facts of the case" followed

22  by a "Legal Analysis" section advocating for a result based on a

23  (incorrect) interpretation of the law.  (Id. at 1-4.)  The report

24  concludes with Mr. Lieberman's commentary on the state of the law

25  with respect to AR-15-type firearms and his personal opinions

26  regarding the federal and state governments' "invest[ment of] a

27  considerable amount of time and treasure in attempting to criminalize

28  the acquisition of AR-15's."  (Id. at 4.)  The tenor and scope of Mr.

Lieberman's report is more consistent with the blog posts on his use-of-force training website than with an expert report premised on technical or other specialized knowledge in a federal criminal case.[1]

**III. ARGUMENT**

Mr. Lieberman's proffered testimony falls far short of meeting multiple threshold requirements for admissibility under Federal Rule of Evidence 702, attempts to provide impermissible ultimate issue mental state opinion testimony under Rule 704(b), and raises numerous grounds for exclusion under Rule 403.  The Court should preclude Mr. Lieberman from testifying at trial.[2]

**A.    The Proffered Testimony Lacks Foundation and Reliability and Will Not Be Helpful to the Jury Under Rule 702**

Federal Rule of Evidence 702 provides, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized

---

[1] Mr. Lieberman's "Artemis Defense Institute" website contains a "2A Blog" where he posts about issues relating to his views on gun laws, government and politics, and other topics.  For example, in one blog post from March 23, 2022, called "Enemy of the State," Mr. Lieberman opined on his views about "the idiocy of both our federal, as well as our state, gun laws" and the purported "arbitrary and capricious" interpretation of what it means to be "in the business" of transferring firearms.  (See https://www.artemishq.com/enemy-of-the-state/ (last visited April 29, 2022).

[2] In its letter noticing Mr. Lieberman as a proffered expert, the defense states that they are disclosing Mr. Lieberman as an expert "pursuant to FRCP 16(b) and 12.2(b)," (Faerstein Decl., Exh. A), the latter of which pertains to proposed expert testimony relating to "a mental disease or defect or any other mental condition of the defendant bearing on . . . the issue of guilt."  Fed. R. Crim. P. 12.2(b).  Mr. Lieberman's proffered expert report does not speak to any issues relating to a mental disease or defect, and the defense has not otherwise informed the government it would be presenting any such defense(s) at trial.  To the extent either defendant does in fact intend to present such testimony or evidence, the government has yet to be provided legally sufficient notice and would object to any such evidence, argument or defense at trial.

knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702.

Significantly, "it is the proponent of the expert who has the burden of proving admissibility." Lust v. Merrell Dow Pharmaceuticals, Inc., 89 F.3d 594, 598 (9th Cir. 1996). The "trial judge must determine at the outset, pursuant to Rule 104(a), whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodologies underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue." Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 591, 592-93 (1993). "The trial court acts as a 'gatekeeper' to exclude expert testimony that does not meet the relevancy and reliability threshold requirements." Cooper v. Brown, 510 F.3d 870, 942 (9th Cir. 2007) (construing Daubert and Rule 702).

The "gatekeeping" principles of Daubert apply equally to all proffered expert testimony under Rule 702 as they do to scientific testimony. Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999); see also Fed. R. Evid. 702, Advisory Comm. Notes ("the amendment [to Rule 702] does not distinguish between scientific and other forms of expert testimony. The trial court's gatekeeping function applies to testimony by any expert.").

Mr. Lieberman's proffered testimony is deficient under the Rule 702 requirements in multiple respects.

### 1. Mr. Lieberman's Proffered Testimony Lacks Foundation and Reliability

As reflected in the proffered report, Mr. Lieberman's opinion lacks foundation to ensure the testimony "is based on sufficient facts or data," that the testimony is "the product of reliable principles and methods," and that he has "reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. Mr. Lieberman purports to have reviewed the "[t]otality of the discovery provided by USA, including all reports and transcripts." (Faerstein Decl., Exh. B at 1.) However, Mr. Lieberman's report is rife with critical factual misstatements that make plain he is not familiar with the conduct underlying the charges in this case.

For example, after describing the first of the six firearm transactions at issue, where the CI was taken by defendant Schlotterbeck to a third-party machine shop to push the button on the drilling machine,[3] Mr. Lieberman incorrectly claims that "[t]his same pattern repeated itself with the ATF now using an Undercover Agent to engage in substantially the same process, each time selling the Agent an 80% lower receiver and directing them where to go to get in [sic] 'milled out.'" (Faerstein Decl., Exh. B at 3.) (Id.) In fact, after the second transaction, defendants and co-conspirator Kwan

---

[3] Mr. Lieberman incorrectly states that "Mr. Kwan assisted the CI in 'milling out' the 80% lower at a separate machine shop," and "defendants Schlotterbeck and Vlha were never present when Mr. Kwan and others milled the 80% lowers." (Faerstein Decl., Exh. B at 2.) In fact, defendant Schlotterbeck, not co-conspirator Kwan, met the CI at the machine shop, brought the CI inside, and gave the CI the money to pay for machining the lower receiver. (USA_00002855 (meeting recording.)

1   abandoned the pretense of taking the UCs to the machine shop and
2   instead arranged for the unfinished lower receivers to be milled out
3   themselves as part of their manufacture of the UCs' purchases of the
4   next <u>four</u> custom-ordered AR-15-type firearms.

5        Defendants and co-conspirator Kwan explained as much to the UCs.
6   During a January 26, 2016, recorded meeting where UC-1 ordered a
7   second firearm from defendants Schlotterbeck and Vlha, both
8   defendants informed UC-1 that they could use a finished lower
9   receiver that was already "cut" for building UC-1's next customized
10  AR-15-type firearm, without taking UC-1 back through the sham of
11  visiting the third-party machine shop.  Defendant Schlotterbeck
12  explained that they already "got a bunch [of lower receivers] done
13  for people that, like-like this," and stated they could use a pre-cut
14  lower receiver so long as UC-1 said he got the lower receiver milled
15  out himself, noting that "obviously there's a bit of a sketchy
16  situation if we don't know the guy."  Defendant Vlha similarly said
17  the completed lower receivers were for "returning customers on the
18  builds."  (USA_00002232 (meeting recording).)  During a February 11,
19  2016 recorded meeting, co-conspirator Kwan similarly explained to UC-
20  1 and UC-2 that they could use a pre-cut lower receiver for the
21  build, but "we only do it to people we know."  (USA_00002248 (meeting
22  recording).)  The core conduct in this case involved the co-
23  conspirators establishing trust, taking custom orders for AR-15-type
24  firearms, handling the manufacturing of such firearms for sale
25  without the customers' involvement, and then putting a completed AR-
26  15-type firearm in the paying customer's hands.

27       Mr. Lieberman's incomplete understanding on this score is
28  critical.  His flawed legal analysis proceeds on the assumption that

defendants took the customers to the third-party machine as an intermediary step in each of the six transactions (as well as other builds and sales the co-conspirators discussed during the course of the conspiracy).  While the government maintains that the charade was irrelevant as to defendants' culpability with respect to the first two transactions in any event, Mr. Lieberman's incorrect factual assumption appears to underpin the heart of his legal conclusion: "Defendants insisted that the customer engage in this legal charade since it was the only legal way for the CI or the Undercover Agent to legally acquire a home built AR-15 lower."  (Faerstein Decl., Exh. 3.)  Mr. Lieberman's evidentiary foundation thus is critically flawed and necessarily falls short of satisfying the "sufficient facts or data" and reliability principles under Rule 702.

Mr. Lieberman's foundation in the underlying legal principles is similarly materially deficient.  Mr. Lieberman's report states it relies on subparts of two statutory and regulatory definitional provisions – "USC 921(a)(10)" and "CFR 478.11(a)."[4]  The former provides the statutory definition of "manufacturer" under the Gun Control Act, and the latter provides the definition of "engaged in the business – (a) manufacturer of firearms" under ATF regulations. But Mr. Lieberman does not appear to consider any other directly applicable definitions or statutory or regulatory provisions in his analysis.  This omission includes the statutory definition of "firearm" under 18 U.S.C. § 921(a)(3), which defines a firearm, among other things, as "(A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile

---

[4] The government presumes Mr. Lieberman is referring to 18 U.S.C. § 921(a)(10) and 27 C.F.R. § 478.11(a).

by the action of an explosive; [or] (B) the frame or receiver of any such weapon."  Similar to his mistaken understanding of the facts, this legal flaw is critical, as Mr. Lieberman's entire analysis proceeds on the theory that <u>only</u> a finished AR-15-type lower receiver qualifies as a "firearm" and ignores the first part of the definition for a "weapon," upon which the indictment and the government's anticipated case at trial are premised.[5]

Mr. Lieberman similarly states that he reviewed (and presumably relied upon) only two ATF Firearms Rulings – ATF 2009-2 ("Installation of Drop-In Replacement Parts") and ATF 2010-10 ("Manufacturing Operations May Be Performed by Licensed Gunsmiths Under Certain Conditions").  Most notably, Mr. Lieberman appears not to have considered ATF 2015-1 ("Manufacturing and Gunsmithing"), published on January 2, 2015, just before the commencement of the alleged conspiracy in this case.  In ATF 2015-1, ATF stated, among other things, that a federal firearms license for a "manufacturing

---

[5] In a footnote, Mr. Lieberman cites in passing and without elaboration to <u>United States v. Roh</u>, CR 14-167-JVS, in this District, in which Judge Selna issued a tentative (but never finalized) ruling that the lower receiver of an AR-15-type firearm did not meet ATF's then-existing definition of a "frame or receiver" for purposes of qualifying as a "firearm" under 18 U.S.C. § 921(a)(10).  At least two other district courts have reached similar conclusions in published opinions. <u>See</u> <u>United States v. Jimenez</u>, 191 F. Supp. 3d 1038 (N.D. Cal. 2016); <u>United States v. Rowold</u>, No. 3:18CR387, 2019 WL 6888154, at *1 (N.D. Ohio Dec. 18, 2019).  The ATF has recently amended its regulatory definition of "firearm frame or receiver," in part in connection with issues surrounding those cases.  (<u>See</u> https://www.federalregister.gov/documents/2022/04/26/2022-08026/definition-of-frame-or-receiver-and-identification-of-firearms (last visited April 29, 2022).)  However, issues surrounding the legal status of AR-15-type lower receivers are largely irrelevant here, where the government's charging theory and theory at trial is that defendants conspired to manufacture and manufactured for sale completed AR-15-type firearms (<u>i.e.</u>, weapons which will or are designed to or may readily be converted to expel a projectile by the action of an explosive).

1    operation" is required "when a person performs machining or other

2    manufacturing process on a blank to make a firearm 'frame or

3    receiver,' or on an existing frame or receiver to make it suitable

4    for use as part of a 'weapon . . . which will or is designed to or

5    may readily be converted to expel a projectile by the action of an

6    explosive.'"  (See https://www.atf.gov/firearms/docs/ruling/2015-1-

7    manufacturing-and-gunsmithing/download (last visited April 29, 2022),

8    at 3 (emphasis added).)

9         Mr. Lieberman's selective and incomplete factual and legal

10   foundation for his opinion are not merely grounds for cross-

11   examination at trial.  Rather, they go to the heart of his testimony

12   and lay bare that his testimony is not based on "sufficient facts or

13   data" nor will it be "the product of reliable principles and

14   methods."  Fed. R. Evid. 702(b)-(d).  The Court, as "gatekeeper,"

15   should preclude Mr. Lieberman from offering such unfounded and

16   unreliable testimony to the jury.

17            2.   Mr. Lieberman's Proffered Testimony Will Not Be
                  Helpful to the Jury
18

19        Mr. Lieberman's proposed testimony also will not "help the trier

20   of fact to understand the evidence or to determine a fact in issue."

21   Fed. R. Evid. 702(a).

22         The Supreme Court has explained that the "condition" that the

23   expert testimony be of help to the trier of fact "goes primarily to

24   relevance. 'Expert testimony which does not relate to any issue in

25   the case is not relevant and, ergo, non-helpful.'"  Daubert, 509 U.S.

26   at 591 (quoting 3 Weinstein & Berger ¶ 702[02], p. 702-18).  Put

27   another way, "'[a]n additional consideration under Rule 702 -- and

28   another aspect of relevancy -- is whether expert testimony proffered

in the case is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute.'" Id. (quoting United States v. Downing, 753 F.2d 1224, 1242 (3d Cir. 1985)). Recognizing this consideration as one of "fit," the Supreme Court explained that "'fit' is not always obvious, and scientific validity for one purpose is not necessarily scientific validity for other, unrelated purposes. . . Rule 702's 'helpfulness' standard requires a valid scientific connection to the pertinent inquiry as a precondition to admissibility." Id. at 591-92.

As described in section III.A.1 above, Mr. Lieberman's understanding of the facts in this case is flawed and incomplete. The hypothetical scenario on which he bases his proffered opinion has no "fit" in the context of this case, and will not be helpful to the jury.  On the contrary, as explained further in section III.C below, Mr. Lieberman's testimony would only confuse the jury under the guise of a purported expert opinion.  The Court has discretion to exclude proffered expert testimony under such circumstances.  See, e.g., United States v. Rodriguez-Rodriguez, 393 F.3d 849 (9th Cir. 2005) (overruled on other grounds by United States v. Aguila-Montes de Oca, 655 F.3d 849 (9th Cir. 2011)) (affirming district court's exclusion of proffered heroin withdrawal expert where "the expert's testimony was general and did not relate to any conduct that was observed on the date of [defendant's] arrest").

Moreover, Mr. Lieberman's proffered anecdotes regarding a supposed "culture . . . within the gun community" and "building parties," (Faerstein Decl., Exh. B at 2), are neither based in "technical or other specialized knowledge" nor "sufficiently tied to the facts of the case that it will aid the jury in resolving a

factual dispute."  Fed. R. Evid. 702(a); <u>Daubert</u>, 509 U.S. at 591.
Mr. Lieberman's background as a gun rights defense attorney as well
as a weapons and use of force trainer does not convert such anecdotes
into specialized knowledge appropriate for expert testimony at trial,
especially where there is a lack of "fit" (much less foundation)
between his proffered opinion and the actual conduct in this case.
<u>See</u>, <u>e.g.</u>, <u>Newell Rubbermaid, Inc. v. Raymond Corp.</u>, 676 F.3d 521,
527 (6th Cir. 2012) ("Red flags that caution against certifying an
expert include reliance on anecdotal evidence, improper
extrapolation, failure to consider other possible causes, lack of
testing, and subjectivity.  In addition, if a purported expert's
opinion was prepared solely for litigation, that may also be
considered as a basis for exclusion.").

Mr. Lieberman's proffered testimony thus fails to meet the
threshold admissibility requirements of Rule 702 for lack of "fit"
and helpfulness to the jury and should be excluded.[6]

**B.  The Proffered Testimony Impermissibly Seeks to Offer Ultimate Issue Testimony About Defendants' Mental State**

Mr. Lieberman's proffered expert testimony also should be
excluded for the independent reason that it impermissibly states an
opinion as to defendants' mental state in a criminal case.

---

[6] The government also questions whether Mr. Lieberman satisfies
the other foundational requirement that his "knowledge, skill,
experience, training, or education" qualify him to testify as an
expert in the context of this case.  His proffered opinion is
essentially one of lobbying and legal advocacy, and his background as
a lawyer and the owner of a use-of-force training center as described
in his CV does not appear to reflect specialized training or
experience that qualifies him to testify as an expert with respect to
the issues in this case.  (<u>See</u> <u>generally</u> Faerstein Decl., Exh. C.)

Federal Rule of Evidence 704(b) provides, "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense.  Those matters are for the trier of fact alone."  Fed. R. Evid. 704(b).  The Ninth Circuit has made clear that Rule 704(b) "does not limit its reach to psychiatrists and other mental health experts.  Its reach extends to all expert witnesses."  United States v. Morales, 108 F.3d 1031, 1036 (9th Cir. 1997).  The court further explained that "[a] prohibited 'opinion or inference' under Rule 704(b) is testimony from which it necessarily follows, if the testimony is credited, that the defendant did or did not possess the requisite mens rea."  Id. at 1037.

Courts routinely preclude expert testimony in criminal cases where it invades the province of the jury in assessing a defendant's mental state.  See, e.g., United States v. Booth, 309 F.3d 566, 573 (9th Cir. 2002) (affirming exclusion of defense expert under Rule 704(b) where witness "would have testified that a polygraph test he conducted on [defendant] indicated that [defendant] was being truthful when he denied intent to defraud or knowledge of fraud"); United States v. Brown, 871 F.3d 532, 539 (7th Cir. 2017) (testimony that defendant acted reasonably under circumstances was inadmissible expert opinion about criminal defendant's state of mind, where testimony "would merely tell the jury what result to reach" and "draw conclusions for the fact finder when no help is needed") (quotation marks and internal citation omitted); United States v. Shaffer, 472 F.3d 1219, 1225 (10th Cir. 2007) (affirming exclusion of computer expert in child pornography trial where witness "sought to suggest to

14

the jury, at the very least by inference, that [defendant] did not knowingly possess or distribute unlawful child pornography as opposed to simple adult pornography," which was a "hotly contested issue" and "an essential element of, the crimes with which he was charged").

Here, defendants are charged with both conspiracy and the substantive offense of engaging in the business of manufacturing firearms without a license.  With respect to the substantive offense under 18 U.S.C. § 922(a)(1)(A), the government must prove that defendants acted "willfully," that is, they knew that their conduct was unlawful, though not that they were aware of the federal licensing requirement.  See Ninth Circuit Model Jury Instructions, No. 14.3 (citing Bryan v. United States, 524 U.S. 184, 198-99 (1998)).

Mr. Lieberman's purported expert report is replete with statements and opinions that necessarily go to the heart of whether defendants knew that their conduct was unlawful.  For example, Mr. Lieberman states as follows:

- "Defendants did not engage in any illegal conduct," (Faerstein Decl., Exh. B at 1);

- "Defendants were completely authorized under federal law to engage in the conduct they are now being prosecuted for," (id.);

- "There is no evidence that any of the Defendants were 'engaged in the manufacturing of firearms.'  There is actually dispositive evidence that they were not," (id. at 3);

- "The Defendants did not have a single product offered for sale on their premises that fit this standard [for firearms that are required to be serialized]," (id.); and

- "The Defendants were assisting people in doing what was legally allowable for them to do."  (Id. at 4.)

Putting aside the legal and factual fallacy of these statements, they are directed solely to conveying to the jury what defendants thought about the conduct in which they were engaged, i.e., whether they acted willfully.  Such "matters are for the trier of fact alone" and should not be permitted to come in through a criminal defense attorney masquerading as an expert witness.  Fed. R. Evid. 104(b). Mr. Lieberman's testimony should be excluded for this reason as well.

### C. The Proffered Testimony Should Be Excluded Under Rule 403

Mr. Lieberman's proffered testimony also should be excluded under Federal Rule of Evidence 403 because "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.

The Supreme Court in Daubert recognized that Rule 403 serves as another important check on the admission of expert testimony.  See Daubert, 509 U.S. at 595.  Heeding Judge Weinstein's counsel, the Supreme Court observed, "'[e]xpert evidence can be both powerful and quite misleading because of the difficulty in evaluating it.  Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 of the present rules exercises more control over experts than over lay witnesses.'"  Daubert, 509 U.S. at 595 (quoting Jack B. Weinstein, Federal Rules Decisions, 138 F.R.D. 631, 632 (1991)).

As explained above, any probative value of Mr. Lieberman's proffered testimony is minimal given his lack of legal and factual foundation, reliability, and "fit" to the facts of this case.  On the other side of the balance, Mr. Lieberman presents a substantial danger of confusing the issues and misleading the jury given his

apparent focus on a factual and legal scenario not present here. Given this lack of "fit" and inevitable sowing of unnecessary confusion that may require the government to present a rebuttal case, Mr. Lieberman's proposed testimony also would undoubtedly cause undue delay and waste time.

Moreover, there is a substantial danger that the jury will be unfairly prejudiced by a criminal defense attorney that is put on the witness stand and qualified by the Court as an expert witness. On his website, Mr. Lieberman promotes himself as a lawyer who "provides clients with the necessary tools to avoid criminal prosecution," and includes a client testimonial praising Mr. Lieberman for having "conducted a counter investigation and came up with a strategy regarding case." (See http://ltccwlaw.com/profile.html and http://ltccwlaw.com/testimonial.html (last visited April 29, 2022).) Mr. Lieberman's prospective trial testimony, as previewed in his report, essentially would serve as a first bite of the apple for the defense to present a closing argument through another lawyer under the "powerful and quite misleading" cloak of expert testimony. Daubert, 509 U.S. at 595.

Mr. Lieberman's proffered legal opinions also would usurp the Court's sole province to instruct the jury on the law. And they would pose a significant risk of inviting jury nullification. Indeed, as noted above, Mr. Lieberman has publicized his views about the supposed "idiocy of both our federal, as well as our state, gun laws" and the purported "arbitrary and capricious" interpretation of what it means to be "in the business" of transferring firearms.

For all these reasons, the balance under Rule 403 weighs heavily against the admissibility of Mr. Lieberman's proffered expert witness testimony, and he should be precluded from testifying at trial.

**IV.   CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court grant the government's motion in limine to exclude the testimony of proposed defense expert Steven D. Lieberman Esq.

## DECLARATION OF BRIAN FAERSTEIN

I, Brian Faerstein, declare as follows:

1.    I am an Assistant United States Attorney in the United States Attorney's Office for the Central District of California.  I represent the government in <u>United States v. Travis Schlotterbeck and James Bradley Vlha</u>, 2:19-CR-343-GW.

2.    Attached hereto as **Exhibit A** is a letter dated April 22, 2022, that I received from defense counsel by email.

3.    Attached hereto as **Exhibit B** is an "Expert Witness report and findings" prepared by Steven D. Lieberman, Esq., that I received from defense counsel by email on April 22, 2022.

4.    Attached hereto as **Exhibit C** is a CV for Steven D. Lieberman, Esq., that I received from defense counsel by email on April 22, 2022.

I declare and affirm under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on April 29, 2022, at Los Angeles, California.

_____
BRIAN FAERSTEIN