1

**EDWARD M. ROBINSON (CA Bar 126244)**
21515 Hawthorne Blvd, Suite 730
Torrance, CA 90503
Office:  (310) 316-9333
Facsimile: (310) 316-6442
eroblaw@gmail.com

Attorneys for Defendant
*Travis Schlotterbeck*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

UNITED STATES OF AMERICA,

           Plaintiff,

    v.

TRAVIS SCHLOTTERBECK and
JAMES BRADLEY VLHA

        Defendants.

Case No. 19-cr-00343-GW-1

**DEFENDANTS' OPPOSITION TO GOVERNMENT'S MOTION *IN LIMINE* TO ADMIT DEFENDANT'S STATEMENTS; EXHIBITS IN SUPPORT**

DATE: June 23, 2022
TIME: 8:00 AM
Courtroom of the
Honorable George H. Wu

1

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................ 1

ARGUMENT .............................................................................................................. 2

   I.  Pursuant to Federal Rules of Evidence Rule 106, Mr. Schlotterbeck's Clarifying Statements Must be Admitted to Provide Context and to Demonstrate His State of Mind When He Made the Relevant Statements. ................................................. 2

     A.   Legal Standard ........................................................................................ 3

     B.   The Rule of Completeness Requires the Admission of Mr. Schlotterbeck's Clarifying Statements. ........................................................................... 4

     C.   Mr. Schlotterbeck's Statements are not Inadmissible Hearsay. ....................... 8

   II. At Minimum, Mr. Schlotterbeck Should be Permitted to Introduce Excerpts of the Interview Through Cross-Examination. ............................................................ 8

  III. Failure to Introduce the Clarifying Statements Would Violate Both Mr. Schlotterbeck's Fifth Amendment Right to Remain Silent and Sixth Amendment Right to Confront and Cross-Examine Witnesses Against Him. ......................... 9

  IV. Mr. Schlotterbeck's Statements Implicate Co-Defendant Mr. Vlha and Must be Excluded at a Joint Trial of Both Defendants. ....................................................... 9

   CONCLUSION ....................................................................................................... 10

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Beech Aircraft Corp. v. Rainey,*
    488 U.S. 153 (1988)..................................................................................3, 8

*Bruton v. United States*
    391 U.S. 123 (1968)......................................................................................10

*Chambers v. Mississippi*
    410 U.S. 284 (1973)........................................................................................8

*United States v. Dorrell*
    758 F.2d 427 (9th Cir. 1985) ........................................................................4

*United States v. Kaminski*
    692 F.2d 505 (8th Cir. 1992) ....................................................................3, 4

*United States v. Marin,*
    669 F.2d 73 (2nd Cir. 1982) ..........................................................................3

*United States v. McCorkle*
    411 F.2d 482 (7th Cir.) ..................................................................................3

*United States v. Smith*
    794 F.2d 1333 (7th Cir. 1986) ......................................................................3

*United States v. Vallejos*
    742 F.3d 902 (9th Cir. 2014) ........................................................................8

*United States v. Wenzel*
    311 F.2d 164 (4th Cir. 1962) ....................................................................3, 4

*United States v. Wilfredo Lopez*
    4 F.4th 706 (9th Cir. 2021) ...........................................................................4

**Statutes**

18 U.S.C. §371..................................................................................................1

18 U.S.C. §922.............................................................................................1, 5

ii

**Other Authorities**

20 Am. Jur. 425.................................................................................................4

**Rules**

Fed. R. Evid., Rule 106.............................................................................passim

Fed. R. Evid., Rule 401.............................................................................8

Fed. R. Evid., Rule 402.............................................................................8

**INTRODUCTION**

The government has charged both defendants with conspiracy in violation of 18 U.S.C. §371, with the sole object being to manufacture firearms in violation of 18 U.S.C. §922(a)(1)(A). The government has also charged the defendants with the substantive count of manufacturing firearms in violation of 18 U.S.C. §922(a)(1)(A). The government has abandoned its theory of dealing in this case. (Doc. 89 at 1.) Finally, the government has charged Mr. Schlotterbeck with selling a firearm to a felon in violation of 18 U.S.C. §922(d)(1).

To support a conviction for engaging in the business of manufacturing firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A), the government must prove that (1) the defendants devoted time, attention, and labor to manufacturing firearms as a regular course of trade or business, (2) the defendants' intention in manufacturing firearms was for the principal objective of livelihood and profit, (3) the defendants regularly sold or distributed the firearms manufactured, (4) the defendants did not hold a federal manufacturer's license, and, most critical to this case, (5) the defendants acted "willfully."

The government now moves *in limine* to introduce six excerpted statements made by Mr. Schlotterbeck in an interview conducted by the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") on June 21, 2017. These excerpted statements are highly misleading and will create the false impression that Mr. Schlotterbeck confessed to the charged crimes and relieve the government of its constitutional obligation to prove willfulness beyond a reasonable doubt.

Under the rule of completeness, Mr. Schlotterbeck's entire interview must be admitted to provide the necessary context for his statements. At minimum, Mr. Schlotterbeck should be permitted to introduce portions of the interview in cross-examination of the ATF agents.

For this and the foregoing reasons, Mr. Schlotterbeck respectfully requests that this Court allow him to introduce clarifying statements made during his interview with

1

the ATF agents to avoid the false impression that Mr. Schlotterbeck admitted to the charged crimes.

## ARGUMENT

**I.** **Pursuant to Federal Rules of Evidence Rule 106, Mr. Schlotterbeck's Clarifying Statements Must be Admitted to Provide Context and to Demonstrate His State of Mind When He Made the Relevant Statements.**

The government seeks to admit excerpted and misleading statements from Mr. Schlotterbeck's June 21, 2017 interview with ATF. To allow the government to do so would be in direct violation of the Federal Rules of Evidence, Rule 106. Everything Mr. Schlotterbeck says throughout his interview on June 21, 2017 with ATF agents goes to his state of mind, and the clarifying statements are necessary to understand the context in which Mr. Schlotterbeck made the otherwise misleading statements proffered by the government. (Defense Exhibit A).

With respect to the charges against Mr. Schlotterbeck, the government must prove willfulness beyond a reasonable doubt.[1] At minimum, therefore, the government must prove beyond a reasonable doubt that Mr. Schlotterbeck knew that the charged conduct was unlawful. If the government is allowed only to introduce the excerpted statements, it creates the impression of a confession that does not exist and creates a real probability that the jury will understand these statements as a confession of guilt. Moreover, admission of only these excerpted statements would be unconstitutionally misleading as it would not only lessen, but would relieve, the government of its burden

---

[1] As set forth in our opposition to the government's motion *in limine* to admit evidence and permit argument, and as will be presented in the amended disputed jury instructions, Mr. Schlotterbeck will ask this court to instruct the jury on the highest form of willfulness—that the government must prove beyond a reasonable doubt that Mr. Schlotterbeck knew of the specific federal rules and regulations that govern, among other things, what constitutes manufacturing a firearm in violation of the licensing laws.

2

1    to prove willfulness beyond a reasonable doubt under either the *Bryan* standard or the

2    heightened standard requested by Mr. Schlotterbeck.

3            A. <u>Legal Standard</u>

4            The Federal Rules of Evidence, Rule 106 states that "[i]f a party introduces all or

5    part of a writing or recorded statement, an adverse party may require the introduction,

6    at that time, of any other part—or any other writing or recorded statement—that in

7    fairness ought to be considered at the same time." Fed. R. Evid. 106. "When one party

8    has made use of a portion of a document, such that misunderstanding or distortion can

9    be averted only through presentation of another portion, the material required for

10   completeness is ipso facto relevant and therefore admissible." *Beech Aircraft Corp. v.*

11   *Rainey*, 488 U.S. 153, 172 (1988).

12           Application of the rule of completeness often arises when the government seeks

13   to introduce a portion—but not all—of a defendant's written or recorded statement.

14   When this occurs, a defendant often has the right to introduce additional portions of his

15   statement, including through cross-examination. Although this right does not entitle a

16   defendant to introduce portions of his statement that are neither explanatory nor

17   relevant to those portions of the statement introduced by the prosecution, it does entitle

18   a defendant to introduce portions that more fairly reflect the sentiment of the statement.

19   *United States v. Marin*, 669 F.2d 73, 84-85 (2nd Cir. 1982) (citing *United States v.*

20   *McCorkle*, 411 F.2d 482, 486-87 (7th Cir.), cert. denied, 423 U.S. 826…(1975)).

21   Moreover, "[g]enerally, when part of a defendant's post-arrest statement is introduced

22   into evidence, the defendant has the right to have the entire statement introduced."

23   *United States v. Smith*, 794 F.2d 1333, 1335 (7th Cir. 1986) (citing *United States v.*

24   *Kaminski*, 692 F.2d 505, 522 (8th Cir. 1992) (quoting *United States v. Wenzel*, 311 F.2d

25   164, 168 (4th Cir. 1962)). "This rule is sometimes referred to as the rule of

26   completeness." *Id*.

27           "'When a confession is admissible, the whole of what the accused said upon the

28   subject at the time of making the confession is admissible and should be taken together;

                                                3

and if the prosecution fails to prove the whole statement, the accused is entitled to put in evidence all that was said to and by him at the time which bears upon the subject of controversy including any exculpatory or self-serving declarations connected therewith.'" *Wenzel*, 311 F.2d at 168; (quoting 20 Am. Jur. 425.) A district court abuses its discretion under Rule 106 when it excludes part of a statement if "the edited version… 'distorts the meaning of the statement or excludes information substantially exculpatory of the declarant.'" *United States v. Dorrell*, 758 F.2d 427, 434-35 (9th Cir. 1985) (quoting *Kaminski*, 692 F.2d at 522.)

A recent Ninth Circuit panel reaffirmed this longstanding principle, holding that the district court erred in allowing the government to introduce excerpts of a defendant's statements because "excerpts created the misleading impression that [defendant] confessed to the *mens rea* required for conviction: knowledge[.]" *United States v. Wilfredo Lopez*, 4 F.4th 706, 715 (9th Cir. 2021). The Court further stated that ""there is no conflict between evidence introduced under the rule of completeness and the bar on inadmissible hearsay because the former serves the purpose of correcting a distortion created by an opposing party's misleading proffer of part of a document or recording, while the latter serves the purpose of barring introduction of hearsay evidence proffered for its truth." *Id*. at 714.

### B. The Rule of Completeness Requires the Admission of Mr. Schlotterbeck's Clarifying Statements.

Here, the government seeks to introduce limited and highly misleading excerpts of Mr. Schlotterbeck's recorded statements to ATF agents concerning Mr. Schlotterbeck's knowledge of the CI's status as a convicted felon (Gov. Exhibit A, B, and F), his general knowledge of firearm licensing requirements (Gov. Exhibit C), agreements between Mr. Schlotterbeck and Kwan (Gov. Exhibit D), and Mr. Schlotterbeck's knowledge of the fact that suppressors are illegal and his disagreement with that law (Gov. Exhibit E). Without the context of Mr. Schlotterbeck's other statements, introduction of only the government's chosen excerpts risks distorting the

4

meaning of Mr. Schlotterbeck's statements in violation of Rule 106. Worse, the introduction will have the effect of lessening the government's burden of proving willfulness beyond a reasonable doubt.

The excerpt offered by the government concerning Mr. Schlotterbeck's general knowledge of firearm licensing requirements is particularly misleading. (*See* Gov. Exhibit C.) Agent Hamilton asked Mr. Schlotterbeck, "[w]hy didn't you just get a federal license? Federal Firearms license?" To which Mr. Schlotterbeck responded, "[w]ell, I had thought about that actually and-but everybody I talked to is like, you're not gonna get approved for a license in L-A County. Number one, it's like very, very difficult to get a license. So-and honestly all we were really interested in was the cerakoting." (*Id.*)

To prove its case, the government must establish that Mr. Schlotterbeck willfully manufactured firearms in violation of 18 U.S.C. §922(a)(1)(A). In other words, the government must prove that Mr. Schlotterbeck knew he was violating the law by manufacturing firearms without a license. This statement, when taken out of context, is offered for the sole purpose of giving the misleading impression that because Mr. Schlotterbeck had a general knowledge of the licensing requirements, he knew that his conduct violated the law.[2] Critically missing from this excerpt are Mr. Schlotterbeck's repeated statements that he believed he did not need a federal firearms license to engage in his conduct.

Before Mr. Schlotterbeck made the statement concerning his general knowledge of the firearm licensing requirements, Mr. Schlotterbeck repeatedly mentioned his belief that his conduct was lawful based on his understanding of the licensing requirements. Such clarifying statements, for example, include Mr. Schlotterbeck's explanation to the ATF agents that "from [his] understanding" he did not need a firearms license to engage in his conduct. Mr. Schlotterbeck stated that "we're just like

---

[2] Our position is more fully presented in our opposition to the government's motion *in limine* to admit evidence and permit argument.

5

everybody else that was doing the eighty percent at one point…I mean, I know you can buy parts without an F-F-L, without a license[.]" (Def. Exhibit A; USA_00007456.)

In one critical exchange, Special Agent Hammond stated, "you're taking a lower and, and making it into a, a com—a functioning firearm and that's manufacturing…you need a license to do it." (*Id.*, USA_00007455). Yet prior to this statement, Mr. Schlotterbeck had informed the agents that he was "not milling receivers[.]" (*Id.*, USA_00007443.) After selling an unfinished lowerreceiver, he would tell the purchaser that they would "have to mill it themselves." (*Id.*, USA_00007446.) Mr. Schlotterbeck further stated; "I didn't, uh, want to be legally responsible for him to build a rifle if, if, um—and I know that with eighty percents that's—the, the clause is that the person has to mill it themselves." (*Id.*, USA_00007447.) These statements demonstrate that Mr. Schlotterbeck believed his conduct was lawful based on his understanding of the licensing requirements and firearms laws. These statements further highlight the reasonable confusion surrounding this law.

With respect to the excerpts concerning Count 3, the allegation that Mr. Schlotterbeck sold a firearm to a prohibited person, the excerpted statements are inadmissible where the agents offer an opinion as to Mr. Schlotterbeck being nervous, but more importantly, when taken out of context from his repeated statements that he believed by selling *unfinished* lower receivers he was not selling or manufacturing firearms, as the above mentioned statements make clear, these excerpts read as an admission at best, and at worst a confession.

Finally, the excerpted statements regarding an agreement between Mr. Schlotterbeck and Kwan are highly misleading and unrelated to the charged conduct. Agent Romo asked Mr. Schlotterbeck "[w]hat do you think [Kwan's] saying about you right now?" Mr. Schlotterbeck then said "…probably that I had to do with the money transactions of things. Like, I provi-like, I told him whatever he makes on cerakote I get half of…So that's-that was our agreement with everything[.]" Agent Romo then asked

6

1  if that meant Mr. Schlotterbeck got half of the profits for "everything [he] painted" and
2  Mr. Schlotterbeck responded "yes." (Gov. Exhibit D.)

3      The government characterizes this excerpted statement as evidence of an aspect
4  of Mr. Schlotterbeck's agreement with Kwan concerning "their firearm-related
5  activities." (Mot. at 3.) This characterization highlights the misleading nature of the
6  statement. In this excerpt, there is no mention of manufacturing firearms or any
7  agreement to manufacture firearms. Rather, Mr. Schlotterbeck stated that "whatever
8  [Kwan] makes on cerakote I get half of[,]" to which SA Romo replied, "[s]o,
9  everything you painted you would get half of…cause you're using your products."
10 (Gov. Exhibit D.) When taken out of context, this statement gives the misleading
11 impression that Mr. Schlotterbeck is admitting to the conspiracy alleged in Count 1.
12 Admission of this excerpt creates the very real probability of a constructive amendment
13 as a jury could convict Mr. Schlotterbeck for the uncharged conduct of cerakoting
14 completed firearms for a fee.

15     However, prior to making the above-mentioned statement, Mr. Schlotterbeck had
16 informed the agents that he "give[s] [Kwan] access to the shop and he does stuff to his
17 guns…he's coating guns." (Def. Exhibit A, USA_00007425-7426.) Mr. Schlotterbeck
18 also discussed cerakoting firearms with Mr. Vlha at his shop—Sign Imaging—as well
19 as "cerakoting a bunch of vapes." (*Id*., USA_00007427; USA_00007430.) Later in the
20 interview, in the government's excerpted portion regarding the discussion of the
21 licensing requirements, Mr. Schlotterbeck informs the agents that "all we were really
22 interested in was the cerakoting. And for a year I didn't coat any gun parts. [Kwan]
23 handled all gun transactions." (Gov. Exhibit C).

24     These statements must be admitted to offer context and clarity to the misleading
25 excerpt offered by the government. Mr. Schlotterbeck allowed Kwan to cerakote
26 firearms at his store with the understanding that Kwan would split the profits because
27 he used Mr. Schlotterbeck's paint. The government's excerpted statement, when
28 viewed in isolation and out of context, will have the effect of lessening its burden of

7

proof as to Count 1 and allow the government to prove a conspiracy to manufacture firearms based on statements entirely unrelated to manufacturing firearms.

Mr. Schlotterbeck's objections to the government's offered statements concerning his understanding and disagreement with the laws prohibiting silencers are set forth in the defense's opposition to the government's motion to admit evidence and permit argument. (Doc. 106.)

C. Mr. Schlotterbeck's Statements are not Inadmissible Hearsay.

Statements are admissible under FRE 106 notwithstanding the bar on hearsay evidence when offered "to correct a misleading impression in the edited statement" introduced by an opposing party. *United States v. Vallejos*, 742 F.3d 902, 905 (9th Cir. 2014). As set forth above, the excerpted statements offered by the government are misleading and distort the true meaning of the statements. The statements Mr. Schlotterbeck intends to introduce are not offered for the truth, but to correct any distortion created by the government's misleading proffer of a select few excerpted statements and to demonstrate his state of mind.

## II. **At Minimum, Mr. Schlotterbeck Should be Permitted to Introduce Excerpts of the Interview Through Cross-Examination.**

As noted above, in *Beech Aircraft*, 488 U.S. at 172, the Supreme Court reaffirmed "the obvious," that "when one party has made use of a portion of a document, such that misunderstanding or distortion can be averted only through presentation of another portion, the material required for completeness is *ipso facto* relevant and therefore admissible under Rule 401 and 402." This includes admission through cross-examination. To the extent that this court determines that the statements may be hearsay, "the hearsay rule may not be applied mechanistically to defeat the ends of justice." *Chambers v. Mississippi*, 410 U.S. 284, 302 (1973). Therefore, Mr. Schlotterbeck is entitled to his constitutional right to hold the government to its burden of proof through confrontation and cross-examination without being required to put on

8

a separate defense or case-in-chief or waive his Fifth Amendment right to remain silent to clarify the misleading excerpts upon which the government will rely.

### III. **Failure to Introduce the Clarifying Statements Would Violate Both Mr. Schlotterbeck's Fifth Amendment Right to Remain Silent and Sixth Amendment Right to Confront and Cross-Examine Witnesses Against Him.**

If Mr. Schlotterbeck is precluded from introducing his clarifying statements through cross-examination of the Agents, the only practical opportunity for him to explain himself is to testify. As such, in this situation, Mr. Schlotterbeck would be deprived of his Sixth Amendment right to confront and cross-examine the Agents with the remainder of his statements and would be forced to give up his Fifth Amendment right not to testify. This Hobson's choice would be a clear violation of Mr. Schlotterbeck's constitutional rights.

### IV. **Mr. Schlotterbeck's Statements Implicate Co-Defendant Mr. Vlha and Must be Excluded at a Joint Trial of Both Defendants.**

The defendants are jointly charged with conspiracy in Count 1, and the substantive conduct in Count 2. The government would like to introduce statements from Mr. Schlotterbeck regarding his knowledge of firearms licensing requirements, agreements with Mr. Kwan about firearms transactions, and his knowledge of the illegality of silencers or suppressors. Because these are statements of a defendant, these statements, if admitted, will be offered for the truth of the matter asserted. The government has not proposed a limiting instruction, as they argue that the statements do not implicate Mr. Vhla, as they do not mention him.[3]

---

[3] The government does refer to a proper limiting instruction if the statements are admitted during its case-in-chief. If the government will stipulate that none of Mr. Schlotterbeck's statements are admissible against Mr. Vhla and cannot be considered by the jury in relation to any of the allegations in Count 1 and Count 2, perhaps its argument would be more pursuasive.

9

It is clear that Mr. Vhla has a right, under established law, to confront any evidence presented by the prosecution. Yet, if the proffered evidence is admitted during its case-in-chief, Mr. Vhla will not be able to question Mr. Schlotterbeck about the statements. This denial of confrontation is profound. The government is required to prove that Mr. Vhla had knowledge of the criminal conspiracy and knew that his conduct was unlawful. If believed for the truth of the matter, the jury can deduce that if Mr. Schlotterbeck had knowledge of general federal licensing requirements and of the illegality of suppressors, so did his alleged co-conspirator Mr. Vhla. Absent the testimony of Mr. Kwan, a serial gun manufacturer and government cooperator, there are no statements from either defendant that can be admitted that contemporaneously describe conduct that the government claims is unlawful. The proffered statements of Mr. Schlotterbeck directly implicate Mr. Vhla on Count 1 and could have spillover impact on Count 2. This is precisely the scenario envisioned by the Supreme Court in *Bruton v. United States*, 391 U.S. 123 (1968). The government concedes that *Bruton* is an issue, but never addresses the issue of co-conspirator liability implicated by Mr. Schlotterbeck's statements.

## CONCLUSION

For the foregoing reasons, Mr. Schlotterbeck respectfully requests that this Court admit the clarifying statements made by Mr. Schlotterbeck's during the June 21, 2017 interview with ATF agents.

Respectfully submitted,

DATED:  May 31, 2022          By  */s/ Edward M. Robinson*
                                   Edward M. Robinson

                                   Attorney for Defendant
                                   *Travis Schlotterbeck*

10

1

By   */s/ Jerome J Haig*
_____
Jerome J Haig

Attorney for Defendant
*James Bradley Vhla*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

11