**EDWARD M. ROBINSON (CA Bar 126244)**
21515 Hawthorne Blvd, Suite 730
Torrance, CA 90503
Office: (310) 316-9333
Facsimile: (310) 316-6442
eroblaw@gmail.com

Attorneys for Defendant
*Travis Schlotterbeck*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**
**WESTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TRAVIS SCHLOTTERBECK, and JAMES BRADLEY VLHA<br><br>Defendant. | Case No. 19-cr-00343-GW<br><br>**DEFENDANTS' JOINT MOTION TO DISMISS INDICTMENT PER FED. R. CRIM. P. 12(b)(3)(a); EXHIBITS IN SUPPORT**<br><br>DATE: June 23, 2022<br>TIME: 8:00 AM<br>Courtroom of the<br>Honorable George H. Wu |

# TABLE OF CONTENTS

INTRODUCTION ........ 1

ARGUMENT ........ 3

I. LEGAL STANDARD ........ 3

II. VAGUENESS: RECEIVER ........ 3

A. Attorney General Lynch's Letter Explains the Vagueness Problem ........ 4

B. Previous Courts' Dismissals Under Similar Facts Further Underscore the Vagueness of the Law Surrounding an AR-15 "Lower Receiver" ........ 5

C. The Government's Letter Here Highlights the Arbitrary Enforcement Problem Associated with Vague Statutes ........ 6

III. VAGUENESS: MANUFACTURING ........ 6

IV. The Rule of Lenity Applies ........ 9

CONCLUSION ........ 10

# TABLE OF AUTHORITIES

## Cases

*Abramski v. United States*,
573 U.S. 169 (2014) ........ 6

*Dunn v. United States*,
442 U.S. 100 (1979) ........ 9

*Grayned v. City of Rockford*,
408 U.S. 104 (1972) ........ 3

*Hoffman Estates v. Flipside, Hoffman Estates, Inc.*,
455 U.S. 489 (1982) ........ 7

*Kolender v. Lawson*,
461 U.S. 352 (1983) ........ 3, 7

*Lurie v. Wittner*,
228 F.3d 113 (2nd Cir. 2000) ........ 9

*Perrin v. United States*,
444 U.S. 37 (1979) ........ 8

*Thibodeau v. Portuondo*,
486 F.3d 61 (2nd Cir. 2007) ........ 7

*United States v. Apel*,
571 U.S. 359 (2014) ........ 6

*United States v. Santos*,
553 U.S. 507 (2008) ........ 9

*United States v. Short Accountancy Corp.*,
785 F.2d 1448 (9th Cir. 1986) ........ 3

*United States v. Thompson/Center Arms Company*,
504 U.S. 505 (1992) ........ 9

*United States v. Vest*,
448 F. Supp. 2d 1002 (S.D. Ill. 2006) ........ 9

## Statutes

18 U.S.C. § 371 ........ 1

18 U.S.C. § 921 ........ 8

18 U.S.C. § 922 ........ 1, 2, 9

## Other Authorities

27 C.F.R. § 478.11 ........ 2, 4, 6

**INTRODUCTION**

Mr. Schlotterbeck and Mr. Vhla are charged in a three-count indictment alleging that they conspired with each other and others to manufacture firearms without the appropriate federal firearms license. They are also charged with the substantive count of manufacturing five firearms without the appropriate federal firearms license as well as selling a firearm to a felon in violation of 18 U.S.C. §§ 371 and 922(a)(1)(A). The indictment alleges that the defendants aided and abetted each other and alleged co-conspirators in the substantive count of manufacturing firearms without a license. (*See* Doc. 1, Count 2.)[1] Finally, Mr. Schlotterbeck is charged in count 3 with selling a firearm to a prohibited person in violation of 18 U.S.C. § 922(d).

The introductory allegations of the indictment cite the statutory definition of a "firearm" as "any weapon…which will or is designed to or may readily be converted to expel a projectile by the action of an explosive," and "the frame or receiver of any such weapon." (*See* Doc 1, pg. 2.) The indictment then describes the weapons in question, the AR-15 type rifle, as "consist[ing] of many parts, including the: (1) lower receiver; (2) upper receiver; (3) stock; (4) barrel; and (5) magazine. (Doc. 1 at 2.)

Paragraph 5 describes the "assembl[ing]" of the component parts into a rifle or pistol, stating that "a finished lower receiver had the shape and space necessary for an upper receiver and barrel to attach to the lower receiver." (Doc. 1, at 2.) The only reference to anything other than this assembling is where the indictment, with respect to the lower receiver, states, "a person could use specialized machinery on an unfinished lower receiver to create, or 'mill out' cavities to create a finished lower receiver." Nowhere in paragraph 5, or in the indictment, is there an acknowledgment that this 'milled out' lower receiver does not fit the definition of a "firearm." Paragraph 5 further describes, with no detail, that a milled out lower receiver has the shape and space necessary for an upper receiver and barrel to attach to the lower receiver. (Doc. 1,

[1] The government has abandoned its theory of prosecution that the defendants were dealing without a license. (Doc. 89 at 1.)

at 2.) It is against this alleged backdrop of 'assembly' that the allegations of manufacturing and, with respect to count three, the selling of a "firearm is made." The term manufacturing is not defined in the indictment.

The "Manner and Means" section of the conspiracy count follow the same pattern as the introductory paragraphs. It is alleged in the manner and means section that Mr. Schlotterbeck and co-conspirator Kwan would "obtain firearm parts, including *unfinished lower receivers*," and, "arrange" to have the "firearm customers" mill the unfinished lower receivers to attach to an "upper receiver and barrel." The co-defendants would then "assemble" and sell the "completed firearms" to the customers. (Doc 1., page 3.)

The statutory term for firearm, in this case the receiver, does not provide any definition about the necessary characteristics of that receiver/firearm. 27 C.F.R. §478.11 defines a firearm/receiver as "[t]hat part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel." It is uncontroverted that a "finished [or milled out in this case] AR-15 receiver does not contain a bolt or breechblock and is not threaded to receive the barrel." Furthermore, the government concedes that the upper receiver, stock, barrel and magazine (the component parts of the AR-15) are not regulated and are not, like the receiver, defined as firearms for which a particular federal manufacturing license is required.

Given the ambiguity and complexity that exists surrounding this area of law, no reasonable person of ordinary intelligence could understand whether or not their conduct was unlawful. As such, 18 U.S.C. §§ 922(a)(1)(A) and 922(d) are unconstitutionally vague, both on their face and as applied to the defendants' conduct at issue here.

## ARGUMENT

## I. LEGAL STANDARD

Vague laws are legally impermissible for three critical reasons. First, they "may trap the innocent" by failing to provide "a reasonable opportunity to know what is prohibited." *Grayned v. City of Rockford*, 408 U.S. 104, 108-109 (1972). Second, they encourage "arbitrary and discriminatory enforcement" by delegating "basic policy matters to policemen, judges, and juries for resolution on an ad hoc and subjective basis." *Id*. And third, because they force individuals to "steer far wider of the unlawful zone" than necessary and "inhibit the exercise of … freedom." *Id*.

The indictment, as applied to both defendants, is unconstitutionally vague in that it fails to provide constitutionally required notice such that "ordinary people can understand what conduct is prohibited…and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson*, 461 U.S. 352, 357 (1983).

In this case, a pretrial motion to dismiss the indictment is appropriate because, as argued below and set forth in the exhibits, the defendants are asking the court to rule on a question of law and not fact. This court, "may make preliminary findings of fact necessary to decide the questions of law presented by pretrial motions so long as the court's findings on the motion do not invade the province of the ultimate finder of fact." *United States v. Short Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986) (citations omitted).

## II. VAGUENESS: RECEIVER[2]

On April 22, 2022, the government wrote Mr. Vlah's counsel and Mr. Schlotterbeck's prior counsel to "provide additional information relating to the anticipated trial testimony of Bureau of Alcohol, Tobacco, Firearms and Explosives

---

[2] For reasons discussed throughout this section, Count 3 against Mr. Schlotterbeck must also be dismissed. Whether or not the alleged receiver is a firearm is unclear and thus this charge, as applied to Mr. Schlotterbeck, is unconstitutionally vague as well.

(ATF) Senior Industry Operations Investigator/ Industry Operations Intelligence Specialist Thomas M. Chimileski, Jr[.]" That letter is attached hereto as Exhibit A. In that letter the government discusses a telephone call between the prosecutors, investigator Chimileski and ATF legal counsel. The contents of that call are summarized and include the statement that "[the] ATF had conceded as a criminal enforcement litigating position in certain federal districts, including the Central District of California, that an AR-15-type lower receiver did not strictly meet the soon-to-be amended definition of 'firearm frame or receiver' under 27 C.F.R. § 478.11 (i.e., that the lower receiver does not contain the bolt or breechblock, and is not usually threaded at its forward position to receive the barrel)." This "concession" is based upon, among other things, the decisions in *United States v. Alejandro Jimenez*, Case No. 15-cr-00372-JD-1, and *United States v. Roh*, Case No. SACR-14-167-JVS, as well as a letter from Attorney General Lorretta Lynch. (*See* Exhibit B, order in the *Jimenez* case, the tentative minute order in the *Roh* case, and Attorney General Lynch's letter.)

A. Attorney General Lynch's Letter Explains the Vagueness Problem

As set forth by the Attorney General in 2016 about the law in this area at the time of the acts alleged in the indictment, the law in this area is "unconstitutionally vague." Attorney General Lynch urged Congress to amend the law, specifically in relation to an AR-15, noting that "AR-15s have split receivers. The upper receiver ordinarily houses the bolt or breechblock and is threaded to receive the barrel. The lower receiver houses the hammer and firing mechanism. In this case, the defendant purchased only a lower receiver. The indictment did not allege that he also possessed or received the upper portion of a split AR-15 receiver-the portion that houses the 'bolt or breechblock' and that attaches to the barrel. The government therefore conceded in response to the defendant's motion to dismiss that the lower receiver purchased did 'not perfectly fit the CFR section definition.'" (*See* Lynch Letter, Exhibit B, at 1-2).

Attorney General Lynch concluded that the Justice Department could not prevail in such cases under the current statutory framework, declaring that the decision in

*United States v. Jimenez*, case no. 15-cr-00372-JD-1 (N.D. Cal. 2016) and other federal prosecutions were either doomed because of vagueness and that the "relevant regulatory scheme did not cover the charged conduct."

B. Previous Courts' Dismissals Under Similar Facts Further Underscore the Vagueness of the Law Surrounding an AR-15 "Lower Receiver"

The orders granting dismissal for vagueness speak for themselves. The defendants request that this court incorporate the reasoning in the orders and determine that the lower receiver of the AR-15, for constitutional vagueness purposes, cannot constitute a "firearm" for the purpose of criminal prosecution under the statutes supporting the indictment against them. More specifically, the defendants ask that this court, based upon the above referenced reasoning, conclude that they could not have received fair notice, as required under the Constitution, in that, "even if [the defendants] had read the rules and regulations, [they] could not have known that the lower receiver of the AR-15 would be covered by them." *Jimenez* Order, pg. 5, lines 2-3. And that, the defendants, "could not turn to any statute or regulations, however complicated, to determine that acquiring the lower receiver alone would legally be treated as the criminal act of [possessing a] 'receiver' within the definition of what is a firearm." *Id*., pg. 7, lines 23-25.

Furthermore, the likelihood of arbitrary enforcement supports the finding that, as applied to the defendants, these statutes are unconstitutionally vague, the District Court in *Jimenez* stated "[s]ince the gun laws and regulations do not squarely state how split receivers for rifles like the AR-15 will be treated, ATF is perfectly free to take a totally different enforcement approach at any time. It might have enforced the current AR-15 lower receiver interpretation to a fare-thee-well for many years but that in no way means it can flip to a new interpretation should a future in-house counsel decide to break with her predecessor's advice…." *Id*., pg. 10, lines 9-14.

C. The Government's Letter Here Highlights the Arbitrary Enforcement Problem Associated with Vague Statutes

A perfect illustration of the constitutionally defective arbitrary enforcement problem is set forth in the government's letter. The letter states that, after having been informed of the "change in criminal enforcement litigating position in this district, investigator Chimileski explained that in his day-to-day regulatory duties as an Industry Operations Investigator, including meeting with federal firearm licensees in the field, he (and ATF more broadly) still considers finished lower receivers as meeting the definition of "firearm frame or receiver" under 27 C.F.R. § 478.11 that will soon be amended." This statement speaks for itself. While the government is to be lauded for disclosing this information, it does not change the fact that this investigator, despite the position of ATF legal counsel, federal district court judges, and the attorney general of the United States, still believes that his interpretation should have force of criminal law. *See Abramski v. United States*, 573 U.S. 169, 191 (2014) ("the critical point is that criminal laws are for courts, not for the government, to construe[]"); *quoting United States v. Apel*, 571 U.S. 359, 368 (2014) ("[w]e have never held that the government's reading of a criminal statute is entitled to any deference.") As Judge Selna stated in his tentative order dismissing the receiver charge against Roh, "knowledge of the ATF's position does not give ATF's unsupported position the force of law." *See* cases cited in tentative.

In conclusion, since Counts 1, 2 and 3 are premised on the lower receiver being the "firearm," thus requiring a federal firearms license to manufacture, the charges against Mr. Schlotterbeck must be dismissed as unconstitutionally vague.

## III. VAGUENESS: MANUFACTURING

The defendant's conduct with respect to the allegations of manufacturing firearms—the lower receiver—is not within the scope of the statute or the ATF-regulatory definition. As District Court Judge Selna ruled in the *Roh* case, "the statute and regulation are unconstitutionally vague as applied him. No reasonable person

would understand that a part constitutes a receiver where it lacks the components specified in the regulation." *Roh* order, pg. 6.

The claim that the assembling of the component parts amounts to manufacturing for which a federal manufacturing license is required suffers from the same vagueness problems as set forth above. Nowhere in the indictment, or the statutes supporting the indictment, is the term manufacturing defined. The common meaning of manufacturing, as set forth in the Merriam-Webster dictionary, is "something made from raw materials by hand or by machinery." Again, the only part of the weapon in question that was converted from raw materials, through the common understanding of manufacturing, was the lower receiver which, even with the milling, did not meet the statutory definition of a "firearm" for which a manufacturing license is required. As stated more thoroughly from the Supreme Court in *Kolender*, "[Due Process requires that a penal statute] define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender* at 357. In *Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 498 (1982), the Supreme Court, in differentiating vagueness challenges concerning criminal laws versus non-criminal laws held, "[t]he degree of vagueness that the Constitution tolerates-as well as the relative importance of fair notice and fair importance-depends in part on the nature of the enactment." The Second Circuit in *Thibodeau v. Portuondo*, 486 F.3d 61, 66 (2nd Cir. 2007) reiterated the highest form of vagueness scrutiny for criminal laws as, "a more stringent analysis [is required] when examining laws that impose criminal penalties because the consequences of imprecision are qualitatively more severe."

The vagueness of the manufacturing theory is highlighted in the governments letter where Investigator Chimileski states that "based on certain variables, the first two AR-15 type firearms transactions described in the indictment (i.e., the sales on September 23 and October 27, 2015 [Count 3 deals with September 23 transaction]) could *potentially* be considered *differently* under the federal firearm licensing scheme

than the four transactions that followed…." Investigator Chimileski further provides the 'legal opinion' that with respect to the first 2 transactions, they *may* require either a federal type 07 manufacturer's license or a type 01 dealer's license depending on the passing of title. With respect to the following 4 transactions, Investigator Chimileski explains that those transactions '*likely*' require a manufacturing license. Most importantly, Investigator Chimileski analysis concerning the question of which type of license would be required for the conduct in the indictment was "predicated on the assumption that a finished lower receiver qualified as a firearm 'frame or receiver' under 18 U.S.C. § 921(a)(3)(B) *not withstanding* ATF's then proposed rule making regarding receivers and other related issues of which Investigator Chimileski was aware." (*Emphasis* supplied.)

The indictment speaks of assembling parts into a firearm. Assembling is different than "something made from raw materials by hand or by machinery." The Miriam Webster definition is "to fit together the parts of." The criminal law in this case does not define "manufacturing." The fundamental canon of statutory construction "…that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning[,]" does not lend clarity the charged conduct. *Perrin v. United States*, 444 U.S. 37, 42 (1979). The defendants are, in the ordinary, contemporary and common description of their conduct, assembling-not manufacturing a firearm.

To add additional confusion and vagueness to the mix, what the defendants are doing could also be defined as gunsmithing—which does not require a federal firearm manufacturing license. Webster's Ninth New Collegiate Dictionary defines "gunsmith" as "one who designs, *makes*, or repairs small firearms." (*Emphasis* supplied.) This ordinary and common description fits the defendant's conduct.

The term manufacture, in this context and as applied to the defendants is ambiguous. Investigator Chemiliski's opinion that the conduct in the indictment "may" ore Likely" requites a manufacturing license is the degree and type of unconstitutional

vagueness that allows "the government …to pick and choose who is covered by [the term manufacturing] and who isn't." *United States v. Vest*, 448 F. Supp. 2d 1002, 1012 (S.D. Ill. 2006).

## IV. **The Rule of Lenity Applies**

The ambiguity that creates the constitutional vagueness implicates the rule of lenity. The rule of lenity is one of the original tools of statutory construction and "requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them." *United States v. Santos*, 553 U.S. 507, 514 (2008). The rule of lenity "places the weight of inertia upon the party that can best induce [law-makers] to speak more clearly[.]" *Id*. Importantly, the rule of lenity is not merely a convenient maxim of statutory construction, instead it is rooted in "fundamental principles of due process which mandate that no individual be forced to speculate . . . whether his conduct is prohibited." *Dunn v. United States*, 442 U.S. 100 (1979); *see also Lurie v. Wittner*, 228 F.3d 113 (2nd Cir. 2000)

This Court must apply the rule of lenity here to the term "manufacturing" and "resolve the ambiguity in [the defendants' favor]." *United States v. Thompson/Center Arms Company*, 504 U.S. 505 (1992). In doing so, it becomes clear that the defendants' conduct at issue likely does not constitute "manufacturing" in violation of 18 U.S.C. § 922(a)(1)(A). As such, under the Rule of Lenity, as well as the constitutional guarantee against vagueness, all charges against the defendants should be dismissed.

**CONCLUSION**

As applied to these defendants the law and the resulting indictment is unconstitutionally vague. To proceed to trial on this indictment violates their right to Due Process. The defendants ask that this case be dismissed.

Respectfully submitted,

DATED: June 2, 2022

By */s/ Edward M. Robinson*
Edward M. Robinson
Attorney for Defendant
*Travis Schlotterbeck*

By */s/ Jerome J Haig*
Jerome J Haig
Attorney for Defendant
*James Bradley Vlha*