# EXHIBIT A



United States Department of Justice

**United States Attorney's Office
Central District of California**

---

*Brian R. Faerstein*
*Phone: (213) 894-3819*
*E-mail: brian.faerstein@usdoj.gov*

*1300 United States Courthouse*
*312 North Spring Street*
*Los Angeles, California 90012*

April 22, 2022

**VIA E-MAIL**

Robison D. Harley, Jr.
C/o Julie Strickland and Maya Jauregui
Law Office of Robison Harley
(714) 972-8141
rob.harley@sbcglobal.net
juliestrickland5@icloud.com

Jerome J. Haig
Law Office of Jerome J. Haig
21143 Hawthorne Boulevard, Suite 454
Torrance, CA 90503
Tel: 424-488-0686
jerome@jeromehaiglaw.com

      Re:    United States v. Travis Schlotterbeck et al.,
                CR No. 19-00343-GW

Dear Counsel:

We write to provide additional information relating to the anticipated trial testimony of Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Senior Industry Operations Investigator / Industry Operations Intelligence Specialist Thomas M. Chimileski, Jr. in the above-referenced case, supplementing the expert disclosure letter we also are providing to you today.

In advance of the previous trial date of November 9, 2021, the government spoke with Investigator Chimileski to discuss his potential areas of expert testimony in this case. The government previously produced ATF notes summarizing information discussed during those prior discussions. (*See* USA_00008956.)

During those initial discussions, Investigator Chimileski explained that, based on certain variables, the first two AR-15-type firearm transactions described in the indictment (*i.e.*, the sales on September 23 and October 27, 2015) could potentially be considered differently under the federal firearm licensing scheme than the four transactions that followed (February 11, March 16, May 6, and June 15, 2016). Specifically, Investigator Chimileski explained that the

Defense Counsel
RE:  U.S. v. Schlotterbeck et al.
April 22, 2022
Page 2

question of whether the alleged conduct of building the first two AR-15-type firearms for the customers (*i.e.*, the CI and UC-1, respectively) required a federal Type 07 manufacturer's license or a Type 01 dealer's license could be influenced by the question of whether legal title had passed from defendants to the customers at the time the customers took possession of the unfinished lower receivers and then brought them back from the third-party machine shop after being finished.  Investigator Chimileski explained that, under the facts provided, while the latter four transactions would likely require a Type 07 license, the first two may have required a Type 01 license under certain circumstances.  Investigator Chimileski clarified that he did not have specific expertise in the area of the passing of legal title.  At the time, Investigator Chimileski's analysis of this question of which type of federal firearms license would be required under fact-specific circumstances was predicated on the assumption that a finished lower receiver qualified as a firearm "frame or receiver" under 18 U.S.C. 921(a)(3)(B), notwithstanding ATF's then-proposed rulemaking regarding receivers and other related issues of which Investigator Chimileski was aware.

More recently, in connection with renewed discussions regarding Investigator Chimileski's potential expert testimony in advance of the May 24, 2022 trial date, Investigator Chimileski took part in a telephone call with ATF legal counsel.  During the call, recent changes to certain ATF regulations, including those pertaining to the definitions of firearm frame or receiver and gunsmithing, were discussed.  During the course of that call, Investigator Chimileski came to learn that ATF had conceded as a criminal enforcement litigating position in certain federal districts, including the Central District of California, that an AR-15-type lower receiver did not strictly meet the soon-to-be-amended definition of "firearm frame or receiver" under 27 C.F.R. § 478.11 (*i.e.*, that the lower receiver does not contain the bolt or breechblock, and is not usually threaded at its forward portion to receive the barrel).  Investigator Chimileski generally was aware of the judicial rulings that underpinned ATF's change in litigating position but was not aware of the change in litigating position itself.

Subsequent to that call, we spoke with Investigator Chimileski regarding his opinion about the firearm transactions in this case.  Investigator Chimileski explained that, accepting the litigating position that the finished lower receivers from the first two firearm transactions did not strictly meet the then-existing definition of "firearm frame or receiver," he believed the overall conduct surrounding the builds and sales of the first two AR-15-type firearms (similar to the latter four builds and sales) would likely require a Type 07 manufacturer's license.

Notwithstanding the change in criminal enforcement litigating position in this District, Investigator Chimileski explained that, in his day-to-day regulatory duties as an Industry Operations Investigator, including meeting with federal firearm licensees in the field, he (and ATF more broadly) still considers finished lower receivers as meeting the definition of "firearm frame or receiver" under 27 C.F.R. § 478.11 that will soon be amended.

Relatedly, with respect to the change in criminal enforcement litigating position, the Executive Office for United States Attorneys (EOUSA) issued internal guidance regarding prosecutions

Defense Counsel
RE:  U.S. v. Schlotterbeck et al.
April 22, 2022
Page 3

involving firearms frames and receivers in July 2020.  The guidance addressed the issue of recent adverse district court decisions that had addressed whether the lower receiver of an AR-15-type firearm met the definition of "firearm" under relevant statutory and regulatory provisions.  EOUSA issued the guidance after having consulted other entities within the Department of Justice, including ATF's Office of Chief Counsel.  The guidance also was shared within ATF.  In the guidance, EOUSA provided general and specific guidance with respect to any matter or case relying on the theory that a frame or receiver, by itself, is a firearm.

This internal guidance may contain or constitute attorney or agency work product under Federal Rule of Criminal Procedure 16(a)(2), deliberative process privileged information, and/or other privileged and confidential information not subject to disclosure.  Accordingly, we will be willing to produce the guidance to you subject to the understanding that (i) we are not waiving any of these or other related protections more broadly, and (ii) the guidance will be produced to you subject to the protective order in this case.  If you request that we produce the guidance, please confirm this understanding, and we will send you a proposed stipulation to amend the protective order in due course.

Please let us know if you have any questions or would like to further discuss any of the matters raised above.

Very truly yours,

*[signature]*

Brian R. Faerstein
Michael J. Morse
Assistant United States Attorneys