# EXHIBIT B



# Office of the Attorney General
## Washington, D. C. 20530

September 8, 2016

The Honorable Paul Ryan
Speaker
U.S. House of Representatives
Washington, DC  20515

      Re:    *United States* v. *Jimenez*, --- F. Supp. 3d ---, 2016 WL 3556810
              (N.D. Cal. June 6, 2016)

Dear Mr. Speaker:

      Consistent with 28 U.S.C. 530D, I write to call your attention to the above-referenced
decision of the United States District Court for the Northern District of California.  A copy of the
decision is enclosed.

      This case concerns the prosecution of Alejandro Jimenez for purchasing the lower
receiver of an AR-15-style machinegun.  The defendant was charged both with unlawful
possession of a machinegun in violation of 18 U.S.C. 922(*o*) and with receiving and possessing a
firearm not registered to him in the National Firearms Registration and Transfer Record in
violation of 26 U.S.C. 5861(d).  He moved to dismiss the indictment on the ground that the
pertinent statutes and regulation were unconstitutionally vague as applied to him.  As the district
court explained, the "gist" of the defendant's argument was that the AR-15 lower receiver he
purchased did not fall within the regulatory definition of a "receiver."  *United States v. Jimenez*, -
-- F. Supp. 3d ---, 2016 WL 3556810, at * 3 (N.D. Cal. June 6, 2016).  The court agreed and
dismissed the indictment to the extent the prosecution was based on the defendant's purchase of
a "receiver," as that term is defined in the relevant regulation.

      As background, the National Firearms Act defines the term "machinegun" as any weapon
that shoots, is designed to shoot, or can be readily restored to shoot automatically, and provides
that the term includes "the frame or receiver of any such weapon."  26 U.S.C. 5845(b).  The Act
does not define the term "frame or receiver," but Section 479.11 of title 27 of the Code of
Federal Regulations does.  Under that provision, a "[f]rame or receiver" is the "part of a firearm
which provides housing for the hammer, bolt or breechblock and firing mechanism, and which is
usually threaded at its forward portion to receive the barrel."  27 C.F.R. 479.11.

      AR-15s have split receivers.  The upper receiver ordinarily houses the bolt or
breechblock and is threaded to receive the barrel.  The lower receiver houses the hammer and
firing mechanism.  In this case, the defendant purchased only a lower receiver.  The indictment
did not allege that he also possessed or received the upper portion of a split AR-15 receiver—the
portion that houses the "bolt or breechblock" and that attaches to the barrel.

The Honorable Paul Ryan
Page Two

The government therefore conceded in response to the defendant's motion to dismiss that the lower receiver purchased did "not perfectly fit the CFR section definition." 2016 WL 3556810 at *3. The government relied instead on an IRS memorandum and an ATF letter from the early 1970s and a 1977 ATF letter about a different rifle to argue that the lower receiver alone is a machinegun. The district court held that these documents did not provide the defendant with notice that his conduct violated the law. *Id.* at *3–4. The court also rejected, as unsupported by the record, the government's argument that one of the undercover agents who sold the lower receiver provided actual notice. *Id.* at *5. The court accordingly "resolve[d] the vagueness challenge on the receiver issue in Jimenez's favor." *Id.* at *6.

Whether the district court's decision is best understood as a vagueness ruling or, alternatively, as a conclusion that the relevant regulatory scheme did not cover the charged conduct, this case is not a suitable vehicle for appellate review. The relevant regulation indicates that a "[f]rame or receiver" provides housing for "the hammer, bolt or breechblock and firing mechanism." The lower receiver in this case housed only the hammer and firing mechanism, not the bolt or breechblock. As a result, the district court held that the regulatory definition of "frame or receiver" did not provide the defendant with notice that his conduct violated the law. To the extent that the Bureau of Alcohol, Tobacco, Firearms and Explosives believes that the definition should encompass the lower receiver of an AR-15 or should otherwise be modified or clarified, the appropriate course is regulatory or administrative action, not an appeal of the district court's decision in this case.

The government filed a notice of appeal as a protective matter. We intend to dismiss that appeal in 30 days. Please let me know if we can be of further assistance in this matter.

Sincerely,

Loretta E. Lynch
Attorney General

Enclosure

1

2

3

4                        UNITED STATES DISTRICT COURT

5                      NORTHERN DISTRICT OF CALIFORNIA

6

7    UNITED STATES OF AMERICA,              Case No.  15-cr-00372-JD-1

8                     Plaintiff,

9            v.                             **ORDER RE MOTION TO DISMISS**

                                            Re: Dkt. No. 12
10   ALEJANDRO JIMENEZ,

11                     Defendant.

12          A grand jury indicted defendant Alejandro Jimenez on two counts:  (1) possession of "a

13   machinegun, specifically, an AR-15-style machinegun lower receiver, with no serial number," in

14   violation of 18 U.S.C. § 922(o); and (2) receiving and possessing "a firearm, specifically, an AR-

15   15-style machinegun lower receiver, with no serial number, not registered to him in the National

16   Firearms Registration and Transfer Record," in violation of 26 U.S.C. § 5861(d).  Dkt. No. 6.  He

17   moves to dismiss both counts under Rule 12 of the Federal Rules of Criminal Procedure on the

18   ground that these laws are unconstitutionally vague as applied to him.  Dkt. No. 12.  The Court

19   grants the motion in part and denies it in part.

20                                    **BACKGROUND**

21          The charges arise out of a single event in July 2015 and the facts are uncontroverted.

22   Jimenez is a convicted felon who cannot legally purchase a firearm.  He met an undercover agent

23   from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") at a shopping mall in

24   Concord, California, to buy the lower receiver of an AR-15 rifle.  He was arrested immediately

25   after paying the agent and taking possession of the lower receiver.  The receiver had been milled

26   to accommodate an "auto sear" part for automatic firing but did not come with the part.  *See*

27   *generally* Dkt. No. 13 at 1-4 & Dkt. No. 12 at 11-12.

28

*United States District Court*
*Northern District of California*

As the indictment shows, the key physical element of the case against Jimenez is the lower receiver. A receiver is the portion of a gun that houses the operative parts of the firing mechanism -- the "parts that make a gun fire." *United States v. 1,100 Machine Gun Receivers*, 73 F. Supp. 2d 1289, 1291 (D. Utah 1999). Many guns have a single receiver. The AR-15, however, has a split receiver that consists of an upper portion and a lower portion. The parties agree that the AR-15 lower receiver houses the hammer and firing mechanism, and the upper receiver houses the bolt or breechblock and is threaded at its forward position to attach to the barrel. Dkt. No. 12 at 8; Dkt. No. 13 at 13.

## DISCUSSION

### I. LEGAL STANDARD

Jimenez brings an as-applied challenge of vagueness against the statutes in the indictment. Federal Rule of Criminal Procedure Rule 12(b)(1) provides that "[a] party may raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." At this stage of the case, the Court accepts as true the allegations of the indictment. *United States v. Blinder*, 10 F.3d 1468, 1471 (9th Cir. 1993).

A pretrial motion to dismiss a criminal case is appropriate "if it involves questions of law rather than fact." *United States v. Shortt Accountancy Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986) (citations omitted). A district court "may make preliminary findings of fact necessary to decide the questions of law presented by pretrial motions so long as the court's findings on the motion do not invade the province of the ultimate finder of fact." *Id.* (internal quotations and citations omitted). Jimenez and the Government have submitted declarations and exhibits in support of their arguments. Neither side has requested an evidentiary hearing.

### II. REGULATORY CONTEXT

The statutes at issue are not particularly complicated but do require some mapping to understand. The first count of the indictment charges Jimenez under 18 U.S.C. § 922(o) for

United States District Court
Northern District of California

2

United States District Court
Northern District of California

1  unlawful possession of a machinegun.[1]  For purposes of Section 922(o), "machinegun" has the

2  same meaning given in Section 5845(b) of the National Firearms Act ("NFA").  18 U.S.C.

3  § 921(a)(23).  The NFA states:

> The term "machinegun" means any weapon which shoots, is
> designed to shoot, or can be readily restored to shoot, automatically
> more than one shot, without manual reloading, by a single function
> of the trigger.  The term shall also include the frame or receiver of
> any such weapon, any part designed and intended solely and
> exclusively, or combination of parts designed and intended, for use
> in converting a weapon into a machinegun, and any combination of
> parts from which a machinegun can be assembled if such parts are in
> the possession or under the control of a person.

9  26 U.S.C. § 5845(b) (emphasis added).

10  　　　The second count charges Jimenez under Section 5861(d) of the NFA for possessing a

11  firearm not registered to him in the National Firearms Registration and Transfer Record.  Section

12  5845(a) of the NFA defines a "firearm" to include a machinegun and uses the same description in

13  Section 5845(b).  26 U.S.C. § 5845(a).

14  　　　Consequently, Section 922(o) and Section 5861(d) criminalize the possession of a

15  machinegun receiver, but neither statute says what a receiver is.  As the Government and Jimenez

16  agree, the definition of receiver for purposes of both statutes is stated in the Code of Federal

17  Regulations ("CFR").  The "receiver" is that "part of a firearm which provides housing for the

18  hammer, bolt or breechblock and firing mechanism, and which is usually threaded at its forward

19  portion to receive the barrel."  27 C.F.R. § 479.11.

20  **III. VAGUENESS CHALLENGE:  "RECEIVER"**

21  　　　The parties' motion to dismiss briefing focused primarily on the issue of whether the

22  meaning of "receiver" was unconstitutionally vague as applied to Jimenez.  Defendant contends

23  that nothing in the statutes or CFR gave him fair notice that possessing the lower receiver of an

24  AR-15 rifle would count as the criminal possession of "the receiver."  As a corollary, he argues

25  that the lack of clear standards allows the ATF to engage in arbitrary enforcement practices.

26

27  _____

28  [1]  As the Sixth Circuit has noted, the United States Code uses the atypical spelling of
"machinegun" rather than the standard "machine gun."  *United States v. Carter*, 465 F.3d 658, 661
(6th Cir. 2006).  For the sake of consistency, the Court follows the Code's practice.

1    The Ninth Circuit has set out a specific framework for evaluating whether a criminal law is

2    void for vagueness.  The "test is whether the text of the statute and its implementing regulations,

3    read together, give ordinary citizens fair notice with respect to what the statute and regulations

4    forbid, and whether the statute and regulations read together adequately provide for principled

5    enforcement by making clear what conduct of the defendant violates the statutory scheme."

6    *United States v. Zhi Yong Guo*, 634 F.3d 1119, 1122-23 (9th Cir. 2011).  When, as here, the

7    challenged laws do not involve First Amendment rights, vagueness is evaluated on an as-applied

8    basis and "must be examined in the light of the facts of the case at hand."  *United States v. Harris*,

9    705 F.3d 929, 932 (9th Cir. 2013).  The inquiry is specific to the individual defendant and "turns

10   on whether the statute provided adequate notice *to him* that *his particular conduct* was

11   proscribed."  *Id*. (emphasis added).  "For statutes involving criminal sanctions the requirement for

12   clarity is enhanced."  *Id*. (internal quotation marks and citations omitted).

13   The gist of Jimenez's challenge is that the AR-15 lower receiver does not fit the CFR

14   definition of a "receiver" that is illegal under the gun laws.  Significantly, the parties agree on all

15   the factors material to this challenge.  They agree that Section 479.11 of the CFR defines a

16   receiver as the "part of a firearm which provides housing for the hammer, bolt or breechblock and

17   firing mechanism, and which is usually threaded at its forward portion to receive the barrel."  This

18   means a receiver must have the housing for three elements:  hammer, bolt or breechblock, and

19   firing mechanism.  As the plain language of Section 479.11 shows, barrel threading is not a

20   mandatory element.  *See also 1,100 Machine Gun Receivers*, 73 F. Supp. 2d at 1292 (same).  They

21   also agree that the lower receiver for which Jimenez was arrested and indicted houses only two of

22   the required features -- the hammer and the firing mechanism.  Dkt. No. 12 at 8; Dkt. No. 13 at 13.

23   The Government forthrightly concedes that this format "does not perfectly fit the CFR section

24   definition."  Dkt. No. 13 at 13.

25   In light of this record, the Government's task is to show that Jimenez had fair notice that

26   his particular conduct was proscribed and that ATF's action against him was not arbitrary.  *Harris*,

27   705 F.3d at 932.  It has not succeeded.  Tellingly, the Government makes no effort to parse the

28   statutes or the CFR for proof of notice or clear standards.  In effect, it concedes that the plain

United States District Court
Northern District of California

1   language of the law does not answer the vagueness challenge.  This is tantamount to

2   acknowledging that even if Jimenez had read the rules and regulations, he could not have known

3   that the lower receiver of the AR-15 would be covered by them.  That alone is a strong blow

4   against the Government's position.

5       The Government's effort to find clear notice and standards outside the statutes and CFR is

6   unpersuasive.  It insists that the "'receiver' of an AR-15/M-16-style firearm is and always has

7   been the lower portion" like the one Jimenez acquired.  Dkt. No. 13 at 1; *see also id.* at 11 ("Since

8   the passage of the [Gun Control Act] of 1968, federal law has regulated the lower portion of the

9   AR-15/M-16 as the 'receiver' of the firearm.").  That might be the case, but the salient question is

10  how a person -- and specifically Jimenez -- contemplating the purchase of an AR-15 lower

11  receiver would have known about this interpretation or that ATF would treat buying one as a

12  crime.  The Government has little to offer in answer.

13      For the purported notice, the Government relies on two obscure bureaucratic

14  communications from the early 1970s.  One is a memorandum on Internal Revenue Service

15  letterhead dated March 2, 1971, from "J. R. Wachter" to "J. F. McCarren."  Dkt. No. 13 at Ex. 4.

16  This one-page document appears to be an inter-agency discussion of how the split receiver of the

17  M-16, the military version of the AR-15, should be taxed.  The document is striking for several

18  reasons, all of which run counter to the Government's argument.  It addresses a federal tax issue

19  and not a federal criminal gun law.  It gives lukewarm endorsement at best to treating a lower

20  receiver as the operative portion.  The letter says the M-16 receiver "apparently" has two portions

21  and that the lower portion "comes closest to meeting the definition of frame or receiver" in the

22  CFR but the author could "see some difficulty in trying to make cases against persons possessing

23  only the lower part of a receiver."  *Id.*  And the Government provides no facts showing that the

24  memo ever saw the light of day outside a tiny circle of government employees.  How this

25  document could have provided fair and adequate notice to anyone, let alone Jimenez, is left

26  unsaid.

27      The Government's other document is even less impressive.  This one is a January 19, 1972

28  letter from an ATF director to a gun seller in California.  Dkt. No 13 at Ex. 4.  This very short

two-paragraph letter says "in reply to your letter" that ATF "has determined for the purposes of marking and control, the lower receiver . . . is the receiver" for the AR-15. No citation to the United States Code, the CFR or any other publicly available document is provided. And once again, nothing indicates that anyone other than the author and recipient ever saw or knew about this letter or the ATF's purported enforcement determination. There is certainly no indication that Jimenez or anyone in his circumstances would ever have known about this document.

The Government also points to a 1977 letter about a different rifle, the FN/FAL. Dkt. No. 13 at Ex. 4. Like the AR-15, the FN/FAL has a split receiver, and the ATF's Central Region had decided that the lower portion should be treated as the receiver. In the letter, ATF's in-house counsel advises the acting assistant director to reject that decision and treat the FN/FAL's upper portion as the receiver. Counsel states that it is "totally incorrect" to treat all split receivers in the same way and that each "split receiver weapon should be examined" individually to determine "if the upper or lower half of the receiver more nearly fits the legal definition of 'receiver.'" *Id.* The letter ends by recommending that ATF advise the Department of Justice that the upper portion was the operative part for the FN/FAL because a defendant had pled guilty -- the implication is erroneously -- to machinegun possession based on the lower part.

The Government's reliance on this letter is particularly puzzling because it affirmatively undercuts the claim of fair notice. It voices disagreement and even a degree of confusion within ATF about how to handle split receivers under the law. It even recognizes, in the circumspect language of counsel, that some criminal convictions might be in doubt from the lack of enforcement clarity for split receivers. And like the other two documents the Government proffers, it has all the hallmarks of a purely internal communication that never reached the public at large or Jimenez specifically.[2]

Overall, the Government's position is striking for the utter lack of evidence showing that the public had fair notice of potential criminal liability for possessing only an AR-15 lower

---

[2] For completeness, the Court notes that the Government also provides a one-page letter that appears to be dated February 23, 1971. It is almost unreadable and in any event is substantively irrelevant.

1    receiver. This absence of adequate notice sharply distinguishes this case from those that denied a

2    vagueness challenge to other criminal laws. In *United States v. Harris*, for example, the Ninth

3    Circuit declined to set aside a conviction for conspiracy under a statute that prohibited carrying a

4    "concealed dangerous weapon" on aircraft. The defendant was an airport employee who snuck a

5    passenger's "pocketknife with a blade that is almost two-and-a-half inches long past a security

6    checkpoint" and then gave it back to the passenger who then boarded an airplane. *Harris*, 705

7    F.3d at 930. A Transportation Security Administration agent had previously prevented the

8    passenger from passing through a security checkpoint with the knife. The defendant appealed his

9    conditional guilty plea on the ground that "dangerous weapon" was too vague a formulation to

10   provide adequate notice to him that his conduct was proscribed. *Id.* at 932. The Circuit turned

11   that argument away in short order by finding that the defendant had ample notice that his conduct

12   was illegal. The defendant worked at the airport and knew the TSA had already blocked passage

13   of the knife, and signs throughout the airport expressly prohibited all knives. *Id.* On that record,

14   the Circuit had no trouble finding that it "should have been clear to him that § 46505's prohibition

15   of 'dangerous weapon[s]' includes a pocketknife with a blade almost two-and-a-half inches long"

16   and that the defendant had "adequate notice that his conduct was prohibited." *Id. See also Zhi*

17   *Yong Guo*, 634 F.3d. at 1122-23 (rejecting vagueness challenge to export violation because export

18   laws, although complex, could be pieced together to determine whether a particular item was

19   regulated).

20          No evidence of that type was presented here. Unlike the defendant in *Harris*, Jimenez did

21   not have any notice that buying the lower receiver of an AR-15 would subject him to criminal

22   penalties under federal law on the basis that the lower receiver would be treated as "the receiver"

23   under the statutory definition of "machinegun." Unlike the defendant in *Zhi Yong Guo*, he could

24   not turn to any statute or regulations, however complicated, to determine that acquiring the lower

25   receiver alone would legally be treated as the criminal act of acquiring a "receiver." Nothing

26   available to Jimenez put him on adequate notice that his conduct was prohibited under the

27   machinegun laws. *Harris*, 705 F.3d at 932.

28

United States District Court
Northern District of California

As a last gambit, the Government says that Jimenez simply must have known what he was doing was illegal based on a conversation he had with one of the undercover agents.  But that is pure ipse dixit, as the cited transcript shows:

| | |
|---|---|
| Defendant: | It's legal right now? |
| UC: | What do you mean 'it's legal right now'? |
| Defendant: | Yeah, like I could do it.  Like I could take it to the range right now and test it out. |
| UC: | That right there's a fucking machinegun.  You take that to the range you're gonna draw all kinds of attention. |

Dkt. No. 13 at 3.  Nothing here shows that Jimenez knew the lower receiver would be deemed illegal; to the contrary, he appears to think he was buying a legal item, and the undercover agent certainly did not clearly apprise him otherwise.

The Government's notice theory is further weakened by an element of randomness in the ATF's enforcement practices.  For some split receiver rifles like the FN/FAL, the upper receiver is classified as a weapon but the lower receiver is legal to acquire.  Dkt. No. 13 at 12-13.  The opposite is true for the AR-15.  The Government agrees that it is perfectly legal to possess an AR-15 upper receiver but the lower receiver is "the receiver" for statutory and regulatory purposes.  Dkt. No. 13 at 5.  How would any citizen, and specifically Jimenez, be on fair notice of these nuances?  Where are these enforcement interpretations spelled out in plain language for all to see?  The Government does not say.  Certainly nothing in CFR Section 479.11 would have given Jimenez fair warning before making his purchase and neither the ATF nor any other resource provided any independent notice.  If the enforcement agencies had treated all receivers, including portions of split receivers, as illegal, it is possible Jimenez's vagueness argument would result in a different outcome.  But they didn't, and the patchwork of enforcement practices is another strike against the Government's position.  *See United States v. Ocegueda*, 564 F.2d 1363, 1365-66 (9th Cir. 1977) (rejecting vagueness challenge to "unlawful user" of narcotics in a statute because "use of heroin by laymen is not permissible in any circumstance" but noting that if the defendant had "used a drug that may be used legally by laymen in some circumstances . . . we would be faced with an entirely different vagueness challenge to the term 'unlawful user' in s 922(h)(3)").

1   The notice theory was the Government's main opposition to Jimenez's motion, and its

2   ancillary arguments fare no better. It suggests that two circuit courts outside the Ninth Circuit

3   have rejected vagueness challenges like Jimenez's. *See* Dkt. No. 13 at 7-8 (citing *United States v.*

4   *Carter*, 465 F.3d 658 (6th Cir. 2006) and *United States v. Williams*, 364 F.3d 556 (4th Cir. 2004)).

5   Not true. Neither decision involved an AR-15 rifle, split receivers or other facts similar to the

6   ones here and neither provides any useful guidance on whether a defendant in Jimenez's position

7   should have known that an AR-15 lower receiver in the configuration he possessed would be

8   illegal under the "receiver" portion of the machinegun definition.

9   The Government also contends that sustaining defendant's position on the receiver issue

10  would permit "felons, addicts, and other prohibited persons . . . [to] possess with impunity" the

11  receivers of a semi-automatic or fully automatic AR-15/M-16. Dkt. No. 13 at 15. That goes too

12  far. The only issue here is whether this defendant had notice that his conduct was criminal under

13  the specific circumstances of this case. Other cases might involve facts that show adequate notice

14  to the defendant or vitiate a vagueness challenge on other grounds.

15  In addition, however grave and legitimate the Government's concerns may be, they do not

16  compel a different result in this case. As the Supreme Court has held:

> Appellants stress the need for strengthened law enforcement tools
> to combat the epidemic of crime that plagues our Nation. The
> concern of our citizens with curbing criminal activity is certainly a
> matter requiring the attention of all branches of government. As
> weighty as this concern is, however, it cannot justify legislation
> that would otherwise fail to meet constitutional standards for
> definiteness and clarity. *See Lanzetta v. New Jersey*, 306 U.S. 451
> (1939). . . . Although due process does not require "impossible
> standards" of clarity, *see United States v. Petrillo*, 332 U.S. 1, 7-8
> (1947), this is not a case where further precision in the statutory
> language is either impossible or impractical.

23  *Kolender v. Lawson*, 461 U.S. 352, 361 (1983). *Kolender* involved an attack on the facial validity

24  of a statute but the spirit of its holding is equally apt here. The solution to the Government's

25  worry is not to relax our constitutional protections but to give proper public notice and possibly

26  revise the regulations to make plain that conduct like Jimenez's will result in criminal exposure.

27  That resolves the vagueness challenge on the receiver issue in Jimenez's favor. As a

28  closing point, the Court is concerned about a troubling theme in the Government's argument on

United States District Court
Northern District of California

this issue. In essence, the Government says that its construction of the gun laws should prevail and Jimenez should go to jail because the ATF has consistently enforced that interpretation of the law. That is a questionable perspective to take on law enforcement. The evidence of consistency and notice are weak, as discussed, but even so, consistency alone does not make a practice constitutional, reasonable or fair. *See F.J. Vollmer Co., Inc. v. Magaw*, 102 F.3d 591, 598 (D.C. Cir. 1996) (although ATF "had followed its interpretation of the Firearms Act since at least the early 1980s, we do not see how merely applying an unreasonable statutory interpretation for several years can transform it into a reasonable interpretation."). And the value of ATF's claimed consistency is doubtful. Since the gun laws and regulations do not squarely state how split receivers for rifles like the AR-15 will be treated, ATF is perfectly free to take a totally different enforcement approach at any time. It might have enforced the current AR-15 lower receiver interpretation to a fare-thee-well for many years but that in no way means it can't flip to a new interpretation should a future in-house counsel decide to break with her predecessor's advice from the 1970s. The vagueness doctrine is intended to foreclose that opportunity for arbitrary enforcement decisions.

The indictment is dismissed to the extent the Government's prosecution of Jimenez under 18 U.S.C. § 922(o) and 26 U.S.C. § 5861(d) is based on the theory that he possessed a "receiver" as that term is defined in 27 C.F.R. § 479.11.

## IV. VAGUENESS CHALLENGE: "MACHINEGUN"

The motion is denied with respect to prosecution under another part of the machinegun definition. As Jimenez acknowledges, there are other ways of meeting the definition of "machinegun" under 26 U.S.C. § 5845(b) beyond possessing the "receiver." Based on the facts of this case, one possible avenue is that the AR-15 lower receiver Jimenez possessed could be deemed a "part designed and intended solely and exclusively . . . for use in converting a weapon into a machinegun."

Jimenez frames an attack on this possibility as a vagueness challenge, but that is misdirected. Whether he can be convicted on this basis is a question of fact and not one of law or vagueness, and Jimenez's argument underscores that important difference. He says, for example,

10

1  that "the object allegedly possessed by Mr. Jimenez could not possibly fit within this category"

2  because "even with the milling and the hole drilled," the lower receiver "would still operate as a

3  semi-automatic weapon when the upper receiver and necessary semi-automatic components are

4  attached to it." Dkt. No. 12 at 11.

5      The Government contends that Jimenez had "full knowledge of the receiver's critical

6  modifications that allow automatic fire." Dkt. No. 13 at 7. It also alleges that automatic

7  functionality was the reason Jimenez sought to purchase this lower receiver. *See id.* at 18 (arguing

8  defendant purchased the lower receiver "because it had the capability when additional parts were

9  added to fire automatically").

10     This dispute raises fact issues that are not suitable for resolution on a motion to dismiss.

11  As an initial matter, the Court cannot conclude on the current record that the term "machinegun" --

12  excluding "frame or receiver" -- was vague as applied to defendant. If Jimenez had read 26

13  U.S.C. § 5845(b) prior to making his purchase, he would fairly have been on notice that his

14  conduct could be proscribed because what he was about to purchase could be a "part designed and

15  intended solely and exclusively . . . for use in converting a weapon into a machinegun." *Harris*,

16  705 F.3d at 932. Whether the evidence ultimately shows that the lower receiver he bought fits that

17  definition is a question that the Court cannot answer on a motion to dismiss. *Shortt Accountancy*

18  *Corp.*, 785 F.2d at 1452. That is for the trier of fact to decide.

19     Neither party addressed the "machinegun" issue in any detail. Consequently, the Court

20  does not foreclose at this time prosecution of Jimenez under any part of the machinegun laws not

21  dependent on possession of a "receiver."

22                          **CONCLUSION**

23     The indictment is dismissed to the extent the Government's prosecution in this case is

24  based on the theory that defendant possessed a "frame or receiver" under the relevant statutory and

25  regulatory framework. Dismissal is denied for prosecution under "machinegun."

26     **IT IS SO ORDERED.**

27  Dated: June 6, 2016

28                          _____
                           JAMES DONATO
                           United States District Judge

<u>United States v. Roh</u>, Case No. SACR 14-167 JVS

<u>Tentative Minute Order re Post Trial Motions</u>

On October 2, 2014, Joseph Roh ("Roh") was indicted for violating the provisions of the Gun Control Act by willfully engaging in the illegal manufacture of firearms, 18 U.S.C. § 922(a)(1)(A).  (Docket No. 1.)   The parties waived jury (Docket No. **X**), and the matter was tried to the Court beginning February 20-23, 2018.  (<u>See</u> Docket Nos. 118, 120-22.)  At the conclusion of evidence, the Court set a briefing schedule for Roh's post trial motion for acquittal and dismissal (Docket No. 122), and subsequently set a date for argument on the Motion and closing arguments (Docket No. 142).

Now before the Court are Roh's post trial motions.  He moves for acquittal under Rule 29 of the Federal Rules of Criminal Procedure and for dismissal on grounds on unconstitutional vagueness.  (Docket Nos. 124, 139.) The Government has filed an opposition (Docket No. 132), and Roh has replied (Docket No 137).

For the reasons set forth below, the Court grants in part and denies in part the Motion.

I.      <u>The Indictment.</u>

The single-count Indictment charges that Roh "not being licensed as an importer, manufacturer, or dealer in firearms, willfully engaged in the business or manufacturing and dealing firearms, to wit, hundreds of AR-15-type lower receivers, completed pistols, and completed rifles" in violation of 18 U.S.C. § 922(a)(1)(A).  (Docket No. 1.)  The Indictment tracks the language of the statute:

It shall be unlawful--
(1) for any person--
(A) except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms, or in the course of such business to ship, transport, or receive any firearm in interstate. or foreign commerce;

1

(18 U.S.C. § 922(a)(1)(A).)

The term "firearm" is defined by statute and further defined by regulations issued by the Bureau of Alcohol, Tobacco, and Firearms.  The statute provides:

> The term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) any firearm muffler or firearm silencer; or (D) any destructive device. Such term does not include an antique firearm.

(18 U.S.C. § 921(a)(3); emphasis supplied.)  The regulations define a receiver:

> Firearm frame or receiver. That part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel.

(27 C.F.R. § 478.11.)

The core dispute here is whether an unfinished AR-15 receiver constitutes a firearm under the statute and regulations.

II.   <u>Legal Standards.</u>

Rule 29 of the Federal Rules of Criminal Procedure provides in part: "After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction."  (Fed. R. Crim. P. 29(a).)  On a Rule 29 motion, "The court, after viewing the evidence in the light most favorably to the government, must determine whether the jury could reasonably find the defendant guilty beyond a reasonable doubt."  <u>United States v. Bernhardt</u>, 840 F.2d 1441, 1448 (9th Cir. 1988).

Criminal statutes must give fair notice of their scope:

> It is a basic principle of due process that <u>an enactment is void for vagueness if its prohibitions are not clearly defined</u>. Vague laws offend several important values. First, because we assume that man is free to steer between lawful and unlawful conduct, <u>we insist that laws give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly</u>. Vague laws may trap the innocent by not providing fair warning. Second, if arbitrary and discriminatory enforcement is to be prevented, laws must provide explicit standards for those who apply them.

<u>Grayned v. City of Rockford</u>, 408 U.S. 104, 108 (1972) (emphasis supplied). More stringent standards are applied where the vagueness challenge involves a criminal statute or the exercise of constitutional rights.  <u>Village of Hoffman Estates v. Flipside Hoffman Estates, Inc.</u>, 455 U.S. 489, 498-99 (1982); <u>McCormack v. Herzon</u>, 788 F.3d 1017, 1031(9th Cir. 2015).

III.    <u>Discussion.</u>

Roh operated Rogh Industries, a machine shop which catered to gun enthusiasts.  Part of his operation consisted in manufacturing AR-15 semi-automatic assault rifles.  One of the steps is the manufacture of a receiver.  Rather than initiating the process of machining a receiver, Roh had his customers push a button on the milling machine which initiated the process.  But for that one step, Roh performed all of the steps in manufacturing completed AR-15s.

The correspondence and testimony establish that Roh was informed of ATF's position that his operations, including the manufacture of finished receivers, constituted unlicensed manufacture of firearms.  In response to correspondence from Roh, the AFT examined samples of machined AR-15 parts and advised that they were not "classified as a 'firearm." (Ex. 132.)  A year later, the ATF wrote with regard to receivers that they would be "classified by our Branch as a 'firearm.'"  (Ex. 134, p. 4.)[1]  On December 23, 2013, the ATF sent Roh a cease and desist letter informing him that his operations constituted the

---

[1]There is a dispute as to whether this letter was ever sent and received.  (<u>See</u> Tr. ) For present purposes, the Court finds that Roh was on notice that the ATF "classified" finished receivers as "firearms."

illegal unlicensed manufacture of firearms.  (Ex. 126.)  Roh signed a written acknowledgment of the notice.  (Id., p. 2.)

There is no dispute that Roh does not have a license for firearms manufacturing.

The Government has two theories: Roh's manufacturing of receivers violated the statute, and separately Roh sold firearms.  The Court deal with each theory.

    A.    <u>Receivers.</u>

The definition of receiver under the ATF regulations requires four component: a "housing for the <u>hammer, bolt or breechblock, and firing mechanism</u>, and which is <u>usually threaded at its forward portion to receive the barrel</u>."  (27 C.F.R. § 478.11; emphasis supplied.)  The evidence at trial was uncontroverted that a finished AR-15 receiver does not contain a bolt or breechblock and is not threaded to receive the barrel.  (E.g., Tr. Feb. 21, 2018, pp. 111-13 (Jackson); Tr. Feb. 24, 2018, pp. 65-67 (Hoffman).)  Indeed, the Government concedes the point in its opposition.  (Opposition, p. 23.)  The plain conclusion is that the finished receiver is not a firearm.

The Government's theory of conviction rests on proposition that the AFT had "classified" finished receivers as firearms, notwithstanding the conflict with the definition published by the ATF in its regulations.  Examination of Government expert Daniel Hoffman revealed that there is no "objective classification scheme or system in place."  (Tr. Feb. 24, 2018, p. 44.)  ATF personnel simply make a determination in response to individual inquiries.  (Id.)  Usually, there is no consultation with ATF counsel.  (Id., p. 50.)  More significant for present purposes is that there is no way for the public to learn the particulars of the classification system.  (Id., pp. 44-45, 55.)  The only way a person can learn of an AFT classification is to make direct contact with the AFT.  (Id., pp. 48-49, 55-56.)

It is clear that the ATF's classification of articles as firearm does not comply with the rule making process which brought into effect the public definition for firearm found in Section 478.11.  The rule making process under

Administrative Procedures Act, 5 U.S.C. § 551, requires promulgation of a rule and eventual publication of the rule in the Federal Register.  5 U.S.C. § 552(a).

United States v. Picciotto, 875 F.2d 345 (D.C. Cir. 1989), illustrates the flaw in seeking criminal prosecution on the basis of an unpublished classification.  There the Park Service had adopted regulations, but informally added "additional conditions."  The defendant was prosecuted for violating one of those conditions.  The Court rejected the prosecution:

> A rule which is subject to the APA's procedural requirements, but was adopted without them, is invalid. Certainly, a criminal prosecution founded on an agency rule should be held to the strict letter of the APA.

(Id. at 346; internal citation deleted.)  Other circuits have similarly recognized that criminal liability cannot be imposed where the agency has failed to comply with APA's procedures, and therefore had not given fair notice.  United States v. Cain, 583 F.3d 408, 420, 422-23 (6th Cir. 2009) (sex offender regulations); United States v. Reynolds, 710 F.3d 498 (3d Cir 2013) (same); United States v. Valverde, 628 F.3d 1159, 1168-69 (9th Cir. 2010).

The Government would distinguish Picciotto on the ground that the Park Service had in fact made a substantive change.  (Opposition, pp. 23-35.)  But that is the point: By deleting certain requirements for a receiver, the AFT made a substantive change in the regulation.

The Government contends that Roh knew that AR-15 lower receivers constituted "receivers."  (Id., pp. 36-38.)  He certainly knew through correspondence with the AFT and visits that it was the ATF's position that the lower receiver were "receivers."  But his knowledge of the AFT's position does not give ATF's unsupported position the force of law.  Significantly, in its discussion of Roh's knowledge it cites neither case law nor statutory authority.

The Court rejects the Government's position here with respect to receiver as a mere and permissible interpretation.  (Opposition, p. 31.)  There is not simply tension between the Government's position and Section 478.11; there is a disconnect.  (See id., p. 32.)  The Government counters with Cabais v. Egger,

690 F.2d 234, 238 (D.C. Cir. 1982), for the proposition that a position may nevertheless be a valid interpretation even if it contradicts the statute. But there is a qualifier: The interpretation must reasonable.  (Id. at 238 n.10, 239.)  In fact, the D.C. Circuit rejected the the Labor Department's interpretation of the statute in Cabais where it its interpretation imposed on the states a formula for determining individual pension contribution not found in the statute.  Here, the converse is true: ATF is reading out of the regulation express requirements for a receiver.  That is not reasonable.[2]

In United States v. Evans, 712 F. Supp. 1435, (D. Mont. 1989), aff'd 928 F.2d 858 (9th Cir. 1991) the court held that a formal regulation was not necessary to give content to the term "any combination of parts from which a machine gun can be assembled."  The term  "combination" was enacted by amendment, and evidenced a Congressional intent to cover whatever parts were used in the final make up of the machine gun.  (Id. at 1438-39.)  Unlike the statute in Evans, no broad interpretation can support an interpretation which fails to take into account the express components of a receiver.  (Id. at 1443-44.)  The ATF's classification here cannot be accepted as a mere interpretation where that interpretation is wholly contradictory to its existing regulations.

ATF's notices to Roh were notices of its classification of receivers.

The Court finds that Roh's activities with respect to the production of finished receivers were not within the scope of the statute or the ATF regulatory definition. Therefore, Roh did not violate the law by manufacturing receivers.  The Court further finds that with respect to manufacturing receivers, the statue and regulation are unconstitutionally vague as applied here.  No reasonable person would understand that a part constitutes a receiver where it lacks the components specified in the regulation.

In addition, the Court finds that when applied to include finished lower receivers, Section 478.11 is unconstitutionally vague.  Grayned, 408 U.S. at 108.  This conclusion is unchanged and even reinforced when one considers the Government's argument that the preamble to the section supports its position. )

_____

[2]The Government's recitation of "strawman" cases is inapposite.  (Opposition, pp. 32-33, citing e.g. United States v. Nelson, 221 F.3d 1206, 1210 (11th Cir. 2000).

6

(Opposition, pp. .)
The definitions in the section are applicable "[w]hen used in this part and in forms prescribed under this part, where not otherwise distinctly expressed or manifestly incompatible with the intent thereof." (27 C.F.R. § 478.11, Preamble.)   At least for criminal purposes, putting a defendant to discern whether a definition is "manifestly incompatible with the intent" of the regulation is a far cry from giving fair notice of the scope of the regulation.[3]

In United States v. Jiminez, 191 F. Supp. 3d 1038, 1045 (N.D. Cal. 2016), the court found that the definition of receiver in a parallel provision of the regulations, 27 C.F.R. §479.11, was unconstitutionally vague.  Just as here, the court focused on the language of the regulation:

> Tellingly, the Government makes no effort to parse the statutes or the CFR for proof of notice or clear standards. In effect, it concedes that the plain language of the law does not answer the vagueness challenge. This is tantamount to acknowledging that even if Jimenez had read the rules and regulations, he could not have known that the lower receiver of the AR-15 would be covered by them.  That alone is a strong blow against the Government's position.

(Id. at 1041; emphasis supplied.)  So too here.  Moreover, the Jiminez court specifically rejected the argument that the need to strengthen law enforcement overrode the vagueness defect.[4]  (Id. at 1044.)

Roh is entitled to acquittal of the charges here to the extent they are based on a definition of receiver supported only by the ATF's so-called classification.  As applied here, Section 479.11 is void for vagueness.

B. Assembly of Firearms.

---

[3]In view of the Court's analysis, the Court finds that it is unnecessary to reopen the record to take the testimony of ATF counsel, and rejects Roh's request.  (See Rebuttal, pp. 17-18.)

[4]The Government suggests that Jiminez left room for the possibility that a different record in a different case might show  "adequate notice to the defendant or vitiate a vagueness challenge on other grounds." (Opposition, pp. 27-28 n.9, citing Jiminez, 191 F.3d Supp. at 1044.)  The Court has already found that notice of an unsupported classification can not rise to such notice.

7

The Court focuses more broadly on Roh's activities. There is no question that he manufactured completed AR-15s. Dr. Frank Juste's purchase was typical. He paid for the purchase and assembly of his AR-15. (Tr. Feb. 21, 2018, pp. 118-20.) The parties stipulated that approximately 25 percent of Roh's customers received a completed AR-15 or a completed pistol. (Docket No. 101, p. 5.)[5]

Roh's contention that the communications between ATF and Roh focused "exclusively" on lower receiver is mistaken, and incorrectly assumes that ATF was required to inform him of the law. (See Reply, pp. 24-25.) The December 2013 cease-and-desist letter was directed to all of Roh's operations. (Ex. 126.) It focused specifically on how the rifles were manufactured, including customer performance of some steps. (Id., p. 1, third paragraph.) Other than arguing a lack of notice, Roh does not contest the showing her that he in fact manufactured and sold completed firearms.

Apart from the AR-15 sales, Rho sold Agent Jackson a pistol in violation of California law.

This conduct, apart from the debate over receivers, is sufficient to support a finding beyond a reasonable doubt that Roh wilfully engaged in the unlicensed manufacture and sale of firearms in violation of 18 U.S.C. 922(a)(1)(A).

III.   Conclusion.

The Court grants the Motion for Acquittal with respect to the manufacture of AR-15 receivers, but otherwise denies the Motion.

---

[5]See also Customer Appointment Records, Exs. 415, 470B, 470D.

8