TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
BRIAN R. FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorney
Environmental and Community Safety Crimes Section
DAN G. BOYLE (Cal. Bar No. 332518)
Assistant United States Attorney
Asset Forfeiture Section
    1300/1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3819/2426
    Facsimile: (213) 894-0141/0142
    E-mail:   Brian.Faerstein@usdoj.gov
             Daniel.Boyle2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>      v.<br><br>TRAVIS SCHLOTTERBECK and JAMES BRADLEY VLHA,<br><br>      Defendant. | No. CR 19-343-GW<br><br>GOVERNMENT'S REPLY IN SUPPORT OF MOTION *IN LIMINE* #3 TO EXCLUDE TESTIMONY OF PROPOSED DEFENSE EXPERT STEVEN D. LIEBERMAN, ESQ.<br><br>Hearing Date: June 23, 2022<br>Hearing Time: 8:00 a.m.<br>Location:    Courtroom of the<br>                    Hon. George H. Wu |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Brian Faerstein and Dan Boyle, hereby files its reply in support of its motion in limine to exclude testimony of proposed defense expert Steven D. Lieberman, Esq.

    This reply is based upon the attached memorandum of points and
//

authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: June 7, 2022

Respectfully submitted,

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

    /s/
BRIAN R. FAERSTEIN
DAN G. BOYLE
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Following defendants' disclosure of a purported expert report from Steven D. Lieberman, Esq., the government moved in limine to exclude Mr. Lieberman's testimony on multiple "gatekeeping" grounds under the Federal Rules of Evidence and Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).  (Dkt. No. 82 ("MIL #3").) The Court expressed similar concerns about Mr. Lieberman's proposed testimony during a status hearing on May 12, 2022.

In response to the government's challenges and the Court's concerns, defendants filed an opposition that raises more questions than it answers.  (Dkt. No. 108 ("Opp.").)  Defendants effectively withdraw Mr. Lieberman's initial report and disclose four revised topics for his proffered testimony.  Yet defendants do not respond to, much less adequately address, the numerous foundational deficiencies the government identified in its MIL #3, which have not simply disappeared as a result of defendants' revised disclosure and cursory opposition.  Moreover, defendants' revised topics for Mr. Lieberman's testimony present many of the same shortfalls under Daubert and the Federal Rules of Evidence as the information in his initial report.  The burden is on defendants to prove the admissibility of Mr. Lieberman's testimony, and they have failed to do so.  The Court should exclude Mr. Lieberman's proposed testimony.

**II.  ARGUMENT**

    **A.  Mr. Lieberman's Proposed Testimony Set Forth in Defendants' Initial Disclosure Should Be Stricken in its Entirety**

During the May 12, 2022 status conference in this case, the Court raised questions about the admissibility of Mr. Lieberman's

proffered expert testimony set forth in his initial report, in light of the issues raised in the government's MIL #3.  Rather than address those questions or defend Mr. Lieberman's report, defendants have effectively withdrawn the report as the basis for Mr. Lieberman's proffered expert testimony and offered a revised scope of topics.

Specifically, in footnote 1 to their opposition, defendants state:  "Mr. Lieberman's report contains both his expert views and his opinions.  To the extent that his opinions regarding [sic] firearms, the 2nd Amendment of the United States Constitution, his advocacy, and his blog posts, those will not be part of the defendant's [sic] presentation.  The defendants never proffered the report as entirely admissible.  Whether the government wishes to cross-examine Mr. Lieberman on such issues can be addressed at trial."  (Opp. at 4.[1])

Defendants thus acknowledge that Mr. Lieberman's report contains multiple categories of information having no relevance (not to mention no requisite foundation, reliability, or utility) to the issues in this case.  While defendants claim the report contains "both his expert views and his opinions," they make no effort to clarify what topics or information in the report possibly could meet the threshold requirements for expert testimony under Rule 702. Defendants merely claim they "never proffered the report as entirely admissible," punt on whether the government should be permitted "to cross-examine Mr. Lieberman" on issues raised in the report, and effectively abandon the report as an adequate disclosure under Federal Rule of Criminal Procedure 16(b)(1)(C).  And rightfully so.

---

[1] All references to pages in filings on the Court's docket refer to the page numbers in the ECF-filing banner at the top of the page.

The report simply cannot serve as sufficient notice to the government (or the Court) of a "written summary of any testimony that the defendant intends to use under Rules 702, 703, or 705 of the Federal Rules of Evidence." Fed. R. Crim. P. 16(b)(1)(C).

As explained in MIL #3 and discussed further below, the government submits that Mr. Lieberman's proffered testimony be excluded in its entirety. However, should the Court find Mr. Lieberman can testify in some capacity, the government respectfully requests that the Court find that his report – attached to the government's MIL #3 as Exhibit B (Dkt. No. 82-2) – be stricken as a basis for the scope of testimony he can provide at trial.

**B. Defendants Have Failed to Satisfy Their Burden of Proving the Admissibility of Mr. Lieberman's Proffered Testimony**

The government's MIL #3 identified numerous admissibility deficiencies in Mr. Lieberman's proffered testimony under the "gatekeeping" principles the Court must consider. The Court recognized these issues during the May 12, 2022 hearing. The burden was on defendants to rebut the deficiencies highlighted by the government and prove the admissibility of the expert testimony they proffered. Lust v. Merrell Dow Pharmaceuticals, Inc., 89 F.3d 594, 598 (9th Cir. 1996). Defendants have entirely failed to do so.

In particular, Mr. Lieberman's initial report, although now withdrawn, laid bare Mr. Lieberman's considerable lack of familiarity with core, material facts in this case (despite his professing to having reviewed the "[t]otality of the discovery"), significantly calling into question whether his "testimony is based on sufficient facts or data." Fed. R. Evid. 702(b). (See also MIL #3 at 12-14.) The report also reflected that Mr. Lieberman's foundation in key

3

legal principles was similarly deficient.  He attested to relying solely on subparts of two statutes and two ATF rulings (without reference to another ATF ruling directly implicated in this case), raising significant doubts about his "testimony [being] the product of reliable principles and methods" and whether he would be "reliably appl[ying] the principles and methods to the facts of the case."  Fed. R. Evid. 702(c)-(d).  And the report further exposed the lack of "fit" of Mr. Lieberman's proposed testimony to the facts of this case, such that it would not "help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702(a); Daubert, 509 U.S. at 591-92.  (See also MIL #3 at 16-18.)

Defendants responded to virtually none of these critical "gatekeeping" issues raised by the government.  Their narrowing of the scope of Mr. Lieberman's proposed testimony does not simply wipe this slate clean.  Defendants injected these issues into the case, and they were obliged to meet their burden of proving the admissibility of the testimony in response to the government's motion.  Their opposition does not even attempt to do so.

In addition, defendants have not provided further bases as to the "knowledge, skill, experience, training, or education" that qualify Mr. Lieberman to testify as an expert regarding the issues in this case.  Fed. R. Evid. 702.  The bulleted list of qualifications defendants cite in their opposition - including Mr. Lieberman's federal and state licenses as a firearms dealer, his role as an apparent firearms use and safety instructor, and his experience as a competitive long-distance shooter - mirror information previously provided in Mr. Lieberman's CV that the government attached as

4

Exhibit C to MIL #3.[2]  (Compare Opp. at 6-7 with Dkt. No. 82-3.)  The central thrust of Mr. Lieberman's CV and the websites he maintains for his businesses is that he is primarily a use of force trainer, criminal defense attorney, and gun rights advocate with incidental and anecdotal knowledge about the issues involved in this case.  That does not qualify him as offering any "scientific, technical, or other specialized knowledge [that] will help the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702(a).  The burden is on defendants, and they have not met it.

Defendants also fail to address any of the Rule 403 concerns raised by the government.  Specifically, the minimal probative value of Mr. Lieberman's testimony (based on his lack of factual and legal foundation, reliability, and "fit") is substantially outweighed by numerous dangers including confusing the issues and misleading the jury, undue delay and wasting time, and unfair prejudice.  (See MIL #3 at 21-23.)  Most critically, allowing a defense attorney and gun rights activist such as Mr. Lieberman to don the "powerful and quite misleading" cloak of expert testimony would mislead the jury and unfairly prejudice the government.  Daubert, 509 U.S. at 595.

In sum, even with the narrowed scope of proposed testimony discussed below, defendants have not answered the critical questions they raised through Mr. Lieberman's initial report.  The burden is theirs, and thus his proffered testimony must be excluded.

---

[2] Defendants also characterize Mr. Lieberman as a "[c]ourt certified expert on classification of an assault weapon."  Opp. at 7.  Mr. Lieberman's CV, however, notes only that, in one prior case, he "[p]rovided expert witness services for issues involving the legal classification of assault weapons under the California Penal Code" without any indication as to whether or when he testified or was qualified as an expert by the court.

5

**C. Mr. Lieberman's Narrowed Grounds for Proffered Expert Testimony Still Fail Threshold Foundational and Admissibility Requirements**

In their opposition, defendants identify four topics as their revised disclosure of Mr. Lieberman's proffered expert testimony. The government will address the specific foundational and admissibility shortfalls of each of these proposed items in turn.[3]

1. <u>"What constitutes a 'firearm' under federal law"</u>

Defendants first propose that Mr. Lieberman will testify about "what constitutes a 'firearm' under federal law," with a focus on "when is a piece of metal sufficiently finished and altered such that the government views it as a firearm." (Opp. at 5.)

Defendants provide little basis as to what qualifies Mr. Lieberman to opine on what "the government views . . . as a firearm." He is not a former or retired ATF employee. In his initial report, he cited to two ATF rulings, but failed to mention a ruling from January 2015 (ATF 2015-1, "Manufacturing and Gunsmithing") that directly addressed the manufacture of firearms and alteration of metal the defense now claims he is qualified to testify about.

---

[3] Defendants also copied and reproduced the government's disclosure with respect to its proffered expert, ATF Senior Industry Operations Investigator and Industry Operations Intelligence Specialist Thomas M. Chimileski, Jr. (Opp. at 4-5.) To the extent defendants seek to incorporate Investigator Chimileski's scope of testimony as that of Mr. Lieberman's, such attempt should be rejected. Investigator Chimileski's proffered testimony is based on his nearly 18 years at ATF as a federal firearms industry investigator and intelligence specialist, his nearly 37 years in total in various law enforcement roles where he has honed his expertise in various firearms-related matters, his extensive training while in these roles, and the more than 40 trainings he has led as an instructor relating to many of the topics about which he will testify. Defendants have provided no basis for Mr. Lieberman's qualifications to merely parrot Investigator Chimileski's scope of testimony. In any event, defendants have narrowed the scope of Mr. Lieberman's testimony – as they must – by identifying the four grounds described below.

6

As to the substance of this topic, defendants presumably refer to the distinction between unfinished and finished lower receivers, and the "milling" or machining activities that converts a lower receiver from unfinished to finished.  From their other recent filings, defendants appear to believe the government's theory is that the "firearms" manufactured for sale were lower receivers as opposed to completed AR-15-type weapons.  (See, e.g., Dkt. No. 106 at 9 ("The government cannot show how the uncharged lawful purchase of complete firearms has anything to do with knowledge regarding the sale of a lower receiver"); Dkt. No. 113 at 9 ("The defendant's conduct with respect to the allegations of manufacturing firearms – the lower receiver – is not within the scope of the statute or the ATF-regulatory definition.").)  Defendants are mistaken.

"Firearm," as defined under the Gun Control Act, includes both "any weapon . . . which will or is designed to or may readily be converted to expel a projectile by the action of an explosive" and "the frame or receiver of any such weapon."  18 U.S.C. § 921(a)(3).  Defendants' charged conduct, as alleged in the indictment and explained in the government's filings to date, pertains to the former definition, not the latter.  To the extent defendants intend to claim through Mr. Lieberman that only the finished lower receiver and not the completed weapon "constitutes a 'firearm' under federal law" for purposes of the prohibitions in 18 U.S.C. § 922(a)(1)(A), such would be a misstatement of law, not helpful to the jury under Rule 702, and objectionable under Rule 403.[4]

---

[4] Defendants also contend that "neither defendant had any involvement in 'manufacturing' any of the firearms," asserting that "[i]n 2016, when ATF agents visited Mr. Schlotterbeck and notified
*(footnote cont'd on next page)*

7

2. "How an AR-15 can be legally constructed"

Defendants' second proposed topic for Mr. Lieberman's testimony pertains to "[h]ow an AR-15 can be legally constructed outside without the need to purchase it through a federally licensed firearms dealer." (Opp. at 6.) Defendants claim "AR-15 parts and accessories were regularly and legally bought and sold" without any additional context as to what this means, providing insufficient notice as to how this proposed area of testimony pertains to this case. (Id.)

To the extent Mr. Lieberman intends to opine that defendants merely were buying and selling AR-15 parts and accessories, or "legally construct[ing]" AR-15-type firearms, his testimony would be highly misleading and squarely at odds with the facts of this case. While defendants arguably were permitted during the relevant time period to build their own personal AR-15-type firearms, they were not permitted to manufacture them for sale as a regular course of trade or business without a license to do so. Those are the facts of this case, not the so-called "build parties" Mr. Lieberman anecdotally described in his initial report. Mr. Lieberman's proposed testimony on this point thus is not "based on sufficient facts or data" and lacks the required "fit" for admissibility in this case. Fed. R. Evid. 702(b); Daubert, 509 U.S. at 591-92.

3. "The legal definition of a 'firearm'"

Closely related to the first proposed topic above, defendants

---

him that the firearms transactions violated, in the government's view, federal law, he told them he would not conduct any similar activity going forward." (Opp. at 3.) In fact, ATF "visited" Schlotterbeck in June 2017 (not 2016) when executing search warrants at the businesses he and Vlha operated. Through those warrants, ATF seized numerous items indicative of the ongoing manufacture and sale of AR-15-type firearms as well as digital devices containing evidence of defendants' manufacturing activities continuing into 2017.

8

intend to solicit testimony from Mr. Lieberman about "[t]he legal definition of a 'firearm' under 18 USC Section 921 and CFR 478.11(a)" as well as what legally "constitutes engaging in the business of manufacturing firearms." (Opp. at 6.)

The government detailed its significant concerns, as shown by Mr. Lieberman's initial report, about the lack of completeness, foundation, and reliability of his opinions regarding firearms-related law. Defendants had no response in their opposition. That is reason enough to preclude this proposed ground of testimony.

But more fundamentally, it is the Court's province, not a witness's or a party's, to instruct the jury on the law. United States v. Scholl, 166 F.3d 964, 973-974 (9th Cir. 1999). The Ninth Circuit in Scholl upheld the exclusion of a criminal defendant's proffered expert witness on tax and accounting law, reaffirming that, "[i]t is well settled that the judge instructs the jury in the law. Experts interpret and analyze factual evidence. They do not testify about the law because the judge's special legal knowledge is presumed to be sufficient, and it is the judge's duty to inform the jury about the law that is relevant to their deliberations." Id. at 973 (internal quotation marks and citations omitted); see also United States v. Boulware, 558 F.3d 971, 975 (9th Cir. 2009) ("The trial court's exclusion of the expert testimony to the extent that it constituted a legal opinion was well within its discretion.").

The parties jointly filed proposed jury instructions that included statutory definitions of, among other things, "firearm," "manufacturer," and "engaged in the business of manufacturing firearms" (with competing formulations of the latter). (Dkt. No. 86 at 4-5, 6-7.) Thus, the government expects the Court will instruct

the jury on these legal definitions. Mr. Lieberman's proposed testimony on this topic is unnecessary and improper.

### 4. "ATF's interpretations of law"

Defendant's final topic for Mr. Lieberman's proposed testimony raises similar deficiencies and improprieties as those described above. Specifically, defendants propose that Mr. Lieberman testify about "[h]ow the ATF's interpretations of law have affected how citizens can legally make a firearm outside the federal licensing system." (Opp. at 6.) Among other things, this topic calls for Mr. Lieberman improperly to "inform the jury about the law that is relevant to their deliberations." Scholl, 166 F.3d at 973. Mr. Lieberman presumably also would be testifying – or, more precisely, speculating - broadly and anecdotally about the "culture . . . within the gun community" and "building parties" that he described in his initial report. Such testimony is not based on "scientific, technical, or other specialized knowledge," as required under Rule 702(a). Nor does such testimony have any "fit" to the allegations in this case, where defendants are charged with taking custom orders for and manufacturing completed firearms for sale, not building them for their own personal use. Such testimony thus is improper under Rules 702 and 403 as well as under the "gatekeeping" principles of Daubert. Daubert, 509 U.S. at 591-92.

**III. CONCLUSION**

For the foregoing reasons, the government respectfully requests that this Court grant the government's motion in limine #3 to exclude the testimony of proposed defense expert Steven D. Lieberman, Esq.