TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
BRIAN R. FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorney
Environmental and Community Safety Crimes Section
DAN G. BOYLE (Cal. Bar No. 332518)
Assistant United States Attorney
Asset Forfeiture Section
       1300/1400 United States Courthouse
       312 North Spring Street
       Los Angeles, California 90012
       Telephone: (213) 894-3819/2426
       Facsimile: (213) 894-0141/0142
       E-mail:    Brian.Faerstein@usdoj.gov
                  Daniel.Boyle2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 19-343-GW |
|---|---|
| Plaintiff, | GOVERNMENT'S REPLY IN SUPPORT OF MOTION *IN LIMINE* #1 TO ADMIT EVIDENCE AND PERMIT ARGUMENT; DECLARATION OF BRIAN FAERSTEIN; EXHIBITS |
| v. | |
| TRAVIS SCHLOTTERBECK and JAMES BRADLEY VLHA, | |
| Defendant. | Hearing Date: June 23, 2022<br>Hearing Time: 8:00 a.m.<br>Location:    Courtroom of the<br>             Hon. George H. Wu |

        Plaintiff United States of America, by and through its counsel

of record, the United States Attorney for the Central District of

California and Assistant United States Attorneys Brian Faerstein and

Dan Boyle, hereby files its reply in support of its motion in limine

to admit evidence and permit argument regarding defendants Travis

Schlotterbeck's and James Bradley Vlha's willfulness.

        This reply is based upon the attached memorandum of points and

authorities, accompanying declaration and exhibits, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: June 7, 2022                 Respectfully submitted,

                                    TRACY L. WILKISON
                                    United States Attorney

                                    SCOTT M. GARRINGER
                                    Assistant United States Attorney
                                    Chief, Criminal Division


                                    _____/s/_____
                                    BRIAN R. FAERSTEIN
                                    DAN G. BOYLE
                                    Assistant United States Attorney

                                    Attorneys for Plaintiff
                                    UNITED STATES OF AMERICA

## **TABLE OF CONTENTS**

DESCRIPTION                                                                    PAGE

TABLE OF CONTENTS..........................................................i

TABLE OF AUTHORITIES......................................................ii

REPLY MEMORANDUM OF POINTS AND AUTHORITIES............................1

I.    INTRODUCTION.......................................................1

II.   ARGUMENT...........................................................2

      A.   Defendants' Newfound Claims Regarding a Heightened
           Willfulness Standard Should Be Rejected...................2

      B.   Evidence of Defendants' Purchases of Other Firearms is
           Admissible Under Rule 404(b)..............................6

      C.   Defendants' Sales of Magazines, including Large-
           Capacity Magazines, is Relevant and Inextricably
           Intertwined..............................................10

      D.   Defendants' Discussion of Obtaining Silencers is
           Relevant and Inextricably Intertwined....................14

      E.   There is No Risk of Constructive Amendment...............15

III.  CONCLUSION........................................................16

DECLARATION OF BRIAN FAERSTEIN..........................................177

**TABLE OF AUTHORITIES**

DESCRIPTION                                                          PAGE

**Federal Cases**

Bryan v. United States,
   524 U.S. 184 (1998) .......................................... passim

Cheek v. United States,
   498 U.S. 192 (1991) ............................................... 5

Old Chief v. United States,
   519 U.S. 172 (1997) .......................................... 13, 15

Ratzlaf v. United States,
   510 U.S. 135 (1994) ............................................... 5

United States v. Beckman,
   298 F.3d 788 (9th Cir. 2002) .................................. 6, 7

United States v. Blitz,
   151 F.3d 1002 (9th Cir. 1998) .................................. 13

United States v. Collins,
   90 F.3d 1420 (9th Cir. 1996) ................................ 11, 14

United States v. Gartmon,
   146 F.3d 1015 (D.C. Cir. 1998) ............................. 13, 15

United States v. Hardrick,
   766 F.3d 1051 (9th Cir. 2014) ................................... 8

United States v. Hernandez,
   859 F.3d 817 (9th Cir. 2017) ............................... 4, 5, 9

United States v. Loftis,
   843 F.3d 1173 (9th Cir. 2016) .............................. 11, 14

United States v. Rodriguez,
   880 F.3d 1151 (9th Cir. 2018) .................................. 8, 9

United States v. Vizcarra-Martinez,
   66 F.3d 1006 (9th Cir. 1995) ............................... 11, 14

United States v. Von Stoll,
   726 F.2d 584 (9th Cir. 1984) ................................... 16

Weeks v. Angelone,
   528 U.S. 225 (2000) ............................................... 4

ii

## TABLE OF AUTHORITIES (CONTINUED)

DESCRIPTION                                                                 PAGE

**Federal Statutes**

18 U.S.C. § 921(a)(21)...............................................7

18 U.S.C. § 921(a)(22)..............................................11

18 U.S.C. § 922(a)(1).............................................2, 6

18 U.S.C. § 922(a)(3)................................................5

1

### REPLY MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3   The government's motion in limine #1 (MIL #1) seeks to admit one

4   limited category of evidence (defendants' prior firearms purchases)

5   pursuant to Federal Rule of Evidence 404(b).   MIL #1 further seeks to

6   clarify that other evidence (sales of large-capacity magazines and

7   discussions regarding silencers) is admissible under Rules 401 and

8   402 and/or as inextricably intertwined with the charged conduct.   The

9   evidence bears, in part, on defendants Travis Schlotterbeck's and

10   James Bradley Vlha's willfulness – that is, their knowledge that

11   their conduct of manufacturing firearms for sale without a license

12   was unlawful – which the government must prove in connection with the

13   conspiracy and substantive firearms trafficking counts in this case.

14   In their joint opposition to MIL #1, defendants seek to preclude

15   this evidence by muddying the waters as to the what the government

16   must prove and misconstruing how the government intends to use its

17   proffered evidence.   (Dkt. No. 106 ("Opp.").)   The common thread

18   running through defendants' opposition is that a "heightened standard

19   of willfulness" should apply and the government is seeking to "water

20   down" its burden of proof through circumstantial evidence of

21   defendants' guilt.   Defendants' arguments are without merit.

22   First, defendants' erroneous (and belated) contention regarding

23   a "heightened willfulness standard" is belied by binding authority

24   that applies to the circumstances of this case.   Second, the

25   government does not seek to substitute proof of defendants' knowledge

26   of the unlawfulness of their charged conduct, but rather intends to

27   use the subject evidence, including the proposed Rule 404(b) prior

28   firearms purchase evidence, in a limited capacity and as

circumstantial proof of knowledge the government expects to be contested at trial. Third, the evidence of sales of magazines and discussions regarding silencers is textbook inextricably intertwined evidence that also bears on the anticipated contested issues regarding willfulness. Finally, contrary to defendants' claim, admission of the limited circumstantial evidence at issue here will not risk a constructive amendment of the indictment, as the government's evidence as a whole will not present a complex of facts distinctly different from those alleged in the indictment. Accordingly, the government requests that the Court grant its MIL #1.[1]

## II. ARGUMENT

### A. Defendants' Newfound Claims Regarding a Heightened Willfulness Standard Should Be Rejected

In the parties' joint jury instructions submissions, the government and both defendants agreed on the definition of willfulness as it applies to this case. The parties concurred that the correct standard is set forth in <u>Bryan v. United States</u>, 524 U.S. 184 (1998), in which the Supreme Court held that "willfully" as used in 18 U.S.C. § 922(a)(1) – <u>i.e.</u>, the statute at issue here – "requires proof that the defendant knew that his or her conduct was unlawful, but does not require proof that the defendant knew of the federal licensing requirement." <u>Id.</u> at 198-99.

Thus, the parties agreed in their stipulated jury instruction for conspiracy that the government must prove defendants acted

---

[1] Defendants have jointly filed a motion to dismiss the indictment (well after previously negotiated and Court-entered deadlines for filing such Rule 12 motions), raising vagueness claims as to the charged conduct. (Dkt. No. 113.) Defendants' claims are without merit, and the government will be responding to that motion in due course.

willfully such that the jury "must find beyond a reasonable doubt that the defendant knew that his conduct, or the conduct of those with whom he conspired, was unlawful." (Dkt. No. 85 at 57.[2])  The parties further agreed as part of their disputed instruction for the substantive firearm manufacturing count that "willfully," in relevant part, "requires proof that the defendant knew that his conduct was unlawful, but does not require proof that the defendant knew of the federal licensing requirement." (Dkt. No. 86 at 4, 6.)

Notwithstanding these previously negotiated joint submissions, defendant Schlotterbeck's new counsel now asserts that he "will argue in his proposed jury instructions [that] the facts of this case require that the government prove beyond a reasonable doubt a heightened standard of willfulness." (Opp. at 6-7.)  Counsel points to the "highly regulated nature of the firearms laws" as purportedly requiring "the highest standard of willfulness," contending generally that the government must prove "that the particularly charged manufacturing conduct violated federal law." (Id. at 7.)

As a preliminary matter, the government expects the jury will be properly directed to consider only the charged manufacturing conduct based on the instructions taken as a whole (as well as the evidence, including expert testimony, that comes in at trial).  Both of the parties' previously submitted competing versions for the substantive manufacturing instruction contemplate the jury will be appropriately instructed about the applicable definitions for "firearm," "manufacturer," and "engaged in the business of manufacturing

---

[2] All references to pages in filings on the Court's docket refer to the page numbers in the ECF-filing banner at the top of the page.

firearms" (albeit with a currently competing formulation as to the latter).  (Dkt. No. 86 at 4, 6.)

To the extent Schlotterbeck now suggests the government must prove defendants knew the specific law they were violating, his position is belied by controlling authority.  Bryan dealt with much the same supposed "highly regulated" context of firearms – indeed, the very same statute, premised on a dealing theory instead of a manufacturing theory – and the Court squarely rejected a request for a heightened standard as to the defendant's knowledge of the specific law violated (there, the licensing requirement).  Bryan, 524 U.S. at 198-99.  The parties' previously agreed-upon willfulness definition tracks the language of the instruction approved of by the Supreme Court in Bryan.  It also directly tracks the language regarding the knowledge component of willfulness in the Ninth Circuit's model instruction for manufacturing firearms without a license, which cites to Bryan.  See Ninth Circuit Model Instruction No. 14.3 cmt.[3]

Schlotterbeck's principal reliance on United States v. Hernandez, 859 F.3d 817 (9th Cir. 2017), for a heightened willfulness standard is misplaced.  Hernandez dealt with a different statute, specifically, illegal transportation of firearms in violation of 18

---

[3] Schlotterbeck contends the "government's request for a deliberate ignorance instruction," along with a supposed "lesser willfulness instruction," would "unconstitutionally shift the burden to defendants to disprove that they had any duty to investigate the law."  (Opp. at 8 n.1.)  Schlotterbeck ignores that the proposed deliberate ignorance instruction – which the parties jointly submitted – specifies that it pertains only to Count Three and, in particular, Schlotterbeck's knowledge of the confidential informant's prohibited person status.  (See Dkt. No. 85 at 65.)  Count Three does not require willfulness, and the jury will be presumed to follow the Court's instructions that the deliberate ignorance instruction applies only to that count.  See Weeks v. Angelone, 528 U.S. 225, 234 (2000) ("[A] jury is presumed to follow [a court's] instructions.").

4

1    U.S.C. § 922(a)(3), and markedly different facts.  Schlotterbeck

2    agrees that "context" matters as to the applied definition of

3    "willful" in any given case (Opp. at 7), and the context here is

4    squarely aligned with the same statute at issue in Bryan.

5        Moreover, the court in Hernandez recognized that the willfulness

6    instruction from Bryan would have been appropriate in that case but

7    for the government's evidence and explicit argument in closing that

8    the defendant's willfulness for the charged crime could be

9    established "even if [his intent to do something the law forbids] did

10   not include the actual transportation of guns into his state of

11   residence."  Id. at 821, 822; see also id. at 821 n.3 (government

12   arguing in closing that defendant's "falsif[ying] information on a

13   form" and "unlawful distribution of guns to third parties" could

14   suffice for establishing willfulness for the illegal transportation

15   charge).  The Ninth Circuit was particularly critical of the district

16   court's "approval of the government's relying on future crimes to

17   establish intent."  Id. at 824.

18       The concerns highlighted in Hernandez are far afield from the

19   government's proffered use of the evidence described in its MIL #1.

20   Hernandez does not support the application of a heightened standard

21   of willfulness in this case nor should the Court apply any such

22   standard in analyzing the admissibility of the government's proffered

23   evidenced discussed further below.[4]

24   _____

25       [4] Schlotterbeck also cites broadly to Ratzlaf v. United States,
     510 U.S. 135 (1994), and Cheek v. United States, 498 U.S. 192 (1991),
26   as purportedly supporting the application of a heightened standard of
     willfulness in this case.  (Opp. at 7.)  But the Supreme Court in
27   Bryan specifically distinguished the principles of those earlier
     opinions (relating to "highly technical" anti-structuring and tax
28   statutes, respectively) as not applying to the willfulness standard
                                                    *(footnote cont'd on next page)*

                                    5

**B.  Evidence of Defendants' Purchases of Other Firearms is Admissible Under Rule 404(b)**

Defendants' challenge to the proffered Rule 404(b) evidence regarding their prior purchases of firearms underscores their fundamental misunderstanding of what is charged in this case and how the government intends to use this evidence for a limited purpose.

<u>First</u>, defendants contest the relevance of their prior firearms purchases to their willful conduct of manufacturing firearms for sale, claiming the government "fails the first prong" of <u>United States v. Beckman</u>, 298 F.3d 788, 794 (9th Cir. 2002).  In so arguing, defendants erroneously contend that the government must prove "that the defendants understood that receivers constituted 'firearms' and that the purchaser's independent milling of that incomplete receiver into a complete receiver, and the later assembly of the completed receiver into the constituent parts resulting in a firearm amounted to manufacturing which required a license."  (Opp. at 8-9.)

Defendants inject confusion where none exists.  The government's theory of defendants' unlawful manufacturing is straightforward. Defendants and their co-conspirator Ping-Yi "Jesse" Kwan took custom orders and worked together to manufacture completed AR-15-type firearms for sale, without a license to do so.  They controlled all aspects of this process, from obtaining the firearm parts, arranging for certain parts (specifically, unfinished lower receivers) to be drilled for use, and assembling and finishing the AR-15-type firearms for sale.  While in two cases the co-conspirators escorted purchasers (an ATF confidential informant and undercover agent, respectively) to

_____

as applied to 18 U.S.C. § 922(a)(1) – the statute at issue here. <u>Bryan</u>, 524 U.S. at 194-96.

6

a separate location to mill out the lower receiver, that was the exception (and a charade), not the rule; the co-conspirators typically arranged on their own for lower receivers to be milled out to make them suitable for use in building the completed AR-15-type firearms.  Defendants manufactured and sold these <u>completed</u> firearms, not just component lower receivers, as defendants mistakenly contend. (<u>See</u>, <u>e.g.</u>, Opp. at 9 (government "cannot show how the uncharged lawful purchase of completed firearms has anything to do with knowledge regarding the sale of a lower receiver").)

The government must prove that by "engag[ing] in the business" as a "manufacturer," defendants sought to profit "through the sale or distribution of the firearms manufactured."  18 U.S.C. § 921(a)(21)(A).  The government's proof thus will include evidence regarding the sales, not just the manufacturing, of the completed AR-15-type firearms.  In proving defendants' knowledge of the unlawfulness of this conduct, their experience in purchasing completed firearms through lawful channels (including waiting on background checks and filling out transaction documentation) is directly relevant to their willfulness here, where they undertook none of those procedures in their sales of completed firearms.

<u>Second</u>, defendants' contention that the government cannot satisfy the fourth prong of the <u>Beckman</u> analysis, which focuses on the similarity of the prior act to the charged conduct, is misplaced. This similarity requirement generally applies only where the prior act evidence is "admitted to prove intent." <u>Beckman</u>, 298 F.3d at 794.  "When Rule 404(b) evidence is offered to prove knowledge . . . the 'similarity' requirement does not require that the prior bad act be precisely the same as the charged act, 'as long as the prior act

1   was one which would tend to make the existence of the defendant's

2   knowledge more probable than it would be without the evidence.'"

3   United States v. Rodriguez, 880 F.3d 1151, 1167 (9th Cir. 2018)

4   (quoting United States v. Hardrick, 766 F.3d 1051, 1055 (9th Cir.

5   2014)).  Thus, in cases where a defendant's knowledge is contested,

6   the Ninth Circuit has "emphasized that the government must prove a

7   logical connection between the knowledge gained as a result of the

8   commission of the prior act and the knowledge at issue in the charged

9   act."  Id. (internal quotation and citations omitted).

10       Here, the parties previously agreed upon a willfulness

11   definition that tracks that from the instruction given in Bryan:

12   "'Willfully,' as used in this statute, requires proof that the

13   defendant knew that his conduct was unlawful, but does not require

14   proof that the defendant knew of the federal licensing requirement.

15   A person acts willfully if he acts intentionally and purposely and

16   with the intent to do something the law forbids, that is, with a bad

17   purpose to disobey or to disregard the law."  (Dkt. No. 86 at 4.)

18   The government's proffer of the prior firearms purchase evidence

19   pertains to the knowledge component within the first part of the

20   definition, not the intent component within the second.  A precise

21   similarity between the prior act and charged conduct under the

22   Beckman analysis thus is not required.[5]

23       Hernandez, upon which Schlotterbeck principally relies in

24   support of an inapplicable heightened willfulness standard, provides

25   a prime example of the proper use of the prior firearm purchase

26

27       [5] The government nonetheless contends that the conduct is
     similar in that it pertains to the context of the transfer of
28   firearms for sale.  The only difference is the prior conduct was
     lawful and the charged conduct was not.

                                    8

1 evidence the government seeks to admit here.  In Hernandez, the

2 government presented evidence "that someone, like [the defendant],

3 with experience in purchasing guns in California would have been

4 aware that California law allows the purchase of only one gun at a

5 time and requires a ten-day waiting period." Hernandez, 859 F.3d at

6 822.  The court endorsed the government's use of this circumstantial

7 evidence in its proof that defendant "knew his transportation of guns

8 into California was unlawful," and reasoned that had the government

9 relied on this and certain other evidence alone, the Bryan

10 willfulness standard would have sufficed.  Id.

11 So too here, the government expects defendants will contest

12 having knowledge as to the unlawfulness of manufacturing and selling

13 firearms without going through proper channels.  The government seeks

14 to use the prior firearms purchase evidence to illuminate defendants'

15 knowledge and absence of mistake (as distinguished from their intent)

16 with respect to the unlawfulness of those activities.  Thus, evidence

17 of their direct experience lawfully purchasing completed firearms

18 will provide a "logical connection between the knowledge gained as a

19 result of the commission of the prior act and the knowledge at issue

20 in the charged act." Rodriguez, 880 F.3d at 1167.

21 Third, the probative value of this evidence is not substantially

22 outweighed by any danger under Rule 403.  Defendants claim the

23 introduction of this evidence would "mislead and confuse the jury"

24 and "consume undue amounts of trial time," as they "would have to

25 spend a significant amount of time differentiating the laws and

26 requirements between purchasing complete firearms, sales of complete

27 firearms, the purchasing or sale of 'unfinished lower receivers' and

28 manufacturing of firearms." (Opp. at 10.)  Defendants once again sow

unnecessary confusion and mistake the essence of the charges and the purpose of the proffered evidence.

Defendants operated an unlawful business where they manufactured and sold completed, unserialized firearms, without a license to do so and without undertaking any background checks or completing any documentation.  When they lawfully purchased completed, serialized firearms manufactured by licensed entities, as reflected in certified dealer's records of sale ("DROS" forms), they had to do both.  The government's straightforward evidence on this point will be concise and its argument narrow.  Defendants' fears of juror confusion or undue consumption of time – much less unfair prejudice where the government is offering evidence of lawful prior acts - are unfounded.

### C. Defendants' Sales of Magazines, including Large-Capacity Magazines, is Relevant and Inextricably Intertwined

The indictment alleges in the conspiratorial overt acts that defendants and co-conspirator Kwan sold large-capacity magazines in tandem with several sales of the completed AR-15-type firearms they manufactured.  The government seeks to offer this evidence, at a minimum, as inextricably intertwined with the charged conspiracy.

As reflected in the voluminous covertly-recorded video evidence in this case, the co-conspirators negotiated sales of both 10-round and large-capacity 30-round magazines interchangeably with their negotiations regarding custom-ordered AR-15-type firearms; the customers (an ATF confidential informant and undercover agents) picked up these magazines at the same time as the subject firearms; the customers paid for the completed firearms and magazines together and as package deals; and a number of the subject firearms were sold with attached magazines.  It would be virtually impossible to remove

or redact this evidence from the broader record.  Nor would it be necessary or appropriate to do so, as it "constitutes a part of the transaction that serves as a basis for the criminal charge" and "is 'necessary to . . . permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime.'"  United States v. Collins, 90 F.3d 1420, 1428 (9th Cir. 1996) (quoting United States v. Vizcarra-Martinez, 66 F.3d 1006, 1012-13 (9th Cir. 1995)).  Contrary to defendants' contention (Opp. at 11), this evidence is "so interwoven with the charged offense that they should not be treated as other crimes or acts for purposes of Rule 404(b)."  United States v. Loftis, 843 F.3d 1173, 1177 (9th Cir. 2016).

But as the government explained in its MIL #1, evidence of the companion sales of magazines, including large-capacity magazines, also is admissible as directly relevant to at least two anticipated contested issues at trial.  First, the co-conspirators' procurement and companion sales of the magazines, as a virtual one-stop-shop for their customers, tends to prove the profit-motive and commercial purpose of their engaging in the business of manufacturing firearms for sale.  See 18 U.S.C. § 921(a)(22) (defining "with the principal objective of livelihood and profit" to include "the intent underlying the sale or disposition of firearms is predominantly one of obtaining livelihood and pecuniary gain").  And second, given the illegality of selling large-capacity magazines in California, defendants' engaging in this conduct interchangeably with their taking custom orders and manufacturing AR-15-type firearms for sale is relevant to the overall unlawfulness of their course of dealing with the ATF customers.

Defendants object to the use of the large-capacity magazine evidence for this latter purpose, first contending that there is no

"evidence that defendants understood the California law with respect to high capacity magazines." (Opp. at 12.) Defendants are mistaken. During a January 26, 2016 recorded meeting between an ATF undercover agent and defendants, the agent inquired whether Schlotterbeck and Vlha could get "mags." Schlotterbeck confirmed they could and asked whether the agent wanted "ten rounds" or "thirties," noting as to the latter that "they're illegal." Schlotterbeck agreed to sell the agent "a couple tens and a couple thirties" for "twenty bucks each." (See Declaration of Brian Faerstein filed herewith, Exhibit A.)

Defendants also argue that "defendants' potential understanding of this area of state law provides absolutely no insight into their potential understanding of federal manufacturing law for which they have been charged." (Opp. at 12.) To be clear, the government does not intend to argue that defendants' knowledge of the illegality of their sale of large-capacity magazines is a substitute for a finding of willfulness with respect to the charged conduct in the indictment. However, the government expects defendants to contend at trial that they took steps, such as taking the first two ATF customers to a separate shop to mill out the lower receivers, purportedly to stay within the law. Their nonchalant and knowing illegal sale of large-capacity magazines to those same customers is relevant to the jury's assessment of defendants' theory of defense.

Moreover, to the extent Schlotterbeck argues he did not stay abreast of the law more generally, his awareness of the illegality of large-capacity magazines (whether under California or federal law) tends to undermine any such contention. Bryan makes clear that "the willfulness requirement of § 924(a)(1)(D) does not carve out an exception to the traditional rule that ignorance of the law is no

1  excuse." Bryan, 524 U.S. at 196.  Nonetheless, should Schlotterbeck

2  seek to assert ignorance as to the unlawfulness of manufacturing

3  firearms for sale, the government should be permitted to draw upon

4  circumstantial evidence demonstrating he was a person who paid

5  attention to legal issues as a general matter.

6      Finally, defendants challenge evidence and argument regarding

7  the illegal nature of the large-capacity magazine sales under Rule

8  403, arguing that it would "open the door to extensive litigation of

9  California firearms regulations" and its "prejudicial effect" would

10 "water[] down the government's burden."  (Opp. at 12.)  There would

11 be no need, however, for any litigation regarding California law, as

12 Schlotterbeck's admission of the illegality of the 30-round magazines

13 is dispositive of his state of mind as to that issue.

14     As for prejudicial effect, Rule 403 does not preclude evidence

15 that prejudices a defendant's case, "as all unfavorable evidence

16 about a defendant does" – it only precludes evidence that unfairly

17 prejudices a defendant's case. United States v. Blitz, 151 F.3d

18 1002, 1009 (9th Cir. 1998).  As part of their course of dealing,

19 defendants consciously decided to sell illegal large-capacity

20 magazines to their customers at the same time as they manufactured

21 AR-15-type firearms.  Rule 403 "does not generally require the

22 government to sanitize its case, to deflate witnesses' testimony, or

23 to tell its story in a monotone." United States v. Gartman, 146 F.3d

24 1015, 1021 (D.C. Cir. 1998) (citing Old Chief v. United States, 519

25 U.S. 172, 192 (1997)) (internal citation omitted).

26

27

28

1
2

   **D.   Defendants' Discussion of Obtaining Silencers is Relevant and Inextricably Intertwined**

3    Similar to the prevalence of magazine sales in the audio and
4    video recording evidence, defendants discussed with the ATF
5    confidential informant and undercover agent on multiple occasions the
6    possibility of purchasing silencers.  These conversations, most of
7    which did not facially refer to silencers or suppressors, were
8    interwoven with the larger negotiations regarding the manufacture and
9    sale of AR-15-type firearms.  (See, e.g. Govt MIL #1 (Dkt. No. 80) at
10   21-22.)  The conversations are, at a minimum, admissible as
11   inextricably intertwined evidence for the same reasons discussed
12   above and in the government's MIL #1.  See Collins, 90 F.3d at 1428;
13   Vizcarra-Martinez, 66 F.3d at 1012-13; Loftis, 843 F.3d at 1177.

14   Evidence of defendants' seeking to purchase silencers from their
15   AR-15-type firearm customers also is relevant, in the same vein as
16   the illegal sales of the large-capacity magazines above, to rebut
17   defendants' expected argument that they believed their firearms
18   manufacturing business was on the up and up.  The government does not
19   contend defendants illegally sold silencers or held themselves out as
20   doing so.  Thus, it is irrelevant, as defendants contend, that no
21   silencers were found during a search of the Bellflower shops or that
22   the ATF confidential informant or undercover agents did not purchase
23   silencers from defendants Schlotterbeck and Vlha.  (Opp. at 13.)

24   Rather, defendants' solicitation of these customers as potential
25   sources for illegal purchases of silencers illuminates their state of
26   mind as to the overall legitimacy of taking custom orders for AR-15-
27   type firearms from these same customers.  The government intends to
28   use this circumstantial evidence to undercut defendants' anticipated

14

theory of defense, not as "pure propensity evidence," to "water down [its] burden of proof," or as a substitute for proving willfulness as to the charged conduct.  (Id. at 13-14.)

Moreover, as the government noted in its MIL #1, most of the recorded exchanges where silencers were discussed refer to the topic obliquely, and witness testimony generally will be necessary to clarify the details of the communications.  (For the Court's ease of review, the government attaches transcripts of the recording clips that include discussion of silencers as Exhibits B through I to the Faerstein Declaration.)  Even if these discussions are permitted only as inextricably intertwined evidence - without elaboration as to their relevance through witness testimony - such evidence will not unfairly prejudice defendants or present any other Rule 403 concerns where jurors will have virtually no interpretive context for the brief discussions.  And, as with the large-capacity magazines evidence, the government should not be required to "sanitize its case."  Gartmon, 146 F.3d at 1021; Old Chief, 519 U.S. at 192.

**E.   There is No Risk of Constructive Amendment**

Defendants summarily allege that admitting the evidence described in the government's MIL #1 "creates the possibility of a constructive amendment."  (Opp. at 14.)  Defendants' contention is premature and unfounded.  The government has described the bases for the admissibility of the evidence at issue under the Federal Rules of Evidence and how it intends to use that evidence at trial.  The government also anticipates the jury will be appropriately instructed as to applicable law and how to consider certain types of evidence. The jury will not be presented with a "complex of facts distinctly different from those set forth in the charging instrument" nor will

1    "the crime charged [be] substantially altered at trial, so that it

2    [would be] impossible to know whether the grand jury would have

3    indicted for the crime actually proved."  United States v. Von Stoll,

4    726 F.2d 584, 586 (9th Cir. 1984).  Taken to its logical conclusion,

5    defendants' argument would preclude the admission of any evidence

6    that is not charged conduct that would otherwise be properly

7    admissible under Rules 401, 402, and 404(b), or as inextricably

8    intertwined evidence.  That is not the law.

9    **III.  CONCLUSION**

10        For the foregoing reasons, the government respectfully requests

11    that this Court grant the government's motion in limine #1 to admit

12    evidence and permit arguments regarding defendants' willfulness.

1      **<u>DECLARATION OF BRIAN FAERSTEIN</u>**

2      I, Brian Faerstein, declare as follows:

3      1.    I am an Assistant United States Attorney in the United

4 States Attorney's Office for the Central District of California.  I

5 represent the government in <u>United States v. Travis Schlotterbeck and</u>

6 <u>James Bradley Vlha</u>, 2:19-CR-343-GW.

7      2.    For each of the exhibits described below, the pertinent

8 video or audio recording, transcript, and clip of the recording have

9 been produced in discovery to the defense.

10     3.    Attached hereto as **<u>Exhibit A</u>** is a transcript of an excerpt

11 of a video recording of a meeting between an ATF undercover agent

12 (UC), defendant Travis Schlotterbeck, and defendant James Bradley

13 Vlha on January 26, 2016, which video recording clip will be marked

14 at trial as Government Exhibit (GEX) 139.e.

15     4.    Attached hereto as **<u>Exhibit B</u>** is a transcript of an excerpt

16 of a video recording of a meeting between an ATF confidential

17 informant (CI) and defendant Schlotterbeck on July 7, 2015, which

18 video recording clip will be marked at trial as GEX 101.d.

19     5.    Attached hereto as **<u>Exhibit C</u>** is a transcript of an excerpt

20 of a video recording of a meeting between an ATF CI and defendant

21 Schlotterbeck on July 7, 2015, which video recording clip will be

22 marked at trial as GEX 102.h.

23     6.    Attached hereto as **<u>Exhibit D</u>** is a transcript of an excerpt

24 of an audio recording of a call between an ATF CI and defendant

25 Schlotterbeck on August 21, 2015, which audio recording clip will be

26 marked at trial as GEX 104.c.

27     7.    Attached hereto as **<u>Exhibit E</u>** is a transcript of an excerpt

28 of a video recording of a meeting between an ATF CI, ATF UC,

17

1   defendant Vlha, and co-conspirator Ping-Yi "Jesse" Kwan on September
2   23, 2015, which video recording clip will be marked at trial as GEX
3   120.c.

4        8.   Attached hereto as **Exhibit F** is a transcript of an excerpt
5   of a video recording of a meeting between an ATF CI, ATF UC,
6   defendant Vlha, and co-conspirator Kwan on September 23, 2015, which
7   video recording clip will be marked at trial as GEX 120.d.

8        9.   Attached hereto as **Exhibit G** is a transcript of an excerpt
9   of a video recording of a meeting between an ATF UC and defendant
10  Vlha on October 8, 2015, which video recording clip will be marked at
11  trial as GEX 124.l.

12       10.  Attached hereto as **Exhibit H** is a transcript of an excerpt
13  of a video recording of a meeting between an ATF UC, defendant
14  Schlotterbeck, and defendant Vlha on October 8, 2015, which video
15  recording clip will be marked at trial as GEX 126.f.  The exhibit
16  contains redactions for identifying information for the ATF CI.

17       11.  Attached hereto as **Exhibit I** is a transcript of an excerpt
18  of a video recording of a meeting between an ATF UC, defendant Vlha,
19  and co-conspirator Kwan on October 27, 2015, which video recording
20  clip will be marked at trial as GEX 135.c.  The exhibit contains a
21  redaction for identifying information for the ATF CI.

22       I declare and affirm under penalty of perjury that the foregoing
23  is true and correct to the best of my knowledge.

24       Executed on June 7, 2022, at Los Angeles, California.

25
26  _____
27  BRIAN FAERSTEIN

28

                                    18