TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
BRIAN R. FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorney
Environmental and Community Safety Crimes Section
DAN G. BOYLE (Cal. Bar No. 332518)
Assistant United States Attorney
Asset Forfeiture Section
     1300/1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3819/2426
     Facsimile: (213) 894-0141
     E-mail:    Brian.Faerstein@usdoj.gov
                Daniel.Boyle2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 19-343-GW |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION IN LIMINE TO EXCLUDE |
| v. | |
| TRAVIS SCHLOTTERBECK and JAMES BRADLEY VLHA, | Hearing Date: June 23, 2022<br>Hearing Time: 8:00 a.m.<br>Location:    Courtroom of the<br>             Hon. George H. Wu |
| Defendants. | |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Brian Faerstein and Dan Boyle, hereby files its Opposition to defendants Travis Schlotterback and James Vlha's motion in limine to exclude the terms "ghost gun," "unserialized" or "with no serial number."

This Opposition is based upon the attached memorandum of points and authorities, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: June 9, 2022                    Respectfully submitted,

                                          TRACY L. WILKISON
                                        United States Attorney

                                        SCOTT M. GARRINGER
                                        Assistant United States Attorney
                                        Chief, Criminal Division

                                           /s/
                                        BRIAN R. FAERSTEIN
                                        DAN G. BOYLE
                                        Assistant United States Attorneys

                                        Attorneys for Plaintiff
                                        UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Defendants Travis Schlotterbeck ("Schlotterbeck") and James Bradley Vlha ("Vlha") are charged with crimes relating to their illegal business of manufacturing and selling AR-15-type firearms without a license.  Defendant Schlotterbeck also is charged with selling a firearm to a felon.  Defendants are proceeding to trial on July 12, 2022.

In the Indictment, the government alleged that, between at least May of 2015 and June of 2017, defendants Schlotterbeck and Vlha, along with a coconspirator, conspired to, and did, manufacture and sell at least five AR-type firearms to a confidential informant ("CI") and undercover law enforcement officers (the "Manufactured Weapons"). As detailed at length in the government's trial memorandum and incorporated herein by reference, the defendants created each of the Manufactured Weapons to satisfy a custom order by, *inter alia*, obtaining various firearm parts, arranging to mill out unserialized and unfinished AR-type lower receivers, and assembling and finishing these parts into a completed firearm capable of expelling a projectile. (See Dkt. No, 89, at 15-21[1].)  Because the defendants began their manufacturing process using unfinished lower receivers, and because the defendants did not add serial numbers at any point before they sold the weapons, each of the Manufactured Weapons was ultimately not serialized – which is how they are identified in the Indictment. (See Dkt. No. 1, at 8.)

---

[1] All references to pages in filings on the Court's docket refer to the page numbers in the ECF-filing banner at the top of the page.

In their only Motion in Limine ("Defense MIL #1"), defendants now move pursuant to Federal Rule of Evidence 403 to preclude the government from referencing the term "ghost gun," referring to evidence in this case as being "unserialized" or "bearing no serial number," or otherwise indicating to the jury that any item in this case does not have a serial number. (See Dkt. No. 112). The government now opposes Defense MIL #1, for the reasons stated herein.

**II.   ARGUMENT**

**A.   Relevant Law**

Federal Rule of Evidence 403 ("Rule 403") states that a Court may exclude relevant evidence if "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." The advisory committee notes to Rule 403 define "undue prejudice" as an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed.R.Evid. 403 (1972 advisory committee note). The Ninth Circuit has further stressed that the "danger of unfair prejudice must not merely outweigh the probative value of the evidence, but substantially outweigh it." United States v. Haischer, 780 F.3d 1277, 1281-82 (9th Cir. 2015) (quoting United States v. Mende, 43 F.3d 1298, 1302 (9th Cir. 1995)). "Application of Rule 403 must be cautious and sparing because the Rule's major function is limited to excluding matter of scant and cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." Id. at 1282 (cleaned up).

Courts have explained that "Rule 403 does not provide a shield for defendants who engage in outrageous acts, permitting only the

crimes of Caspar Milquetoasts to be described fully to a jury.  It does not generally require the government to sanitize its case, to deflate witnesses' testimony, or to tell its story in a monotone.  It does not bar powerful, or even 'prejudicial' evidence." United States v. Gartmon, 146 F.3d 1015, 1021 (D.C. Cir. 1998) (citing Old Chief v. United States, 519 U.S. 172, 192 (1997)) (internal citation omitted).  Indeed, the Supreme Court recognizes that "the familiar, standard rule that the prosecution is entitled to prove its case by evidence of its own choice, or, more exactly, that a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it" is "unquestionably true as a general matter." Old Chief, 519 U.S. at 186-87.

**B.  The Lack of Serial Numbers on the Manufactured Weapons is Relevant and Highly Probative**

As described above, the first step in a Rule 403 analysis is the determination of whether the challenged evidence is relevant under Federal Rule of Evidence 401, and if so, what probative value it may have.  Here, the unserialized nature of the Manufactured Weapons is directly and significantly relevant and highly probative of numerous issues in this case, for multiple reasons:

First, the absence of serial numbers will help the jury understand that the firearms that they will see in court, through photographs, video, and physical exhibits, are in fact the same firearms sold by the defendants to the undercover agents and CI.  The government is entitled to, and indeed, obligated to, establish the authenticity of the Manufactured Weapons for the jurors, which will be done, in part, by establishing that the Manufactured Weapons

3

lacked serial numbers. Because of the way the Manufactured Weapons were created (as described above and in the government's trial memorandum), these weapons lack the kind of serialization which would otherwise be used to connect weapons sold to an undercover agent to those offered into evidence in court. Here, the absence of any serial numbers on the Manufactured Weapons tends to prove that these were the same firearms alleged to be manufactured by defendants.

Second, jurors will see the actual Manufactured Weapons, and presumably see that these weapons lack serial numbers, so it would make little sense and be unfair to preclude the government from addressing and explaining what jurors will see with their own eyes. Courts have consistently recognized the relevance of showing a jury physical exhibits such as firearms. See, e.g., United States v. Ogles, 406 F.3d 586, 593 (9th Cir. 2005) (admission of "ninety-six firearms and two lots of ammunition" and presentation to jury relevant to show defendant's intent to sell, and not unfairly prejudicial) (rev'd in part on other grounds upon reh'g en banc, 440 F.3d 1095 (9th Cir. 2006))). Accordingly, the lack of serial numbers is necessary to describe to the jury the physical exhibits they will be asked to view during trial.

Third, the lack of serial numbers tends to prove the nature of the conspiracy alleged and connects the Manufactured Weapons to the same. As detailed in the government's trial memorandum, the defendants are alleged to have obtained unfinished AR-type lower receivers, arranged for those parts to be machined, and then assembled these and other parts into finished and functional weapons. As such, as alleged, the defendants' firearms manufacturing enterprise ultimately – and intentionally – produced weapons without

serial numbers. The lack of serial numbers on the Manufactured Weapons thus tends to prove that these weapons were manufactured by defendants during the course of the conspiracy – in contrast, if these weapons actually had serial numbers, that would tend to disprove the government's allegations. Indeed, the Indictment alleges this aspect of the conspiracy in the Introductory Allegations: "A firearm created in this way could be untraceable because it generally did not have a serial number or manufacturer-created identification markings." (Dkt. No. 1, at 2.) And the firearms are thereafter identified as "bearing no serial number." (See, e.g, id. at 8.)

Fourth, the unserialized nature of the Manufactured Weapons tends to prove defendants' mental state. As reflected in the parties' joint proposed jury instructions (Dkt. No. 85, at 57), the government will have to establish that defendants knew their conduct, or that of their conspirators, was unlawful. The government expects that the evidence at trial, including defendants' own recorded statements, will show that the defendants intended to keep their firearms manufacturing business discrete, including by: (1) only manufacturing for persons they trusted, (2) operating by word-of-mouth, (3) arranging to obtain and mill out unserialized, unfinished lower receivers for their builds of completed firearms; and (4) instructing customers to lie that the customer had arranged to mill out the lower receivers themselves. When viewed in conjunction with this evidence, the fact that defendants manufactured and sold completed firearms without serial numbers tends to prove that defendants knew that their conduct was unlawful, and thus, wanted to

ensure that the weapons they manufactured could not be traced back to them through serial numbers and the firearm licensing system.

Fifth and finally, precluding any reference to the unserialized nature of the Manufactured Weapons would actually *increase* the risk of jury confusion, as the jury will see the Manufactured Weapons, and likely see that they lack serial numbers. Combined with expected testimony from one or more experts on firearms licensing, jurors are likely to be confused as to why the Manufactured Weapons they see in court do not match the expert testimony they hear about how firearms are serialized and traced. For example, the government's expert, ATF Investigator Thomas Chimileski, Jr., is expected to testify about, *inter alia*, the "system of tracking firearms manufactured for sale, including serialization and marking requirements." (See Dkt. No. 108, at 4.) A juror who listens to such expert testimony, but then sees that that Manufactured Weapons have no such serialization, is likely to be confused at best, or at worst, to draw their own inappropriate legal conclusions as to the legality of such unserialized weapons.

### C. Any Prejudice to Defendants is Minimal and Not Unfair

A criminal defendant cannot exclude evidence pursuant to Rule 403 simply because it may be prejudicial to his or her defense — indeed, all relevant evidence offered by the government is prejudicial to the defendant in some sense. See United States v. Hankey, 203 F.3d 1160, 1172 (9th Cir. 2000)("Relevant evidence is inherently prejudicial; but it is only unfair prejudice, substantially outweighing probative value, which permits exclusion of relevant matter under Rule 403" (cleaned up)). Evidence is unfairly prejudicial under Rule 403 where it has an "undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an

emotional one." Fed.R.Evid. 403 (1972 Committee Note); see also United States v. Pineda-Doval, 614 F.3d 1019, 1035 (9th Cir. 2010) ("Under Rule 403, evidence may be excluded if 'it makes a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged.'" (quoting United States v. Yazzie, 59 F.3d 807, 811 (9th Cir. 1995))

Here, defendants have not sufficiently explained how the fact that the Manufactured Weapons lack serial numbers, making them "ghost guns" in common parlance, would inflame the passions of an ordinary juror to the point of disregarding guilt or innocence. Indeed, defendants state in their motion that it was not illegal to own an unserialized firearm under California or Federal law during the relevant period (Dkt. No. 112, at 9), so their motion fails to explain how such information would drive a rational juror to convict based on an emotional response rather than the strength of the government's evidence. At most, defendants argue that some politicians and gun control groups have sought laws restricting unserialized firearms, on the basis that such firearms are difficult to trace and appealing to criminals. But as the Ninth Circuit held in similar circumstances in Ogles, whatever negative opinions jurors may have of firearms cannot be wholly excised from cases which will feature so much evidence of firearms generally. 406 F.3d at 593. Managing any such negative opinions of firearms, including unserialized firearms, is better addressed through *voir dire*, and if needed, through a limiting instruction.

Similarly, the term "ghost gun" is common parlance for an unserialized firearm, as reflected in the Google search results and sources included in defendants' own motion. While defendants assert that the term "ghost gun" is "pejorative" (Defense MIL #1, at 4), defendants do not offer an alternative means of referring to such weapons, and instead seek to ban all references to them entirely. Indeed, defendants' cited sources largely assert unobjectionable facts, such as that unserialized firearms are difficult to trace. See, e.g., "What are Ghost Guns?," Bradyunited.org, https://www.bradyunited.org/fact-sheets/what-are-ghost-guns, last visited June 8, 2022 ("Ghost guns are unserialized and untraceable firearms that can be bought online and assembled at home.").[2] Far from being pejorative, "ghost guns" is simply common parlance for unserialized weapons, and as describe above, the lack of serial numbers on the Manufactures Weapons is relevant and highly probative here. Even if some subset of potential jurors hold negative views of unserialized weapons – but not of firearms generally – defendants have failed to establish that would inflame the passions of the jury to the point of disregarding guilt or innocence.

### D. Defendants Cannot Force the Government to Sanitize its Case

Finally, a criminal defendant cannot force the government to sanitize the facts of the case, including through stipulating away unpleasant facts. As described above, the jury will see the actual

---

[2] Of course, the jurors will be instructed not to do their own internet research, and the Court presumes they will follow the jury instructions, so jurors are unlikely to stumble across these websites in any event. Thus, to the extent defendants are concerned about the term "ghost gun" leading to prejudicial juror internet research, they will be instructed not to do so. Defendants' hypothetical concern about jurors not following the Court's instructions is not sufficient reason to preclude relevant government evidence and argument.

8

Manufactured Weapons in Court, and will also see photos and videos of these weapons. Jurors will hear that legal, traceable, firearms have serial numbers from one or more experts, and they will likely see that the Manufactured Weapons have no such markings. The Manufactured Weapons are core evidence in this case, and defendants cannot sanitize them out of trial simply because they now find the details of weapons they built unappetizing to present to a jury.

For example, in United States v. Gloster, 185 F.3d 910 (D.C. Cir. 1999), the defendant attempted to invoke Rule 403 to limit evidence of his gun being loaded, seeking to preclude admission of the ammunition itself. Id. at 913-914. The court rejected defendant's unfair prejudice arguments, explaining that "[t]here is no question . . . that physical evidence is an important part of an effective trial presentation and that the 'persuasive power of the concrete and particular is often essential to the capacity of jurors to satisfy the obligations that the law places on them.'" Id. at 913 (quoting Old Chief, 519 U.S. at 172). The admission here of the Manufactured Weapons, including evidence and testimony relating to their lack of serial numbers, is "an important part of an effective trial presentation," as "the 'persuasive power of the concrete and particular is often essential to the capacity of jurors to satisfy the obligations that the law places on them.'" Gloster, 185 F.3d at 913 (quoting Old Chief, 519 U.S. at 172).

### III. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court deny defendants' motion in limine to exclude.