TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
BRIAN R. FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorney
Environmental and Community Safety Crimes Section
DAN G. BOYLE (Cal. Bar No. 332518)
Assistant United States Attorney
Asset Forfeiture Section
     1300/1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3819/2426
     Facsimile: (213) 894-0141/0142
     E-mail:    Brian.Faerstein@usdoj.gov
                Daniel.Boyle2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 19-343-GW |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANTS' JOINT MOTION TO DISMISS INDICTMENT; DECLARATION OF BRIAN FAERSTEIN; EXHIBIT |
| v. | |
| TRAVIS SCHLOTTERBECK and JAMES BRADLEY VLHA, | Hearing Date: June 23, 2022 Hearing Time: 8:00 a.m. |
| Defendant. | Location:   Courtroom of the Hon. George H. Wu |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorneys Brian Faerstein and Dan Boyle, hereby files its opposition to defendants' joint motion to dismiss indictment.  (Dkt. No. 113.)

This opposition is based upon the attached memorandum of points and authorities, the accompanying declaration and exhibit, the files

//

1   and records in this case, and such further evidence and argument as

2   the Court may permit.

3   Dated: June 9, 2022          Respectfully submitted,

4                                TRACY L. WILKISON
                               United States Attorney

5

6                                SCOTT M. GARRINGER
                               Assistant United States Attorney
7                                Chief, Criminal Division

8                                  /s/
                               BRIAN R. FAERSTEIN
9                                DAN G. BOYLE
                               Assistant United States Attorney
10

11                                Attorneys for Plaintiff
                               UNITED STATES OF AMERICA

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**TABLE OF CONTENTS**

DESCRIPTION                                                    PAGE

TABLE OF CONTENTS.................................................i

TABLE OF AUTHORITIES...........................................iii

OPPOSITION MEMORANDUM OF POINTS AND AUTHORITIES...................1

I.    INTRODUCTION...............................................1

II.   RELEVANT BACKGROUND........................................2

      A.    The Indictment.......................................2

            1.    Count 1 - Conspiracy...........................2

            2.    Count 2 – Engaging in the Business Without a
                  License........................................5

            3.    Count 3 – Sale to a Prohibited Person..........5

      B.    Presentation of Charges at Trial.....................5

III.  ARGUMENT...................................................6

      A.    Relevant Legal Standards.............................6

      B.    Defendants' Motion Should be Denied as Untimely......6

      C.    Defendants Do Not and Cannot Mount Facial Vagueness
            Challenges...........................................7

      D.    Defendants' Vagueness Claims Premised on "Receiver"
            are Irrelevant to This Case..........................9

            1.    The Indictment Alleges the Manufacture and Sale
                  of Completed AR-15-type Firearms, Not Lower
                  Receivers......................................9

            2.    The Case Law Upon Which Defendants Relies
                  Undermines Their Claims.......................11

            3.    Defendants' Reliance Upon the Government's Letter
                  is Misplaced and Misguided....................13

      E.    Defendants' Vagueness Claims Premised on
            "Manufacturing" are Without Merit...................15

            1.    The Statute is Not Vague As Applied...........16

                  a.    The Statute Provides Fair Notice........16

i

**TABLE OF CONTENTS (CONTINUED)**

DESCRIPTION                                                          PAGE

      b.   The Statute is Not Subject to Arbitrary or
          Discriminatory Enforcement.....................21

   F.   The Rule of Lenity Does Not Apply.........................24

IV.   CONCLUSION.................................................25

DECLARATION OF BRIAN FAERSTEIN....................................26

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                    PAGE

**Federal Cases**

Broughman v. Carver,
     624 F.3d 670 (4th Cir. 2010) .................................. 17, 18

Bryan v. United States,
     524 U.S. 184 (1998) ........................................... 25

Dimaya v. Sessions,
     138 S. Ct. 1204 (2018) ......................................... 8

Grayned v. City of Rockford,
     408 U.S. 104 (1972) ........................................... 23

Hill v. Colorado,
     530 U.S. 703 (2000) ........................................... 23

Holder v. Humanitarian Law Project,
     561 U.S. 1 (2010) ............................................. 25

Johnson v. United States,
     576 U.S. 591 (2015) ............................................ 8

Kashem v. Barr,
     941 F.3d 358 (9th Cir. 2019) ................................... 8

United States v. Agront,
     773 F.3d 192 (9th Cir. 2014) ................................... 9

United States v. Alexander,
     480 F. Supp. 3d 988 (N.D. Cal. 2020) ........................ 8, 22

United States v. Backlund,
     689 F.3d 986 (9th Cir. 2012) ................................... 8

United States v. Boren,
     278 F.3d 911 (9th Cir. 2002) ........................... 6, 14, 22

United States v. Carona,
     660 F.3d 360 (9th Cir. 2011) .................................. 24

United States v. Davis,
     139 S. Ct. 2319 (2019) ......................................... 8

1

**TABLE OF AUTHORITIES (CONTINUED)**

2

<u>DESCRIPTION</u>                                                                <u>PAGE</u>

3

<u>United States v. Guo</u>,
    634 F.3d 1119 (9th Cir. 2011) ............................... 24, 25

4

5

<u>United States v. Haig</u>,
    No. 2:18-CR-256, 2019 WL 2028514 (D. Nev. May 8, 2019) ........ 17-18

6

<u>United States v. Harris</u>,
    705 F.3d 929 (9th Cir. 2013) ................................... 8, 9

7

8

<u>United States v. Jimenez</u>,
    191 F. Supp. 3d 1038 (N.D. Cal. 2016) ........................ 11, 12

9

<u>United States v. Kahre</u>,
    737 F.3d 554 (9th Cir. 2013) ..................................... 25

10

11

<u>United States v. Kilbride</u>,
    584 F.3d 1240 (9th Cir. 2009) ............................. 8, 17, 21

12

13

<u>United States v. Kuzma</u>,
    967 F.3d 959 (9th Cir. 2020) ................................... 8, 9

14

<u>United States v. Lanier</u>,
    520 U.S. 259 (1997) ........................................... 6, 15

15

16

<u>United States v. Matta-Ballesteros</u>,
    71 F.3d 754 (9th Cir. 1995) ...................................... 7

17

18

<u>United States v. Mazurie</u>,
    419 U.S. 544 (1975) .............................................. 8

19

<u>United States v. Nukida</u>,
    8 F.3d 665 (9th Cir. 1993) ....................................... 6

20

21

<u>United States v. Roh</u>,
    No. SACR 14-167-JVS (C.D. Cal.) .............................. 11, 12

22

<u>United States v. Torres</u>,
    908 F.2d 1417 (9th Cir. 1990) .................................... 7

23

24

<u>United States v. Vest</u>,
    448 F. Supp. 2d 1002 (S.D. Ill. 2006) ........................... 23

25

26

<u>United States v. Wanland</u>,
    830 F.3d 947 (9th Cir. 2016) ................................. 17, 25

27

<u>United States v. Williams</u>,
    553 U.S. 285 (2008) ......................................... passim

28

**TABLE OF AUTHORITIES (CONTINUED)**

<u>DESCRIPTION</u>                                                                                 <u>PAGE</u>

<u>United States v. Wu</u>,
    711 F.3d. 1 (1st Cir. 2013) ...................................... 25

<u>United States v. Yousef</u>,
    327 F.3d 56 (2d Cir. 2003) ....................................... 7

<u>Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.</u>,
    455 U.S. 489 (1982) ......................................... 16, 21

**Federal Statutes**

18 U.S.C. § 921(a)(3)(A)................................... 2, 11, 17

18 U.S.C. § 921(a)(3)(B).................................... 2, 3, 11

18 U.S.C. § 921(a)(10)......................................... 16

18 U.S.C. § 921(a)(21)(A)...................................... 16

18 U.S.C. § 922(a)(1).......................................... 18

18 U.S.C. § 922(a)(1)(A)................................... passim

18 U.S.C. § 922(a)(1)(B)....................................... 17

18 U.S.C. § 922(o)............................................. 11

26 U.S.C. § 5861(d)............................................ 11

**Federal Rules**

Fed. R. Crim. P. 12(b)(1)....................................... 6

Fed. R. Crim. P. 12(b)(3)....................................... 7

Fed. R. Crim. P. 12(c)(1)....................................... 6

Fed. R. Crim. P. 12(c)(3)....................................... 7

**Federal Regulations**

27 C.F.R. § 478.11......................................... 10, 11

27 C.F.R. § 479.11............................................. 12

<u>**OPPOSITION MEMORANDUM OF POINTS AND AUTHORITIES**</u>

**I.    INTRODUCTION**

Defendants Travis Schlotterbeck and James Bradley Vlha have moved to dismiss the indictment, claiming constitutional vagueness as applied to the firearms manufacturing charges against them.  (Dkt. No. 113 ("Mot").)  Defendants' motion, which was untimely filed, raises challenges to the meanings of "receiver" and "manufacturing" as they purportedly relate to the charges in the indictment. Defendants' claims are misplaced and without merit.

First, defendants' challenge to the definition of "receiver" is wholly irrelevant to the charges in this case.  Defendants are alleged to have manufactured for sale <u>completed</u> AR-15-type weapons. Yet defendants devote one-half of their motion to the fiction that they are charged with having manufactured lower receivers, which are a component of AR-15-type weapons.  Defendants' vagueness claim vis-à-vis the definition of "receiver" thus has no bearing on this case, and neither requires nor warrants any manner of vagueness analysis.

Second, defendants separately challenge as vague the term "manufacturing" as it relates to the conspiracy and substantive charges of engaging in the business of manufacturing firearms without a license.  Contrary to defendants' claims, this term as used in the statutory scheme provides both fair notice and does not invite arbitrary or discriminatory enforcement, such that defendants' as-applied vagueness challenge should be rejected.

Defendants' last-ditch effort to seize on the rule of lenity ignores that the charges in this case require the government to prove willfulness, thus mitigating any potential vagueness and rendering the rule of lenity inapposite.  Defendants' motion should be denied.

1  **II.   RELEVANT BACKGROUND**

2      **A.   The Indictment**

3      Defendants are charged in a three-count indictment that is

4  premised, at its core, on defendants' and co-conspirator Ping-Yi

5  Kwan's manufacture for sale of completed AR-15-type firearms.[1]

6  Schlotterbeck and Vlha both are charged in Count 1 (conspiracy) and

7  Count 2 (engaging in the business of manufacturing and dealing in

8  firearms without a license).  Schlotterbeck is charged alone in Count

9  3 (sale of firearm to felon).  The government summarizes below the

10 allegations in the indictment most relevant to defendants' motion.

11          1.   Count 1 - Conspiracy

12     The introductory allegations of the conspiracy count provide, in

13 part, the statutory definition of "firearm" as it principally applies

14 in this case, specifically, "any weapon . . . which will or is

15 designed to or may readily be converted to expel a projectile by the

16 action of an explosive."  (Dkt. No. 1 ("Ind.") at 2, ¶ 3 (quoting 18

17 U.S.C. § 921(a)(3)(A)).)  The indictment also recites a separate

18 subpart of the "firearm" definition, that is, "the frame or receiver

19 of any such weapon."  (Id. (quoting 18 U.S.C. § 921(a)(3)(B)).)  The

20 next two paragraphs make clear that the operative definition of

21 "firearm" for purposes of the manufacture and sale of firearms in

22 this case is the "weapon" described in § 921(a)(3)(A) and not the

23 "frame or receiver of any such weapon" described in § 921(a)(3)(B).

24     Specifically, the introductory allegations explain that an "AR"

25 was "a type of firearm" and an "AR-type rifle consisted of many

26

27 ───────────

28     [1] A third defendant, Jacob Dekoning, was dismissed from the case
   upon motion of the government.  (Dkt. Nos. 70, 71.)  Kwan pleaded
   guilty in a separate proceeding and has yet to be sentenced.

2

parts, including . . . the lower receiver." (Id. at 2, ¶ 4.) Thus, the AR-type firearm necessarily constitutes a "weapon" (assuming it could "expel a projectile by the action of an explosive"), not a component "receiver," under the definition of "firearm."

Paragraph 5 of the introductory allegations summarizes certain aspects of the manufacturing process for creating an AR-type rifle or pistol (i.e., the "weapon"), including "convert[ing] an unfinished lower receiver into a finished lower receiver that could be assembled into a rifle or pistol." (Id. at 2, ¶ 5.) This conversion aspect of the process could be done through use of "specialized machinery" to "create, or 'mill out,' cavities" in the lower receiver, and then an "upper receiver and barrel [could] attach to the lower receiver" to "create[]" the firearm that did not contain a serial number. (Id.)

The indictment identifies the objects of the conspiracy as "engaging in the business of manufacturing and dealing firearms without a license, in violation of Title 18, United States Code, Section 922(a)(1)(A)." (Id. at 2-3.) In describing the "manner and means of the conspiracy," the indictment explains, "in substance," how these objects were to be accomplished. The alleged manner and means include, among other things, "[d]efendant SCHLOTTERBECK and co-conspirator Kwan . . . obtain[ing] firearms parts, including unfinished lower receivers;" "[d]efendant SCHLOTTERBECK . . . arrang[ing] to drill the cavities in in unfinished lower receivers necessary to make the lower receivers attach to an upper receiver and barrel;" and "[d]efendants SCHLOTTERBECK and VLHA, and co-conspirator Kwan . . . assembl[ing], finish[ing], and sell[ing] the completed firearms to customers." (Id. at 3, ¶¶ 2, 3, 5.)

3

1   These specific allegations track, in large part, the summary of
2   aspects of the manufacturing process described in paragraph 5,
3   specifically, arranging to create cavities in the unfinished lower
4   receivers for the other components to be attached and assembling the
5   components to create completed firearms for sale.

6   Notably, the manner and means also contain one allegation
7   regarding conduct engaged in by dismissed defendant Dekoning
8   regarding his "set up [of] a machine to mill, and direct[ing] firearm
9   customers to press the button on a machine to mill, cavities on the
10  lower receivers to finish the lower receivers." (Id. at 3, ¶ 4.)
11  The overt acts clarify Dekoning's alleged involvement was related to
12  the first two AR-15-type firearm transactions described in the
13  indictment but not the last three.  (See id. at 4, OA Nos. 4-5; id.
14  at 5, OA No. 12.)  Thus, the indictment alleges Dekoning's conduct
15  standing on its own and does not allege that it was tied to or relied
16  upon the prior allegation that Schlotterbeck "arrange[d] to drill the
17  cavities in unfinished lower receivers."  (Id. at 3, ¶¶ 3, 4.)

18  The overt acts provide a non-exclusive list of acts undertaken
19  by defendants Schlotterbeck and Vlha, as well as dismissed defendant
20  Dekoning, co-conspirator Kwan, and "others known and unknown to the
21  Grand Jury," in furtherance of the conspiracy.  Among other things,
22  the overt acts summarize certain, but not all, aspects of the
23  manufacture and sale of five completed AR-15-type firearms from
24  September 23, 2015, through June 15, 2016.  The overt acts also
25  describe a search warrant executed at the businesses defendants
26  operated in Bellflower, California, where numerous firearms parts
27  including unfinished and finished AR-type lower receivers and other
28  firearms not bearing serial numbers were found.

1              2.   <u>Count 2 – Engaging in the Business Without a License</u>

2      Count Two alleges that between approximately September 23, 2015,

3 and June 21, 2017, defendants Schlotterbeck and Vlha, as well as

4 dismissed defendant Dekoning and "others known and unknown to the

5 Grand Jury," willfully engaged in the business of manufacturing and

6 dealing in firearms without a license.  The count expressly includes

7 an aiding and abetting theory.  The count also specifies "the

8 assembly and sales" of five completed AR-15-type firearms bearing no

9 serial numbers, tracking those summarized in the overt acts.

10              3.   <u>Count 3 – Sale to a Prohibited Person</u>

11      Count Three alleges that on or about September 23, 2015,

12 defendant Schlotterbeck knowingly sold a completed AR-15-type firearm

13 bearing no serial number knowing or having reasonable cause to

14 believe that the customer had been convicted of a felony.  The

15 approximate date of this sale tracked the first transaction

16 summarized in the overt acts of the conspiracy count.

17     **B.**     **Presentation of Charges at Trial**

18      As described in its trial memorandum, the government informed

19 defense counsel on April 20, 2022, that, with respect to Counts One

20 and Two of the indictment, the government would be proceeding on a

21 theory of engaging in the business of manufacturing firearms without

22 a license only, without submitting the alternate charged theory of

23 dealing to the jury.  (Dkt. No. 89 at 9.[2])  The proposed jury

24 instructions the parties jointly filed reflect this narrowed theory

25 for purposes of trial, (<u>see</u> Dkt. Nos. 85, 86), and so too will the

26 joint statement of the case to be filed by the parties.

27

28      [2] All references to pages in filings on the Court's docket refer
to the page numbers in the ECF-filing banner at the top of the page.

1  **III. ARGUMENT**

2      **A.   Relevant Legal Standards**

3      Federal Rule of Criminal Procedure 12(b) permits a pretrial

4  motion to dismiss "that the court can determine without a trial on

5  the merits." Fed. R. Crim. P. 12(b)(1). However, in ruling on such

6  a motion, "the district court is bound by the four corners of the

7  indictment." United States v. Boren, 278 F.3d 911, 914 (9th Cir.

8  2002). The motion "cannot be used as a device for a summary trial of

9  the evidence." Id. The "unavailability of Rule 12 in determination

10  of general issues of guilt or innocence . . . helps ensure that the

11  respective provinces of the judge and jury are respected[.]" United

12  States v. Nukida, 8 F.3d 665, 670 (9th Cir. 1993).

13      A statute is unconstitutionally vague if it "fails to provide a

14  person of ordinary intelligence fair notice of what is prohibited, or

15  is so standardless that it authorizes or encourages seriously

16  discriminatory enforcement." United States v. Williams, 553 U.S.

17  285, 304 (2008). Vagueness is not implicated because of "the mere

18  fact that close cases can be envisioned," or because reasonable

19  jurists might disagree on where to draw the line in particular

20  circumstances. See id. at 305-06. Rather, "the touchstone is

21  whether the statute, either standing alone or as construed, made it

22  reasonably clear at the relevant time that the defendant's conduct

23  was criminal." United States v. Lanier, 520 U.S. 259, 267 (1997).

24      **B.   Defendants' Motion Should be Denied as Untimely**

25      Rule 12(c)(1) provides that, "[t]he court may, at the

26  arraignment or as soon afterward as practicable, set a deadline for

27  the parties to make pretrial motions and may also schedule a motion

28  hearing." Fed. R. Crim. P. 12(c)(1). "If a party does not meet the

1    deadline for making a Rule 12(b)(3) motion, the motion is untimely.

2    But a court may consider the defense, objection, or request if the

3    party shows good cause."  Fed. R. Crim. P. 12(c)(3).

4         Here, the Court entered two orders with deadlines (initially

5    January 4, 2021, and then July 15, 2021) for defendants to file Rule

6    12 motions, which they did not do.  (Dkt. Nos. 73, 75.)  Defendants

7    later represented in a stipulation to continue "that they do not

8    anticipate filing any motions pursuant to [Rule] 12(b), consistent

9    with their not having previously filed any Rule 12 pretrial motions

10   within the periods dictated for the filing of Rule 12 pretrial

11   motions as previously ordered by the Court."  (Dkt. No. 78 at ¶ 8.c.)

12   Having not complied with the Court's prior Rule 12 motion deadlines,

13   defendants have waived their right to file one now, almost one year

14   after the last deadline.  <u>See</u>, <u>e.g.</u>, <u>United States v. Matta-</u>

15   <u>Ballesteros</u>, 71 F.3d 754, 766 (9th Cir. 1995), <u>opinion amended</u>, 98

16   F.3d 1100 (9th Cir. 1996) (Rule 12 motion denied as untimely where

17   filed over two months after cut-off set by court); <u>United States v.</u>

18   <u>Torres</u>, 908 F.2d 1417, 1424 (9th Cir. 1990) (Rule 12 motion denied as

19   untimely where filed three months after motions cut-off date).[3]

20        **C.   Defendants Do Not and Cannot Mount Facial Vagueness**
          **Challenges**

21

22        Defendants assert in passing that the statutes they are charged

23

24   ───────────────

         [3] While Schlotterbeck's new counsel may argue he was recently
25   retained, the decisions of Schlotterbecks's prior counsel do not
     insulate him from waiver.  <u>See</u>, <u>e.g</u>, <u>United States v. Yousef</u>, 327
26   F.3d 56, 124–25 (2d Cir. 2003) ("A strategic decision by counsel not
     to pursue a claim, inadvertence of one's attorney, and an attorney's
27   failure to timely consult with his client are all insufficient to
     establish cause" for untimely pretrial motion practice).  In any
28   event, counsel to defendant Vlha, who has been retained since August
     2019, does not have any possible argument for "good cause" here.

with violating are vague "both on their face and as applied to the defendants' conduct" (Mot. at 2), but their entire argument is devoted to "as applied" challenges (Mot. at 6 & n.2, 8, 9, 11, 13). They have waived any facial challenge by failing to develop it, and rightfully so given that "'[v]agueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand,'" <u>United States v. Harris</u>, 705 F.3d 929, 932 (9th Cir. 2013) (quoting <u>United States v. Mazurie</u>, 419 U.S. 544, 550 (1975)); <u>accord</u> <u>United States v. Backlund</u>, 689 F.3d 986, 997 (9th Cir. 2012).  The guiding principle outside the First Amendment context is that one "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others." <u>United States v. Kilbride</u>, 584 F.3d 1240, 1257 (9th Cir. 2009); <u>see</u> <u>also</u> <u>Kashem v. Barr</u>, 941 F.3d 358, 375 (9th Cir. 2019) ("[A] defendant who cannot sustain an as-applied vagueness challenge to a statute cannot be the one to make a facial vagueness challenge to the statute.").[4]

---

[4] The only other precedents recognizing an exception to the rule that defendants may not mount facial vagueness challenges to criminal provisions are cases involving challenges to the "residual clause" of penalty-enhancing statutes. <u>See</u> <u>Kashem</u>, 941 F.3d at 377; <u>see also</u> <u>Johnson v. United States</u>, 576 U.S. 591, 597 (2015); <u>Dimaya v. Sessions</u>, 138 S. Ct. 1204, 1210-11 (2018); <u>United States v. Davis</u>, 139 S. Ct. 2319, 2336 (2019).  Those cases undertake facial vagueness analysis because they entail application of the categorical approach, which itself requires a facial analysis, evaluating "the idealized ordinary case of the crime" rather than "the facts of the case at hand." <u>Kashem</u>, 941 F.3d at 377; <u>United States v. Alexander</u>, 480 F. Supp. 3d 988, 1000 (N.D. Cal. 2020) (declining to reach facial vagueness claim to definitions of "firearm silencer" and "firearm muffler" where the statutory definition did "not require the Court to 'imagine how the idealized ordinary case of the crime subsequently plays out'").  To the extent <u>United States v. Kuzma</u>, 967 F.3d 959 (9th Cir. 2020), suggests that facial vagueness challenges are cognizable in other contexts, the suggestion is dicta because the Court rejected the facial challenge in that case.  <u>Id.</u> at 971 & n.10. *(footnote cont'd on next page)*

8

1    An as-applied vagueness challenge focuses on the conduct alleged

2  and turns on whether a challenged statute "fails to put a defendant

3  on notice that his conduct was criminal." United States v. Harris,

4  705 F.3d 929, 932 (9th Cir. 2013).  Because defendants do not and

5  cannot mount facial vagueness challenges, this Court "need only

6  examine the vagueness challenge under the facts of the particular

7  case and decide whether, under a reasonable construction of the

8  statute, the conduct in question is prohibited." United States v.

9  Agront, 773 F.3d 192, 195 (9th Cir. 2014).

10   **D.  Defendants' Vagueness Claims Premised on "Receiver" are
         Irrelevant to This Case**

11

12   The first half of defendants' motion is premised on a fallacy

13  that neither requires nor warrants any manner of vagueness analysis

14  to decide.  This is not a case about the manufacture and sale of

15  "lower receivers," as much as defendants claim it to be.  Rather,

16  defendants are charged with manufacturing for sale completed AR-15-

17  type weapons, and any potential vagueness in the definition of "lower

18  receiver" has no bearing on the Court's resolution of the motion.

19   **1.  The Indictment Alleges the Manufacture and Sale of
            Completed AR-15-type Firearms, Not Lower Receivers**

20

21   As described above, all three counts of the indictment are

22  premised on the manufacture and sale of completed AR-15-type

23  firearms.  The conspiracy count (Count 1) describes the manufacture

24  of AR-15-type firearms that fit the definition of "any weapon . . .

25  which will or is designed to or may readily be converted to expel a

26  _____

27  And, in fact, Kuzma confirmed that in an 18 U.S.C. § 922 prosecution
     like this one, a categorical inquiry is improper; rather, "an
     objective standard about the actual features of a device is to be
28  applied to the real-world facts of the defendant's specific device."
     Id. at 971.

9

1    projectile by the action of an explosive."  The manner and means

2    described how the co-conspirators manufactured those completed

3    weapons.  And the overt acts provided non-exclusive examples of acts

4    in furtherance of manufacturing five separate completed AR-15-type

5    weapons.  The substantive trafficking count (Count 2) alleges the

6    manufacture and sale of the same five separate completed AR-15-type

7    weapons.  And the sale to a prohibited person count (Count 3)

8    similarly alleges the sale of a completed AR-15-type rifle.

9         Notwithstanding this record, defendants make numerous claims

10   that are counterfactual to the charges in this case.  For instance,

11   in the introduction to their motion, defendants contend that the

12   "statutory term for firearm, <u>in this case the receiver</u>, does not

13   provide any definition about the necessary characteristics of that

14   receiver/firearm."  (Mot. at 5 (emphasis added).)  Defendants

15   similarly state that "[n]owhere . . . in the indictment, is there an

16   acknowledgment that this 'milled out' lower receiver does not fit the

17   definition of 'firearm,'" which, of course, is irrelevant given that

18   the completed AR-15-type weapons are the firearms. (<u>Id.</u> at 4.)

19        Defendants then devote the entire first half of their vagueness

20   challenge – section II, titled "Vagueness: Receiver" – to alleging

21   vagueness as to the then definition of "firearm frame or receiver"

22   under 27 C.F.R. § 478.11.  (Mot. at 6-9.)  Defendants conclude that,

23   "since Counts 1, 2 and 3 are premised on the lower receiver being the

24   'firearm,' thus requiring a federal firearms license to manufacture,

25   the charges against Mr. Schlotterbeck must be dismissed as

26   unconstitutionally vague."  (Mot. at 9.)

27        Defendants are wrong.  The completed AR-15-type rifles and

28   pistols are alleged to be the "firearms," that is, "any weapon . . .

                                      10

1   which will or is designed to or may readily be converted to expel a

2   projectile by the action of an explosive."  18 U.S.C. § 921(a)(3)(A).

3   (See also Ind. at 2, ¶ 3.)  While the indictment also recites one of

4   the alternate definitions of "firearm" – i.e., "the frame or receiver

5   of any such weapon," 18 U.S.C. § 921(a)(3)(B) – the context,

6   implication, and plain meaning of the indictment, as described in

7   section II.A above, makes clear the charges are premised on the AR-

8   15-type firearms being a "weapon," not a "frame or receiver."

9        The entirety of defendants' analysis of the lower receiver issue

10  assumes, without justification, just the opposite.  The regulatory

11  definition of "firearm frame or receiver" upon which they focus (27

12  C.F.R. § 478.11) pertains solely to the statutory definition of

13  "frame or receiver" under § 921(a)(3)(B).  Defendants' extensive

14  arguments on this point are irrelevant and do not give rise to a

15  vagueness challenge here.

16            2.    The Case Law Upon Which Defendants Relies Undermines
                    Their Claims
17

18       The cases upon which defendants rely in their vagueness analysis

19  of "receiver" only underscore their fundamentally flawed approach in

20  their motion.  The two opinions they cite – United States v. Jimenez

21  and United States v. Roh – were predicated on charges relating solely

22  to "lower receivers."  And in fact, the courts in both cases found no

23  vagueness concerns when considering completed firearms.

24       First, in United States v. Jimenez, 191 F. Supp. 3d 1038 (N.D.

25  Cal. 2016) (which defendants attached as Exhibit B to their motion),

26  the government charged the defendant with illegally possessing "an

27  AR-15-style machinegun lower receiver" under both 18 U.S.C. § 922(o)

28  and 26 U.S.C. § 5861(d).  Id. at 1039 (emphasis added).  The

                                   11

1  indictment did not allege that the defendant possessed other

2  components of a machinegun, much less a completed machinegun.  In

3  considering the defendant's challenge to the applicable regulatory

4  definition of the term "receiver," the court found the definition was

5  vague as applied and dismissed the indictment "to the extent the

6  Government's prosecution . . . is based on the theory that [the

7  defendant] possessed a 'receiver' as that term is defined in 27

8  C.F.R. § 479.11."  Id. at 1045.

9       Notably, however, the court denied the defendant's motion to the

10  extent the government's theory was that "the AR-15 lower receiver

11  [the defendant] possessed could be deemed a 'part designed and

12  intended solely and exclusively . . . for use in converting a weapon

13  into a machinegun.'"  Id.  The court explained that whether the

14  defendant could "be convicted on this basis is a question of fact and

15  not one of law or vagueness."  Id.  The court did not foreclose

16  prosecution of the defendant "under any part of the machinegun laws

17  not dependent on possession of a 'receiver.'"  Id. at 1046.

18       Defendants cite to a letter from then Attorney General Loretta

19  Lynch describing the facts and legal analysis of Jimenez in finding

20  that the case was "not a suitable vehicle for appellate review."

21  (Mot., Exh. B (Dkt. No. 113-2) at 3.)  Much like the court in

22  Jimenez, however, the letter makes clear that "[i]n this case, the

23  defendant purchased only a lower receiver."  (Id. at 2.)

24       Second, in United States v. Roh, No. SACR 14-167-JVS (C.D.

25  Cal.), Judge Selna issued a tentative order regarding a post-trial

26  vagueness challenge and Rule 29 motion, where the defendant was

27  alleged to have "willfully engaged in the business of manufacturing

28  and dealing firearms, to wit, hundreds of AR-15-type lower receivers,

completed pistols, and completed rifles."  (See Mot., Exh. B at 15.)
Ruling on a tentative basis, the court found that "with respect to
manufacturing receivers, the statute and regulation are
unconstitutionally vague as applied here."  (Id. at 20.)  However,
with respect to the charges predicated on the manufacture of
completed firearms, the court found that "[t]here is no question that
[the defendant] manufactured completed AR-15s," rejecting a similar
"lack of notice" argument on that ground.  (Id. at 22.)  Thus, the
court tentatively denied the defendant's Rule 29 motion to the extent
the government's theory of his manufacture and sale of firearms was
predicated on the completed AR-15-type firearms.  (Id.)

Despite the clear and material distinction between the
allegations in Jimenez and Roh (lower receivers) and here (completed
weapons), defendants inexplicably "request that this court
incorporate the reasoning in the [Jimenez and Roh] orders and
determine that the lower receiver of the AR-15, for constitutional
vagueness purposes, cannot constitute a 'firearm' for the purpose of
criminal prosecution under the statutes supporting the indictment
against them."  (Mot. at 8.)  The Court should reject defendants'
request.  These cases - and the entirety of defendants' argument
regarding vagueness as to the definition of "receiver" - are wholly
irrelevant to a vagueness challenge to the charges in this case.

3.   Defendants' Reliance Upon the Government's Letter is
Misplaced and Misguided

In further support of their erroneous focus on lower receivers,
defendants also seek to rely on a letter the government provided to
defendants in this case regarding the anticipated trial testimony of
ATF Senior Industry Operations Investigator / Industry Operations

13

1    Intelligence Specialist Thomas M. Chimileski, Jr.  (See Mot., Exh. A

2    (Dkt. No. 113-1).)  Defendants claim that the information in the

3    letter is a "perfect illustration of the constitutionally defective

4    arbitrary enforcement problem."  (Mot. at 9.)  Defendants are wrong.

5         As a preliminary matter, information pertaining to a government

6    witness's potential testimony is outside the scope of a Rule 12

7    motion.  Boren, 278 F.3d at 914.  Defendants cannot use their motion

8    "as a device for a summary trial of the evidence," and the Court

9    "should not consider evidence not appearing on the face of the

10   indictment."  Id.  While the potential views of the government's

11   anticipated expert witness (albeit distilled through a letter from

12   government counsel) may be subject to defendants' cross-examination

13   at trial, they are not a basis to support a motion to dismiss.

14        Moreover, defendants misunderstand the import of the information

15   the government summarized in the letter.  Specifically, the letter

16   explains that, despite becoming aware of ATF's "change in criminal

17   enforcement litigating position in this District" in light of recent

18   lower receiver vagueness challenges, Investigator Chimileski "still

19   considers finished lower receivers as meeting the [soon-to-be-amended

20   regulatory] definition of 'firearm frame or receiver'" for purposes

21   of his "day-to-day regulatory duties."  (Mot., Exh. A at 3 (emphasis

22   added).)  Defendants distort this statement to mistakenly claim that

23   Investigator Chimileski "still believes his interpretation should

24   have force of criminal law."  (Mot. at 9.)  Defendants confuse the

25   "regulatory duties" of an ATF industry operations investigator in the

26   field with "criminal enforcement" decisions having nothing to do with

27   someone in Investigator Chimileski's position.

28

                                    14

1   To be fair, defendants have yet to have the opportunity to

2   examine Investigator Chimileski about these and other evidentiary

3   issues.  But the appropriate time for such will be at trial, not

4   through a motion to dismiss alleging constitutional vagueness.  And

5   in any event, defendants' claims of purported "arbitrary enforcement"

6   with respect to lower receivers and the regulatory definition of

7   "receiver" have nothing to do with the actual charges in this case.

8                        *     *     *

9   For the foregoing reasons, the Court should decline to consider

10  defendants' vagueness challenge premised on the regulatory definition

11  of "receiver" as it relates to uncharged lower receivers in this

12  case.  The Court thus should deny defendants' motion as it relates to

13  the definition of "receiver."[5]

14  **E.   Defendants' Vagueness Claims Premised on "Manufacturing"
        are Without Merit**

15

16  Defendants challenge the term "manufacturing" as used in 18

17  U.S.C. § 922(a)(1)(A) both as failing to provide fair notice of the

18  criminally punishable conduct as well as inviting arbitrary

19  enforcement.  Defendants' claims should be rejected, as the statute

20  as charged here "made it reasonably clear at the relevant time that

21  the [defendants'] conduct was criminal."  <u>Lanier</u>, 520 U.S. at 267.

22  Defendants raise their claims on an as-applied basis, focusing

23  on the conduct alleged in this case.  Indeed, as explained above,

24  defendants' vagueness challenge here should be considered <u>only</u> as

25

26  ──────────────

27      [5] Defendant Schlotterbeck based his vagueness challenge to Count
    Three (sale to a prohibited person) solely upon the section of his
    motion claiming vagueness vis-à-vis the definition of "receiver."
28  (<u>See</u> Mot. at 6 n.2.)  Thus, the Court need not consider further any
    vagueness challenge as it relates to Count Three.

applied, because a person "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others."  Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 495 (1982).

              1.   The Statute is Not Vague As Applied

                  a.   *The Statute Provides Fair Notice*

The central thrust of defendants' notice claim is that "[n]owhere in the indictment, or the statutes supporting the indictment, is the term manufacturing defined," and their alleged conduct amounted to "assembling – not manufacturing a firearm.  (Mot. at 10, 11.)  Contrary to defendants' claims, section 922(a)(1)(A) provides more than sufficient notice to make it "reasonably clear" that defendants' alleged conduct here was criminally prohibited.

Section 922(a)(1)(A) makes it unlawful, in relevant part, "for any person except a licensed importer, licensed manufacturer, or licensed dealer, to engage in the business of importing, manufacturing, or dealing in firearms."  18 U.S.C. § 922(a)(1)(A).  Section 921(a)(1) defines "manufacturer" as "any person engaged in the business of manufacturing firearms or ammunition for purposes of sale or distribution."  18 U.S.C. § 921(a)(10).  In turn, section 921(a)(21)(A) provides that the term "engaged in the business" means "as applied to a manufacturer of firearms, a person who devotes time, attention, and labor to manufacturing firearms as a regular course of trade or business with the principal objective of livelihood and profit through the sale or distribution of the firearms manufactured."  18 U.S.C. § 921(a)(21)(A).  And, as previously explained, "firearm" as used in this case means "any weapon . . .

1  which will or is designed to or may readily be converted to expel a
2  projectile by the action of an explosive."  18 U.S.C. § 921(a)(3)(A).

3        While the term "manufacturing" is not further defined, "[w]hen
4  Congress does not define a term in a statute, we construe that term
5  according to its ordinary, contemporary, common meaning."  United
6  States v. Kilbride, 584 F.3d 1240, 1257 (9th Cir. 2009) (quotation
7  marks and citation omitted); cf United States v. Wanland, 830 F.3d
8  947, 954 (9th Cir. 2016) ("[A] lack of prior appellate rulings on the
9  topic does not render the law vague.").  A recent District of Nevada
10  case involving a vagueness challenge to the term "manufacturing
11  ammunition" as used in 18 U.S.C. § 922(a)(1)(B) is instructive as to
12  the "ordinary meaning" of "manufacturing."  See United States v.
13  Haig, No. 2:18-CR-256, 2019 WL 2028514, at *4 (D. Nev. May 8, 2019).

14        In Haig, the district court observed that the "Ninth Circuit has
15  not provided the plain and ordinary meaning of 'manufacturing.'
16  However, the Fourth Circuit held in Broughman that 'manufacturing
17  firearms' means assembling a firearm's individual components so as to
18  render the firearm suitable for use."  Id. at *4 (construing
19  Broughman v. Carver, 624 F.3d 670 (4th Cir. 2010)).  The Fourth
20  Circuit in Broughman and the district court in Haig both looked to
21  the Merriam-Webster Dictionary definition of "manufacturing," i.e.,
22  "to make a product suitable for use."  Broughman, 624 F.3d at 675;
23  Haig, 2019 WL 20285114, at *4.  The Haig court also noted the
24  Dictionary.com definition as "to make or produce by hand or
25  machinery, especially on a large scale."  Haig, 2019 WL 20285114, at
26  *4.  Both courts held that "manufacturing" (as to firearms in
27  Broughman and ammunition in Haig) means "assembling [a firearm's or
28  ammunitions'] individual components so as to render the [firearm or

17

1  ammunition] suitable for use." <u>Broughman</u>, 624 F.3d at 675; <u>Haig</u>,
2  2019 WL 20285114, at *4.

3      Defendants contend that all they did was "assemble" firearms,
4  and the "claim that the assembling of the component parts amounts to
5  manufacturing for which a federal manufacturing license is required"
6  is constitutionally vague.  (Mot. at 10-11.)  However, the courts
7  that have directly considered the meaning of "manufacturing" within
8  the context of 18 U.S.C. § 922(a)(1), looking at the "plain and
9  ordinary" meaning of the term, have indicated that assembly of
10 firearms to make them suitable for use does constitute manufacturing.
11 Even the tentative opinion in the <u>Roh</u> case, upon which defendants
12 rely heavily, found that "there [wa]s no question that [the
13 defendant] manufactured completed AR-15s," which it referred to as
14 the "Assembly of Firearms."  (Mot., Exh. B at 21-22.)  There,
15 customers "initiat[ed] the process of machining a receiver" and
16 "[b]ut for that one step, [the defendant] performed all of the steps
17 in manufacturing completed AR-15s."  (<u>Id.</u> at 17.)

18     But assembly is not all defendants are charged with doing in
19 this case.  The indictment expressly describes the manufacturing
20 process for the completed AR-15-type firearms, which includes not
21 only the ultimate assembly of the weapons but also the "use [of]
22 specialized machinery on an unfinished lower receiver to create, or
23 'mill out,' cavities to create a lower receiver" which can then be
24 ready for "an upper receiver and barrel to attach."  (Ind. at 2,
25 ¶ 5.)  As part of the manner and means, Schlotterbeck is alleged to
26 have obtained the component parts, including unfinished lower
27 receivers, and "arranged to drill the cavities in unfinished lower
28 receivers necessary to make the lower receivers attach to an upper

receiver and barrel."[6]  (Id. at 3, ¶ 3.)  Defendants are charged with
conspiring in the object of manufacturing these completed AR-15-type
firearms, and aiding and abetting each other in the same.  In sum,
the alleged manufacturing conduct here includes both the arranging
for lower receivers to be milled out and the subsequent assembly of
those lower receivers with the other components obtained by the co-
conspirators to create completed weapons.

Defendants critically mischaracterize the manner and means in
their summary of the indictment, twisting and conflating the
allegations to imply that, in all cases, defendant Schlotterbeck and
co-conspirator Kwan "'arrange[d]' to have the 'firearm customers'
mill the unfinished lower receivers."  (Mot. at 5.)  That is false,
as the overt acts make clear that customers were involved, with the
co-conspirators' assistance, in initiating the process to mill out
the lower receivers for the first two weapons but not the last
three.[7]  Defendants' distortion of the allegations underscores the
fundamental disconnect between their motion and the charges in the
indictment.  The indictment sufficiently alleges they were involved
with both the milling phase and assembly phase of the manufacturing
process.  Defendants will have the opportunity at trial to challenge
the evidence proving their involvement in the manufacturing process.

_____

[6] Defendants ignore this central allegation regarding machining
in their motion, incorrectly claiming that the "only reference to
anything other than [] assembling" is in Paragraph 5 of the
Introductory Allegations.  (Mot. at 4.)

[7] Even where the customers were involved in the initial step in
the process, the co-conspirators provided assistance.  For instance,
during the first transaction, Schlotterbeck provided the unfinished
lower receiver to the CI as well as the $60 to pay for the milling
process.  (Ind. at 4, OA No. 4.)  During the second transaction, Kwan
provided the unfinished lower receiver and drove the undercover agent
to the machine shop.  (Id. at 5, OA No. 11.)

1   Indeed, "[c]lose cases can be imagined under virtually any statute.

2   The problem that poses is addressed, not by the doctrine of

3   vagueness, but by the requirement of proof beyond a reasonable

4   doubt." United States v. Williams, 553 U.S. 285, 306 (2008).

5       Finally, the statutory scheme and the plain and ordinary

6   meaning of "manufacturing" were more than sufficient to provide "a

7   person of ordinary intelligence fair notice of what is prohibited" –

8   including the conduct at issue in the case at hand. Williams, 553

9   U.S. at 304.  But if defendants had any doubts, ATF had issued a

10  Director's Ruling ("ATF 2015-1") titled "Manufacturing and

11  Gunsmithing" on January 2, 2015 – just several months before

12  defendants' conspiracy was alleged to have commenced in May 2015.

13  (See Declaration of Brian Faerstein, Exhibit A; see also

14  https://www.atf.gov/firearms/docs/ruling/2015-1-manufacturing-and-

15  gunsmithing/download (last visited June 9, 2022).)

16      Among other things, ATF 2015-1 made clear that "one can be a

17  manufacturer of a 'frame or receiver,' and also a 'weapon . . . which

18  will or is designed to or may readily be converted to expel a

19  projectile by the action of an explosive' that incorporates that

20  frame or receiver."  (Exh. A at 3 (emphasis added).)  ATF 2015-1 also

21  stated that "when a person performs machining or other manufacturing

22  process on a blank [i.e., an unfinished lower receiver] to make a

23  firearm 'frame or receiver,' or on an existing frame or receiver to

24  make it suitable for use as part of a 'weapon . . . which will or is

25  designed to or may readily be converted to expel a projectile by the

26  action of an explosive,' that person has performed a manufacturing

27  operation other than what is contemplated by the [Gun Control Act] of

28  dealer-gunsmiths."  (Id. (emphasis added).)  And ATF-2015 further

20

clarified that "machining or other manufacturing process" included "making a frame or receiver, or taking any of the steps to make an existing frame or receiver functional – that is, suitable for use as part of a weapon that will expel a projectile by the action of an explosive." (Id. (emphasis in original).)   In other words, ATF 2015-1 made clear, consistent with the plain meaning of manufacturing, that a completed weapon can be manufactured (not just a lower receiver), and the machining process applied to a lower receiver can be part of the overall manufacturing process for a completed firearm.[8] Thus, defendants' claim that they could only have manufactured the lower receiver because it was "the only part of the weapon in question that was converted from raw materials" is wrong.   (Mot. at 10.)

Under these circumstances, defendants had fair notice that their conduct was prohibited.   Even where applying a heightened requirement for clarity in the criminal context, "due process does not require impossible standards of clarity." United States v. Kilbride, 584 F.3d 1240, 1257 (9th Cir. 2009).   And as described in section III.F below, the requirement that the government prove willfulness with respect to 18 U.S.C. § 922(a)(1)(A) "may mitigate a law's vagueness, especially with respect to the adequacy of notice . . . that [the] conduct is proscribed." Hoffman Estates, 455 U.S. at 499.

> b.   *The Statute is Not Subject to Arbitrary or Discriminatory Enforcement*

Defendants' as-applied vagueness challenge predicated on arbitrary enforcement is similarly without merit, as the meaning of

---

[8] ATF 2015-1 also cited directly to the Fourth Circuit's definition of "manufacture" in Broughman, i.e., "to make into a product suitable for use."   (Exh. A at 3 n.1.)

1  "manufacturing" within the statutory scheme is not "so standardless

2  that it authorizes or encourages seriously discriminatory

3  enforcement."  <u>Williams</u>, 553 U.S. at 304.

4       First, defendants' alleged conduct in this case, both with

5  respect to arranging to mill out the unfinished lower receivers and

6  assembling them with all the other components they obtained to create

7  completed firearms, "plainly fits within" the statutory scheme of

8  engaging in the business of "manufacturing" firearms, as described in

9  the fair notice section above.  This fact alone rebuts any claim that

10  the challenged statute "lacks any standards and allows ad-hoc

11  decision making."  <u>See</u>, <u>e.g.</u>, <u>United States v. Alexander</u>, 480 F.

12  Supp. 3d 988, 999 (N.D. Cal. 2020) (declining to address an arbitrary

13  enforcement claim where the silencer at issue "plainly fit within"

14  the statutory definition found to constitute fair notice).

15       Second, defendants' reliance on the government's letter

16  regarding Investigator Chimileski once again is misplaced.  (Mot. at

17  10-11.)  As previously explained, the information in the letter

18  pertaining to potential witness testimony at trial is not before the

19  Court on this motion to dismiss.  <u>See</u> <u>Boren</u>, 278 F.3d at 914.  But

20  even if it was, the information in the disclosure does not reflect a

21  statutory scheme "so standardless that it authorizes or encourages

22  seriously discriminatory enforcement."  <u>Williams</u>, 553 U.S. at 304.

23       Defendants focus on certain language in the letter – written by

24  government counsel, not Investigator Chimileski – regarding the first

25  two firearm manufacturing transactions described in the indictment,

26  as potentially differentiated from the latter three included in the

27  indictment (among others that will be part of the government's

28  evidence at trial).  Specifically, defendants argue that the

inclusion of qualifying terms in the letter, such as "may have
required" and "would likely require" a specific type of firearm
license, evinces "the degree and type of unconstitutional vagueness
that allows 'the government . . . to pick and choose who is covered
by [the term manufacturing] and who isn't.'"  (Mot. at 11-12 (quoting
United States v. Vest, 448 F. Supp. 2d 1002, 1012 (S.D. Ill. 2006).)
The government's letter also makes clear, however, that the analysis
of the licensing scheme is informed by "fact-specific circumstances,"
(Mot., Exh. A at 3), and "perfect clarity and precise guidance have
never been required even of regulations that restrict expressive
activity."  Williams, 553 U.S. at 304; see also cf. Hill v. Colorado,
530 U.S. 703, 733 (2000) ("[B]ecause we are '[c]ondemned to the use
of words, we can never expect mathematical certainty from our
language,'" and recognizing that "'[a]s always, enforcement requires
the exercise of some degree of police judgment,'") (quoting Grayned
v. City of Rockford, 408 U.S. 104, 110 (1972)).

Moreover, to the extent such information outside the four
corners of the indictment were to be considered on this motion to
dismiss, so too should evidence the government expects to present at
trial demonstrating, among other things, that the co-conspirators'
escorting of the first two customers to a machine shop (and providing
them the unfinished lower receiver and paying for it to be milled)
was an aberrational charade as part of defendants' manufacturing
conspiracy; and defendants expressly informed the customers
thereafter that defendants would arrange for the milling of the lower
receivers so long as the customers lied that they had done it
themselves.  However, courts do not evaluate such potential "close

1  cases" through "the doctrine of vagueness, but by the requirement of
2  proof beyond a reasonable doubt." Williams, 553 U.S. at 306.

3     Finally, as explained below, the willfulness requirement of 18
4  U.S.C. § 922(a)(1)(A), and the government's burden of proving that
5  state of mind at trial, further guard against any potential arbitrary
6  or discriminatory enforcement as applied to defendants' conduct here.
7  See, e.g., United States v. Guo, 634 F.3d 1119, 1123 (9th Cir. 2011)
8  ("[T]he scienter requirement in § 1705(c) further alleviates any
9  concern over the complexity of the regulatory scheme.").

10    Accordingly, the charges against defendants predicated on their
11 engaging in the business of "manufacturing" firearms without a
12 license are not vague as applied in this case.

13    **F.   The Rule of Lenity Does Not Apply**

14    Defendants' contention that the rule of lenity provides an
15 alternative ground for the Court to dismiss the "manufacturing"
16 charges also is without merit. (Mot. at 12.) The Ninth Circuit has
17 cautioned that, "[t]he rule of lenity only applies . . . where there
18 is a grievous ambiguity or uncertainty in the language and structure
19 of the [statute], such that even after a court has seize[d]
20 everything from which aid can be derived, it is still left with an
21 ambiguous statute." United States v. Carona, 660 F.3d 360, 369 (9th
22 Cir. 2011) (quotation marks and citation omitted). Thus, "[b]ecause
23 the meaning of language is inherently contextual," the Ninth Circuit
24 has "declined to deem a statute ambiguous for purposes of lenity
25 merely because it was possible to articulate a construction more
26 narrow than that urged by the government." Id. (emphasis in
27 original). Any ambiguity in the meaning of "manufacturing" (and the

28

24

1   government contends there is none) is far from the "grievous

2   ambiguity or uncertainty" contemplated by the Ninth Circuit.

3       Moreover, defendants ignore that the statute at issue (18 U.S.C.

4   § 922(a)(1)(A)) contains a willfulness requirement.  The "[i]nclusion

5   of a scienter requirement 'mitigates a law's vagueness, especially

6   with respect to the adequacy of notice to the complainant that his

7   conduct is proscribed." United States v. Kahre, 737 F.3d 554, 572

8   (9th Cir. 2013) (quoting Guo, 634 F.3d at 1123).  "Lenity is

9   especially inappropriate" where statutes require scienter.  United

10  States v. Wanland, 830 F.3d 947, 954 (9th Cir. 2016); see also Guo,

11  634 F.3d at 1123 (willfulness requirement in statute "further

12  alleviates any concern over the complexity of the regulatory

13  scheme"); United States v. Wu, 711 F.3d. 1, 15 (1st Cir. 2013)

14  ("Where a statute explicitly provides that a criminal violation of

15  its terms must be 'willful,' the void-for-vagueness doctrine is

16  especially inapposite, since the statute itself ensures that good-

17  faith errors are not penalized.") (cleaned up).

18      Here, the government must prove that defendants knew their

19  conduct of manufacturing firearms without a license was unlawful, and

20  that they acted intentionally and purposely and with the intent to do

21  something the law forbids.  Bryan v. United States, 524 U.S. 184,

22  190-192 (1998).  As "the knowledge requirement of the statute further

23  reduces any potential for vagueness," Holder v. Humanitarian Law

24  Project, 561 U.S. 1, 21 (2010), application of the rule of lenity is

25  neither necessary nor appropriate in this case.

26  **IV.  CONCLUSION**

27      Accordingly, the government respectfully requests that this

28  Court deny defendants' joint motion to dismiss the indictment.

1

<u>**DECLARATION OF BRIAN FAERSTEIN**</u>

2

I, Brian Faerstein, declare as follows:

3

1.   I am an Assistant United States Attorney in the United

4

States Attorney's Office for the Central District of California.  I

5

represent the government in <u>United States v. Travis Schlotterbeck and</u>

6

<u>James Bradley Vlha</u>, 2:19-CR-343-GW.

7

2.   Attached hereto as **<u>Exhibit A</u>** is a Bureau of Alcohol,

8

Tobacco, Firearms and Explosives ("ATF") Director's Ruling, titled

9

"Manufacturing and Gunsmithing" and dated January 2, 2015 ("ATF 2015-

10

1").  I obtained a digital copy of ATF 2015-1 over the internet at

11

the following address on June 9, 2022: https://www.atf.gov/firearms/

12

docs/ruling/2015-1-manufacturing-and-gunsmithing/download.

13

I declare and affirm under penalty of perjury that the foregoing

14

is true and correct to the best of my knowledge.

15

Executed on June 9, 2022, at Los Angeles, California.

16

17

_____
BRIAN FAERSTEIN

18

19

20

21

22

23

24

25

26

27

28