UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CRIMINAL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | CR 19-343-GW | Date | June 22, 2022 |

Present: The Honorable: **GEORGE H. WU, UNITED STATES DISTRICT JUDGE**

Interpreter: NONE

| Javier Gonzalez | None Present | Brian R. Faerstein - not present |
|---|---|---|
| *Deputy Clerk* | *Court Reporter/Recorder, Tape No.* | *Assistant U.S. Attorney* |

| U.S.A. v. Defendant(s): | Present | Cust. | Bond | Attorneys for Defendants: | Present | App. | Ret. |
|---|---|---|---|---|---|---|---|
| 1. Travis Schlotterbeck | not | | ✔ | Edward M. Robinson | not | | ✔ |
| 2. James Bradley Vlha | not | | ✔ | Jerome J. Haig, CJA | not | ✔ | |

**Proceedings:** **IN CHAMBERS - TENTATIVE RULING ON DEFENDANTS' JOINT MOTION TO DISMISS INDICTMENT PER FED. R.CRIM. P. 12(b)(3)(a) [113]**

Attached hereto is the Court's Tentative Ruling on Defendants' Joint Motion to Dismiss [113], set for hearing on June 23, 2022 at 12:00 p.m.

Initials of Deputy Clerk   JG

cc:

<u>*United States v. Schlotterbeck and Vlha.*</u>; Case No. 19-cr-00343-GW
Tentative Ruling on Defendants' Motion to Dismiss Indictment

On June 2, 2022, Defendants Travis Schlotterbeck ("Schlotterbeck") and James Bradley Vlha ("Vlha") (collectively "Defendants") moved to dismiss the Indictment in this criminal action which was filed on June 11, 2019 (*see* ECF No. 1), and which includes three-counts: (1) for conspiring to manufacture and deal in firearms without a federal license, in violation of 18 U.S.C. §§ 371 and 922(a)(1)(A), (2) for the sale of five AR-15 type firearms without a license, and (3) against Schlotterbeck alone, for the sale of a firearm to a felon in violation of 18 U.S.C. § 922(d)(1).[1]  *See generally* Defendants' Motion to Dismiss Indictment, ECF No. 113 ("Motion" or "Mot.").[2]  Defendants argue that the Indictment is unconstitutional as vague, both on its face and as applied to the Defendants' conduct here.  Specifically, Defendants argue that the terms "receiver" and "manufacturing" are unconstitutionally vague on grounds that they do not provide the required notice such that ordinary people can understand what conduct is prohibited.  *See* Mot. at 3.  Further, Defendants argue that a motion to dismiss the indictment on vagueness is appropriate here because the Defendants are asking the Court to rule on a question of law.

For the reasons detailed below, the Court agrees with the Government's Opposition in part and denies Defendants' motion.

A.   Timeliness and Consideration

Initially, the Government points to the purported lack timeliness of Defendants' motion.  *See* Opp. at 6-7.  It argues that the Court had set a deadline for pretrial motions under Federal Rule of Criminal Procedure 12(b), which was July 15, 2021.  *See* ECF No. 75.  Defendants filed this motion on June 2, 2022, which is almost a year later than the established deadline.  Further, the Government notes that − when they joined with the Government to make a further Stipulation Regarding Request for (1) Continuance of Trial Date and (2) Findings of Excludable Time Periods ("Stipulation"), *see* ECF No. 78 − Defendants represented that they did "not anticipate filing any

---

[1] The Indictment initially named a third defendant (Jacob Dekoning) and a co-conspirator (Ping-Yi Kwan). *See* Indictment ¶ 1.  On February 20, 2020, Dekoning was dismissed without prejudice from this action upon the Government's motion.  *See* ECF No. 71.  Kwan had been previously charged in a separate action.  *See United States v. Kwan*, CR-19-0292 (C.D. Cal.).

[2] The following abbreviations are used for the filings: (1) the Government's Opposition to Defendants' Joint Motion to Dismiss Indictment, ECF No. 120 ("Opp."), and (2) Defendants' Reply to the Government's Opposition to Defendants' Joint Motion to Dismiss, ECF No. 121 ("Defs. Reply").

motions pursuant to Federal Rule of Criminal Procedure 12(b), consistent with their not having previously filed any Rule 12 pretrial motions within the periods dictated for the filing of Rule 12 pretrial motions as previously ordered by the Court." *See* Stipulation ¶ 8(c).

Federal Rule of Criminal Procedure ("FRCrP") 12(b) differentiates between motions: (1) that assert that the court lacks jurisdiction, which "may be made at any time while the case is pending" (*see* FRCrP 12(b)(2))[3]; and (2) that are based upon certain enumerated "defenses, objections, and requests [which] must be raised by pretrial motion" (FRCrP 12(b)(3)). If the court does not set a deadline for pretrial motions, it is by the start of trial. *See* FRCrP 12(c)(1). At any time before trial, the court may extend or reset the deadline for pretrial motions. *See* FRCrP 12(c)(2). If a party fails to file a FRCrP 12(b)(3) motion by the deadline, it may be deemed untimely by the court, "[b]ut the court may consider the defense, objection, or request if the party shows good cause." *See* FRCrP 12(c)(3).

Here, while the Government is correct that this Court did at one point set the deadline for pretrial motions on July 15, 2021 (*see* ECF No. 75) – which was based upon a November 9, 2021 trial date – subsequently, it issued an order pursuant to the Stipulation which set a new trial date of May 24, 2022 and altered other concomitant dates, but did not amend the FRCrP 12(b)(3) pretrial motion deadline. *See* ECF No. 79. Thus, technically, Defendants' Motion is untimely. However, the Court elects to address the merits of the Motion. The Defendants raise a matter which should be resolved prior to trial, as there is the potential that certain issues arising therein may nevertheless surface during the course of the trial.

  B. <u>Vagueness</u>

   1. *Applicable Law*

Unconstitutional vagueness in a criminal prosecution can arise in a number of ways. As observed in *United States v. Harris*, 705 F.3d 929, 932 (9th Cir. 2013):

> "A criminal statute is void for vagueness if it is not sufficiently clear to provide guidance to citizens concerning how they can avoid violating it and to provide authorities with principles governing enforcement." [*United States v.*] *Zhi Yong Guo*, 634 F.3d [1119] at 1121 (internal quotation marks omitted). In a facial challenge, a statute is unconstitutionally vague if it "'fails to provide a person of ordinary intelligence fair notice of what is prohibited, or is so standardless that it authorizes or encourages seriously

---

[3] "Jurisdiction" as used in FRCrP 12(b)(2) has been interpreted to mean subject matter jurisdiction. *See United States v. Cotton*, 535 U.S. 625, 630 (2002).

discriminatory enforcement.'" *United States v. Kilbride*, 584 F.3d 1240, 1257 (9th Cir. 2009) (quoting *United States v. Williams*, 553 U.S. 285, 304 (2008)). In an as-applied challenge, a statute is unconstitutionally vague if it "fail[s] to put a defendant on notice that his conduct was criminal." *Id*. "For statutes . . . involving criminal sanctions the requirement for clarity is enhanced." *Id*. (internal quotation marks omitted).

*See also Skilling v. United States*, 561 U.S. 358, 415-16 (2010) ("A criminal statute must clearly define the conduct it proscribes . . . . A statute that is unconstitutionally vague cannot be saved by a more precise indictment, . . . nor by judicial construction that writes in specific criteria that its text does not contain . . . .") (citations omitted)). In addition to a facial or an as-applied challenge to the criminal statute itself, defendants can raise a vagueness dispute by asserting that the indictment fails to provide them with adequate notice of the charges against which they must defend.[4] *See Hamling v. United States*, 418 U.S. 87, 118 (1974).

    2. *Defendants' Assertions*

Defendants contend that the Indictment's use of two terms renders it unconstitutionally vague: *i.e.* "receiver" and "manufacturing." *See* Mot. at 3-8. As to "receiver," Defendants initially observe that the Indictment defines "firearm" for purposes of 18 U.S.C. § 921(a)(3) as "any weapon. which will or is designed to or may readily be converted to expel a projectile by the action of an explosive," *and* "the frame or receiver of any such weapon." *See* Mot. at 1. The Indictment then describes the weapons in question (the AR-15 type rifle) as "consist[ing] of many parts, including the: (1) lower receiver; (2) upper receiver; (3) stock; (4) barrel; and (5) magazine." *Id*. It further states that:

> In order to convert an unfinished lower receiver into a finished lower receiver that could be assembled into a rifle or pistol, a person could use specialized machinery on an unfinished lower receiver to create, or "mill out," cavities to create a finished lower receiver. A finished lower receiver had the shape and space necessary for an upper receiver and barrel to attach to the lower receiver. A firearm created in this way could be untraceable because it generally did not have a serial number or manufacturer-created identification markings.

*See* Indictment at 2. Defendants next focus on the allegations that:

    1.   Defendants SCHLOTTERBECK and VLHA, and co-conspirator Kwan

---

[4] An indictment must be a 'plain, concise, and definite written statement of the essential facts constituting the offense charged." FRCrP 7(c)(1). The indictment is constitutionally sufficient if it contains "the elements of the charged crime in adequate detail to inform the defendant of the charge and to enable him to plead double jeopardy." *United States v. Alber*, 56 F.3d 1106, 1111 (9th Cir. 1995) (internal quotation marks and citation removed).

> would agree to sell firearms to firearms customers.
> 2. Defendant SCHLOTTERBECK and co-conspirator Kwan would obtain firearm parts, including unfinished lower receivers.
> 3. Defendant SCHLOTTERBECK would arrange to drill the cavities in unfinished lower receivers necessary to make the lower receivers attach to an upper receiver and barrel.
> 4. Defendant DEKONING would set up a machine to mill, and direct firearm customers to press the button on a machine to mill, cavities on the lower receivers to finish the lower receivers.
> 5. Defendants SCHLOTTERBECK and VLHA, and co-conspirator Kwan, would assemble, finish, and sell the completed firearms to customers at Live Fire Coatings and Sign Imaging.

*Id.* at 3. The Defendants then reference 47 C.F.R. § 478.11 which defines a "firearm frame or receiver" as "[t]hat part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel."[5]

The Defendants formulate their vagueness contention based upon the term "receiver" as follows:

> The statutory term for firearm, in this case the receiver, does not provide any definition about the necessary characteristics of that receiver/firearm. 27 C.F.R. §478.11 defines a firearm/receiver as "[t]hat part of a firearm which provides housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel." It is uncontroverted that a "finished [or milled out in this case] AR-15 receiver does not contain a bolt or breechblock and is not threaded to receive the barrel." Furthermore, the government concedes that the upper receiver, stock, barrel and magazine (the component parts of the AR-15) are not regulated and are not, like the receiver, defined as firearms for which a particular federal manufacturing license is required.
>
> Given the ambiguity and complexity that exists surrounding this area of law, no reasonable person of ordinary intelligence could understand whether or not their conduct was unlawful. As such, 18 U.S.C. §§ 922(a)(1)(A) and 922(d) are unconstitutionally vague, both on their face and as applied to the defendants' conduct at issue here.

Mot. at 2.

In further support of their argument, Defendants refer to two statements from the

---

[5] It is noted that effective August 24, 2022, the cited portion of 47 C.F.R. § 478.11 is amended to read: "Frame or Receiver. The term 'frame or receiver' shall have the same meaning as in § 478.12." Effective August 24, 2022, 47 C.F.R. § 478.12(a)(2) will state: "The term 'receiver' means the part of a rifle, shotgun, or projectile weapon other than a handgun, or variants thereof, that provides housing or a structure for the primary component designed to block or seal the breech prior to initiation of the firing sequence (*i.e.*, bolt, breechblock, or equivalent), even if pins or other attachments are required to connect such component to the housing or structure."

4

Government.  The first is included in a letter from Government attorneys in this case to Defendants' counsel regarding the testimony of its firearms expert (ATF Senior Investigator Thomas M. Chimileski, Jr.) wherein it is stated *inter alia* that:

> Investigator Chimileski's analysis of this question of which type of federal firearms license would be required under fact specific circumstances was predicated on the assumption that a finished lower receiver qualified as a firearm "frame or receiver" under 18 U.S.C. 921(a)(3)(B), notwithstanding ATF's then proposed rulemaking regarding receivers and other related issues of which Investigator Chimileski was aware. * * * * Investigator Chimileski came to learn that ATF had conceded as a criminal enforcement litigating position in certain federal districts, including the Central District of California, that an AR-15-type lower receiver did not strictly meet the soon-to-be-amended definition of "firearm frame or receiver" under 27 C.F.R. § 478.11 (*i.e.*, that the lower receiver does not contain the bolt or breechblock, and is not usually threaded at its forward portion to receive the barrel).

Exhibit A to Mot., ECF No. 113-1 at p. 3 of 4.  The second is a September 8, 2016 letter from Attorney General Loretta Lynch to the Speaker of the U.S. House of Representatives Paul Ryan regarding an issue that was crystalized by the court's ruling in *United States v. Jimenez*, 191 F.Supp.3d 1038 (N.D. Cal. 2016), to wit: whether the AR-15 lower receiver that defendant purchased fell within the regulatory definition of a "receiver."  *See* Exhibit B to Mot., ECF No. 113-2 at p. 2 of 22.  As delineated by General Lynch:

> AR-15s have split receivers. The upper receiver ordinarily houses the bolt or breechblock and is threaded to receive the barrel. The lower receiver houses the hammer and firing mechanism. In this case, the defendant purchased only a lower receiver.  The indictment did not allege that he also possessed or received the upper portion of a split AR-15 receiver-the portion that houses the "bolt or breechblock" and that attaches to the barrel.
>
> The government therefore conceded in response to the defendant's motion to dismiss that the lower receiver purchased did "not perfectly fit the CFR section definition." * * * * The court accordingly "resolve[d] the vagueness challenge on the receiver issue in Jimenez's favor."  [Citations omitted.]
>
> Whether the district court's decision is best understood as a vagueness ruling or, alternatively, as a conclusion that the relevant regulatory scheme did not cover the charged conduct, this case is not a suitable vehicle for appellate review. The relevant regulation indicates that a "[f]rame or receiver" provides housing for "the hammer, bolt or breechblock and firing mechanism."  The lower receiver in this case housed only the hammer and firing mechanism, not the bolt or breechblock.  As a result, the district court held that the regulatory definition of "frame or receiver" did not provide the defendant with notice that his conduct violated the law.  To the extent that

> the Bureau of Alcohol, Tobacco, Firearms and Explosives believes that the definition should encompass the lower receiver of an AR-15 or should otherwise be modified or clarified, the appropriate course is regulatory or administrative action, not an appeal of the district court's decision in this case.

*Id.* at pp. 2-3 of 22.

As to Defendants' vagueness contention based upon the term "manufacture," their argument appears to rest upon the use of that word in conjunction with the term "receiver" in the context of AR-15 type firearms. Initially, they note that "[n]owhere in the indictment, or the statutes supporting the indictment, is the term manufacturing defined." Mot. at 7. Defendants assert that the Government's "claim that the assembling of the component parts amounts to manufacturing for which a federal manufacturing license is required suffers from the same vagueness problems as set forth [in the discussion of the term 'receiver'] above." *Id.* Defendants cite to a tentative order of Judge Selna in *United States v. Roh*, No. SACR 14-167-JVS (C.D. Cal.).[6] *See* ECF No. 113-2 at pp. 15-22 of 22. In *Roh*, it was stated that:

> The definition of receiver under the ATF regulations requires four component: a "housing for the hammer, bolt or breechblock, and firing mechanism, and which is usually threaded at its forward portion to receive the barrel." (27 C.F.R. § 478.11; emphasis supplied.) The evidence at trial was uncontroverted that a finished AR-15 receiver does not contain a bolt or breechblock and is not threaded to receive the barrel. (E.g., Tr. Feb. 21, 2018, pp. 111-13 (Jackson); Tr. Feb. 24, 2018, pp. 65-67 (Hoffman).) Indeed, the Government concedes the point in its opposition. (Opposition, p. 23.) The plain conclusion is that the finished receiver is not a firearm.
>
> \* \* \* \*
>
> The Court finds that Roh's activities with respect to the production of finished receivers were not within the scope of the statute or the ATF regulatory definition. Therefore, Roh did not violate the law by manufacturing receivers. The Court further finds that with respect to manufacturing receivers, the statute and regulation are unconstitutionally vague as applied here. No reasonable person would understand that a part constitutes a receiver where it lacks the components specified in the regulation.
>
> In addition, the Court finds that when applied to include finished lower receivers, Section 478.11 is unconstitutionally vague.

*Id.* at pp. 18 & 20 of 22.

---

[6] It is unclear whether the tentative order was ever adopted as a final ruling. It appears that the defendant's motion to dismiss for unconstitutional vagueness was taken off-calendar because the defendant enter into a plea agreement. *See United States v. Roh*, No. SACR 14-167-JVS, ECF No.146.

## 3. Discussion

As to Defendants' vagueness contentions, the Government's response is simple, and the Court agrees with it – namely that the Defendants are not charged with nor prosecuted for the mere possession or manufacture of receivers. Rather, they are being brought to trial for the manufacturing and selling of entirely-assembled and workable AR-15 type firearms.

Initially, it is noted that "vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *United States v. Mazurie*, 419 U.S. 544, 550 (1975). "One to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Parker v. Levy*, 417 U.S. 733, 756 (1974). Thus, the "test is whether the text of the statute and its implementing regulations, read together, give ordinary citizens fair notice with respect to what the statute and regulations forbid, and whether the statute and regulations read together adequately provide for principled enforcement by making clear what conduct of the defendant violates the statutory scheme." *United States v. Zhi Yong Guo*, 634 F.3d 1119, 1122-23 (9th Cir. 2011). The relevant inquiry is specific to the individual defendant and "turns on whether the statute provided adequate notice to him that his particular conduct was proscribed." *Harris*, 705 F.3d at 932.

The Government argues that Defendants cannot mount a facial vagueness challenge, so the Court need only assess Defendants' vagueness challenge on the facts of this case. *See United States v. Agront*, 773 F.3d 192, 195 (9th Cir. 2014). Under those facts, the Indictment is premised on the manufacture and sale of *completed* AR-15 type firearms, not mere lower receivers.[7] Thus, Defendants' arguments related to the vagueness of the term "receiver" are premised on the proposition that the prosecution herein is based on the notion that "a lower receiver is a firearm." *See* Mot. at 6-9. But the Government points out that that is wrong. *See* Opp. at 10. At issue in this Indictment are "completed AR-15 type rifles and pistols [that] are alleged to be the 'firearms.'" *Id.*; *see also* 18 U.S.C. § 921(a)(3)(A). Specifically, the Government argues that the context, implication, and plain meaning of the Indictment makes clear that the charges against Defendants are premised on the AR-15 type firearms as being a "weapon," not the "frame or receiver." *See*

---

[7] Count 1 (the conspiracy charge) describes the manufacture of entirely operable AR-15 type firearms that fit the definition of 18 U.S.C. § 921(a)(3). Count 2 (substantive trafficking charge) alleges the manufacture and sale of the five separately completed AR-15 type weapons. Count 3 alleges the sale of a completed AR-15 type rifle to a prohibited person.

Opp. at 11.[8]

It is clear that Defendants have attempted to frame their vagueness contentions to fit into the framework of the *Jimenez* and *Roh* cases. However, the facts of those cases are clearly distinguishable from this action; and, in the end, both decisions rejected the vagueness arguments in the context of charges not premised on a receiver being deemed by itself a firearm.

In *Jimenez*, the defendant (a convicted felon) was charged with "(1) possession of 'a machinegun, specifically, an AR-15-style machinegun lower receiver, with no serial number,' in violation of 18 U.S.C. § 922(o); and (2) receiving and possessing 'a firearm, specifically, an AR-15-style machinegun lower receiver, with no serial number, not registered to him in the National Firearms Registration and Transfer Record,' in violation of 26 U.S.C. § 5861(d)." 191 F.Supp.3d at 1039. Jimenez was arrested after paying an undercover agent and receiving in exchange a lower receiver, but said receiver met only two of the four required features as set out in the applicable regulation, *i.e.* 27 C.F.R. § 479.11. The court found that the Government had provided an utter lack of evidence showing that the public had fair notice of potential criminal liability for possessing only an AR-15 lower receiver which did not comport with the requirements of the regulatory definition. 191 F.Supp.3d at 1042-43. The indictment against Jimenez was dismissed but only as to the Government's prosecution of him under 18 U.S.C. § 922(o) and 26 U.S.C. § 5861(d) based on the theory that he possessed a "receiver" as that term is defined in 27 C.F.R. § 479.11. But the court also *rejected* Jimenez's vagueness challenge as to whether his possession of the lower receiver could fall within the definition of a "machinegun under 26 U.S.C. 5845(b) because it could be deemed a 'part designed and intended solely and exclusively . . . for use in converting a weapon into a machinegun.'" *Id.* at 1045. The court held that "[w]hether the evidence ultimately shows that the lower receiver he bought fits that definition is a question that the Court cannot answer on a motion to dismiss . . . . That is for the trier of fact to decide." *Id.* at 1046.

Likewise, in *Roh*, the defendant was charged with manufacturing and dealing in firearms, "to wit, hundreds of AR-15-type lower receivers, completed pistols, *and* completed rifles" in violation of 18 U.S.C. § 922(a)(1)(A). ECF No. 133-2 at p. 15 of 22 (emphasis added). The uncontroverted evidence at trial showed that Roh's finished AR-15 receivers did not contain

---

[8] The Government also argues that Defendants' reliance on a letter the Government provided to Defendants about the testimony of Thomas M. Chimileski, Jr. is outside the scope of review for a Rule 12 motion, as the views of the anticipated expert witness may be subject to cross-examination but not form the basis for a motion to dismiss. *See United States v. Boren*, 278 F.3d 911 (9th Cir. 2002).

certain of the required elements of a "receiver" as defined in 27 C.F.R. § 478.11. *Id.* at p. 18 of 22. The Government's theory of conviction rested on the proposition that the AFT had "classified" finished receivers as firearms, notwithstanding the conflict with the definition published by the ATF in its regulations. *Id.* The court held that "with respect to manufacturing receivers, the statute and regulation are unconstitutionally vague as applied here. No reasonable person would understand that a part constitutes a receiver where it lacks the components specified in the regulation." *Id.* at p. 20 of 22. However, as to fully assembled AR-15 firearms themselves, the court held that "[t]here is no question that [Roh] manufactured completed AR-15s. Dr. Frank Juste's purchase was typical. He paid for the purchase and assembly of his AR-15." *Id.* at p. 22 of 22. The court concluded that "[t]his conduct, apart from the debate over receivers, is sufficient to support a finding beyond a reasonable doubt that Roh willfully engaged in the unlicensed manufacture and sale of firearms in violation of 18 U.S.C. 922(a)(1)(A)." *Id.*

Defendants also argue that the term "manufacture" is unconstitutionally vague. Mot. at 6-9. Specifically, Defendants argue that nowhere in the Indictment, or the statutes supporting the Indictment, is the term "manufacturing" defined. *Id.* at 7. Thus, Defendants could not have been on notice that their conduct was criminally prohibited, as they were solely involved in assembly. Mot. at 10-11. In response, the Government argues that 18 U.S.C. § 922(a)(1) provides various definitions demonstrating that a "manufacturer" is anyone engaged in the business of manufacturing firearms for sale or distribution. Further, the Government points out that under Ninth Circuit law, when Congress does not define a term, courts construe that term according to its ordinary, contemporary, common meaning. *United States v. Kilbride*, 584 F.3d 1240, 1257 (9th Cir. 2009). The Ninth Circuit has not issued a decision which has provided a meaning for the term "manufacturing" in the present context. *See United States v. Haig*, No. 2:18-CR-256 JCM (VCF), 2019 WL 2028514, at *4 (D. Nev. May 8, 2019). The Government directs the Court to a Fourth Circuit case in which it was held that "manufacturing firearms" means "assembling a firearm's individual components so as to render the firearm suitable for use." *Broughman v. Carver*, 624 F.3d 670, 675 (4th Cir. 2010). The District Court in Nevada adopted that definition of manufacturing from *Broughman*. *See Haig,* 2019 WL 2028514, at *4

The Court finds that the Indictment clearly describes Defendants' conduct beyond mere "assembly." In fact, it describes the manufacturing process for the completed AR-15 type firearms, which includes not just the assembly of the weapons but the use of special machinery to complete

9

a lower receiver to then be attached to an upper receiver and barrel. Further, Defendants are charged with conspiring in the manufacturing of the *completed* AR-15 type firearms. Despite Defendants' arguments, the Court finds that they had fair notice that their conduct was prohibited.[9]

Defendants' vagueness argument based on arbitrary enforcement is also without merit for the reasons discussed above. Thus, the Court finds that the charges raised in the Indictment are properly predicated on the Defendants' business of manufacturing firearms without a license.

As a final note, the Court concludes that, under Ninth Circuit case law, the rule of lenity does not apply here. When the meaning of language is inherently contextual, courts "decline[] to deem a statute ambiguous for purposes of lenity merely because it was possible to articulate a construction more narrow than that urged by the government." *United States v. Carona*, 660 F.3d 360, 369 (9th Cir. 2011). Any definition of "manufacturing" is far from the grievous ambiguity or uncertainty contemplated by the Ninth Circuit for the rule of lenity to apply. Further, the rule of lenity is also inappropriate where statutes require scienter or willfulness. *United States v. Wanland*, 830 F.3d 947, 954 (9th Cir. 2016); *United States v. Guo*, 634 F.3d 1119, 1123 (9th Cir. 2011).

C. Conclusion

Based on the foregoing, the Court denies Defendants' motion to dismiss the Indictment.

---

[9] The Government also argues that with respect to 18 U.S.C. § 922(a)(1)(A), the government has to prove willfulness, which may mitigate any potential vagueness in the law.