EDWARD M. ROBINSON (CA Bar 126244)
BRIAN A. ROBINSON (CA Bar 333650)
21515 Hawthorne Blvd, Suite 730
Torrance, CA 90503
Office: (310) 316-9333
Facsimile: (310) 316-6442
eroblaw@gmail.com

Attorneys for Defendant
*Travis Schlotterbeck*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TRAVIS SCHLOTTERBECK<br><br>Defendant. | Case No. 19-cr-00343-GW-1<br><br>**DEFENDANT'S SUPPLEMENTAL OPPOSITION TO GOVERNMENT'S *MOTION IN LIMINE* TO ADMIT DEFENDANT'S STATEMENTS.**<br><br>DATE: June 28, 2022<br>TIME: 10:00 AM<br>Courtroom of the<br>Honorable George H. Wu |

1

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................... 1

GOVERNMENT'S THEORY OF ADMISSIBILITY ............................................. 1

ARGUMENT ............................................................................................................ 2

    I.    DEFENSES' OFFERED EXCERPTS ............................................... 2

        A.   Mr. Schlotterbeck's statements offered to cure the misleading nature of the government's excerpts relating to Mr. Schlotterbeck's general knowledge of firearm licensing requirements. ...................................................................... 2

        B.   Mr. Schlotterbeck's statements offered to cure the misleading nature of the government's excerpts relating to an undefined agreement between Mr. Schlotterbeck and Kwan. ................................................................................. 6

CONCLUSION ........................................................................................................ 8

# TABLE OF AUTHORITIES

**Cases**

*United States v. Hernandez*

   859 F.3d 817 (9th Cir. 2017) ............................................................................... 2

*United States v. Wilfredo Lopez*,

   4 F.4th 706 (9th Cir. 2021) .................................................................................. 1

**Rules**

Fed. R. Evid. Rule 106 ............................................................................................ 1, 2

Fed. R. Evid. Rule 404 ............................................................................................ 1, 5

# INTRODUCTION

Pursuant to the Court's order of June 23, 2022, defendants submit the attached portions of Mr. Schlotterbeck's June 21, 2017, interview with ATF agents.

In light of the Court's order excluding evidence of the defendant's conversations regarding "silencers," the attached excerpts are offered pursuant to FRE 106.

# GOVERNMENT'S THEORY OF ADMISSIBILITY

The government lists three groups of excerpts. The first concerns Mr. Schlotterbeck's knowledge of the informant's status as a convicted felon. (Gov. Exhibit A, B, F; Doc. 107.) The remaining two groups of edited statements concern Mr. Schlotterbeck's general knowledge of firearm licensing requirements and undefined agreements between Mr. Schlotterbeck and Kwan. (*Id*. C and D; *Id*.)

As argued by the government in their motion *in limine* #1 (Doc. 80), the general knowledge of firearm licensing requirements goes directly to willfulness, admitted pursuant to FRE 404(b), and the agreements between Mr. Schlotterbeck and Kwan tend to show a general business agreement relating to firearms, but not specifically to the charged conduct—to engage in the unlawful manufacturing of firearms.

Defendants' submitted excerpts are necessary in order to prevent the government from presenting "excerpts [that create] the misleading impression that [the defendants] confessed to the *mens rea* required for conviction." *United States v. Wilfredo Lopez*, 4 F.4th 706, 715 (9th Cir. 2021). Since the government must prove the mental state of willfulness with respect to the conspiracy and substantive counts, as well as the agreement for the conspiracy count, it is necessary in order to prevent the otherwise would be confessions to willfulness and knowledge that the jury hear the attached relevant statements from that recorded interview. The attached statements will clarify and provide context, and cure the misleading nature of the government's excerpts, by showing Mr. Schlotterbeck's actual agreement with Kwan as well as his belief that he was not violating the law and thereby not confessing to having acted willfully.

# ARGUMENT

Without the attached statements offered by the defense, the government's presentation of their selective snippets of Mr. Schlotterbeck's recorded interview will appear to the jury as a confession to behavior that will promote a finding of willfulness. These statements of uncharged conduct, offered by the government to prove willfulness, not only will mislead but will create a "substantial likelihood" that the defendants will be convicted based on these excerpted statements rather than the charged conduct. This "substantial likelihood," given the damning affect of these misleading confessional statements to *mens rea* requirements, will violate not only the rule of completeness set forth in FRE 106, but also the Due Process Clause of the Fifth Amendment. *United States v. Hernandez*, 859 F.3d 817, 824 (9th Cir. 2017.)

## I. DEFENSES' OFFERED EXCERPTS

### A. Mr. Schlotterbeck's statements offered to cure the misleading nature of the government's excerpts relating to Mr. Schlotterbeck's general knowledge of firearm licensing requirements.

During the interview, the ATF agents informed Mr. Schlotterbeck that they had located firearm parts in the back of Mr. Schlotterbeck's store.

**HAMMOND**: Oh, we located some, um, some random firearm components in the back. Could, could we take those? Like, would you give us consent to take those?

**SCHLOTTERBECK**: What, what are you talking about?

**HAMMOND**: There's some random—uh, you can come in here for a second.

**TOMLINSON**: There's just lower receivers in various stages. [Voices overlap]

**ESTES**: All right, so let's go— [Voices overlap]

**SCHLOTTERBECK**: You're talking about the engrave samples? [Voice in the background]

**TOMLINSON**: The A-R's, yeah. The A-R receivers that, um, the eighty percenters, that are unfinished in various stages on the desk back there.

| | |
|---|---|
| 1 | **ESTES**: [U/I]. Um, we can just even add, add it to the back cause it's— [Voices |
| 2 | overlap] |
| 3 | **SCHLOTTERBECK**: Yeah, but I want to be very clear that that's not, that's— |
| 4 | those, we use those as engraved samples so they're not, they're not fricking—the |
| 5 | reason they're not finished—we don't—we're not milling receivers here. |
| 6 | **TOMLINSON**: Right. |
| 7 | **SCHLOTTERBECK**: We don't have a machine. |
| 8 | **ROMO**: Yeah, I know. And see what we do, and just so it's, like, just very |
| 9 | simple. We'll just take everything, right? Because it's still under investigation. |
| 10 | And then— |
| 11 | **SCHLOTTERBECK**: Its just a block of metal [U/I]. |
| 12 | **ROMO**: And then you could get some of this stuff back so. |
| 13 | **HAMMOND**: So, what, what I did is I just added on and firearm parts located |
| 14 | within to, to the original statement. That's, that's— [Voices overlap] |
| 15 | (Def. Exhibit A; Doc. 107-1.) |
| 16 | Later in the interview, ATF agent Hammond brings up Jacob Dekoning and asks |
| 17 | Mr. Schlotterbeck about the milling process. |
| 18 | **HAMMOND**: It was, like, a C-N-C shop. And there was a guy there, um, his |
| 19 | last name is Jacob Dekoning. And I guess his grandpa owned it or something like |
| 20 | that. So, he had the machine and, and what, and what the, the video shows is that, |
| 21 | um, [CI] gives you sixty dollars. You hand it to him to do, like, the milling and |
| 22 | then they have him press the button. Does that sound familiar? So, he was |
| 23 | actually, like, the one that was, like, building the firearm. |
| 24 | **SCHLOTTERBECK**: Yeah, he milled his own firearm, I might have— [Voices |
| 25 | overlap] |
| 26 | **HAMMOND**: He milled— |
| 27 | |
| 28 | |

| | |
|---|---|
| 1 | **SCHLOTTERBECK**: I give—I don't remember the, the, um—I remember he |
| 2 | originally gave me the money for it and I said no, you'll have to, you'll have to, |
| 3 | you'll have to mill it yourself and I brought him over there. |
| 4 | **HAMMOND**: Okay. And— |
| 5 | **SCHLOTTERBECK**: And so—and they—and then— |
| 6 | **ROMO**: Just if I can ask. |
| 7 | **HAMMOND**: Yeah. |
| 8 | **ROMO**: Um, cause this obviously isn't our case, but what's the point of having |
| 9 | somebody else mill it out? |
| 10 | **SCHLOTTERBECK**: What do you mean? |
| 11 | **HAMMOND**: Like, why did you— [Voices overlap] |
| 12 | **ROMO**: Why having somebody else push the button? |
| 13 | **HAMMOND**: Why did you have him press the button? |
| 14 | **ROMO**: What's the difference with that? |
| 15 | **SCHLOTTERBECK**: Well, he made the right—the thing. It was his, his deal. I |
| 16 | mean, I didn't uh, want to be legally responsible for him to build a rifle if, if, |
| 17 | um—and I know that with the eighty percents that's—the, the clause is that the |
| 18 | person has to mill it themselves. So— |
| 19 | **ROMO**: Okay. |
| 20 | **SCHLOTTERBECK**: I— [Voices overlap] |
| 21 | **HAMMOND**: Just to—oh okay, see we didn't know that. |
| 22 | **SCHLOTTERBECK**: So, so he milled it himself. I didn't—I had no |
| 23 | involvement in that portion. |
| 24 | **ROMO**: So, he buys the lower receiver part from you. |
| 25 | **HAMMOND**: And that's considered, like, an unfinished— [Voices overlap] |
| 26 | **ROMO**: And then—yeah, that's not considered anything at that point. |
| 27 | **SCHLOTTERBECK**: Well, you can buy an upper brand new from anywhere |
| 28 | and that's not manufacturing. You can buy it without— [Voices overlap] |

| | |
|---|---|
| 1 | **ROMO**: But somebody's giving you a lower— [Voices overlap] |
| 2 | **HAMMOND**: But you're— [Voices overlap] |
| 3 | **SCHLOTTERBECK**: Without [U/I]. |
| 4 | **ROMO**: Already milled out. |
| 5 | **HAMMOND**: But you're taking a completed receiver— [Voices overlap] |
| 6 | **SCHLOTTERBECK**: But we're not touching the—we're not, we're not manufacturing the lower. We're—we literally— |

(Def. Exhibit A; Doc. 107-1.)

The agents then informed Mr. Schlotterbeck that they believed Mr. Schlotterbeck's conduct, taking a milled out lower receiver and adding parts to it, constituted manufacturing. Mr. Schlotterbeck responded:

> **SCHLOTTERBECK**: I mean, I was looking at it, like, we're just like everybody else that was doing the eighty percent at one point. I mean, I've been to shops in La Habra that, you know, you bring it in and you can buy, um, a lower from them, you can mill it out right there. Press the button and then buy a completed upper and assemble it and pop it on there. I mean, I know you can buy parts without an F-F-L, without a license— [Voices overlap]
>
> **ROMO**: Mhm.
>
> **SCHLOTTERBECK**: Or any [U/I]. That's just an upper receiver. So, from my understanding that's a, you know, the legal way to do it. You know, so as far as—I'm not try—you know, I tried to cover my bases in every fashion to not have you guys here.

(*Id.*)

These statements correct the distorted confessional nature of the government's excerpts by showing a lack of willfulness as to the charged conduct. The government's carefully tailored excerpts, which are only offered under FRE 404(b) to prove willfulness, purposefully omits these further discussions regarding licensing requirements for manufacturing and Mr. Schlotterbeck's understanding of those

5

1  requirements, his good faith belief that he was following the law. This is the central
2  issue of this case. Thus, the government's excerpt is misleading as it will operate as a
3  confession to willfulness and have the effect of lessening the government's burden of
4  proof and even directing a verdict.

5        B. <u>Mr. Schlotterbeck's statements offered to cure the misleading nature of
6           the government's excerpts relating to an undefined agreement between
7           Mr. Schlotterbeck and Kwan.</u>

8      Prior to any discussions regarding licensing requirements and the milling
9  process, the ATF agents ask Mr. Schlotterbeck about Kwan and the nature of their
10 relationship.

11     **HAMMOND**: All right, thanks. So, so basically, um, well, we're searching for
12     evidence of, um, dealing without a license, which is, like, a—manufacturing,
13     which is essentially just selling firearms without having a, a federal license. Was
14     there an employee here named Kwan that worked here?
15     **SCHLOTTERBECK**: Yeah. He's a friend of mine that kind of—well yeah, he
16     does work here, yeah, that's correct.
17     **HAMMOND**: Jim Kwan [PH]— [Voices overlap]
18     **SCHLOTTERBECK**: I mean, he doesn't work here, work here. He's not
19     employed.
20     **HAMMOND**: Okay.
21     **SCHLOTTERBECK**: [U/I]— [Voices overlap]
22     **HAMMOND**: He just, he just likes guns and being around guns?
23     **SCHLOTTERBECK**: He's my friend. He works at Ammo Brothers and he,
24     um—
25     **HAMMOND**: Is that the one in Cerritos?
26     **SCHLOTTERBECK**: Yeah. And he works—I, I give him, I give him access to
27     the shop and he does stuff to his guns.
28

|   |   |
|---|---|
| 1 | **HAMMOND**: So you don't necessarily know what he's doing, like, behind your |
| 2 | back? |
| 3 | **SCHLOTTERBECK**: Not entirely, no. |
| 4 | **HAMMOND**: Not entirely? |
| 5 | **SCHLOTTERBECK**: But he's— [Voices overlap] |
| 6 | **ROMO**: But a little bit. |
| 7 | **SCHLOTTERBECK**: Yeah, I mean, a little bit. I mean, I know he's co— |
| 8 | [Voices overlap] |
| 9 | **ROMO**: He's your boy. |
| 10 | **SCHLOTTERBECK**: He's coating guns. |
| 11 | **ROMO**: Yeah. |
| 12 | (Def. Exhibit A; Doc. 107-1.) |
| 13 | After Mr. Schlotterbeck explained to the ATF agents that he allowed Kwan to |
| 14 | use his shop, he discussed his business with the agents. |
| 15 | **SCHLOTTERBECK**: He, he, um—in the past we've done a lot of cerakoting, |
| 16 | which is ceramic coating on guns. Um, so—but we haven't done that for quite |
| 17 | some time. |
| 18 | **HAMMOND**: Are you— [Voices overlap] |
| 19 | **SCHLOTTERBECK**: So—well, if I can just. Sorry, just real quick. |
| 20 | **HAMMOND**: Sure, go ahead. |
| 21 | **HAMMOND**: No problem. Just— [Voices overlap] |
| 22 | **SCHLOTTERBECK**: I work with, um, uh, coating a bunch of—cerakoting a |
| 23 | bunch of vapes. |
| 24 | **ROMO**: Okay. |
| 25 | (*Id.*) |
| 26 | These statements must be admitted to provide context to the government's |
| 27 | chosen excerpts regarding an undefined agreement between Mr. Schlotterbeck and |
| 28 | Kwan. The government's excerpt is being offered for the sole reason to prove an |

7

agreement between Mr. Schlotterbeck and Kwan, an element of Count 1 of the indictment. Yet that excerpt is so out of context and misleading as it completely mischaracterizes the subject of the agreement between Mr. Schlotterbeck and Kwan, which involves uncharged and innocent conduct.

The statements offered by the defense provide necessary context in that they highlight the nature of Mr. Schlotterbeck's cerakoting business and show that Mr. Schlotterbeck allowed Kwan, his friend, to use Mr. Schlotterbeck's place of business, and supplies, so that Kwan could cerakote firearms on his own. Mr. Schlotterbeck received half of Kwan's cerakoting profits as repayment for Mr. Schlotterbeck allowing Kwan to use his shop and supplies. This agreement is entirely unrelated to manufacturing firearms.

## CONCLUSION

For the foregoing reasons, Mr. Schlotterbeck requests that this Court admit the clarifying statements.

Respectfully submitted,

DATED: June 24, 2022          By  /s/ Edward M. Robinson
                                  Edward M. Robinson
                                  Brian A. Robinson
                                  Attorney for Defendant
                                  *Travis Schlotterbeck*


                              By /s/ Jerome J Haig
                                  Jerome J Haig
                                  Attorney for Defendant
                                  *James Bradley Vhla*

8