STEPHANIE S. CHRISTENSEN
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
BRIAN R. FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorney
Environmental and Community Safety Crimes Section
DAN G. BOYLE (Cal. Bar No. 332518)
Assistant United States Attorney
Asset Forfeiture Section
    1300/1400 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3819/2426
    Facsimile: (213) 894-0141/0142
    E-mail:   Brian.Faerstein@usdoj.gov
              Daniel.Boyle2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>       v.<br><br>TRAVIS SCHLOTTERBECK and<br>JAMES BRADLEY VLHA,<br><br>       Defendant. | No. CR 19-343-GW<br><br><u>GOVERNMENT'S OPPOSITION TO</u><br><u>DEFENDANTS' JOINT MOTION TO</u><br><u>DISMISS THE INDICTMENT (DKT. NO.</u><br><u>136)</u><br><br>Hearing Date: July 11, 2022<br>Hearing Time: 1:30 p.m.<br>Location:    Courtroom of the<br>            Hon. George H. Wu |

    Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Brian Faerstein and Dan Boyle, hereby files its opposition to defendants' second joint motion to dismiss the indictment (Dkt. No. 136).

    This opposition is based upon the attached memorandum of points

//

//

and authorities, the files and records in this case, and such further

evidence and argument as the Court may permit.

Dated: July 7, 2022                    Respectfully submitted,

                                       STEPHANIE S. CHRISTENSEN
                                       Acting United States Attorney

                                       SCOTT M. GARRINGER
                                       Assistant United States Attorney
                                       Chief, Criminal Division


                                            /s/
                                       _____
                                       BRIAN R. FAERSTEIN
                                       DAN G. BOYLE
                                       Assistant United States Attorney

                                       Attorneys for Plaintiff
                                       UNITED STATES OF AMERICA

# **TABLE OF CONTENTS**

DESCRIPTION                                                                    PAGE

TABLE OF AUTHORITIES..................................................ii

OPPOSITION MEMORANDUM OF POINTS AND AUTHORITIES.....................1

I.    INTRODUCTION..................................................1

II.   RELEVANT BACKGROUND..........................................2

III.  ARGUMENT.....................................................2

    A.    Relevant Rule 12(b) Standard............................2

    B.    Defendants' Motion Should be Denied as Untimely.........3

    C.    Defendants' Challenges Based on <u>Bruen</u> Are Without
       Merit.................................................4

       1.    Defendants Fundamentally Misconstrue and Misapply
          <u>Bruen</u>.............................................4

       2.    Counts One and Two Do Not Implicate the Second
          Amendment.........................................9

       3.    Count Three Does Not Implicate the Second
          Amendment........................................14

    D.    The Court Should Not Stay the Proceedings...............19

IV.   CONCLUSION...................................................20

1

**TABLE OF AUTHORITIES**

2    DESCRIPTION                                                          PAGE

3    **Federal Cases**

4    Bosse v. Oklahoma,

5       137 S.Ct. 1 (2016) (per curiam) ........................... 11, 19

6    Broadrick v. Oklahoma,

7       413 U.S. 601 (1973) .......................................... 4

8    Heller v. District of Columbia,

        554 U.S. 570 (2008) ..................................... *passim*
9
     In re Zermeno Gomez,
10
        868 F.3d 1048 (9th Cir. 2017) (per curiam) ................... 20
11
     Kanter v. Barr,
12
        919 F.3d 437 (7th Cir. 2019) ......................... 3, 17, 18
13
     Marks v. United States,
14
        430 U.S. 188 (1977) ......................................... 11
15
     McDonald v. City of Chicago, Ill.,
16
        561 U.S. 742 (2010) ..................................... *passim*
17   Montana Shooting Sports Ass'n v. Holder, No. CV-09-147-DWM-JCL,

        2010 WL 3926029 (D. Mont. Aug. 31, 2010) ................... 13
18
     New York State Rifle & Pistol Association, Inc. v. Bruen,
19
        --S.Ct.--, 2022 WL 2251305 ............................. *passim*
20   Saban v. U.S. Dep't of Labor,

21      509 F.3d 376 (7th Cir. 2007) ............................. 19-20

22   Teixeira v. County of Alameda,

        873 F.3d 670 (9th Cir. 2017) (en banc) ................. 12, 13, 14
23
     United States v. Bacon,
24
        884 F.3d 605 (6th Cir. 2018) ................................ 15
25
     United States v. Boren,
26
        278 F.3d 911 (9th Cir. 2002) ................................. 2
27   United States v. Castro,

        No. 10-50160, 2011 WL 6157466 (9th Cir. 2011) ................ 13
28

**TABLE OF AUTHORITIES (CONTINUED)**

<u>DESCRIPTION</u>                                                         <u>PAGE</u>

<u>United States v. Chafin</u>,
   423 F. App'x 342 (4th Cir. 2011) ............................. 15

<u>United States v. Focia</u>,
   869 F.3d 1269 (11th Cir. 2017) ........................... 13, 15

<u>United States v. Nukida</u>,
   8 F.3d 665 (9th Cir. 1993) .................................... 2

<u>United States v. Phillips</u>,
   827 F.3d 1171 (9th Cir. 2016) ............................. 16-17

<u>United States v. Smith</u>,
   329 Fed. App'x 109 (9th Cir. 2009) .......................... 16

<u>United States v. Vongxay</u>,
   594 F.3d 1111 (9th Cir. 2010) ............................... 16

<u>United States v. Yousef</u>,
   327 F.3d 56 (2d Cir. 2003) ................................... 4

**Federal Statutes**

18 U.S.C. § 371 ................................................ 9

18 U.S.C. § 922 ........................................... *passim*

**Federal Rules**

Federal Rule of Criminal Procedure 12 ..................... 2, 3, 4

1

### OPPOSITION MEMORANDUM OF POINTS AND AUTHORITIES

2

## I.   INTRODUCTION

3      Defendants Travis Schlotterbeck and James Bradley Vlha have

4  moved to dismiss the indictment a second time, claiming the charges

5  against them are unconstitutional under New York State Rifle & Pistol

6  Association, Inc. v. Bruen, --S.Ct.--, 2022 WL 2251305, at *1 (2022)

7  ("Bruen").  (Dkt. No. 136 ("Mot").)  Defendants' challenge, which is

8  yet again untimely, purports to be based upon the Second Amendment,

9  but their premise is flawed from the start.

10      Defendants ignore the clear guidance from Bruen that the first

11  step of the analysis requires assessing whether the conduct at issue

12  is covered by the "plain text" of the Second Amendment.  Defendants

13  do not undertake any such analysis nor could they succeed in doing

14  so.  Bruen reaffirmed recent Supreme Court precedent that "individual

15  self-defense is the 'central component' of the Second Amendment

16  right."  The charged conduct here – the unlicensed manufacture of

17  firearms for sale and the sale of a firearm to a felon – is not

18  covered by the "plain text" of the Second Amendment based on binding

19  authority from the Supreme Court and Ninth Circuit.  Defendants skip

20  over the first step of the test because they cannot get past it.

21      Because they cannot proceed past step one, no further analysis,

22  including of the "Nation's historical tradition of firearm

23  regulation," is warranted nor necessary.  Yet defendants' motion is

24  based entirely on the erroneous assumption that the burden has

25  shifted to the government to justify the charged conduct in

26  historical context.  Defendants misread and misapply Bruen, which

27  marked a change only at step two of the analysis that has no bearing

28  on this case.  Defendants' motion to dismiss thus should be denied.

## II.   RELEVANT BACKGROUND

In its opposition to defendants' first motion to dismiss the indictment, the government described the charges and allegations in the indictment in detail.  (See Dkt. No. 120 at 2-5.)  The government incorporates that description herein by reference.

As most relevant here, defendants are charged in a three-count indictment that is premised, at its core, on defendants' and co-conspirator Ping-Yi Kwan's manufacture for sale of completed AR-15-type firearms.  Schlotterbeck and Vlha both are charged in Count One (conspiracy) and Count Two (engaging in the business of manufacturing firearms without a license).  Schlotterbeck is charged alone in Count Three (sale of firearm to felon).  (Dkt. No. 1.)

Defendants are not charged with any offenses relating to their personal possession or use of firearms nor do the charges have any bearing on the broader law-abiding population's ability to obtain, possess, carry, or use firearms for self-defense or otherwise.

## III.  ARGUMENT

### A.   Relevant Rule 12(b) Standard

Federal Rule of Criminal Procedure 12(b) permits a pretrial motion to dismiss "that the court can determine without a trial on the merits."  Fed. R. Crim. P. 12(b)(1).  However, in ruling on such a motion, "the district court is bound by the four corners of the indictment."  United States v. Boren, 278 F.3d 911, 914 (9th Cir. 2002).  The motion "cannot be used as a device for a summary trial of the evidence."  Id.  The "unavailability of Rule 12 in determination of general issues of guilt or innocence . . . helps ensure that the respective provinces of the judge and jury are respected[.]"  United States v. Nukida, 8 F.3d 665, 670 (9th Cir. 1993).

**B.   Defendants' Motion Should be Denied as Untimely**

For the reasons set forth in the government's opposition to defendants' first motion to dismiss, defendants' second motion is untimely in light of prior Court-ordered deadlines for Rule 12(b) motions in this case.  (See Dkt. No. 120 at 6-7; see also Dkt. Nos. 73, 75 (prior Court-ordered deadlines for Rule 12(b) motions); Dkt. No. 78 (defendants' acknowledgment in stipulation to continue trial that "they d[id] not anticipate filing any motions pursuant to [Rule] 12(b)").)

To the extent defendants contend that they are relying on the recently-issued Bruen opinion, defendants have been on notice for some time of the issues litigated in Bruen.  The Supreme Court granted certiorari in Bruen in April 2021, prior to this Court's final Rule 12(b) pretrial motion deadline in July 2021 here.  (Dkt. No. 75.)  The Supreme Court heard oral argument in Bruen on November 3, 2021.  Moreover, defendants place significant weight in their motion on a dissent written by then-Judge Amy Coney Barrett of the Seventh Circuit on March 15, 2019, several months before the indictment in this case.  (See Mot. at 3-4 (discussing Judge Barrett's dissent in Kanter v. Barr, 919 F.3d 437 (7th Cir. 2019)).)  And, at its heart, defendants' motion is based on the Supreme Court's opinions in Heller v. District of Columbia, 554 U.S. 570 (2008) ("Heller") and McDonald v. City of Chicago, Ill., 561 U.S. 742 (2010) ("McDonald"), both decided over a decade ago.  Contrary to defendants' claims, Bruen did not usher in any meaningful change to the Supreme Court's approach to the "plain text" of the Second Amendment (i.e., step one of the analysis) as it relates to the charges here; defendants' claims are as meritless now as they were

3

1    immediately following <u>Heller</u> and <u>McDonald</u>.  But that does not change

2    the fact that defendants have been on notice of the claims animating

3    their motion well before the Rule 12(b) motions deadline passed in

4    this case.  They failed to bring the motion before that deadline, and

5    thus they have waived their right to bring it now.[1]

6    **C.   Defendants' Challenges Based on <u>Bruen</u> Are Without Merit**

7    **1.   Defendants Fundamentally Misconstrue and Misapply**
8    **<u>Bruen</u>**

9    Defendants' attempt to import the Supreme Court's analysis in

10   <u>Bruen</u> to the charges and circumstances of this case is fundamentally

11   at odds with <u>Bruen</u>'s central holdings.  When undertaking a faithful

12   analysis of <u>Bruen</u> (and the other recent Supreme Court precedent on

13   which it is based), defendants' Second Amendment challenges to the

14   charges in this case, whether facial or as applied, do not get off

15   the ground.[2]

16   In <u>Bruen</u>, the Supreme Court held, "consistent with <u>Heller</u> and

17

18   _____

     [1] The decisions of defendant Schlotterbecks's prior counsel do

19   not insulate him from waiver.  <u>See</u>, <u>e.g</u>, <u>United States v. Yousef</u>, 327
     F.3d 56, 124–25 (2d Cir. 2003) ("A strategic decision by counsel not

20   to pursue a claim, inadvertence of one's attorney, and an attorney's
     failure to timely consult with his client are all insufficient to

21   establish cause" for untimely pretrial motion practice).

     [2] Without distinguishing between theories in their motion,

22   defendants purport to challenge the charged conduct as
     unconstitutional on both a facial and as-applied basis.  (<u>See</u> Mot. at

23   4, 5.)  Defendants challenges fail under either analysis, as the
     charged statutes in all their potential applications and as applied

24   to the conduct alleged in the indictment here entail conduct that
     does not implicate the "plain text" of the Second Amendment.

25   Nonetheless, the government maintains that only an as-applied
     analysis is warranted even at the first step of the two-step inquiry

26   in <u>Bruen</u>, as "[e]mbedded in the traditional rules governing
     constitutional adjudication is the principle that a person to whom a

27   statute may constitutionally be applied will not be heard to
     challenge that statute on the ground that it may conceivably be

28   applied unconstitutionally to others, in other situations not before
     the Court."  <u>Broadrick v. Oklahoma</u>, 413 U.S. 601, 610–11 (1973).

                                         4

McDonald, that the Second and Fourteenth Amendments protect an individual's right to carry a handgun for self-defense outside the home." Bruen, 2022 WL 2251305, at *5.  In so holding, the Court "reiterate[d] that the standard for applying the Second Amendment is as follows: When the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct.  The government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." Id. at *11 (emphasis added).

The Court recognized that the first step of analyzing the "plain text" of the Second Amendment was "[i]n keeping with Heller." Id. at *8.  However, the Court rejected the post-Heller test that had developed among the circuit and district courts at the second step of the analysis, in which courts applied so-called means-end scrutiny (i.e., strict or intermediate scrutiny) to laws that were found to fall within the Second Amendment's "plain text." Id. at *8-9. Instead, the Court held that an analysis of the "Nation's historical tradition of firearm regulation," not means-end scrutiny, is the appropriate standard at the second step. Id.

Defendants distort and misapply the Court's holdings in Bruen in two fundamental ways that pervade and undermine their motion.

First, defendants broadly describe Bruen as a "sea change on the law concerning Second Amendment claims," without recognizing any distinction between laws that are covered by the "plain text" of the Second Amendment and those that are not.  (Mot. at 1.)  Defendants recite the actual "two-step, burden shifting approach" one time in the Legal Standard section of their motion.  (Mot. at 3.)  Yet everything that comes before and after presumes only the second step

applies.   Defendants undertake no analysis whatsoever of the Second Amendment's "plain text" as it pertains to the charges in this case, erroneously concluding that the government bears the "heavy burden" from the outset of establishing the charged statutes satisfy the historical tradition analysis.

For example, defendants claim that "[u]nder the Bruen case, in all analysis of a Second Amendment claim, like this one to dismiss the charges in the indictment, it is presumed that '[the] individual's conduct' is constitutionally protected."  (Mot. at 1 (quoting Bruen, 2022 WL 2251305, at *8) (emphasis added).)  But that is flatly incorrect.  The actual language from Bruen, from which defendants selectively quote, states, "we hold that when the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct."  Bruen, 2022 WL 2251305, at *8.  Defendants read out step one altogether, much less the "plain text" analysis that determines what conduct is "presumptively protect[ed]" and subject to further analysis.

Defendants repeat this error numerous times in their motion, impermissibly shifting the burden to the government and launching into a premature (and, as explained below, inapplicable) analysis of the "Nation's historical tradition of firearm regulation."  (See, e.g., Mot. at 1-2 ("government cannot meet its heavy burden to establish that Mr. Schlotterbeck and Mr. Vlha's conduct would be subject to regulation at the time of the ratification of the Second Amendment"); id. at 2 ("government cannot carry its heavy burden establishing that the sale to all felons . . . is consistent with regulations" at adoption of Second Amendment); id. at 3 ("In full recognition of Bruen's command that the government bear the burden of

proving that this regulation does not run afoul of the Second Amendment. . .”); id. at 4 (“government will not be able to meet its burden of proving that this regulation . . . does not run afoul of the Second Amendment.”).)

Thus, whatever purported “sea change” there may be in the Supreme Court’s discussion of the second step of the analysis – abandoning means-end scrutiny for “historical tradition” inquiry – that holding in Bruen has no bearing on the charges in this case, which do not get past the first step as explained further herein.

Second, in presuming without any analysis that the charged manufacturing for sale and sale to a felon conduct here implicates the Second Amendment, defendants ignore the Court’s clear and repeated articulation of what the “plain text” of the Second Amendment covers.  Drawing upon its earlier opinions in Heller and McDonald, the Court in Bruen reiterated that the “plain text” of the Second Amendment – in particular, “the right of the people to keep and bear Arms” – “guarantee[s] the individual right to possess and carry weapons in case of confrontation.”  Id. at *9 (quoting Heller, 554 U.S. at 592).[3]  The Court repeatedly spoke of the covered conduct as “an individual right to self-defense.”  Id.; see also, e.g., id. at *12 (Second Amendment “‘surely elevates above all other interests the right of law abiding, responsible citizens to use arms’ for self-

---

[3] In reaching the conclusion in Heller that the Second Amendment codified the “right to possess and carry weapons in case of confrontation,” the Court undertook an extensive textual analysis of the terms “keep and bear Arms” within the context of the Second Amendment.  Heller, 554 U.S. at 581-92.  The Court further recognized that “this meaning is strongly confirmed by the historical background of the Second Amendment,” to which it looked in determining the scope of the right (as opposed to the propriety of regulations that might implicate the Second Amendment).  Id. at 592.

1    defense" (quoting Heller, 554 U.S. at 635)); id. at *13 ("As we

2    stated in Heller and repeated in McDonald, 'individual self-defense

3    is the 'central component' of the Second Amendment right.'")

4    (emphasis in original); id. at * 14 ("Heller further confirmed that

5    the right to 'bear arms' refers to the right to 'wear, bear, or carry

6    . . . upon the person or in the clothing or in a pocket, for the

7    purpose . . . of being armed and ready for offense or defensive

8    action in a case of conflict with another person.'"); id. at *15

9    ("self-defense is 'the central component of the [Second Amendment]

10   right itself'") (emphasis in original).

11        Three of the Justices in the Bruen majority (Justices Alito and

12   Kavanaugh and Chief Justice Roberts) authored or joined in

13   concurrences stating their view that the Court's holding was indeed

14   narrowly drawn.  Justice Alito emphasized, "[a]ll that we decide in

15   this case is that the Second Amendment protects the right of law-

16   abiding people to carry a gun outside the home for self-defense."

17   Id. at *37 (Alito, J. concurring).  Justice Kavanaugh, joined by

18   Chief Justice Roberts, wrote separately to "underscore two important

19   points about the limits of the Court's decision," reiterating that

20   "individual self-defense is 'the central component' of the Second

21   Amendment," id. at *38 (Kavanaugh, J. concurring) (quoting McDonald,

22   561 U.S. at 767 and Heller, 554 U.S. at 599), and "[p]roperly

23   interpreted, the Second Amendment allows a 'variety' of gun

24   regulations."[4]   Id. at *39 (quoting Heller, 554 U.S. at 636).

25

26        [4] Consistent with this more limited interpretation of the Second
     Amendment, it is not surprising that Heller, McDonald, and Bruen all
27   dealt with laws effectively prohibiting the people's right to possess
     and carry handguns for self-defense.  See Heller, 554 U.S. at 573
28   (D.C. "prohibition on the possession of usable handguns in the
     *(footnote cont'd on next page)*

8

Thus, the majority's repeated focus on the Second Amendment's "central component" of an individual right to self-defense and the concurring Justices' express limitations of their views to that narrow holding underscore the fallacy of defendants' argument here. Without any acknowledgment of their burden at step one, defendants presume the manufacturing for sale and sale to a felon charges are similarly covered by the "plain text" of the Second Amendment. Defendants are wrong. With the proper framework in mind, Counts One, Two and Three all pertain to conduct that is not implicated by the Second Amendment, and thus no further analysis - of "historical tradition" or otherwise - is necessary.

2. Counts One and Two Do Not Implicate the Second Amendment

Defendants are charged in Counts One and Two with conspiracy to engage and engaging in the business of manufacturing firearms without a license, in violation of 18 U.S.C. §§ 371 and 922(a)(1)(A). By statute, defendants are alleged to have "manufactur[ed] firearms as a regular course of trade or business with the principal objective of livelihood and profit through the sale or distribution of the firearms manufactured." 18 U.S.C. § 922(a)(21)(A). The indictment alleges, inter alia, that defendants worked together in manufacturing multiple AR-15-type firearms to sell to at least three different customers without obtaining a license to do so.

Defendants summarily claim that "the indictment alleges an unconstitutional criminal regulation" of defendants' conduct,

---

home"); McDonald, 561 U.S. at 750 (Chicago "handgun ban"); Bruen, 2022 WL 2251305, at *6 (New York "proper cause" requirement for "permit to carry a handgun in public"). The Supreme Court has spoken when laws allegedly implicate an individual's right to self-defense.

proceeding immediately to purported "regulations on the manufacturing of firearms" at the time the Second Amendment was ratified.  (Mot. at 4.)  Defendants do not even attempt to meet their burden at step one of showing that the conduct alleged in Counts One and Two is covered by the "plain text" of the Second Amendment.  Defendants do not attempt to do so because they cannot do so.

As previously discussed, <u>Bruen</u> reiterated the holdings from <u>Heller</u> and <u>McDonald</u> that "individual self-defense is the '<u>central component</u>' of the Second Amendment right."  <u>Bruen</u>, 2022 WL 2251305, at *13 (quoting <u>Heller</u> and <u>McDonald</u>) (emphasis in original).  <u>Bruen</u> did not extend the Supreme Court's interpretation of the bounds of the Second Amendment any further, including with respect to the manufacturing of firearms for sale alleged here.

To the contrary, in their concurrence, Justice Kavanaugh and Chief Justice Roberts reaffirmed the Supreme Court's recognition in in <u>Heller</u> and <u>McDonald</u> that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill . . . or laws imposing conditions and qualifications on the commercial sale of arms."  <u>Id.</u> at *39 (quoting <u>Heller</u>, 554 U.S. at 626-27, and <u>McDonald</u>, 561 U.S. at 786).  Justice Alito similarly emphasized the Court's "holding decides nothing about who may lawfully possess a firearm or the requirements that must be met to buy a gun."  <u>Id.</u> at *34.  Justice Alito's concurrence is especially noteworthy, as he wrote the majority opinion in <u>McDonald</u> in which the Court made a point to "repeat th[e] assurances" from <u>Heller</u> that the Court's rulings did not "cast doubt" on the regulation of "the commercial sale of arms," which the <u>Heller</u> Court described as "presumptively lawful regulatory

1  measures." <u>McDonald</u>, 561 U.S. at 786 (quoting <u>Heller</u>, 554 U.S. at

2  626-27, 627 n.26).

3      Defendants contend in passing that "[w]hile Justice Kavanaugh's

4  concurrence argues that this new interpretation does not affect

5  licensing regulations, for obvious reasons this position was not

6  adopted in the majority opinion and is thus not the law of the land."

7  (Mot. at 5 n.2.)  Defendants have it completely backwards.  <u>Heller</u>

8  and <u>McDonald</u> expressly carved out "presumptively lawful regulatory

9  measures" – including the "commercial sale of arms" laws at issue

10  here.  The <u>Bruen</u> majority did nothing to disrupt that prior, binding

11  guidance.  And three of the six Justices in the majority (to say

12  nothing of the three Justices who joined in dissent) wrote separately

13  to clarify the limits of <u>Bruen</u>'s holdings.  Defendants do not

14  elaborate on the purported "obvious reasons" that support their

15  opposite and erroneous conclusion.  But even if there was some

16  uncertainty as to <u>Bruen</u>'s intended reach (and, to be clear, there is

17  not), the Supreme Court has repeatedly emphasized that, "it is this

18  Court's prerogative alone to overrule one of its precedents." <u>Bosse</u>

19  <u>v. Oklahoma</u>, 137 S.Ct. 1, 2 (2016) (per curiam) (quoting <u>United</u>

20  <u>States v. Hatter</u>, 532 U.S. 557, 567 (2001), and <u>State Oil Co. v.</u>

21  <u>Khan</u>, 522 U.S. 3, 20 (1997)).[5]

22

---

23      [5] Defendants' dismissiveness toward the concurring opinions in
   <u>Bruen</u> is particularly curious given the substantial reliance they
24  place on a 2019 dissent by then-Judge Barrett in the Seventh Circuit.
   (Mot. at 3-4.)  Moreover, in cases where "a fragmented Court decides
25  a case and no single rationale explaining the result enjoys the
   assent of five Justices, 'the holding of the Court may be viewed as
26  that position taken by those Members who concurred in the judgments
   on the narrowest grounds . . . .'" <u>Marks v. United States</u>, 430 U.S.
27  188, 193 (1977) (quoting <u>Gregg v. Georgia</u>, 428 U.S. 153, 169 n.15
   (1976)).  In any event, the <u>Bruen</u> majority has left no ambiguity of
28  its narrow holding as to the meaning of the "plain text" of the
                                          *(footnote cont'd on next page)*

11

1    Defendants' arguments are further foreclosed by controlling

2  Ninth Circuit authority.  In Teixeira v. County of Alameda, the Ninth

3  Circuit held en banc that "the Second Amendment does not confer a

4  freestanding right to sell firearms."  873 F.3d 670, 682 (9th Cir.

5  2017) (en banc).  Teixeira involved a challenge to a zoning law that,

6  among other things, prohibited the sale of firearms in certain areas.

7  Id. at 673.  In concluding that "the Second Amendment does not

8  independently protect the ability to engage in gun sales," id. at 682

9  n.16, the Ninth Circuit undertook a detailed analysis of the text and

10  intended purpose of the Second Amendment when it was codified.  See

11  id. at 683-87.

12    Following the guidance from Heller, the court "beg[a]n with

13  [the] text of the Second Amendment," finding that "[n]othing in the

14  specific language of the Amendment suggests that sellers fall within

15  the scope of its protection."  Id. at 683.  The court similarly found

16  that "[n]o historical authority suggests that the Second Amendment

17  protects an individual's right to sell a firearm unconnected to the

18  rights of citizens to 'keep and bear' arms."[6]  Id. at 686-87

19  (emphasis in original).  The court concluded that "the Second

20  Amendment does not confer a freestanding right, wholly detached from

21  any customer's ability to acquire firearms, upon a proprietor of a

22

23  ───────────────────
    Second Amendment, consistent with the Court's precedents in Heller
24  and McDonald.

25      [6] To be clear, the Ninth Circuit's approach in looking at the
    historical record was limited, at step one of its analysis, to
26  determining whether the right to sell firearms was embodied in the
    Second Amendment at the time it was ratified.  The Ninth Circuit did
27  not conduct a historical analysis of the statute being challenged
    because it did not need to further consider the law – the challenged
28  provision "d[id] not burden conduct falling within the [Second]
    Amendment's scope and [wa]s necessarily allowed by the Amendment."
    Teixeira, 873 F.3d at 690 (internal quotation and citation omitted).

commercial establishment to sell firearms." Id. at 682.

The Ninth Circuit also has rejected a post-Heller constitutional challenge to 18 U.S.C. § 922(a)(1)(A), the statute at issue in Counts One and Two. See United States v. Castro, No. 10-50160, 2011 WL 6157466, at *1 (9th Cir. 2011) (unpublished) (Second Amendment challenge to section 922(a)(1)(A) foreclosed in recognition that the "Supreme Court has made it clear that the government can continue to regulate commercial gun dealing"). Other courts have reached similar conclusions in the aftermath of Heller. See, e.g., United States v. Focia, 869 F.3d 1269, 1284, 1286 (11th Cir. 2017) (rejecting challenge to section 922(a)(1)(A) premised on Heller, finding that defendant's "Second Amendment challenge to 18 U.S.C. § 922(a)(1)(A) fails"); cf. Montana Shooting Sports Ass'n v. Holder, No. CV-09-147-DWM-JCL, 2010 WL 3926029, at *21 (D. Mont. Aug. 31, 2010) ("The federal firearms laws at issue here do just what Heller considered appropriate—they impose conditions and qualifications on the manufacture and sale of arms").

In sum, defendants cannot proceed past step one of the Second Amendment analysis reaffirmed in Bruen. The unlicensed manufacturing of firearms for sale that is charged in Counts One and Two – both on its face or as applied to defendants' conduct alleged in the indictment – is not covered by the "plain text" of the Second Amendment, and thus no analysis of the "Nation's historical tradition of firearm regulation" is necessary nor warranted.[7] Bruen, 2022 WL

---

[7] In support of their abbreviated (and inapplicable) historical analysis, defendants contend that "regulations on the manufacturing of firearms among the states were almost non-existent" and federal law in this area did not develop until the first-half of the 20th Century. (See Mot. at 4-5.) Defendants attach two exhibits in

*(footnote cont'd on next page)*

13

1    2251305 at *8.  Defendants' constitutional challenges to Counts One

2    and Two premised on Bruen should be denied.

3               3.  Count Three Does Not Implicate the Second Amendment

4       Defendant Schlotterbeck is charged in Count Three with selling a

5    firearm to a felon, in violation of 18 U.S.C. § 922(d)(1).

6    Specifically, the indictment alleges that defendant Schlotterbeck

7    knowingly sold a completed AR-15-type firearm bearing no serial

8    number to a customer (in reality, an ATF confidential informant)

9    knowing or having reasonable cause to believe that the customer had

10    been convicted of a felony.

11       The analysis set forth in section III.C.2 above applies with

12    equal force to the charge in Count Three, which similarly regulates

13    the sale of firearms, in this case prohibiting sales to a specific

14    category of people (i.e., felons).  The Supreme Court and Ninth

15    Circuit have made clear that regulation of firearm sales is not

16    covered by the Second Amendment, and thus no second step nor analysis

17    of historical tradition is necessary.  (See supra § III.C.2.)

18       Moreover, courts that have considered post-Heller constitutional

19    challenges to 18 U.S.C. 922(d)(1) in particular, or other similar

20

21    support, both excerpted from unidentified sources and with little
context or explanation.  (See id., Exhs. B and C.)  Defendants appear

22    to contend implicitly that they were manufacturing firearms for their
own use in framing this historical analysis.  But that is not what

23    they are charged with in this case.  Rather, they are alleged to have
manufactured firearms for sale as a business enterprise, without a

24    license to do so.  The Ninth Circuit's en banc opinion in Teixeira,
as one summary of historical data, provides numerous examples of

25    regulations on the sale of firearms among the colonies and states at
the time the Second Amendment was ratified (in demonstrating that the

26    Second Amendment did not entail the right to sell firearms).  See
generally Teixeira, 873 F.3d at 685-86 (providing examples of

27    "colonial governments substantially controll[ing] the firearms
trade").  That analysis is irrelevant here, however, as defendants

28    cannot establish the conduct charged in Counts One and Two is covered
by the Second Amendment in the first instance.

provisions under section 922 that criminalize sales of firearms to

certain persons, have consistently rejected those challenges as

outside the scope of the Second Amendment.  See, e.g., United States

v. Bacon, 884 F.3d 605, 611 (6th Cir. 2018) (affirming conviction for

18 U.S.C. § 922(d)(1) where court found "no historical indication

that the Second Amendment encompasses such sales"); United States v.

Focia, 869 F.3d 1269, 1286 (11th Cir. 2017) (rejecting constitutional

challenge to unlawful transfer of firearm to out-of-state unlicensed

buyer under 18 U.S.C. § 922(a)(5) where the law "does not

substantially burden the Second Amendment" and "only minimally

affects the ability to acquire a firearm"); United States v. Chafin,

423 F. App'x 342, 344 (4th Cir. 2011) (unpublished) (affirming

conviction for sale of firearm to unlawful user of drugs under 18

U.S.C. § 922(d)(3) where court found no authority "remotely

suggest[ing] that, at the time of its ratification, the Second

Amendment was understood to protect an individual's right to sell a

firearm" (emphasis in original)).

    Putting aside that the charged unlawful sale of a firearm is

foreclosed from constitutional scrutiny under the Second Amendment,

defendants once again jump to step two, impermissibly shift the

burden to the government, and focus on the buyer, not the seller,

within the context of Count Three.  Defendants take aim at 18 U.S.C.

§ 922(g)(1) – which is not charged in this case – and claim

erroneously that Bruen has invalidated the felon in possession of a

firearm statute.  By defendants' logic, if 18 U.S.C. § 922(g)(1) is

unconstitutional, then the statute criminalizing the sale of a

firearm to the same category of prohibited person must also be

unconstitutional.  Defendants' claim fails for a number of reasons.

1    First, defendants contend without any support that section

2    922(g)(1)'s "blanket prohibition on felons has now been rendered

3    unconstitutional" in light of Bruen.  (Mot. at 2.)  But, as

4    previously explained, Bruen did not speak to or undermine in any way

5    the Supreme Court's prior pronouncements in Heller and McDonald that

6    "nothing in our opinion should be taken to cast doubt on longstanding

7    prohibitions on the possession of firearms by felons and the mentally

8    ill . . .," which the Court described as "presumptively lawful

9    regulatory measures."  Heller, 554 U.S. at 626-27, 627 n.26;

10   McDonald, 561 U.S. at 786.  The concurrences in Bruen emphasized that

11   this prior guidance remains intact.  See Bruen, 2022 WL 2251305 at

12   *34 (Alito, J. concurring) ("Our holding decides nothing about who

13   may lawfully possess a firearm or the requirements that must be met

14   to buy a gun."); id. at *39 (Kavanaugh, J. concurring) (reaffirming

15   legality of "longstanding prohibitions on the possession of firearms

16   by felons" pronounced in Heller and McDonald).

17   Second, in light of this guidance from Heller and McDonald, the

18   Ninth Circuit has repeatedly upheld the constitutionality of 18

19   U.S.C. § 922(g)(1).  See, e.g., United States v. Vongxay, 594 F.3d

20   1111, 1115, 1118 (9th Cir. 2010) ("§ 922(g)(1) does not violate the

21   Second Amendment as it applies to . . . a convicted felon," because

22   "felons are categorically different from the individuals who have a

23   fundamental right to bear arms."); United States v. Smith, 329 Fed.

24   App'x 109, 111 n.1 (9th Cir. 2009) ("Heller did not disturb . . .

25   [precedent] that felons have no constitutional right to possess

26   firearms."); United States v. Phillips, 827 F.3d 1171, 1174 (9th Cir.

27   2016) (rejecting, as foreclosed by Vongxay, felon's Second Amendment

28   challenge to his § 922(g)(1) conviction based on nature of predicate

1   felony), cert. denied, 138 S. Ct. 56 (2017).  Nothing in Bruen casts

2   doubt on the continuing validity of this line of controlling

3   authority in the Ninth Circuit.

4        Third, defendants solely rely on then-Judge Barrett's dissent in

5   Kanter v. Barr, 919 F.3d 437 (7th Cir. 2019), in which she argued

6   section 922(g)(1) was unconstitutionally overbroad in prohibiting all

7   felons, not just "dangerous" felons, from possessing firearms.[8]

8   (Mot. at 3-4.)  Defendants claim that "[b]enefitting from Justice

9   Barrett's detailed analysis [in her dissent], the government will not

10  be able to meet its burden of proof and production."  (Id. at 4.)

11  The government bears no burden, however, as the actual statute at

12  issue here – 18 U.S.C. § 922(d)(1) – is not covered by the "plain

13  text" of the Second Amendment.  Nor does the Supreme Court's express

14  guidance, as described above, indicate that 18 U.S.C. § 922(g)(1)

15  would even be subject to step-two historical tradition analysis, as

16  the law is a "presumptively lawful regulatory measure[]."  Heller,

17  554 U.S. at 627 n.26; McDonald, 561 U.S. at 786.

18       Defendants also misleadingly state that the "majority opinion

19  [in Kanter v. Barr] upholding the constitutionality of the

20  transcendent definition of felons in 922(g) has been abrogated by the

21  Bruen decision."  (Mot. at 4.)  In fact, Bruen abrogated Kanter only

22  to the extent that Kanter (among a number of other specified circuit

23  court cases) applied means-end scrutiny at the second step of the

24  Second Amendment analysis.  See Bruen, 2022 WL 2251305 (summary of

25

26  _____

27       [8] Notably, Justice Barrett made clear in her Kanter dissent that
    the "Second Amendment confers an individual right, intimately
    connected with the natural right of self-defense."  Kanter, 919 F.3d

28  at 464 (Barrett, J. dissenting).  Nothing in her dissent spoke of a
    broader application of the Second Amendment to firearm sales conduct.

                                    17

1  holdings, stating "means-end scrutiny, such as strict or intermediate

2  scrutiny, does not apply in the Second Amendment context, abrogating

3  . . . Kanter v. Barr, 919 F.3d 437"). The majority opinion in Bruen

4  said nothing about 18 U.S.C. § 922(g)(1), much less did it question

5  the "constitutionality of the transcendent definition of felons in

6  922(g)." (Mot. at 4). The Bruen concurrences reflect just the

7  opposite. And Justice Barrett's 2019 dissenting opinion from Kanter

8  in the Seventh Circuit remains just that: a circuit court dissent.[9]

9      Finally, Count Three charges defendant Schlotterbeck with the

10  illegal sale of a firearm in violation of 18 U.S.C. § 922(d)(1), not

11  the unlawful possession of the firearm in his own right. The alleged

12  illegal sale conduct has nothing to do with possession or carrying

13  firearms for self-defense and thus does not implicate the "plain

14  text" of the Second Amendment. Moreover, the Ninth Circuit Model

15  Criminal Jury Instruction for 18 U.S.C. § 922(d)(1) does not even

16  require the government to prove that the buyer of the firearm was in

17  fact a prohibited person. See Ninth Circuit Model Criminal Jury

18  Instruction No. 14.11. The statute criminalizes the act of the sale,

19  not the buyer's act of possession. Thus, the fact of the buyer's

20  actual status (and any restriction of their ability to possess

21  firearms) is irrelevant to the charge.

22      Accordingly, defendants' attempt to challenge the

23  constitutionality of 18 U.S.C. § 922(d)(1) in Count Three, on a

24  facial or as applied basis, as "criminaliz[ing] an otherwise

25

26  _____

27      [9] Justice Barrett wrote a separate brief concurrence in Bruen
    and did not speak to any aspect of her supposed views on limiting
    felons under 18 U.S.C. § 922(g)(1) to "dangerous" felons or the

28  invalidation of 18 U.S.C. § 922(g)(1) more broadly, neither of which
    is supported in any way by Bruen.

1  constitutional transaction" is without merit.  (Mot. at 4.)  The

2  analysis begins and ends with the "plain text" of the Second

3  Amendment, and defendants' challenge to Count Three should be denied.

4      **D.   The Court Should Not Stay the Proceedings**

5      In their Conclusion, defendants request "in the alternative,"

6  with no argument or analysis, "that this court stay the proceedings

7  pending further development in the law."  (Mot. at 5.)  Defendants'

8  request should be denied.

9      The Supreme Court has spoken clearly as to the bounds of the

10  "plain text" of the Second Amendment, and it does not include the

11  statutes and conduct alleged in this case.  The Ninth Circuit

12  similarly has defined the limits of the Second Amendment, drawing

13  from and consistent with the Supreme Court's guidance in Heller and

14  McDonald.  Nothing in Bruen has called into question any of this

15  controlling authority as relevant to the charges here.

16      As defendants would have it, courts across the country should

17  stay all pending cases under section 922 of Title 18, or the Gun

18  Control Act more broadly, in the far-off and highly speculative

19  chance that the Supreme Court drastically reverses course on its

20  approach to the Second Amendment in the coming years.  Of course,

21  that is not what the law dictates.  The Supreme Court's and Ninth

22  Circuit's precedents described herein are clear, binding, and

23  directly applicable to defendants' motion, and provide no grounds for

24  staying these proceedings.  See Bosse v. Oklahoma, 137 S.Ct. 1, 2

25  (2016) (per curiam) ("[I]t is this Court's prerogative alone to

26  overrule one of its precedents."); Saban v. U.S. Dep't of Labor, 509

27  F.3d 376, 378 (7th Cir. 2007) ("The Supreme Court has told the lower

28  courts that they are not to anticipate the overruling of a Supreme

Court decision, but are to consider themselves bound by it until and unless the Court overrules it, however out of step with current trends in the relevant case law the case may be."); <u>In re Zermeno Gomez</u>, 868 F.3d 1048, 1053 (9th Cir. 2017) (per curiam) ("[W]e have unequivocally stated that a published decision constitutes binding authority and must be followed unless and until it is overruled by a body competent to do so.").

**IV.   CONCLUSION**

Accordingly, the government respectfully requests that this Court deny defendants' second joint motion to dismiss the indictment.