STEPHANIE S. CHRISTENSEN
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
BRIAN R. FAERSTEIN (Cal. Bar No. 274850)
Assistant United States Attorney
Environmental and Community Safety Crimes Section
DAN G. BOYLE (Cal. Bar No. 332518)
Assistant United States Attorney
Asset Forfeiture Section
     1300/1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-3819/2426
     Facsimile: (213) 894-0141/0142
     E-mail:    Brian.Faerstein@usdoj.gov
                Daniel.Boyle2@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 19-00343-GW-1 |
|---|---|
| Plaintiff, | PLEA AGREEMENT FOR DEFENDANT TRAVIS SCHLOTTERBECK |
| v. | |
| TRAVIS SCHLOTTERBECK, | |
| Defendant. | |

1.   This constitutes the conditional plea agreement between Travis Schlotterbeck ("defendant") and the United States Attorney's Office for the Central District of California (the "USAO") in the above-captioned case pursuant to Federal Rule of Criminal Procedure 11(a)(2).  This agreement is limited to the USAO and cannot bind any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authorities.

//

//

1          <u>DEFENDANT'S OBLIGATIONS</u>

2     2.   Defendant agrees to:

3          a.   At the earliest opportunity requested by the USAO and

4    provided by the Court, appear and plead guilty to counts one and

5    three of the indictment in <u>United States v. Travis Schlotterbeck et</u>

6    <u>al.</u>, CR No. 19-00343-GW, which charge defendant with conspiracy to

7    commit an offense against the United States, namely, engaging in the

8    business of manufacturing and dealing firearms without a license, in

9    violation of 18 U.S.C. §§ 371 and 922(a)(1)(A), and sale of a firearm

10   to a felon, in violation of 18 U.S.C. § 922(d)(1).

11         b.   Not contest facts agreed to in this agreement.

12         c.   Abide by all agreements regarding sentencing contained

13   in this agreement.

14         d.   Appear for all court appearances, surrender as ordered

15   for service of sentence, obey all conditions of any bond, and obey

16   any other ongoing court order in this matter.

17         e.   Not commit any crime; however, offenses that would be

18   excluded for sentencing purposes under United States Sentencing

19   Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

20   within the scope of this agreement.

21         f.   Be truthful at all times with the United States

22   Probation and Pretrial Services Office and the Court.

23         g.   Pay the applicable special assessments at or before

24   the time of sentencing unless defendant has demonstrated a lack of

25   ability to pay such assessments.

26   3.   Defendant and the USAO agree that defendant's entry of

27   guilty pleas pursuant to paragraph 2(a) above will be conditional, in

28   that defendant reserves the right, on appeal from the judgment, to

seek review of the adverse determination of "Defendants' Joint Motion to Dismiss the Indictment Per Fed. R. Crim. P. 12(b)(3)(A)," filed on July 1, 2022 (ECF Dkt. No. 136), which raised a challenge to the indictment pursuant to New York State Rifle & Pistol Association, Inc. v. Bruen, --S.Ct.--, 2022 WL 2251305, at *1 (2022).  If defendant prevails on appeal, defendant will be allowed to withdraw defendant's guilty pleas.  In addition to the waivers set forth in paragraphs 18-20 herein, defendant expressly waives any and all right to appeal or otherwise seek review of any adverse determinations of other pretrial motions or other pretrial challenges raised prior to entry of this plea agreement, including, but not limited to, "Defendants' Joint Motion to Dismiss Indictment Per Fed. R. Crim. P. 12(b)(3)(a)," filed on June 2, 2022 (ECF Dkt. No. 113), which raised a challenge to the indictment on alleged constitutional vagueness grounds.

THE USAO'S OBLIGATIONS

4.   The USAO agrees to:

a.   Not contest facts agreed to in this agreement.

b.   Abide by all agreements regarding sentencing contained in this agreement.

c.   At the time of sentencing, move to dismiss the remaining count of the indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.   At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to

3

and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1.  The government will not move for an additional one-level reduction pursuant to U.S.S.G. § 3E1.1(b) and believes any such additional reduction is inappropriate in light of, among other things, the government's substantial preparations for trial in this case.

<u>NATURE OF THE OFFENSES</u>

5.  Defendant understands that for defendant to be guilty of the crime charged in count one, that is, conspiracy to commit an offense against the United States, namely, engaging in the business of manufacturing and dealing firearms without a license, in violation of 18 U.S.C. §§ 371 and 922(a)(1)(A), the following must be true:

a.  First, beginning on a date unknown, but no later than on or about May 21, 2015, and continuing to a date unknown, but no earlier than on or about June 21, 2017, there was an agreement between two or more persons to commit at least one crime as charged in the indictment;

b.  Second, defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it; and

c.  Third, one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

6.  Defendant understands that for defendant to be guilty of the crime charged in count three, that is, sale of a firearm to a felon, in violation of 18 U.S.C. § 922(d)(1), the following must be true:

4

1          a.   First, defendant knowingly sold an AR-15-type rifle,

2    bearing no serial number, to a confidential informant who,

3    unbeknownst to defendant, was working for the Bureau of Alcohol,

4    Tobacco, Firearms and Explosives; and

5          b.   Second, defendant knew or had reasonable cause to

6    believe that the confidential informant was under indictment for or

7    had been convicted in any court of a crime punishable by imprisonment

8    for a term exceeding one year.

9                                PENALTIES

10        7.   Defendant understands that the statutory maximum sentence

11   that the Court can impose for a violation of Title 18, United States

12   Code, Section 371, is: five years imprisonment; a three-year period

13   of supervised release; a fine of $250,000 or twice the gross gain or

14   gross loss resulting from the offense, whichever is greatest; and a

15   mandatory special assessment of $100.

16        8.   Defendant understands that the statutory maximum sentence

17   that the Court can impose for a violation of Title 18, United States

18   Code, Section 922(d)(1), is: ten years imprisonment; a three-year

19   period of supervised release; a fine of $250,000 or twice the gross

20   gain or gross loss resulting from the offense, whichever is greatest;

21   and a mandatory special assessment of $100.

22        9.   Defendant understands, therefore, that the total maximum

23   sentence for all offenses to which defendant is pleading guilty is:

24   15 years imprisonment; a three-year period of supervised release; a

25   fine of $500,000 or twice the gross gain or gross loss resulting from

26   the offenses, whichever is greatest; and a mandatory special

27   assessment of $200.

28

10.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

11.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

12.   Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future.

Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his convictions on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his pleas may entail, even if the consequence is automatic removal from the United States.

FACTUAL BASIS

13.  Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 15 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Beginning on a date unknown, but no later than on or about May 21, 2015, and continuing to a date unknown, but no earlier than on or about June 21, 2017, defendant conspired and agreed with co-defendant James Bradley Vlha, co-conspirator Ping-Yi "Jesse" Kwan, and other co-conspirators known and unknown to commit an offense against the United States, namely, engaging in the business of manufacturing and dealing in firearms without a license, in violation of Title 18, United States Code, Section 922(a)(1)(A).  Defendant became a member

1  of the conspiracy knowing of its objects and intending to help
2  accomplish it.

3    Specifically, defendant and his co-conspirators agreed to
4  manufacture and sell firearms, as that term is defined under Title
5  18, United States Code, Section 921(a)(3)(A), to firearms customers.
6  At all relevant times, neither defendant nor his co-conspirators had
7  applied for or been issued a firearms license from any federal, state,
8  or local governmental entity to engage in business as firearms or
9  ammunition importers, manufacturers, or dealers within the State of
10 California.  Defendant and his co-conspirators conducted a large part
11 of their illegal business activities at Live Fire Coatings and Sign
12 Imaging, two adjacent businesses operated by defendant in Bellflower,
13 California, within Los Angeles County in the Central District of
14 California.

15   Defendant and his co-conspirators agreed to manufacture and sell
16 firearms that included semiautomatic firearms capable of accepting
17 large capacity magazines, specifically, AR-15-type rifles and
18 pistols.  Defendant and his co-conspirators took custom orders for
19 AR-15-type firearms, obtained the firearm parts, arranged for certain
20 parts (specifically, unfinished lower receivers) to be drilled for
21 use through specialized machinery, and assembled and finished
22 (including through the use of a protective ceramic coating known as
23 Cerakote) the AR-15-type firearms for sale.  These firearms did not
24 contain the markings of a manufacturer or serial numbers.

25   In furtherance of the conspiracy, defendant and his co-
26 conspirators knowingly and willfully communicated with and took
27 orders from customers to manufacture, assemble, and sell completed
28 firearms and, in some cases, ammunition.  Defendant and his co-

conspirators obtained firearm parts, including unfinished lower receivers, from various sources.  Defendant and his co-conspirators would arrange to mill out (i.e., drill through use of specialized machinery) or have milled out cavities in the lower receivers necessary to allow the lower receivers to be attached to an upper receiver and barrel, among other firearms parts, in order to construct completed AR-15-type firearms.  Defendant and his co-conspirators thereafter would assemble, finish, and sell the completed firearms to firearms customers at Live Fire Coatings and Sign Imaging.

Defendant and his co-conspirators performed numerous overt acts for the purpose of knowingly and willfully carrying out the conspiracy, including communicating with customers in person and through phone calls and text messages, ordering the parts for the AR-15-type firearms, arranging to mill out lower receivers, and completing other processes for manufacturing for sale and selling the following firearms to customers on the following dates:

a.   From on or about July 7, 2015, through on or about September 23, 2015, defendant and his co-conspirators, each aiding and abetting the other, coordinated, manufactured and sold an AR-15-type rifle, bearing no serial number, to an individual who defendant believed to be a firearms customer but who was, in fact, a confidential informant (the "CI") working at the direction of the United States Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), for $2,000.

b.   From on or about October 5, 2015, through on or about October 27, 2015, defendant and his co-conspirators, each aiding and abetting the other, coordinated, manufactured and sold an AR-15-type

rifle, bearing no serial number, to an individual defendant believed to be a firearms customer but who was, in fact, an undercover ATF agent ("UC-1"), for $1,500.

        c.  From on or about December 21, 2015, through on or about February 11, 2016, defendant and his co-conspirators, each aiding and abetting the other, coordinated, manufactured and sold an AR-15-type pistol, bearing no serial number, along with two 30-round ammunition magazines and three 10-round ammunition magazines, to UC-1 for $1,600.

        d.  From on or about February 11, 2016, through on or about March 16, 2016, defendant and his co-conspirators, each aiding and abetting the other, coordinated, manufactured and sold, and willfully caused the manufacture for sale of, an AR-15-type pistol, bearing no serial number, along with two 10-round ammunition magazines, to an individual defendant believed to be a firearms customer but who was, in fact, a second undercover ATF agent ("UC-2"), for $1,530.

        e.  From on or about March 16, 2016, through on or about May 6, 2016, defendant and his co-conspirators, each aiding and abetting the other, coordinated, manufactured and sold an AR-15-type pistol, bearing no serial number, along with a 31-round ammunition magazine, to UC-1 for $1,770.

        f.  From on or about June 13, 2016, through on or about June 15, 2016, defendant and his co-conspirators, each aiding and abetting the other, coordinated, manufactured and sold an AR-15-type rifle, bearing no serial number, along with a 30-round ammunition magazine, to UC-2 for $1,600.

In addition, in connection with the above-described sale of the AR-15-type rifle, bearing no serial number, to the CI on or about September 23, 2015, defendant knowingly sold, and willfully caused the sale of, the firearm to the CI knowing or having reasonable cause to believe that the CI had been convicted in any court of a crime punishable by imprisonment for a term exceeding one year and thus was not permitted to possess firearms.

## SENTENCING FACTORS

14.  Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a).  Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

15.  Defendant and the USAO agree to the following applicable sentencing guideline factors:

| | | |
|---|---|---|
| Base Offense Level: | 20 | U.S.S.G. § 2K2.1(a)(4)(B) |
| Specific Offense Characteristics: | +2 | U.S.S.G. § 2K2.1(b)(1)(A) |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.  The base offense level

set forth above is based on information currently known to the government regarding defendant's criminal history.  Defendant understands and agrees that defendant's base offense level could be increased if defendant is an armed career criminal under U.S.S.G. §§ 4B1.4 and 18 U.S.C. § 924(e), or if defendant has additional prior convictions for either a crime of violence or a controlled substance offense under U.S.S.G. § 2K2.1.  If defendant's base offense level is so altered, defendant and the USAO will not be bound by the base offense level agreed to above.

16.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

17.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

18.  Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

12

1          e.    The right to confront and cross-examine witnesses

2    against defendant.

3          f.    The right to testify and to present evidence in

4    opposition to the charges, including the right to compel the

5    attendance of witnesses to testify.

6          g.    The right not to be compelled to testify, and, if

7    defendant chose not to testify or present evidence, to have that

8    choice not be used against defendant.

9          h.    Any and all rights to pursue any affirmative defenses,

10   Fourth Amendment or Fifth Amendment claims, and other pretrial

11   motions that have been filed or could be filed.

12         i.    Understanding that the government has in its

13   possession digital devices and/or digital media seized from

14   defendant, defendant waives any right to the return of digital data

15   contained on those digital devices and/or digital media and agrees

16   that if any of these digital devices and/or digital media are

17   returned to defendant, the government may delete all digital data

18   from those digital devices and/or digital media before they are

19   returned to defendant.

20                    <u>WAIVER OF APPEAL OF CONVICTION</u>

21        19.   Defendant understands that, with the exception of an appeal

22   based on a claim that defendant's guilty pleas were involuntary, or

23   an appeal on the grounds specifically reserved in paragraph 3 above,

24   by pleading guilty defendant is waiving and giving up any right to

25   appeal defendant's convictions on the offenses to which defendant is

26   pleading guilty.  Defendant understands that this waiver includes,

27   but is not limited to, arguments that the statutes to which defendant

28   is pleading guilty are unconstitutional, and any and all claims that

1  the statement of facts provided herein is insufficient to support

2  defendant's pleas of guilty.

3  <u>WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK</u>

4  20.  Defendant gives up the right to appeal all of the

5  following: (a) the procedures and calculations used to determine and

6  impose any portion of the sentence; (b) the term of imprisonment

7  imposed by the Court, including, to the extent permitted by law, the

8  constitutionality or legality of defendant's sentence, provided it is

9  within the statutory maximum; (c) the fine imposed by the Court,

10  provided it is within the statutory maximum; (d) the term of

11  probation or supervised release imposed by the Court, provided it is

12  within the statutory maximum; and (e) any of the following conditions

13  of probation or supervised release imposed by the Court: the

14  conditions set forth in Second Amended General Order 20-04 of this

15  Court; the drug testing conditions mandated by 18 U.S.C.

16  §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions

17  authorized by 18 U.S.C. § 3563(b)(7).

18  21.  Defendant also gives up any right to bring a post-

19  conviction collateral attack on the convictions or sentence, except a

20  post-conviction collateral attack based on a claim of ineffective

21  assistance of counsel, a claim of newly discovered evidence, or an

22  explicitly retroactive change in the applicable Sentencing

23  Guidelines, sentencing statutes, or statutes of conviction.

24  Defendant understands that this waiver includes, but is not limited

25  to, arguments that the statutes to which defendant is pleading guilty

26  are unconstitutional, and any and all claims that the statement of

27  facts provided herein is insufficient to support defendant's pleas of

28  guilty.

14

22.   This agreement does not affect in any way the right of the USAO to appeal the sentence imposed by the Court.

<u>RESULT OF WITHDRAWAL OF GUILTY PLEA</u>

23.   Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

<u>RESULT OF VACATUR, REVERSAL OR SET-ASIDE</u>

24.   Defendant agrees that if any count of conviction is vacated, reversed, or set aside, the USAO may: (a) ask the Court to resentence defendant on any remaining count of conviction, with both the USAO and defendant being released from any stipulations regarding sentencing contained in this agreement, (b) ask the Court to void the entire plea agreement and vacate defendant's guilty plea on any remaining count of conviction, with both the USAO and defendant being released from all their obligations under this agreement, or (c) leave defendant's remaining convictions, sentence, and plea

agreement intact.  Defendant agrees that the choice among these three options rests in the exclusive discretion of the USAO.

### EFFECTIVE DATE OF AGREEMENT

25.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

### BREACH OF AGREEMENT

26.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

27.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.  Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.   Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.   Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

<u>OFFICE NOT PARTIES</u>

28.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

29.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of

sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 15 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

30.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

31.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

1   <u>PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING</u>

2   32.   The parties agree that this agreement will be considered

3   part of the record of defendant's guilty plea hearing as if the

4   entire agreement had been read into the record of the proceeding.

5   AGREED AND ACCEPTED

6   UNITED STATES ATTORNEY'S OFFICE
    FOR THE CENTRAL DISTRICT OF
7   CALIFORNIA

8   STEPHANIE S. CHRISTENSEN
    Acting United States Attorney

9                                               7/14/2022

10  _____    _____
    BRIAN R. FAERSTEIN                  Date
11  DAN G. BOYLE
    Assistant United States Attorneys

12                                      7/14/22

13  _____    _____
    TRAVIS SCHLOTTERBECK                Date
14  Defendant                           7/14/22

15  _____    _____
    EDWARD ROBINSON                     Date
16  Attorney for Defendant Travis
    Schlotterbeck

17  //

18  //

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27  //

28

19

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.



_____          7/14/22
TRAVIS SCHLOTTERBECK                Date
Defendant

//
//
//
//
//
//
//

20

CERTIFICATION OF DEFENDANT'S ATTORNEY

I am Travis Schlotterbeck's attorney.  I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. To my knowledge: no promises, inducements, or representations of any kind have been made to my client other than those contained in this agreement; no one has threatened or forced my client in any way to enter into this agreement; my client's decision to enter into this agreement is an informed and voluntary one; and the factual basis set forth in this agreement is sufficient to support my client's entry of guilty pleas pursuant to this agreement.

EDWARD ROBINSON
Attorney for Defendant Travis
Schlotterbeck

Date 7/14/22

21