**EDWARD M. ROBINSON (CA Bar 126244)**
21515 Hawthorne Blvd, Suite 730
Torrance, CA 90503
Office: (310) 316-9333
Facsimile: (310) 316-6442
eroblaw@gmail.com

Attorneys for Defendant
*Travis Schlotterbeck*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>TRAVIS SCHLOTTERBECK,<br><br>Defendant. | Case No. 19-cr-00343-GW-1<br><br>**DEFENDANT TRAVIS SCHLOTTERBECK'S SENTENCING MEMORANDUM; EXHIBITS IN SUPPORT**<br><br>Hearing Date: November 17, 2022<br>Hearing Time: 8:00 AM<br>Location: Courtroom of the Hon. George H. Wu |

    Defendant Travis Schlotterbeck, by and through his counsel of record Edward M. Robinson, hereby files his sentencing memorandum.

    Mr. Schlotterbeck's sentencing memorandum is based upon the attached memorandum of points and authorities and exhibits in support, as well as the files and records in this case, the presentence report, United States Probation Office's disclosed recommendation, and such further evidence and argument as the Court may permit.

Respectfully submitted,

DATED: November 10, 2022         By  */s/ Edward M. Robinson*
                                                              Edward M. Robinson
                                                             Attorney for Defendant
                                                             *Travis Schlotterbeck*

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................1

THE PRESENTENCE REPORT ....................................................................................1

18 U.S.C. § 3553 ANALYSIS .........................................................................................2

    I.    Nature and Circumstances of the Offense ........................................................3

    II.   Personal History and Characteristics .................................................................3

        A.    Mr. Schlotterbeck's Military Service ......................................................3

        B.    Mr. Schlotterbeck's Commitment to his Family .....................................4

    III.  Promote Respect for the Law and Protecting the Public ..................................5

    IV.  Deterrence ...........................................................................................................7

    V.   Unwarranted Sentencing Disparity ....................................................................8

        A.    Dismissed Case .......................................................................................8

        B.    Conviction Case ......................................................................................9

    VI.  Post-Offense Rehabilitation ..............................................................................10

    VII. Most Effective Means of Treatment ................................................................11

FINE ................................................................................................................................11

CONCLUSION ...............................................................................................................12

# TABLE OF AUTHORITIES

**Cases**

*Gall v. United States,*
  552 U.S. 38, 49 (2007)..............................................................................2, 5, 6

*Griffin v. Wisconsin,*
  483 U.S. 868 (1987)..............................................................................................6

*Kimbrough v. United States,*
  522 U.S. 85 (2007)................................................................................................2

*New York State Rifle & Pistol Assoc. Inc. v. Bruen,*
  142 S.Ct. 2111 (2022) ..........................................................................................3

*Tapia v. United States,*
  564 U.S. 319 (2011)..............................................................................................2

*United State v. Cole,*
  622 F. Supp. 2d 632 (N.D. Ohio 2008) ...............................................................8

*United States v. Booker,*
  543 U.S. 220 (2005) ...........................................................................................8

*United States v. Bryson,*
  229 F.3d 425 (2nd Cir. 2000) .............................................................................11

*United States v. Hanson,*
  561 F. Supp. 2d 1004 (E.D. Wis. 2008) ..............................................................7

*United States v. Knights,*
  534 U.S. 112 (2001)..............................................................................................6

*United States v. Pepper,*
  562 U.S. 476, 492 (2011) ..................................................................................11

*United States v. Rodriquez,*
  527 F.3d 221 (1st Cir. 2008).................................................................................2

**Statutes**

18 U.S.C. § 922 ……………………………………………………………………...…9, 10

18 U.S.C. § 924 ………………………………………………………………………….…9

18 U.S.C. § 1001 ................................................................................................................ 10

18 U.S.C. § 3553 ..........................................................................................................*passim*

26 U.S.C. § 7201 ................................................................................................................ 10

26 U.S.C. § 5861 …………………………………………………………………………10

# INTRODUCTION

Appearing before this court is a 37-year-old father of four who has dedicated his life to serving his country and now dedicates his life to his family. Travis Schlotterbeck served in the United States Marine Corps from July 2004 to June 2021. During that time, Mr. Schlotterbeck was deployed to the Horn of Africa and then to Afghanistan, where he developed Post Traumatic Stress Disorder ("PTSD".) As his sister has noted, his military experience "really changed" Mr. Schlotterbeck and sent him down the wrong path. It was during this difficult time in his life that Mr. Schlotterbeck engaged in the conduct at issue.

Before this instant case, he had never been in trouble with the law. Since the commission of the offense, Mr. Schlotterbeck has "turned his life around," has taken responsibility for his actions, and continues to take care of his wife and his children. His friends, family, and fellow Marines describe the generous, courageous, and thoughtful man that he is. Mr. Schlotterbeck has learned from his mistakes and is dedicated to making amends. There is no need to incarcerate him.

For these and the foregoing reasons, Mr. Schlotterbeck respectfully requests that this Court sentence him to a term of time served followed by a period of one-year supervised release.

# THE PRESENTENCE REPORT

Mr. Schlotterbeck has no objection to the Presentence Report Guidelines calculation. The probation office calculates a base offense level of 20. (PSR ¶ 29.) Because the conduct involved six firearms, probation applies a two-level increase. (PSR ¶ 31.) Probation also applies a two-level decrease for Mr. Schlotterbeck's acceptance of responsibility. (PSR ¶ 38.) Therefore, Mr. Schlotterbeck's total offense level is 20, rendering an advisory sentencing range of 33 to 41 months. (PSR ¶¶ 40, 96.) With respect to the advisory guideline calculations, Mr. Sclotterbeck has no objections, as the advisory guideline analysis mirrors that in his plea agreement. (Doc 151, PSR p. 4.)

|   |   |
|---|---|
| 1 | Probation recommends a variance outside of the Guidelines range to a sentence |
| 2 | of 24 months followed by a three-year term of supervised release. (Doc. 160 at 1.) In |
| 3 | doing so, Probation highlights Mr. Schlotterbeck's personal history and characteristics, |
| 4 | including that Mr. Schlotterbeck lost both of his parents at a very young age. (Doc. 160 |
| 5 | at 5.) Mr. Schlotterbeck joins in Probation's request for a variance, but requests that |
| 6 | this Court vary down further to a sentence of time served followed by a one-year term |
| 7 | of supervised release. |

## 18 U.S.C. § 3553 ANALYSIS

18 U.S.C. § 3553(a) requires that a sentencing court impose a sentence that is "sufficient but not greater than necessary" to achieve the goals of sentencing. *Kimbrough v. United States*, 522 U.S. 85, 90 (2007). The sentencing factors in 18 U.S.C. § 3553(a)(2) must be viewed against the backdrop of the nature and circumstances of the offense as well as Mr. Schlotterbeck's personal history and characteristics. The sentencing factors, which must be analyzed against the parsimony clause of 18 U.S.C. § 3553(a) represent the major sentencing considerations of "retribution, deterrence, incapacitation, and rehabilitation." *Tapia v. United States*, 564 U.S. 319, 325 (2011). While the Guideline sentencing range is a "starting point and initial benchmark," the Guidelines are not the sole, nor even the first among the factors that Congress has commanded the court to apply pursuant to Section 3553(a). *Gall v. United States,* 552 U.S. 38, 49 (2007). Instead, in reaching a decision on what constitutes an appropriate sentence, the district court should "consider all relevant factors" and "construct a sentence that is *minimally sufficient* to achieve the broad goals of sentencing." *United States v. Rodriquez*, 527 F.3d 221, 228 (1st Cir. 2008) (*emphasis* supplied.)

## I. Nature and Circumstances of the Offense

The nature and circumstances of the offense are accurately laid out in the Factual Basis section of the Plea Agreement. (Doc. 151.)[1] As noted by Probation in its recommendation for a downward variance, the conduct at issue occurred during a dark period of Mr. Schlotterbeck's life. He had just returned from deployment and was suffering from PTSD, his marriage had fallen apart, and he had fallen into a pattern of drinking. (Doc. 160 at 5.) Mr. Schlotterbeck notes that he "succumbed to poor decision making at the time" of the offense conduct and that he blurred the lines between the norms during his time in the Marine Corp and what was acceptable in the civilian world. (Exhibit A.) He now recognizes the destructive results of his choices.

## II. Personal History and Characteristics

Mr. Schlotterbeck's personal history and characteristics support a downward variance to a sentence of time served. In its recommendation for a downward variance, Probation highlights Mr. Schlotterbeck's difficult upbringing. Mr. Schlotterbeck lost his mother when he was just 10 years old and then lost his father when he was still in high school. (PSR ¶ 54; Doc. 160 at 5.) Probation also makes a cursory reference to Mr. Schlotterbeck's service to his country. (Doc. 160 at 5.) This service, along with Mr. Schlotterbeck's dedication to his family, including his four children,[2] warrant a further variance to a noncustodial term.

### A. Mr. Schlotterbeck's Military Service

Mr. Schlotterbeck has dedicated his life to serving his country, and before this incident, he had never been in trouble. Mr. Schlotterbeck entered the United States Marine Corps in July 2004 and was honorably discharged in June 2021. (PSR ¶ 82.)

---

[1] The Plea Agreement allows for Mr. Schlotterbeck to challenge his convictions on the basis of his motion to dismiss and the Supreme Court case *New York State Rifle & Pistol Assoc. Inc. v. Bruen*, 142 S.Ct. 2111 (2022), which address legal challenges to the statutes of convictions.

[2] While some letters included in Exhibit B refer to Mr. Schlotterbeck's "three children," he and his wife recently welcomed a fourth child, after some of the letters were written.

3

During his time as a Marine, Mr. Schlotterbeck received many awards, including, but not limited to the following: National Defense Service Medal, Presidential Unit Citation-Navy, Meritorious Mast, Navy Meritorious Unit Commendation, Armed Forces Reserve Medal, NATO Medal-ISAF Afghanistan, Sea Service Deployment Ribbon, Navy and Marine Corps Achievement Medal, and Selected Marine Corps Reserve Medal. (PSR ¶ 82.) He was also deployed twice, first to the Horn of Africa and then to Afghanistan.[3] (PSR ¶ 73.) His fellow Marines, both subordinates and peers, have described his mentorship, encouragement, and positivity. (Exhibit B at 3, 6.) They describe the way in which he continues to look out for his fellow servicemen, even though he is no longer an active member of the military. (Exhibit B at 6.)

Most critically, during Mr. Schlotterbeck's time as a Marine, he was deployed twice, including a deployment to Afghanistan where he faced combat and developed debilitating anxiety and PTSD. (PSR ¶ 73; Exhibit A.)

B. Mr. Schlotterbeck's Commitment to his Family

Mr. Schlotterbeck's commitment to his family, to his friends, and to his employees further supports the downward variance to time served. While his PTSD led to the demise of his first marriage and was a significant factor in the conduct at issue here, Mr. Schlotterbeck has worked hard to manage his symptoms and get his life back on track. He is an amazing father to all four of his children and is a devoted husband to his wife. Mr. Schlotterbeck has two children from his first marriage, and he is committed to ensuring that he remains a significant part of their lives. He has a "profound sense of duty to his children from a previous marriage" and talks to his two older children every day. (Exhibit B at 7-8; PSR ¶ 62.)

Mr. Schlotterbeck met his current wife in 2017 and they were married that same year. (PSR ¶¶ 63, 64.) They have since had two young children. (PSR ¶ 65.) Mr.

---

[3] In a 2018 recommendation letter, provided to Probation, Mr. Schlotterbeck's commanding officer praised the way in which his "resourcefulness, dedication, and devotion to duty have [had] a profound impact" on those around him.

4

Schlotterbeck is the primary provider for all of his children. (PSR ¶ 110.) His sister notes that he "is all about his family and his friends. He has a big heart and he is an amazing person and father." (Exhibit B at 9.) His wife describes the "strong, incredibly brave, loving, dedicated, organized, responsible, inspiring person and provider that he is to our family." (Exhibit B at 1-2.) She notes the way her husband has "contributed greatly to his oldest children being respectful, smart, excellent decision makers in their teen years" and the joy it brings them in raising their two younger children. (Exhibit B at 1.) Mr. Schlotterbeck is "the cornerstone of our immediate and extended family, and is a God-fearing, church attending, family-centered man." (Exhibit B at 1.)

Given the loss of his parents at such a young age, Mr. Schlotterbeck realizes how valuable each moment he has with his family; and he hopes to and looks forward to maintaining the ability to "financially and emotionally be able to support [his] wife and four children." (Exhibit A.)

Mr. Schlotterbeck's difficult upbringing, his service to his country and his family, and his commitment to making amends make clear that any custodial sentence would be greater than necessary to achieve the goals of sentencing.

### III. Promote Respect for the Law and Protecting the Public

As Probation notes, "respect for the law and recidivism are unlikely concerns for this defendant." (Doc. 160 at 6.) Critically, here, the requirement that a sentence promote respect for the law, provide just punishment, and protect the public is tied directly to who Mr. Schlotterbeck is. Mr. Schlotterbeck has dedicated his life to serving this country, has acknowledged the errors of his ways, and has worked to rebuild his life and self-esteem. He also has no criminal history. It is not necessary to incarcerate Mr. Schlotterbeck to promote respect for the law or to provide just punishment.

As the United States Supreme Court said in *Gall v. United States,* 552 U.S. 38 (2007), approving the district court's conclusion, "a sentence of imprisonment may work to promote not respect but derision of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and

circumstances involved in sentencing." 552 U.S. at 54. To sentence Mr. Schlotterbeck to prison would, as the Supreme Court noted, show disrespect for the law and would be unjustifiably and unreasonably harsh.

  Moreover, the fact is, supervised release, rather than an act of leniency, is a substantial restriction of an individual's freedom. Mr. Schlotterbeck will have to comply with strict reporting conditions.  He will not be able to change or make decisions about significant circumstances in his life, such as where to live or work, which are prized liberty interests, without first seeking authorization from the probation office and perhaps even the Court.  He also faces harsh consequences if he violates the conditions of his probationary term.  See *United States v. Knights*, 534 U.S. 112, 119 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled'" (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987) (internal quotation marks omitted)).  Probationers and those on supervised release may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court.  They must report regularly to their probation officer and most probationers are also subject to individualized "special conditions" imposed by the court.  See *Gall*, 552 U.S. at 48-49.

  Additionally, the need to protect the public from further crimes of Mr. Schlotterbeck is easily measured. Mr. Schlotterbeck has disavowed his interest in firearms, recognizes the "misplaced pride" they gave him during a low point in his life, and now fully recognizes the importance of firearms regulations "in the civilian world." (Exhibit A.) Moreover, Mr. Schlotterbeck has recognized the need to find healthy coping mechanisms to deal with his PTSD. He has found such outlets through Martial Arts and since 2014 has earned a black belt in Jiu jitsu. (Exhibit A.) This accomplishment has provided him with a healthy source of pride. (Exhibit A.) Moreover, probation has recommended that special conditions of release include participation in mental health treatment and participation in an outpatient substance

treatment and counseling program. (Doc. 160 at 2.) Such conditions mitigate any minimal risk that the Court may find exists. Finally, and most importantly, since the commission of these offense, Mr. Schlotterbeck has remarried, welcomed two more children into this world, and dedicated himself fully to his family. (Exhibit A.) Where it is obvious that no incarceration is needed for public protection, sentencing judges should impose probation or below guideline sentences in light of this purpose. *See United States v. Hanson*, 561 F. Supp. 2d 1004, 1010 (E.D. Wis. 2008).

It is hard to imagine the need to punish Mr. Schlotterbeck in any way to protect the public from further crimes of his. He has expressed remorse for his conduct, has worked extremely hard to address the ways in which his PTSD and anxiety led him down a destructive path, and has rededicated himself to his commitment to service.

## IV.    **Deterrence**

18 U.S.C. § 3553(a)(2)(B) requires that the Court consider the need for the sentence imposed to afford adequate deterrence to criminal conduct. While this Court must consider both general and individual deterrence, two important examinations of the concepts must be considered. First, the anecdotal notion that longer sentences have a greater general deterrent effect is belied by empirical and academic findings. The United States Sentencing Commission has found that "[t]here is no correlation between recidivism and Guidelines' offense level. Whether an offender has a low or high Guideline offense level, recidivism rates are similar. While surprising at first glance, this finding should be expected. The Guidelines' offense level is not intended or designed to predict recidivism." *See* U.S. SENTENCING COMM'N, MEASURING RECIDIVISM: THE CRIMINAL HISTORY COMPUTATION OF THE FEDERAL SENTENCING GUIDELINES, at 15 (2004). To sentence Mr. Schlotterbeck to a term of imprisonment to deter the community is unnecessary and unjust.

The second, and more relevant consideration deals with the tension between general and individual deterrence. Here, as noted above, Probation highlights that recidivism is an unlikely concern for Mr. Schlotterbeck. (Doc. 160 at 6.) Mr.

7

Schlotterbeck has "accept[ed] responsibility fully" and acknowledges the "very self-destructive" nature of his choices when heavily involved with firearms. (Exhibit A.) Thus, it is not right, given the individualized nature of sentencing, to imprison him to set an example for others. As the district court stated in *United State v. Cole*, 622 F. Supp. 2d 632 (N.D. Ohio 2008), "[g]eneral deterrence uses a utilitarian calculation, subjecting defendants to longer periods of incarceration than retribution requires to 'send a message' to other potential offenders. Inherent in this general deterrence calculation is a tension between individual dignity and societal good, begging the question: Is it ethical to impose a greater-than necessary punishment upon an individual criminal defendant to protect society at large?"

Mr. Schlotterbeck does not need to be incarcerated. As set forth in the nature and circumstances of the offense, and particularly when compared to other defendants as detailed in the section of this memorandum concerning unwarranted disparity, to make an example out of him, based upon a misguided notion that others would not commit firearm crimes is contrary to the individualized sentencing requirements resurrected post-*United States v. Booker*, 543 U.S. 220 (2005) and calls into question the ethics of this type of sentencing as identified by the district court in *Cole*.

## V. Unwarranted Sentencing Disparity

18 U.S.C. § 3553(a)(6) states that one of the factors in sentencing to which the parsimony clause applies is Mr. Schlotterbeck's sentence must be one that will "avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Here, any sentence greater than time-served would create an unworthy sentencing disparity with other defendants charged with or convicted of similar crimes involving firearms.

### A. Dismissed Case

In the case *United States v. Roh*, case no. 14-cr-167-JVS, just as with Mr. Schlotterbeck, defendant Roh was indicted for violating the provisions of the Gun Control Act by willfully engaging in the illegal manufacture of firearms, 18 U.S.C. §

8

922(a)(1)(A). As the government alleged in its indictment, defendant Roh was building and selling hundreds of ghost guns. (*See* 14-cr-167 at Doc. 1.) Even after being notified by ATF on multiple occasions that his conduct was unlawful, Roh persisted.

Defendant Roh proceeded to a bench trial. In issuing a tentative ruling on a Rule 29 motion, the Court held that Roh's conduct "*apart from the debate over receivers*, is sufficient to support a finding beyond a reasonable doubt that Roh willingly engaged in the unlicensed manufacture and sales of firearms in violation of 18 U.S.C. § 922(a)(1)(A)." (*See* 21-cr-00243 at Doc. 113-2, p.22 (*emphasis* supplied.)) The Court thus tentatively granted the motion for acquittal with respect to the manufacturing of AR-15 firearms, but otherwise denied the motion. *Id*.

Given the uncertainty surrounding the debate over receivers, the government and defendant Roh agreed to a diversion agreement. Ultimately, defendant Roh had his guilty plea vacated. (*See* 14-cr-167 at Doc. 165.) Thus, despite the Court's finding that the government had proven beyond a reasonable doubt that defendant Roh understood that the majority of his conduct was unlawful, defendant Roh faced no time in custody and has no criminal record based on that conduct. It would be an extraordinary sentencing disparity to incarcerate Mr. Schlotterbeck for any period of time given the similarity in the majority of their manufacturing conduct. Notably, there is no similarity in the number of firearms in defendant Roh's case compared with Mr. Schlotterbeck's. Defendant Roh was clearly significantly more involved in selling fully manufactured AR-15s – he sold "hundreds" while Mr. Schlotterbeck sold six.

### B. Conviction Case

In another case involving firearms, *United States v. Wei Xu*, 19-cr-00093-RGK, the Court imposed an 18-month sentence on defendant Xu. Watch Commander Xu was charged with false statements in violation of 18 U.S.C. § 1001(a), dealing firearms without a license in violation of 18 U.S.C. § 922(a)(1)(A), possession of an unregistered firearm in violation of 26 U.S.C. § 5861(d), and willfully attempting to evade tax in violation of 26 U.S.C. § 7201. As a Watch Commander for Customs

and Border Patrol, Xu was required to file statements with the government that were directly related to obvious security concerns about his foreign financial interests and contacts. Xu lied about that and made false statements specifically to obtain secret-level security clearance. (19-cr-00093-RGK, Doc. 71, p. 16.) Defendant Xu also abused his position as a law enforcement officer to purchase firearms and resell them to the public without a license. (19-cr-00093-RGK, Doc. 71, p. 17.) Defendant Xu sold at least 99 firearms without a license, often using a fraudulently obtained Arizona license to purchase the firearms and then resell in California. (19-cr-00093-RGK, Doc. 71, p. 17.) Finally, defendant Xu had over 250 firearms at his residence, none of which were registered to ATF. (19-cr-00093-RGK, Doc. 71, p. 18.) Defendant Xu's conduct was both qualitatively and quantitatively more significant than that of Mr. Schlotterbeck. Mr. Schlotterbeck, therefore, should be sentenced to a term of imprisonment significantly less than defendant Xu's 18-month sentence.

## VI. Post-Offense Rehabilitation

"[A] court's duty is always to sentence the defendant as he stands before the court on the day of sentencing." *United States v. Pepper*, 562 U.S. 476, 492 (2011); *quoting United States v. Bryson*, 229 F.3d 425, 426 (2nd Cir. 2000).

As he stands before this Court today, Mr. Schlotterbeck is not the man he was when he engaged in these offenses. As noted by the probation office, during the timeframe of the instant offense, Mr. Schlotterbeck was going through a difficult divorce and struggled with alcohol abuse. (PSR ¶¶ 61, 75; Doc. 160 at 5.) He was also suffering from PTSD. (PSR ¶ 73.) He has since "turned his life around." (Doc. 160 at 5.) As discussed above, Mr. Schlotterbeck has turned to healthy means of coping, including through the practice of Jiu jitsu as well as recommitting himself to his faith and becoming an active member of his church. (PSR ¶ 67; Exhibit A.) He has also become "an advocate for Veterans within Mixed Martial arts." (Exhibit B at 5.) Mr. Schlotterbeck "accept[s] responsibility fully for the choices [he] made" and is committed to making the right decision for himself and for his family. These decisions

10

include taking advantage of the GI Bill and earning his degree in business management in 2020. (PSR ¶ 79; Exhibit A.) Mr. Schlotterbeck hopes to earn a master's degree and obtain his pilot's license. (Exhibit A.) This evidence of Mr. Schlotterbeck's ongoing rehabilitation "bears directly on the District Court's overarching duty to 'impose a sentence sufficient, but not greater than necessary,' to serve the purposes of sentencing." *Pepper*, 562 U.S. at 493; *quoting* 18 U.S.C. § 3553(a).

### VII. Most Effective Means of Treatment

18 U.S.C. § 3553(a)(2)(D) requires that the Court consider the most effective means of treatment when fashioning an appropriate sentence. As discussed, Mr. Schlotterbeck suffers from PTSD as a result of serving his country and being deployed to Afghanistan. Mr. Schlotterbeck has found that access to his Jiu jitsu practice, his church, and his family, have provided effective means of treatment which have allowed his PTSD symptoms to subside.

Moreover, as a condition of supervised release, Probation has recommended that Mr. Schlotterbeck participate in mental health treatment as well as an outpatient substance abuse treatment and counseling program. (Doc. 160 at 2.) It is clear that allowing Mr. Schlotterbeck to remain out of custody provides the most effective means of treatment.

### FINE

The Probation Office recommends a $100,000 fine based upon a $50,000 fine for each count of conviction. (Doc. 160.) This fine is punitive and greater than necessary. Here, the counts of conviction group, and Probation recommends a downward variance to 24 months. Deducing that the variance is tied to a total offense level of 15, Criminal History Category I, rendering a range of 18 to 24 months, the corresponding recommended fine range per U.S.S.G. § 5E1.2(c)(3) is $7,500 to $75,000.

Given the variance recommended and the variance requested, at most, a fine of $7,500 is an appropriate punishment.

11

# CONCLUSION

For the reasons set forth above, as well as those set forth in the record of this case, counsel for Mr. Schlotterbeck respectfully requests that this Court sentence Mr. Schlotterbeck to a term of time served followed by a term of one-year supervised release.

Respectfully submitted,

DATED: November 10, 2022    By  /s/ Edward M. Robinson
                                Edward M. Robinson

                                Attorneys for Defendant
                                *Travis Schlotterbeck*